11        **EXHIBIT 3**        L2

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| ANDRE BISSASOR,<br>  Plaintiff,<br><br>v.<br><br>CRAIG DONAIS;<br>  Defendant. | **11/12/2020**<br><br>CIVIL ACTION NO.: 2081CV00087<br><br>**RECEIVED** |

## PLAINTIFF'S AFFIDAVIT CONCERNING DAMAGES AMOUNT FOR CRAIG DONAIS CASE

1.  I, the plaintiff, being duly sworn, hereby depose and say:

2.  The facts stated herein are based on my personal knowledge and are true, correct, and accurate.

3.  I hereby provide the following affidavit concerning the procedural damages amount.

### PREFACE

4.  First, it should be noted that, as a pro se plaintiff, I was not aware that the minimum procedural amount for damages was changed from $25,000 to $50,000 for superior court cases. This change was made effective only as of January 1, 2020. I filed this case on 1-9-20. I had no idea of this change at the time I filed this case. If I had known, I would have amended the complaint/civil cover sheet to indicate that damages exceeded $50,00. This is a simple error that can be fixed upon amendment of the complaint and/or civil cover sheet. NB: I submitted an amended civil cover sheet, attached to my response on 2-4-20.

5.  NB: I have not yet served the complaint on the defendant as I have not yet received the summons from the court. I also intended to amend the complaint for other reasons, prior to service of process on the defendant.

6.  In determining whether to dismiss the action, the judge should consider the amount reasonably likely to be recovered by the plaintiff and whether that amount is marginally or substantially higher than $50,000; whether the matter would be more appropriate for a jury of twelve or a jury of six; and whether resolution of the matter will be substantially delayed by dismissal, or particularly costly to the parties because of the number of filings that will need to be repeated in the Superior Court. A judge should also consider other relevant factors presented by the parties and whether the action is similar in scope to those that fit within the $50,000 limitation.

7.  This is not a hearing on the merits. There should be no consideration of the strengths or weaknesses of the case. And there should be no credibility determinations made.

8.  The only question before the court is whether there is no reasonable possibility that the claims could yield damages equal to or greater than $50,000. I made no preparations to address any other question

1

or issue before the court and for the respondent to try to suggest any other question would constitute a due process violation as I would be blindsided and not prepared, and would be a surprise to me.

9.   The claims are complex claims of defamation, discrimination, etc that are more suited to superior court litigation.

10. Changing courts would represent additional delay and more filings that would further complicate this matter.

11. Even if the court thinks it is a close call, the court has the discretion to accept the case.

12. The superior court allows e-filing and other forms of electronic or remote access, not readily available in district court. This would be more suitable and convenient for the plaintiff. District court may not have all of the e-filing facilities of superior court.

### Aggregation of claims

13. Where a single plaintiff has multiple unrelated claims against a single defendant, that plaintiff can aggregate those claims – that is, add the amounts together – to satisfy the amount in controversy requirement. The plaintiff in this case has stated several claims against the defendant, which when aggregated more than satisfies the requirement of $50,000 in damages, including but not limited to: defamation, discrimination/retaliation, breach of fiduciary duty, abuse of process, interference with contractual relations, negligence, misrepresentation, intentional infliction of emotional distress, invasion of privacy, false light, etc.

### Legal certainty test

14. The standard for dismissing a complaint for lack of meeting the amount in controversy is a rather high one in federal court. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed, only then can the case be dismissed. See: St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

15. This can be applied to the state court amount in controversy requirement.

16.  Similarly, the rule governing dismissal for want of jurisdiction in cases brought in the federal court is that the sum claimed by the plaintiff controls if the claim is apparently made in good faith. Thus, the court is required to give deference to the plaintiff's stated damages.

17. NB: Proof of damages are not proper at the beginning of a case without discovery and an opportunity to marshal evidence of the extent of damages. At the time of filing this case, there is some "inherent uncertainty in the amount of damages."

## DAMAGES WILL EXCEED $50,000

18. I have pled claims for defamation, interference with contractual relations, intentional misrepresentation and intentional infliction of emotional distress and abuse of process and aiding/abetting in discrimination and retaliation based on race. There are adequate damages in this case more than $50,000.

19. For instance, the defamation damages are significant. Reputational damages affect economic, reputational, financial concerns. Emotional distress damages are also significant. Discrimination and dignity torts damages are also significant. Breach of fiduciary duty and fraud are also significant. Interference with contractual relations damages are also significant. This will be further shown below.

## DEFAMATION LEGAL STANDARD IN MASSACHUSETTS

20. Defamation per se will give rise to presumed damages for a plaintiff, meaning the plaintiff in question need not actually prove they suffered any injury or harm as a result of the statement in question.

21. Actual damages are the fair compensation of the plaintiff, which include:
    a. Harm to reputation
    b. Pecuniary out of pocket losses
    c. Lost future wages
    d. Emotional distress/mental suffering, etc.

22. NB: For mental suffering, a plaintiff can recover for any mental suffering that would be the "natural result" of the defamation. See Shafir v. Steele, 431 Mass. 365, 727 N.E.2d 1140 (2000).

## DEFAMATION AND DAMAGING STATEMENTS WERE INTENTIONALLY AND MALICIOUSLY INFLICTED BY MR. DONAIS

23. Mr. Donais made false statements about me that are defamatory and damaging to my reputation.

24. The very purpose of him making these statements was to damage me and harm my reputation and credibility.

25. He made a written statements to others saying that I accused him of race discrimination because he declined to represent me in a case against a defendant hotel, that I became upset and angry because he declined representation and thus accused him with no reason or basis of being a racist.

26. He also made to statements to others that implied or suggested falsely and maliciously that I was dangerous and suggesting falsely that I am capable of hurting and harming his wife and young child. He thus has attacked my character. This is tantamount to criminal defamation. This was based on nothing except that I am black. This is dog whistle racism intended to hurt and harm my reputation.

3

27. He has made false statements to others that I hacked or bugged his telecommunications systems at his office.

28. These statements were made to third parties and in a manner that was public.

29. The statements were statements of fact, not opinion.

30. The statements were not privileged.

31. The statements were made with malicious intent and reckless disregard of the truth.

32. The statements either caused me economic loss or are actionable without proof of economic loss.

33. These statements are capable of a defamatory meaning, especially in the context and manner in which Mr. Donais made them.

34. In making these statements, Mr. Donais was motivated by racial animus and intended exploit my race as a black man and use it against me.

35. The statements by Mr. Donais were false negative statements about me. It is analogous to a man saying that a woman falsely accusing him of rape. If the woman made no such accusation, then the statement is defamatory and harmful to her reputation and intended to create despise and contempt of her in the community. The same is true in this case where Mr. Donais false stated that I frivolously accused him of race discrimination as such a statement is likewise defamatory and harmful to my reputation and intended to create despise and contempt of me in the community and the public.

36. Mr. Donais' false and defamatory statements were gratuitously and maliciously made in order to harm, annoy, embarrass, humiliate and burden and oppress me as the plaintiff. It had no other purpose. Similarly, these statements were made in malice and reckless disregard of the truth.

37. Mr. Donais completely fabricated a lie and perjured himself in the process to publicly malign me. I felt utterly violated and hurt that someone—an attorney nonetheless--would exploit the issue of racism, which is something so painful for so many people in this country, just so he/his former client could win the case.  Mr. Donais was trying to undermine plaintiff/his spouse valid concerns and real experiences related to the discrimination and retaliation suffered at the Homewood Suites property, in order to make it seem as though plaintiff/his spouse were irrational and that were predisposed to groundlessly, frivolously, without any cause, falsely accuse any and every one of being racist (which plaintiff did not do and is completely false).

38. Similarly, given the racial nature of the perjury in this instance, this crime could also be construed, considered, or classified as a hate crime (at least at the federal level if not also at the state level).

39. Hate crimes are criminal acts motivated by bias or prejudice towards particular groups of people. To be considered a hate crime, the offence must meet two criteria: First, the act must constitute an offence under criminal law; second, the act must have been motivated by bias.

40. Mr. Donais fabricated and utilized his lie about racism to willfully intimidate Plaintiff and to interfere with and injure Plaintiff because of his race, and it was done in connection with Plaintiff's federally protected right to patronize a public accommodation. What Mr. Donais did not only qualify as a crime of perjury but also likely as a hate crime.

41. Hate crimes are by definition very damaging, both emotionally and otherwise.

42. Mr. Donais' acts are tantamount to a hate crime because it was motivated by racial animus and it was done to exploit my race to bring harm to me. He targeted me because I am black. He used his position as an officer of the court to use my race as a weapon against me. Blacks are vulnerable to these kinds of attacks and stirred up sensibilities. He wanted to make a caricature of me as despicable untrustworthy irrational human being. It is a form of racialized character-assassination and a racialized attack against me.

43. Mr. Donais only brought up that I accused him of racism because I am black. It was thus racially motivated. If I were white, such a fabricated lie would not stick.

44. Moreover, Mr. Donais wanted to intimidate me and to shut me up and to silence me. He was using this racial element to protect his colleagues and his friend and longtime client. He thus set out to damage me (and my wife) in on our pocketbook, in our housing, in our legal rights and in our case. He also essentially tried to interfere with our contract for housing by trying to wrongly and perjuriously influence the court against us.

## DEFAMATION DAMAGES CAUSED BY MR. DONAIS

45. In this case, the defendant defamed me, and this defamation by the defendant was also intended to interfere with my contractual relations with Homewood Suites of Nashua.

46. By his above described conduct, the defendant published or allowed to be published false, disparaging, defamatory, and materially misleading statements about me.

47. As described herein above, the defendant intentionally and with malice published false, disparaging, defamatory, and materially misleading statements about me with the intent to damage my reputation.

48. As described above, the defendant negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about me.

49. Defendant's false, disparaging, defamatory, and materially misleading statements are not privileged.

50. Defendant published or allowed to be published the false and defamatory statements with malevolent intent, ill-will and/or with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

51. Defendant' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject me to contempt and tended to and continue to tend to diminish the esteem, respect, goodwill and/or confidence in which I am held.

52. These statements are untrue and harmed me.

53. These statements made by the defendant are defamatory per se and have injured my reputation and exposed me to contempt and financial injury.

54. I have been harmed by the defendant' actions including insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to my reputation and personal humiliation, shame, and disgrace.

55. As a result of the malicious defamatory conduct on the part of the defendant, I have suffered economic and consequential damages.

56. Defendant' actions were malicious and showed intentional disregard for my rights, and accordingly punitive damages are appropriate against the defendant.

57. The defendant exhibited particularly egregious conduct and acted with malice or fraud. The defendant maliciously and willfully calculated its actions to harm me.

58. As a direct and foreseeable consequence of the defendant' defamation, I have suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to my reputation.

59. As a result, thereof, I have been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and emotional distress.

## BREACH OF FIDUCIARY DUTY / ABUSE OF PROCESS

60. Mr. Donais has inflicted significant harm upon me/my spouse in the district court and the superior court and in the public.

61. Firstly, Mr. Donais had inside knowledge of my self-disclosed understanding of the strategies, weaknesses, and discussions about my case from me directly. Inside knowledge of such information creates an automatic advantage to the defendants. If the reverse were true, and I had information about the strategies, weaknesses, and discussions about the defendants' approach to defending the case, there would be no doubt that I would have had an advantage. Such advantage can play out in subtle or not so subtle ways.

62. Similarly, Mr. Donais used his prospective client conversation with me against me, to directly inflict harm by defaming me and accusing me of falsely/frivolously accusing Mr. Donais of race discrimination because he did not take his case. This false accusation against me has sullied me and subjected me to humiliation in the court proceedings, with the implication that I am a frivolous liar

who plays the race card without rhyme or reason and is to be discredited as an irrational, unstable, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminishes my character and discredits him in the eyes of the court and in the public record.

63. If I had never spoken to Mr. Donais on 1-9-17 about a prospective client relationship, Mr. Donais could not have had the opportunity to fabricate this lie against me.

64. Mr. Donais has used his position as a prospective lawyer to me as a prospective client as a basis to injure me by falsely accusing me of falsely accusing Mr. Donais of race discrimination in the context of a conversation wherein I was seeking to form an attorney-client relationship with Mr. Donais, and wherein I shared with Mr. Donais certain confidential information, thus taking Mr. Donais into his confidences and placing his trust in Mr. Donais. Mr. Donais exploited and abused the trust that Plaintiff extended to Mr. Donais in seeking to have a conversation with him about our case. Mr. Donais turned around and has used that private privileged conversation as a basis to fabricate lies on me. This is an utter abuse and ethical travesty that has befallen me. This is a breach of fiduciary duty. This also goes to the conflict of interest. Mr. Donais was never going to be able to be loyal to me or my spouse, and the trust and confidences that I placed in him, because ultimately, he was loyal to Dave Akridge as a principal for the opposing party. His conflict of interest further created the fuel by which he found it useful to falsely accuse me, in order to harm and damage me, my spouse and our case in the interest of protecting and advancing the interests of the opposing party.

## FIDUCIARY DUTY AND ETHICAL DUTY | NOTE ON ETHICAL VIOLATIONS AND ATTORNEY DECEIT

65. The **allegations against Mr. Donais including lying, false swearing, perjury under oath, filing a false affidavit, as well as false statements to others and engaging in deceitful, fraudulent, and dishonest conduct**.

66. Mr. Donais' acts also includes a breach of fiduciary duty in that Mr. Donais not only violated rule 1.18 in intentionally engaging in a conflict of interest representation, but also violated rule 1.6 and rule 4.4 by divulging information obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client. Although the information divulged in Donais' 2017 affidavit contains numerous falsehoods especially including the accusation that my spouse accused him of race discrimination for not taking the case, the attempt to make such revelations violates the letter and spirit of Rule 1.18, Rule 1.6 and Rule 4.4. It was malicious act and represented an attempt to harm plaintiff/his spouse as prospective clients, in the interests of helping his client defendant Homewood Suites of Nashua and its key principal Dave Akridge who is a long-time friend, associate and client of Mr. Donais. This is a gross

breach of fiduciary duty. When prospective clients meet with layers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party. This is a logically sophisticated point that being made here. The false statement by Mr. Donais, about plaintiff accusing Mr. Donais of race discrimination, had no bearing on the issue of the disqualification motion of former co-counsel Karl Terrell (i.e. this motion was what prompted the defendants to obtain an affidavit from Mr. Donais). In fact, on January 11, 2017, Mr. Donais failed to tell Mr. Terrell or Mr. Akridge about this accusation from my husband when Mr. Donais disclosed to Mr. Terrell and Mr. Akridge what plaintiff said on the January 9, 2017 call. It clearly would not have been relevant then (even if it were true, which it is not true) which could be the only explanation that Mr. Donais could offer as to why he failed or forgot to mention it then (we know that the real reason he failed to mention it then was because it did not happen and it was thus a lie for him to state this later in March 2017, but I am using this point for illustrative purposes only) and it certainly would not be relevant in March 2017 when Mr. Donais drafted his affidavit wherein for the first time he concocted and fabricated this specious and false allegation against my husband. Mr. Donais intent was clear: to hurt, damage, harm, oppress, defame, scandalize my spouse. **This is forbidden by the rules. So even if Mr. Donais maintains that his affidavit is true, he still violated the rules of ethics. Hence Mr. Donais' violations are multiple, layered and intertwined with a web of layered misconduct making a very serious combinations of violations of ethics that rises to the level of extreme seriousness.**

67. Again, this is an intellectually sophisticated point in showing the reasoning that would still arrive at a violation of the rules of conduct by Mr. Donais even if he were telling the truth in his affidavit (which he is not). See Rule 1.6. Confidentiality of Information: "(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)." See also Rule 4.4: Respect for Rights of Third Persons: "(a) In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."

## INTERFERENCE WITH ADVANTAGEOUS RELATIONS OR CONTRACTUAL RELATIONS

68. I possessed a contractual and an advantageous relation with Hilton and thereby all Homewood Suites franchises.

69. I also had a contractual relation with Homewood Suites of Nashua.

70. The defendant intentionally interfered with the advantages of my relationship with Hilton as well as Homewood Suites of Nashua through improper motives or means.

71. As a result of the defendant's conduct, my advantageous relations may be irretrievably damaged. I have suffered and will continue to suffer substantial and irreparable harm.

72. I anticipated further advantageous relations with Hilton as well as Homewood Suites of Nashua in the future.

73. Mr. Donais malevolently sought to interfere with said contractual relations and advantageous relations. Said relations contain significant value. This value has been noted as being in the six figures, as an agreed in a settlement MOU that was reached after mediation and post-mediation negotiation with Homewood Suites of Nashua but was reneged upon when they sough to add new terms not agreed after the fact and thus settlement stalled. The point is that the scale of the damages was recognized by this agreed upon MOU that stated the value was in the six figures. Because of confidentiality concerns, I refrain from stating the actual amount here but should the court want more information, I can then provide it to the court.

74. By his above described conduct, the defendant has knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with my actual and potential advantageous relations and contractual relations.

75. As a result of the defendant's intentional interference, I have suffered and continues to suffer damages.

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

76. Defendant have caused harm to me, including stress, loss of sleep, emotional upset, anxiety, etc.

77. Defendant caused or created emotional distress for me.

78. Defendant knew that his actions towards or concerning me would cause emotional distress.

79. Defendant intentionally inflicted emotional distress on me when as a direct and proximate result of Defendant's actions and inactions, I was caused to suffer severe emotional distress as the result of which a reasonable person in my position would have suffered similar emotional distress under like circumstances.

80. I have sustained damages as a result of Defendant's intentional infliction of emotional distress.

81. Alternatively, I have pled a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

## DAMAGES FROM RACIAL BIAS/HATE CRIME

82. With respect to my claim of a hate crime of perjury animated by racial bias, the facts here will be before a jury and are likely to result in a verdict favoring me.

83. Courts have authorized compensation to a plaintiff for the injury caused by the defendant's wrongful breach of rights, and also have suggested that an action to redress racial discrimination might be likened to an action for defamation or some other dignitary tort[1].

84. Dignitary torts as injuries to the personality have been defined as follows: Though economic or physical loss may be associated with the injury, the primary or usual concern is not economic at all, but vindication of an intangible right... in a great many of these cases, the only harm is the affront to the plaintiff's dignity, the damage to his self-image, and the resulting mental distress.

85. There are three elements to the injury resulting from a dignitary tort: (1) economic loss; (2) emotional distress and other harm to the plaintiff's personality; and (3) loss of rights. Each of these three elements has been judicially recognized as an appropriate basis for an award of compensatory damages to a victim of discrimination related to their housing situation.

86. Loss of rights has also been recognized as an independent element of damages in discrimination cases[2]. In an early appellate decision, the Seventh Circuit directed the district court to compensate the plaintiff, in a discrimination case, "for the loss of her civil rights and any mental anguish suffered by her." The plaintiff was entitled to damages for her loss of rights, because "the deprivation of a constitutional right carries with it damages distinct from those which are embodied in the concept of humiliation and which deserve compensation."

87. Therefore, even when no mental anguish, emotional distress, or economic loss is shown, damages may be awarded simply for loss of rights.

88. I am entitled to protection from the feeling of inferiority -the "stigmatic" injury-resulting from racial bias. This is the type of injury the Court had in mind in Curtis v. Loether, when it described the race discrimination action by a black plaintiff as a dignitary tort and likened it to an action for defamation.

---

[1] Over the years, a number of lower courts have treated discrimination cases as tort actions. See, e.g., Dillon v. AFBIC Development Corp., 597 E2d 556, 562 (5th Cir. 1979); See also Meyers v. Pennypack Woods Home Ownership Ass'n, 559 E2d 894, 901-02 (3d Cir. 1977).

[2] Examples of other early discrimination cases that have awarded compensatory damages for humiliation, embarrassment, or other forms of emotional distress are Bradley v. John M. Brabham Agency, Inc., 463 E Supp. 27,32 (D.S.C. 1978) (award for emotional distress); Young v. Parkland Village, Inc., 460 E Supp. 67,72 (D. Md. 1978) (award for emotional distress); Stevens v. Dobs, Inc., 373 E Supp. 618, 623 (E.D. N.C. 1974) (award for mental anguish, humiliation, and embarrassment). 40 478 E2d at 384. See also Seaton v. Sky Realty Co., 491 E2d 634 (7th Cir. 1974) (award for embarrassment and humiliation); Wright v. Owen, 468 E Supp. 1115, 1118 (E.D. Mo. 1979) (award for distress and humiliation); Harrison v. Otto G. Heinzeroth Mortgage Co., 430 E Supp. 893, 897-98 (N.D. Ohio 1977) (award for plaintiff "upset and troubled" by a "very painful experience").

89. Courts have recognized that an individual's rights are something that can be infringed upon and create damages for which a person should be afforded relief. Civil rights then are economic rights functioning as legally enforceable claims which are structured in legislation.

## EMOTIONAL DAMAGES

90. Plaintiff's damages are based on emotional distress, which will be based on testimony of the plaintiff and witnesses as well as the facts and circumstances of this case.

91. The defendant is in possession of certain supporting documents which will further reveal the extent of damages.

92. The plaintiff will likely also be able to prove significant emotional distress damages. Instead retaliation for raising certain complaints about the defendant's conduct, the defendants sought to punish and humiliate the plaintiff.

93. The plaintiff further believes that the plaintiff has the possibility of proving that the defendants' discriminatory and retaliatory conduct was of the nature that requires the imposition of punitive damages, which could greatly magnify the compensatory damages award. See Monteiro V. City of Cambridge, Civ. Action No. 01 -3727 (trial court affirmed 2008 jury award of $ 1,042,400 in compensatory damages and $ 3.5 million in punitive damages in single count of retaliation).

94. With respect to the plaintiff's claim of retaliation, a claim further animated by racial bias, the facts here will be before a jury and are likely to result in a verdict favoring the plaintiff. "'Retaliation is a separate claim from discrimination, 'motivated, at least in part, by a distinct intent to punish or to rid… someone who complains of unlawful practices.'" Prof. Lulu Sun v. Univ. of Massachusetts/Dartmouth, 2011 WL 2214047, *22 (MCAD 2011) quoting Ruffino, 908 F. Supp. at 1040.

95. Accordingly, in addition to his claims of discrimination and retaliation, the plaintiff is likely to prevail on their other tort claims as well such as defamation.

96. Emotional distress damages are available even where the plaintiff has not sought medical treatment. Medical testimony, although relevant, is not necessary. A plaintiff's own testimony may be sufficient to establish humiliation or mental distress[3]. Hence, expert medical testimony is not required in order

---

[3] See Williams v. TWA, 660 F. 2d 1267 (8th Cir. 1981). See also Hammond v. Northland Counseling Center, 218 F.3d 866 (8th Cir. 2000); Ross v. Douglas County, Nebraska, 234 F. 3d 391 (8th Cir. 2000). The U.S. Supreme Court has noted with respect to emotional distress damages that a genuine injury in this respect may be evidenced by one's conduct and observed by others. Carey v. Piphus, 435 U.S. 247, 264 n. 20 (1978). The Eighth Circuit has held that a plaintiff's own testimony may be adequate to support such an award and the testimony of family and friends is also probative. Kucia v. Southeast Arkansas Community Action Corp., 284 F. 3d 944, 947 (8th Cir. 2002) (plaintiff's own testimony enough); Morse v. Southern Union Co., 174 F. 3d 917, 925 (8th Cir. 1999) (affirming $100,000 emotional distress award where family members corroborated plaintiff's testimony); Kim v. Nash Finch Co., 123 F. 3d 1046, 1065 (8th Cir. 1997) ( award of $100,000 affirmed where plaintiff, his wife and his son testified regarding anxiety, sleeplessness, stress, depression, high blood pressure, headaches and humiliation). In one case the amount awarded the complainant was $75,000 in emotional distress damages, where the respondent placed the complainant in fear and the discriminatory act was

to award damages for emotional distress. The victim's testimony, or that of his family or friends has been found sufficient (see *Johnson v. Hale,* 940 F.2d 1192 (9th *Cir.* 1991; *Human Rights Commission v. LaBrie, Inc.,* 668 A. 2d 659 (1995)).

97. NB: Aggravated Damages: Aggravated damages are awarded where an element of aggravation is involved in the respondent's conduct. Such damages have been considered to be available where a person has acted high-handedly, maliciously, insultingly, or oppressively. Although it was initially held that such damages were not available in discrimination complaints, it is now clear that they are. An award of a larger amount of damages by way of aggravated damages serves to compensate the victim for damage occasioned by the defendant's conduct where an element of aggravation is involved in that conduct, and not to punish the defendant.

## CALCULATION OF DAMAGES

98. It should be noted that I have not yet been able to comprehensively and precisely calculate damages suffered and state that I am going to need the assistance of a damages expert to do so in a proper manner. I note that my damages are ongoing, and documentation related to these damages will be supplemented seasonably throughout the case. Moreover, regarding certain damages, the amount to be awarded is reserved for a jury to determine, as is, for example, the case for the punitive damages or emotional distress damages to be awarded. With respect to court costs and attorneys' fees, those will be determined upon petition to the Court after judgment in plaintiff's favor and cannot be ascertained at this juncture.

99. However, having said that, it should also be noted that, if I prevail on my claims, I will have available to me a full range of damages for compensatory damages, special damages, emotional damages, aggravated damages and punitive damages that could potentially approach the six figures range, or even exceed $1 million.

100. Mr. Donais interfered with my contract with Homewood Suites of Nashua and Hilton Hotels. At a minimum, the value of the damages from that interference is in the six figures and this can been seen from the results of a mediation in 2018 which arrived a minimum value of compensation for damages (NB: this can been communicated to the court under seal or in camera, as that information is potentially confidential).

101. As a result of the defamation of Mr. Donais, I have suffered lost opportunities, damage to relationship with Hilton; loss of rights; loss of social interaction; impact on relationships in the community, etc. I suffered humiliation due to these defamatory remarks by Mr. Donais. I have

---

done public. The complainant and her family were afraid to leave the house. The children experienced nightmares, their schoolwork suffered, and the complainant sought medical assistance.

suffered insult, mental suffering, fear and anxiety, mental pain and suffering, mental anguish, emotional distress, personal humiliation, shame, disgrace, mortification, hurt feelings, loss of enjoyment of life, severe anger, appetite loss, lack of energy, mood swings, and sleep disturbances in addition to impairment of my reputation and standing in the community.

102.     Based on all of the above I believe my actual economic damages and non-economic damages are worth at least minimally around $250,000, depending on the method of calculation/estimation. Furthermore, I believe some kind of punitive damages should be added. The total amount of damages should be estimated minimally to be around $350,000 to $400,000.

103.     An estimate of the calculation of my damages, minimally, can be seen as follows:

- Defamation - $100,000
- Dignitary tort/racial stigma/discrimination - $100,000
- Interference with Contractual Relations - $50,000
- Breach of Fiduciary Duty/ Malpractice - $50,000
- Emotional distress damages - $100,000
- Punitive damages - $100,000
  _____
- TOTAL ESTIMATED DAMAGES: $500,000

104.     NB: Even if the above estimate of my damages is off-base by 50%, this would still mean estimated damages of $250,000. In fact, if the above estimate of my damages is off-base by 75%, this would still mean estimated damages of $125,000. My estimate would have to be wrong by as much as 95% in order for the damages to fall below $50,000. This would not be reasonable by any measure.

105.     At this stage of the proceeding, the court cannot assess liability or chances of defendant liability being found. The court must assume that the defendant will be found liable for the claims. The court cannot investigate the facts as if it were making a summary judgment decision. The court cannot assess the sufficiency of the stated claims, to survive a motion to dismiss. The court cannot weight credibility or the truth value of any statements or the likelihood of prevailing on the claims. The court can only inquire as to whether there is any reasonable possibility that the claims, if found in my favor, could result in any jury awarding me more than $50,000 in damages. The court is required to give deference to the plaintiff's stated damages claimed. Only discovery and a trial on damages can ascertain the damages with certainty. Also, it is up to a jury to determine damages especially on the tort claims such as defamation.

106.     In order to assume that the damages for my claims as alleged cannot exceed $50,000, the court must assume a significantly under-estimated calculation of damages similar to the following:

- Defamation - $10,000
- Dignitary tort/racial stigma/discrimination - $5,000
- Interference with Contractual Relations - $5,000

13

- Breach of Fiduciary Duty/ Malpractice - $5,000
- Emotional distress damages - $10,000
- Punitive damages -$5,000
_____
- TOTAL ESTIMATED DAMAGES: $40,000

107.    This would not be reasonable by any measure. In a case like this, emotional damages alone can reasonably be expected to exceed $50,000 (in light of the case precedents cited in my previous pleading). Moreover, a jury could award punitive damages which significantly raises the possibility of a total award of over $50,000.

### SIGNED UNDER PAINS AND PENALTIES OF PERJURY

I hereby depose and saith under oath that the above statements are true and correct to the best of my knowledge and recollection.

Respectfully submitted,

_____
Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
(781) 492-5675

DATED:   November 6, 2020

14