UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS

ANDRE BISASOR, Plaintiff,

v.

CRAIG S. DONAIS; RUSSELL F. HILLIARD;  DONAIS LAW OFFICES, PLLC;
UPTON & HATFIELD, LLP; and MARY K. DONAIS,
Defendants.

Case No. 1:23-CV-11313

## **MOTION TO REMAND WITH MEMORANDUM INCORPORATED AND AFFIDAVIT**

1. I, the plaintiff in the above-captioned case, hereby submit this **Motion to Remand** (with incorporated memorandum) and affidavit[1]. Grounds are as follows.

---

## SECTION 1: FACTS AND BACKGROUND

---

### I. PROCEDURAL BACKGROUND

2. On Saturday 6/18/22, I filed the complaint electronically, civil action cover sheet and affidavit of indigency, to begin the case in the Bristol superior court of Massachusetts ("state court"). NB: It was docketed on the next business day on Monday 6/20/22.

3. On 6/21/22, the case was assigned to Track A, which is the Average track.

4. On 6/23/22, the state court allowed the affidavit of indigency stating **_"waived in full for filing fee, summons, service of process."_**

5. On 9/19/22, I filed an affidavit of indigency/request for waiver of costs pertaining to allowance of a process server to serve process on the out of state defendants.

6. This request for waiver of costs was denied by the state court stating: *"The application is DENIED with respect to the extra fees and costs indicated in the application, because I find that service can be effectuated by certified mail return receipt alone - Mass. R.Civ. P. 4. Judge: Dupuis, Hon. Renee P".*

7. On 9/19/22, as part of the request for waiver of costs, I also requested to extend time for service of process.

8. On 9/24/22, the state court allowed the request stating: *"Endorsement on Request for Waiver of Costs (#6.0): ALLOWED, Treating this filing as a motion to extend time for service, allowed, 60 day extension. Judge: Dupuis, Hon. Renee"*

9. On 11/21/22, I filed a motion to extend time for service of process[paper #9]".

10. On 11/29/22, the state court allowed the request for waiver of costs stating: *"Determination regarding normal fees and costs ALLOWED by judge waived in full , pursuant to G. L. c. 261, § 27C(2). service by certified mail - plaintiff to provide to clerk, summons, complaint and addressed envelopes. Judge: Sullivan, Hon. Susan E."*

11. On 1/24/23, the state court allowed the request stating: *"Endorsement on Motion to extend time to serve process on defendants (#9.0): ALLOWED. Plaintiff shall provide to clerk's office completed summonses, copies of complaint and civil action cover sheet, and envelopes addressed to defendants by 2/10/2023 and the clerk's office will arrange for service by certified mail. Judge: Sullivan, Hon. Susan E."*

12. On 2/3/23, I filed EMERGENCY Motion to extend time for service of process [paper #10]".

13. On 2/3/23, the state court allowed the motion stating: *"Endorsement on Motion to extend deadline provided in Court's 1-24-23 ORDER (#10.0): ALLOWED in part. Extension for service of process to April 7, 2023. Judge: Sullivan, Hon. Susan E."*

14. On 4/5/23, I filed EMERGENCY Motion to extend deadline in Court's 2/3/23 Order [paper #11]".

15. On 4/5/23, the state court denied the request stating: *"Endorsement on Motion to Extend Deadline in Court's 2-3-23 Order (#11.0): DENIED; Judge: Yessayan, Hon. Raffi N".*

16. On 4/7/23,  I filed EMERGENCY Motion to reconsider the plaintiff's final (Emergency) motion to extend deadline in Court's 2-3-23 ORDER [paper #12]".

17. On 4/7/23, the state court allowed the request stating: *"Endorsement on Motion to Reconsider the Plaintiff's Final (Emergency) Motion to Extend Deadline in Court's 2-3-23 Order (#12.0): ALLOWED; Motion Allowed, to the extent that*

---

[1] NB: The facts asserted herein are asserted under oath as being true correct to the best of my belief, knowledge and understanding. Any response to this motion and affidavit should be made under oath as required by the rules of procedure.

*the plaintiff shall deliver all documents in accordance with the Court's previous Order to the clerk's office by 4/14/23. Judge: Yessayan, Hon. Raffi N".*

18. On 4/14/23, I delivered the materials to the clerk's office as instructed by the state court. I also filed a document showing that the clerk's office received the materials, via a filing docketed as: *"General correspondence regarding Instructions for Service by Sheriff Via Certified Mail. [paper #13]".*

19. On 5/4/23, I filed an amended complaint with the state court.

20. On 5/8/23, Defendant Hilliard was also served process via the New-Bedford Bristol County Sheriff ("sheriff") with the amended complaint. This is shown by the sheriff's return of service filed on 5/15/23. The sheriff's return of service contains a signed affidavit by the deputy sheriff.

21. On 5/22/23, I filed a motion for default, which was 14 days after service of the amended complaint.

22. On 5/23/23, the defendants filed an opposition to my motion for default.

23. On 5/23/23, I filed a notice of intent to file a reply to the opposition to motion for default.

24. On 6/2/23, without allowing the normal 10 days for me to reply to the defendants' opposition since the opposition was filed directly with the state court thus abridging my right to reply, the state court (J. Yessayan) entered an order denying the motion for default without stating the actual reasons for denial, other than a general vague reference to "reasons stated in the opposition" as follows: *"Endorsement on Motion for Default of Defendant Russell Hilliard (#21.0): DENIED as for the reasons stated in the opposition. Judge: Yessayan, Hon. Raffi N."*

25. On 6/8/23, the plaintiff filed 4 motions and two notices of appeal in state court.

26. On 6/9/23, the defendant Upton & Hatfield (who was not yet served in state court) preemptively filed a notice of removal in federal court. This was filed at around 11pm on Friday night of 6/9/23. See **Exhibit 1** for state court docket.

27. On 6/12/23, the plaintiff also filed a renewed motion for default/ reconsider default for the defendants Donais and Hilliard; and also effectuated service of process on Mary Donais and Donais law office PLLC, all prior to removal.

28. On 6/12/23, the state court docketed the removal notice and then transferred the case to federal court and closed the case in state court.

## II. FURTHER PROCEDURAL BACKGROUND

29. On 4/14/23, the sheriff served process, with summons and the original complaint, on defendant Craig Donais ("Donais") via certified mail and first class mail.

30. On 4/14/23, the sheriff served process, with summons and the original complaint, on defendant Russell Hilliard ("Hilliard") via certified mail and first class mail.

31. On 4/14/23, the sheriff also served process on defendant Hilliard by mailing the summons and complaint **to Upton & Hatfield** via certified mail and first class mail.

32. On 4/17/23, the defendant Donais received service of process documents via certified mail and first class mail from the sheriff.

33. On 4/17/23, the defendant Hilliard received service of process documents via certified mail and first class mail from the sheriff.

34. On 4/17/23, the defendant Upton & Hatfield received service of process documents via certified mail and first class mail from the sheriff.

35. On 5/8/23, the sheriff served process, with summons and the amended complaint, on defendant Donais via certified mail and first class mail.

36. On 5/8/23, the sheriff served process, with summons and the amended complaint, on defendant Hilliard via certified mail and first class mail.

37. On 5/8/23, the sheriff served process, with summons and the amended complaint, on defendant Upton & Hatfield via certified mail and first class mail.

38. On 5/11/23, the defendant Donais received the summons and amended complaint via certified mail and first class mail from the sheriff.

39. On 5/11/23, the defendant Hilliard received the summons and amended complaint via certified mail and first class mail from the sheriff.

40. On 5/11/23, the defendant Upton & Hatfield received the summons and amended complaint via certified mail and first class mail from the sheriff.

### III. FACTS REGARDING SERVICE OF PROCESS
#### A. Service of Process of Original Complaint

41. On 11/29/22, the state court (J. Sullivan) issued an order, allowing my request for waiver of costs stating:

> "Determination regarding normal fees and costs ALLOWED by judge waived in full , pursuant to G. L. c. 261, § 27C(2). service by certified mail - plaintiff to provide to clerk, summons, complaint and addressed envelopes. Judge: Sullivan, Hon. Susan E."

42. This was the order whereby the state court determined that service of process shall be effectuated by certified mail after providing summons and complaint to the clerk. This order trumped any other method of service because it was a bona fide order from the state court.

43. On 1/24/23, the court (J. Sullivan) issued an order stating:

> "Endorsement on Motion to extend time to serve process on defendants (#9.0): ALLOWED; Plaintiff shall provide to clerk's office completed summonses, copies of complaint and civil action cover sheet, and envelopes addressed to defendants by 2/10/2023 and the clerk's office will arrange for service by certified mail. Judge: Sullivan, Hon. Susan E.

*44.* The state court (J. Yessayan) then further extended that deadline until 4/14/23. On 4/14/23, I provided the requisite materials to the clerk's office, as instructed by the state court. However, instead of the clerk's office effecting the actual certified mailing to the out of state defendants, I was told by the clerk of state court (Jennifer Sullivan) that the clerk would mail the package to the sheriff for certified mailing to be effectuated by the sheriff, and that this was what was meant by the statement in the state court's 1/24/23 order that **"the clerk's office will arrange for service by certified mail."**

45. Because I realized that this would result in a gap in time before the package would reach the sheriff's office, I offered to assist the clerk's office in getting the entire package to the sheriff, on the same day, for certified mailing, by hand-carrying it down to the sheriff's office which was only a minute or two drive away, and the clerk agreed. NB: Although the state court did not say that mailing must be done by or before 4/14/23 but that only delivery of the materials to the state court clerk's office must be done by me by 4/14/23, I still wanted to get the mailing done on the same day.

46. So, I hand-delivered the package down to the sheriff's office that same day, which was only a minute or two drive away. Upon receiving the hand-delivered package, the sheriff then prepared the mailings and mailed them certified with return receipt confirmation (as well as by first class mail which is part of the sheriff's procedure for mailing certified mail for service of process) to the two original defendants (Craig Donais and Russell Hilliard) on the same day of 4/14/23. Therefore, on 4/14/23, Hilliard was served process via sheriff, with the original summons and original complaint. This is shown by the sheriff's return of service filed on 5/15/23. The sheriff's return of service contains a signed affidavit by the deputy sheriff, affirming service of process was effectuated by certified mail on 4/14/23. The sheriff's affidavit also affirms that the certified mailing was done with return receipt requested. See screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing and first class mailing by the sheriff to Hilliard's home address on 4/14/23. See also state court record and docket (entry #16). See also **Exhibit 2**.

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on April 14, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and Complaint and Demand For Jury Trial, Civil Action Cover Sheet, Civil Tracking Order and Allowed Motion To Extend Time to Serve Process on Defendants by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.

Victoria A. Morales
Deputy Sheriff

47. See screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's work address on 4/14/23. See also state court record and docket (entry #16). See **Exhibit 3**.

> Bristol, SS
>
> I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on April 14, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and Complaint and Demand For Jury Trial, Civil Action Cover Sheet, Civil Tracking Order and Allowed Motion To Extend Time to Serve Process on Defendants by mailing both first class mail and certified mail return receipt requested to 159 Middle Street, Portsmouth, NH 03801.
>
> Victoria A. Morales
> Deputy Sheriff

48. The sheriff's office also specifically told me verbally that they did effectuate a certified mailing with return receipt. NB: I was also told by the sheriff that the return of service (for the original summons and original complaint) was filed by hand by the sheriff with the state court on 5/15/23.  On that same day, I also had called the state court clerk's office and they confirmed that they received it and that it would be docketed in the normal course, which was docketed by the next day 5/16/23.

49. It is therefore an indisputable fact that the original summons and original complaint was served, via certified mail, with tracking and return receipt requested, on Defendant Hilliard, by the Bristol county sheriff, on 4/14/23. NB: It is also an indisputable fact that the original summons and the original complaint was served, via first class mailing, on Defendant Hilliard, by the sheriff, on 4/14/23.

### B. Service of Process of Amended Complaint

50. I also then subsequently amended the complaint and filed it with the state court on 5/4/23. NB: At the time of the filing of the amended complaint, on 5/4/23, there had been no responsive pleading served or filed by the defendant. Therefore, on 5/4/23, I filed an amended complaint with the state court.

51. On 5/8/23, Defendant Hilliard was also served process via sheriff with the amended complaint.

52. The sheriff's return of service contains a signed affidavit by the deputy sheriff, affirming service of process of the amended complaint was effectuated by certified mail on 5/8/23. The sheriff's affidavit also affirms that the certified mailing was done with return receipt requested.

53. See screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's home address on 5/8/23. See also state court record and docket (entry #18). See also **Exhibit 4.**

> Bristol, SS
>
> I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on May 8, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and First Amended Complaint, Civil Action Cover Sheet and Plaintiff's Emergency Motion To Reconsider The Plaintiff's Final (Emergency) Motion To Extend Deadline in Court's 2-3-23 Order by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.
>
> Victoria A. Morales
> Deputy Sheriff

54. See screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's work address on 5/8/23. See also state court record and docket (entry #18.1). See also **Exhibit 5.**

> Bristol, SS
>
> I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on May 8, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and First Amended Complaint, Civil Action Cover Sheet and Plaintiff's Emergency Motion To Reconsider The Plaintiff's Final (Emergency) Motion To Extend Deadline in Court's 2-3-23 Order by mailing both first class mail and certified mail return receipt requested to 159 Middle Street, Portsmouth, NH 03801.
>
> Victoria A. Morales
> Deputy Sheriff

55. NB: The sheriff's office also specifically told me that they did effectuate a certified mailing with return receipt.

56. Hilliard was served at two addresses, i.e., at his home address in Portsmouth NH and at his work address at Upton & Hatfield in Portsmouth NH. This is shown by the sheriff's return of service filed on 5/15/23[2] NB: One of the returns of service was filed but not docketed by the state court clerk's office. When I contacted the sheriff about this, they contacted the state court clerk's office about certain missing returns, and it was discovered that the state court clerk's office made an error in not docketing all of the returns of service filed by the Sheriff on 5/15/23. This was corrected on 6/9/23 where the docket shows now the missing further returns of service filed by the sheriff on 5/15/23.

57. The tracking receipt information included with the sheriff's returns show that Hilliard received the certified mailing with return receipt requested and then refused service sending it back as "unclaimed". Thus, Hilliard upon receiving the service of process of mailing from the sheriff, decided to try to evade service by refusing to sign the receipt and by sending it back as "unclaimed".

58. This was a dishonest act by Hilliard in an attempt to fraudulently claim to the state court that he was not served and/or that there was no signed receipt as a basis to challenge the validity of service. Fortunately, the sheriff, smartly, also sent the service of process to Hilliard using first class mail (along with certified mail return receipt requested) which was not returned to the sheriff and further showing that Hilliard receives mail at the address listed on the summons. I also ensured that service of process was made to Hilliard's workplace so that he could not claim to have not received service at both his home address and his work address. With respect to both addresses, the sheriff included first class mailing as well, in addition to the certified mailing. This means that a total of 4 pieces of mail containing the summons and complaint was mailed by the sheriff to Hilliard.

59. NB: It is standard practice that if certified mailing is done by the sheriff, it is backed up by first class mailing in order to prevent a situation where a recipient being served could claim he did not receive any notice at all of the served summons and complaint. It also protects against unscrupulous recipients, who willfully refuse to sign for or accept certified mailing in order to evade service of process, which is what evidently occurred in this case.

60. NB: It is especially unbecoming of a lawyer to try to evade service by refusing certified mailing from a sheriff. If a lawyer receives certified mailing from a sheriff, that lawyer must know that it is official state court business and should not reject such mailings from a sheriff or a court. Such conduct is not only unbecoming but also dishonest, especially as a lawyer who is supposed to be an officer of the court and is bound by the rules of professional conduct.

61. It is therefore an indisputable fact that the amended complaint was served, via certified mail, with tracking and return receipt requested, on Defendant Hilliard, by the Bristol county sheriff, on 5/8/23.

---

[2] NB: I was told by the sheriff that the return of service (for the amended complaint) was filed by hand by the sheriff with the state court on 5/15/23. On that same day, I also had called the state court clerk's office and they confirmed that they received it and that it would be docketed in the normal course, which was docketed by the next day 5/16/23.

62. It is also an indisputable fact that the amended complaint was served, via first class mailing, on Defendant Hilliard, by the sheriff, on 5/8/23.

---

## SECTION 2: UNTIMELINESS OF REMOVAL

---

### I. DEFENDANTS' RECEIPT OF SERVICE OF PROCESS

63. In his affidavit, Hilliard states that he only received the summons and the amended complaint on May 11, 2023 via first class mail. This is false as shown herein.

64. In determining the validity of service in state court prior to removal, the law of the state under which service was effected must be applied. See In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 98, 108 (D. Mass. 2006); Frankston v. Denniston, 376 F. Supp. 2d 35, 39 (D. Mass. 2005).

65. Massachusetts Rule of Civil Procedure 4(e) authorizes service by "any form of mail addressed to the person to be served and requiring a signed receipt."

66. Proof of service requires a receipt signed by the addressee or such other evidence of personal delivery. Failure to make proof of service, however, "does not affect the validity of the service." Mass. R. Civ. P. 4(f).

67. NB: This court has determined that service is valid even if a defendant contends that a plaintiff's service was invalid because the plaintiff did not file a USPS return receipt for the complaint package sent, and/or the USPS package sent was returned as undeliverable, and deemed service was effective under such circumstances especially where the plaintiff employed both USPS certified mail and other mailing to the defendants' address. See Sindi v. El-Moslimany, CIVIL ACTION NO. 13-10798-GAO, 2 (D. Mass. Mar. 26, 2014. See In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 98, 108 (D. Mass. 2006); Frankston v. Denniston, 376 F. Supp. 2d 35, 39 (D. Mass. 2005).

### II. TRUE DATE OF REMOVAL

68. On Friday 6/9/23, the defendant Upton & Hatfield (who was not yet served in state court) preemptively filed a notice of removal in federal court. This was filed at around 11pm on Friday night of 6/9/23. However, the defendant Upton & Hatfield submitted a notice of removal from state court to federal court, in this case, in the federal court's e-filing system at or around 10.54pm on late Friday night of 6/9/23.  See screenshot of ECF notification provided to me by email when the defendant submitted their document.  See also **Exhibit 6**.



6/12/23, 11:31 AM                                AOL Mail - Activity in Case 1:23-cv-11313 v. Donais et al

Activity in Case 1:23-cv-11313 v. Donais et al

From:  ECFnotice@mad.uscourts.gov (ecfnotice@mad.uscourts.gov)

To:    courtcopy@mad.uscourts.gov

Date:  Friday, June 9, 2023 at 10:54 PM EDT

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

District of Massachusetts

**Notice of Electronic Filing**

The following transaction was entered by Sonneborn, Daniel on 6/9/2023 at 10:53 PM EDT and filed on 6/9/2023
**Case Name:**      v. Donais et al
**Case Number:**    1:23-cv-11313
**Filer:**          Upton & Hatfield, LLP
**Document Number:** 1

Docket Text:
**NOTICE OF REMOVAL by Upton & Hatfield, LLP ( Filing fee: $ 402, receipt number AMADC-9898752 Fee Status: Filing Fee paid) (Attachments: # (1) Civil Cover Sheet Civil Cover Sheet, # (2) Category Form Category Form, # (3) Exhibit 1 - Amended Complaint, # (4) Exhibit 2 - State Court Docket, # (5) Exhibit 3 - Previously filed Plaintiffs Affidavit**

69. However, the federal court of Massachusetts requires that an e-filed document must be made before 6pm on a day, in order for it to be filed on the same day and/or for it to be treated as filed on the same day.

70. If it is filed after 6pm, then it is treated as filed on the next business day.

71. See screenshot below of the Combined Local Rule for the Federal District Court of Massachusetts – Rule 5.4(d).

**RULE 5.4  FILING AND SERVICE BY ELECTRONIC MEANS**

**(a)** **Electronic Filing Generally.** Unless exempt or otherwise ordered by the court, all pleadings and other papers submitted to the court must be filed, signed, and verified by electronic means as provided herein.

**(b)** **ECF Administrative Procedures.** Subject to the supervision of the court, the clerk will maintain Electronic Case Filing (ECF) Administrative Procedures, including procedures for the registration of attorneys and other authorized users and for distribution of passwords to permit electronic filing. All electronic filings must be made in accordance with the ECF Administrative Procedures. The ECF Administrative Procedures will be generally available to the public and shall be posted on the court's web site.

**(c)** **Service of Pleadings.** Unless exempt or otherwise ordered by the court, all pleadings and other papers must be served on other parties by electronic means. Transmission of the Notice of Electronic Filing (NEF) through the court's transmission facilities will constitute service of the filed document upon a registered ECF user.

**(d)** **Deadlines.** Although the ECF system is generally available 24 hours a day for electronic filing, that availability will not alter filing deadlines, whether set by rule, court order, or stipulation. All electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day.

**(e)** **Civil Case Opening Documents.** All ECF filers registered in this district must file civil case opening documents, such as a complaint (or petition or notice of removal), civil action cover sheet, or category sheet, electronically. Cases which include sealed or *ex parte*

72. This is further confirmed, when taken with the Federal Rules of Civil Procedure, which states as follows.

73. See screenshot below of the Federal Rules of Civil Procedure – Rule 6 (a)(1)(A-C).

**Rule 6. Computing and Extending Time; Time for Motion Papers**

(a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

13            FEDERAL RULES OF CIVIL PROCEDURE            **Rule 6**

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

74. Therefore, the notice of filing of notice of removal submitted by defendant Upton & Hatfield on 6/9/23 should not be treated as filed in federal court until Monday 6/12/23. It thus could not have been properly filed in this court prior to 6/12/23. Hence, this court should treat any notice of filing of notice of removal to federal court, as having been filed on 6/12/23, not 6/9/23.

75. Thus, removal to the federal court could not have been effectuated, or valid, prior to Monday 6/12/23.

76. See screenshot of the federal rules governing the timing of notice of filing of removal in the state court (see 28 U.S.C. § 1446 (d)/Section 1446 - Procedure for removal of civil actions) below.



77. Also, the state court received the notice of removal filing on Monday 6/12/23 and effected the removal to federal court on Monday 6/12/23 and closed the state court case on Monday 6/12/23. See screenshot below of state court docket.



78. According to the local rule 5.4, it states that anything filed after 6pm is treated as filed the next business day. Since the notice of removal was filed at around 11pm on 6/9/23, this should mean that 6/9/23 should not be counted as the date of removal. Also, the state court did not effect removal until the afternoon of 6/12/23, so the state court did not transfer the case until 6/12/23.

79. The notice of removal was filed at around 11pm on June 9, 2023. According to the local rules, any filing made after 6pm has a date of filing as the next business day. The federal rules puts that over to Monday June 12, 2023. Therefore the filing of the notice of removal was made after 30 days of receiving the original complaint. The removing defendant admits it received the complaint on May 11, 2023. Therefore, it was required to file the complaint no later than 6pm on June 9, 2023.

### III. TRUE DATE OF SERVICE AND RECEIPT OF ORIGINAL COMPLAINT AND SUMMONS

80. The true and correct date of the service of the original complaint on the above-noted defendants is 4/14/23.

81. The true and correct date of the receipt of the original complaint on the above-noted defendants is 4/17/23.

82. Hilliard notes in his affidavit that he received the summons and the amended complaint on 5/11/23 by regular mail only. See screenshot below.

**AFFIDAVIT OF RUSSELL F. HILLIARD IN SUPPORT OF MOTION TO DISMISS**

I, Russell F. Hilliard, upon oath, depose and state as follows:

1.      My name is Russell F. Hilliard. I am an attorney and partner with the New Hampshire law firm Upton & Hatfield, LLP. I am familiar with the allegations as asserted in the Amended Complaint filed by Andre Bisasor, a copy of which I received via regular mail only on May 11, 2023 at my home address in Portsmouth, NH.

83. Upton and Hatfield has argued that it obtained service because Russell Hilliard was served and Russell Hilliard is a partner of the firm. See **page 2** of Defendants Russell F. Hilliard and Upton & Hatfield, LLP Opposition to Plaintiff's Notice of Intent to Move to Remand This Case to State Court (Document #36 in this court). See also screenshot below of Document #36 in this court.

## II.    REMOVAL WAS TIMELY

Plaintiff attempted to serve the Amended Complaint on Mr. Hilliard by regular mail, which was received by Mr. Hilliard at his home address on May 11, 2023. *See* Doc. no. 16-1 at ¶ 1. While Upton & Hatfield has never been served with the Amended Complaint, using the May 11, 2023 date that Mr. Hilliard, a partner in the firm, received the Amended Complaint as the date that Upton & Hatfield received notice of the Amended Complaint, removal on June 9, 2023 was timely. *See Novak v. Bank of New York Mellon Trust Co., NA.*, 783 F.3d 910, 911 (1st Cir. 2015) (*citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999)).

84. Here, Upton & Hatfield states that "**Upton & Hatfield has never been served with the Amended Complaint**" and that it used "**the May 11, 2023 date that Mr. Hilliard, a partner in the firm, received the Amended Complaint as the date that Upton & Hatfield received notice of the Amended Complaint**."

85. And thus based on this construct, Upton & Hatfield concludes that removal was timely.

86. Therefore by their own admission and standard, Upton & Hatfield has averred a principle by which it can arrive at the date it received notice i.e., through Russell Hilliard as a partner in the firm, which is a limited liability partnership.

87. But based on this, Upton & Hatfield first received notice of the original complaint, when on April 17, 2023, Russell Hilliard received the original complaint, who was first served the original complaint on April 17, 2023.

88. See screenshot of sheriff's return of service with certified mail tracking number showing mailing to Russell Hilliard to the home address. See again **Exhibit 2.**



89. See also screenshot of USPS tracking for sheriff's certified mailing. See **Exhibit 7**.

**Tracking Number:**
**9171999991703051265076**

📋 Copy   ⭐ Add to Informed Delivery

**Latest Update**

Your item has been delivered to an agent for final delivery in PORTSMOUTH, NH 03801 on April 17, 2023 at 3:45 pm.

**Get More Out of USPS Tracking:**
🔍 USPS Tracking Plus®

● **Delivered to Agent**
**Delivered to Agent for Final Delivery**
PORTSMOUTH, NH 03801
April 17, 2023, 3:45 pm

● **In Transit to Next Facility**
April 16, 2023

● **Departed USPS Destination Facility**
MANCHESTER, NH 03103
April 15, 2023, 11:11 pm

● **Arrived at USPS Destination Facility**
MANCHESTER, NH 03103
April 15, 2023, 5:26 pm

● **Departed USPS Regional Facility**
PROVIDENCE RI DISTRIBUTION CENTER
April 14, 2023, 10:45 pm

● **Arrived at USPS Regional Origin Facility**
PROVIDENCE RI DISTRIBUTION CENTER
April 14, 2023, 10:41 pm

● **Accepted at USPS Origin Facility**
NEW BEDFORD, MA 02740
April 14, 2023, 9:26 pm

● **Pre-Shipment Info Sent to USPS, USPS Awaiting Item**
April 14, 2023

● Hide Tracking History

10

90. Here, this is proof that the original complaint was received by Russell Hilliard on April 17, 2023. By comparing the tracking number of 9171999991703051265076 on the sheriff's return of service with certified mailing addressed to Russell Hilliard's home address in Portsmouth NH, to the USPS tracking receipt with the same tracking number, it shows the mail was delivered/received on April 17, 2023 at 3.45pm at Hilliard's home in Portsmouth NH.

91. This also shows that Russell Hilliard has lied to this court, and in fact did so under oath, meaning that this is perjury. NB: This is a critical matter and is grounds for discovery to be taken. Here, you have a Sheriff who has provided testimony, via affidavit, that she placed the summons and original complaint into the mail via certified mail (with tracking) and first class mail to Russell Hilliard in Portsmouth NH. Here, you also have the US post office providing a tracking receipt showing that the certified mail with tracking that was mailed by the Sheriff was received by Russell Hilliard on April 17, 2023. The affidavit of Russell Hilliard cannot defeat the affidavit of Sheriff and the receipt provided by the US post office, both of whom are disinterested parties not involved in this litigation and are duly recognized government authorities on matters related to service and mailing of service of process documents. The affidavit of the Sheriff and the tracking receipt of the US post office provides impeachment of Russell Hilliard's affidavit and of the statements made by his counsel in their pleadings to this court. Russell Hilliard must be placed under oath in this court in an evidentiary hearing and/or via limited discovery, and made to answer this issue.

92. Either way, the evidence provided above is sufficient on its face to establish that Russell Hilliard and therefore Upton & Hatfield received the summons and original complaint on April 17, 2023.

93. Therefore, Upton & Hatfield cannot rely on the later May 8th service date (or the May 11th receive date) of the amended complaint for counting time for removal.

94. NB: It should also be noted that the sheriff also averred in her return of service affidavit to the court that the sheriff's office also mailed the summons and original complaint to Russell Hilliard to his home address in Portsmouth NH **via first class mail**. See screenshot below and see again **Exhibit 2.**



95. The address listed on the above screenshot, 579 Sagamore Avenue, Unit 9, Portsmouth NH is Russell's home address. See proof by his mortgage deed filed with the registry of deeds. See screenshot below. See **Exhibit 8.**



96. Therefore, Russell Hilliard was served the original complaint and summons on April 14, 2023 and thus he also received notice of the original complaint by April 17, 2023 (if the 3 day rule for mailing is applied).

97. NB: I also spoke to the Sheriff and she averred that no first class mail that she mailed on April 14, 2023 (or May 8, 2023) has been returned to her, from either Donais or Hilliard. Therefore, every first class mail that was placed in the US postal mail service on April 14, 2023 and on May 8, 2023 was delivered and received by the addressees, including Russell Hilliard.

98. Either way, mailing by US postal mail by a sheriff is valid on its face as to the date of service and date of mailing.

99. This further shows that Russell Hilliard has lied to this court under oath.

100.    This leads to another key point. The sheriff also averred in her return of service affidavit to the court that the sheriff's office also mailed the summons and original complaint to Russell Hilliard to his work address at Upton & Hatfield in Portsmouth NH, via first class mail. See screenshot below and see again **Exhibit 3**.



101.    Also, the 159 Middle Street address is the Upton & Hatfield's only physical office in NH. The other two addresses in Concord NH and Petersborough NH are P.O. Box addresses. This also means that the first class mail sent to Russell Hilliard at this work address was received by Russell Hilliard and Upton & Hatfield. See screenshot below of Upton & Hatfield's website showing their address, and see **Exhibit 9**.



102.    Thus, there is simply no way around this fact. Russell Hilliard and Upton & Hatfield were served the original complaint and summons by the sheriff on April 14, 2023 and Russell Hilliard and Upton & Hatfield received notice of the original complaint and summons on April 17, 2023. This is confirmed by sheriff's affidavit and proof of mailing of certified mail and confirmed by tracking as well as by proof of mailing by first class mail to Russell Hilliard at his home address and to his work address at Upton & Hatfield.

103.    Now that the service date of the original complaint has been established as April 14, 2023 and the receive date of the original complaint has been established as April 17, 2023, the only thing that remains is whether the original complaint served on April 14, 2023 and received on April 17, 2023 by Russell Hilliard and Upton & Hatfield had indications of removability to federal court. It does.

### IV. REMOVABILITY OF THE ORIGINAL COMPLAINT SERVED ON APRIL 14, 2023

104.    First, both Russell Hilliard and Upton & Hatfield knew at the time they received the original complaint that their position would be that all defendants were or would have been diverse (according to their own information and according to what they have pleaded so far in this case).

105.    NB: According to Upton & Hatfield, it has stated that none of its partners are residents of Massachusetts. See screenshot of defendant Upton & Hatfield's notice of removal below.

> New Hampshire resident). *Id.* at ¶¶ 81-83. Undersigned counsel states and declares that the
>
> removing Defendant, Upton & Hatfield, is a New Hampshire LLP with its principal place of

2

20578341.1

Date Filed 6/9/2023 11:05 PM
Superior Court - Bristol
Docket Number 2273CV00430

Case 1:23-cv-11313   Document 1   Filed 06/09/23   Page 3 of 6

> business in New Hampshire, and that none of its partners are residents of Massachusetts.

106.    Upton & Hatfield has also represented that it knew that its position was that the damages in this case was $500,000 because of a prior filed document, in another prior case against Donais in Middlesex superior court, with some of the same or similar claims as is present in the case removed to this court. See screenshot.

> The amount in controversy is believed to be $500,000.00, based on the Plaintiff's
>
> representations. Exhibit A, Defendant Upton & Hatfield's Notice of Removal, hereinafter, ¶ 4(b).
>
> Attached hereto as Exhibit A is a true copy of Defendant Upton & Hatfield's Notice of Removal.
>
> Defendant Upton & Hatfield removed this case from the Massachusetts Superior Court in
>
> Bristol County on June 9, 2023. Exhibit A. Removal was done within 30 days of Defendant Upton
>
> & Hatfield's receipt of the Complaint. Exhibit A, ¶ 1. All named defendants assented to the removal.
>
> Exhibit A, ¶ 1.

107.    This prior filed document was filed in November 2020, more than 2 plus years ago. See **Exhibit 10**.

108.    Therefore, defendants Craig Donais, Russell Hilliard, and Upton & Hatfield, knew from the moment the original complaint was served on them on April 14, 2023 or the moment they received the complaint on April 17, 2023, that their position would be that the damages were $500,000. They also knew or at least believed that, at the time of being served this original complaint, that there was or would have been complete diversity.

109.    Therefore, defendant Upton & Hatfield and Russell Hilliard knew that the case was removable as of April 17, 2023. They also believed or were aware, from April 17, 2023, that the initial complaint would require more than $75,000 based on their own averments made in their notice of removal.

110.    Any attempt to circumvent this time-bar by citing the amended complaint thus fails. The defendant Upton & Hatfield cannot rely on § 1446(b)(3) (which provides that, if a case is not removable based on the initial pleading, a defendant may file a notice of removal within 30 days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable") because the original complaint was removable on its face when they received it on April 17, 2023.

111.    It was facially apparent from the Complaint itself that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction. As a result, Defendant's filing of the Notice of Removal more than 30 days after Plaintiffs served Defendant with the Summons and Complaint was untimely under 28 U.S.C. § 1446(b).

112.    Also because complete diversity existed as of April 14, 2023 for the defendants, therefore, they should have removed it 30 days from then.

## V. LEGAL BASIS FOR DETERMINING REMOVABILITY

113.    "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001).

114.    These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1).

115.    "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir. 1998).

116.    In Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005), the Ninth Circuit clarified that if an initial pleading is not removable on its face, then the first 30-day period for removal is not triggered.

117.    "In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." Id. (quoting 28 U.S.C. § 1446(b)(3)).

118.    As the Ninth Circuit has explained: Section 1446(b) "identifies two thirty-day periods for removing a case." "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) (quoting Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b))).

119.    The Ninth Circuit does not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006).

120.    Therefore, in the Ninth Circuit, a defendant does not have a duty to investigate whether the matter is removable even where there may be a "clue" indicating that federal jurisdiction may exist. Harris, 425 F.3d at 696.

121.    Instead, the "notice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Id. at 694.

122.    Because inquiries into the subjective knowledge of a defendant might result in a "mini-trial regarding who knew what and when," courts may only rely on the face of the initial pleading and the documents exchanged by the parties to determine when the defendant had notice of the grounds for removal. Harris, 425 F.3d at 695.

123.    This "bright-line approach" serves two purposes: (1) it "brings certainty and predictability to the process and avoids gamesmanship in pleading"; and (2) it "avoids the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." Id. at 697.

124.    A party may have sufficient information to provide notice of removability even in the absence of receipt of a paper alleging a specific dollar amount of damages. See Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (affirming denial of remand motion where plaintiff never alleged in either her pleading or discovery responses "the amount of damages or [attorneys'] fees she sought" but interrogatory responses identifying the categories of damages sought by the plaintiff allowed the defendant to establish by a preponderance of the

evidence that the amount in controversy exceeded the jurisdictional minimum); see also Kuxhausen, 707 F.3d at 1140 (explaining that "defendants need not make extrapolations or engage in guesswork; yet the statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability'") (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206 (2d Cir. 2001)).

125.   NB: See also Dunn, 166 F.Supp.2d at 1279-80 (no revival allowed — even though the new suit added five defendants and a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO")— since "the case remains, at base, a contract action").

126.   Thus, it was facially apparent from the Complaint itself that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction. As a result, Defendant's filing of the Notice of Removal more than 30 days after Plaintiffs served Defendant with the Summons and Complaint was untimely under 28 U.S.C. § 1446(b).

## V. NOTICE OF REMOVAL IS UNTIMELY

127.   The defendant Upton & Hatfield had 30 days to remove the case to federal court from receipt of the summons and complaint, which 30 days, at a minimum, started counting as of April 17, 2023.

128.   The defendant Hilliard had 30 days to remove the case to federal court from receipt of the summons and complaint, which 30 days, at a minimum, started counting as of April 17, 2023. But defendant Hilliard did not himself remove the case but later only consented to removal by Upton & Hatfield.

129.   The defendant Donais had 30 days to remove the case to federal court from receipt of the summons and complaint, which 30 days, at a minimum, started counting as of April 17, 2023. But defendant Donais did not himself remove the case but later only consented to removal by Upton & Hatfield.

130.   Because the above-noted defendants received the original complaint on April 17, 2023, after being served with the original complaint on April 14, 2023 by certified mail and first class mail by sheriff, then the true and correct date of the receipt of the original complaint by the above-noted defendants is 4/17/23.

131.   Therefore, the defendants had until May 17, 2023 to remove the case to federal court.

132.   Yet Defendant Upton & Hatfield did not file its notice of removal until almost midnight on Friday, June 9, 2023. It was thus not effectively filed until Monday, June 12, 2023.

133.   The notice of removal is therefore untimely. This is untimely by about 21 days.

134.   Defendant Upton & Hatfield's disregard of the 30-day deadline to remove under §1446(b)(2)(B) is glaring. Even if the court uses the date of service of the amended complaint as the true date of notice to the defendant Upton & Hatfield, the removal is still untimely for the below reasons.

135.   Under Massachusetts rules, the date of service is the date of mailing. Therefore, even if we count from May 8, 2023 (the date of the mailing of the amended complaint and thus the date of service of the amended complaint on the defendants), then 30 days from May 8, 2023 is June 7, 2023.

### Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

| Count Days | Add Days | Workdays | Add Workdays | Weekday | Week № |
|---|---|---|---|---|---|

**Start Date**

| Month: Day: | Year: | Date: | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|---|---|---|---|---|---|---|---|
| 5 / 8 | 2023 | 🗓 | (+) Add ⌄ | | | | 30 |

Today

Include the time                                         Include only certain weekdays

☐ Repeat

[ Calculate New Date ]

From **Monday, May 8, 2023**
Added 30 days

**Result: Wednesday, June 7, 2023**

136.    This is untimely by at least one or two days.

137.    Therefore, even if we count from May 8, 2023, removal is still untimely.

138.    Similarly, even if we count from May 11, 2023, then 30 days from May 11, 2023 is Saturday, June 10, 2023.



139.    Therefore, even if we count from May 11, 2023, then removal is still untimely because removal should have been effected before 6pm on June 9, 2023, in order to be timely before Saturday June 10, 2023 (based on local rule 5.4 which states that any filing deadline must be met by 6pm in order to count as dated or filed that same day). This will be further elaborated upon below.

140.    Defendant alleges to have received a copy of the amended complaint on May 11, 2023. The defendant Upton & Hatfield is silent as it relates to the other mailings sent to Russell Hilliard at his home address and his work address at Upton & Hatfield, by both certified mail and first class mail.

141.    In light of Defendant's failure to satisfy the statutory consent and timeliness prerequisites for removal, this case should be remanded to state court. The Defendant has completely failed to meet its substantial burden of proving that removal is proper. This Court should remand this case.

142.    For all of the foregoing reasons, the Court should grant Plaintiffs' Motion to Remand and remand this action to Superior Court, as a result of the procedural defect. See 28 U.S.C. § 1447(c). The Court should also deny Defendant's Motion to Dismiss without prejudice to it being re-filed and re-noticed in Massachusetts Superior Court.

---

## SECTION 3: LEGAL ARGUMENT SUPPORTING UNTIMELINESS

---

143.    Courts generally construe this statute strictly in favor of state court jurisdiction and resolve all doubts in favor of remand. See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999).

144.    "However, while the removal requirements are strictly applied, they should also be given practical effect in accordance with the statute's apparent intent." Standifird v. Town of Boxborough, No. 00-1386, 2000 U.S. App. LEXIS 25706, at *2 (1st Cir. Oct. 16, 2000) (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301-302 (10th Cir. 1968); McGuigan v. Roberts, 170 F. Supp. 372, 373-374 (S.D.N.Y. 1959)); see also Shelton v. City of Hartford, No. 98CV2393, 1999 U.S. Dist. LEXIS 4875, at *2 (D. Conn. Feb. 23, 1999).

145.    The party seeking removal bears the burden of establishing that removal is proper. See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989).

146.    Courts generally regard a defendant's failure to comply with the statute's procedural requirements as grounds for remand. The crux of the instant matter is the thirty day period in which a defendant must file the removal notice.

147.    As service was made while the action was subject to state court jurisdiction, state law determines when service is made; however, federal law defines the procedure for removal.

148.    The defendants' computations in the instant action fail to acknowledge two important facts: (1) "receipt," as measured by the statute, is through either (a) "service" or (b) "otherwise"; and (2) in the instant action, "service," and therefore arguably "receipt" for the purposes of the removal statute, was effectuated through mail service. See 28 U.S.C. § 1446(b) (providing that the removal notice must be filed "within thirty days after the receipt by the defendant, through service or otherwise").

149.    The latter point is critical because it appears that Rule 6(e) would be properly read and applied only in light of a state's rules governing service of process.

150.    MRCP Rule 5, which is nearly identical to the corresponding Federal Rule 5, provides that "[s]ervice by mail is complete upon mailing." MRCP 5.

151.    Common sense dictates that in instances of mail service, it is only upon reference to the mailing date as the service date, and therefore "receipt" date, that application of Rule 6(e) would comport with a strict construction of the removal statute and therefore be permissible.

152.    In the instant action, Plaintiff effectuated service of process through certified mail, and this was the manner by which Defendant, first received a copy of the summons and complaint.

153.    Therefore, "receipt," for purposes of the removal statute, was through "service," and the trigger date would be April 14, 2023 for the original complaint and May 8, 2023 for the amended complaint. Thus being cognizant that "the day of the act . . . from which the designated period of time begins to run shall not be included," FED. R. CIV. R. 6(a), the thirty day period concluded on June 7, 2023 at the latest.

154.    However, Rule 6(e) provides: Whenever a party has the right or is required to do some act . . . within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period. FED. R. CIV. P. 6(e).

155.    Applying this provision, the removing defendant would have had until June 10, 2023 to file its removal notice. As this date falls on a Saturday, the last day on which the removing defendant could have filed is extended to Monday, June 12, 2023. See FED. R. CIV. R. 6(a) (explaining that "[t]he last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday, . . . in which event the period runs until the end of the next day which is not one of the aforementioned days").

156.    Either the Defendant is entitled to the additional filing time as provided for in Rule 6, or in the alternative to treat the proper trigger date for purposes of the time computation as the date of actual receipt of the amended complaint (on May 11, 2023).

157.    It would be an unsound "have its cake and eat it too" approach to allow the removing defendant to double count both the additional 3 days in the mail, plus to use the date of actual receipt as additional time, as this would be not only inequitable but also contrary to the strict construction principle applied to the removal statute. See **Hardy v. Square D Co., 199 F. Supp. 2d 676 (2002)**. NB: This case is spot on in terms of dealing with a similar situation to this caser. I ask the court to carefully examine this case. See also **Exhibit 11** attached.

158.    The removing defendant cannot avail itself of an interpretation that allows it, in essence, to account for mail time by gauging "receipt" as the date of actual receipt, as opposed to date of mailing, and then add on an additional time period, which realistically would amount to a double accounting of the mailing period. See again **Hardy v. Square D Co., 199 F. Supp. 2d 676 (2002).** See again also **Exhibit 11** attached.

159.    Notably, a number of courts declining to compute the removal statute's filing period in conjunction with Rule 6, particularly 6(e), have done so based upon the resulting "double accounting" noted above. See, e.g., Mitchell v. Ky-Am. Water Co., 178 F.R.D. 140, 1997 U.S. Dist. LEXIS 22951, at *5 (E.D. Ky. Dec. 8, 1997) (finding it "illogical to apply Fed.R.Civ.P. 6(e), allowing for a three-day grace period to accommodate 'mail time', to the removal statute which states that the time-clock does not start ticking until after 'mail time' has run, i.e., after the defendant receives service"); Connors v. Philadelphia, No. 94-2145, 1994 U.S. Dist. LEXIS 6596, at *2 (E.D. Pa. May 20, 1994) (finding "no logical reason to add three days to the allotted period" because "the thirty-day period for removal did not begin to run until after Defendants received the Complaint in the mail").

160.    Therefore, if using the amended complaint only to count time, the thirty days from May 11, 2023 falls on Saturday, June 10, 2023. If the removing Defendant could avail itself of a carry-over to Monday, as provided for in Rule 6(a), then the thirty day period would fall on Monday, June 12, 2023. Based upon the double accounting principle discussed above, it would not be appropriate to afford Defendant the three extra "mailing" days provided for in Rule 6(e).

161.    Similarly, even if the operative date were May 11, 2023, the date on which removing defendant received notice of the amended complaint, removing defendant's removal notice was due on Saturday, June 10, 2023. This means that the defendant had to effect service on June 9, 2023 but before 6pm due to the local rule which has a cutoff of 6pm to be treated as filed on the same day.

162.    If the 3 days in mail provision is used to grant 3 days in the mail, then the removing defendant is not entitled to a Monday carryover per Rule 6(a), and thus the notice still was untimely. Using either date, the removal notice was timely only if Defendant can avail itself of the three day mailing period provided for in Federal Rule of Civil Procedure 6(e), plus the Monday carryover, which is not appropriate. See **Hardy v. Square D Co., 199 F. Supp. 2d 676 (2002).**

163.    Ultimately, the Court should be guided by the well-established principle that in deciding removal issues, the removal statute should be construed narrowly against removal, and doubts are to be resolved in favor of state court jurisdiction. See Shamrock Oil & Gas Corp. v Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 872, 85 L. Ed. 1214, 1219 (1941); Coyne v. Am. Tobacco Co., 183 F.3d 488, 492 (6th Cir. 1999) (stating that "[a]ll doubts are resolved against removal"); Brierly, 184 F.3d at 534 (explaining that "in the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts").

164.    But yet, even were removal timely, the Court should exercise its powers of equitable remand pursuant to 28 U.S.C. § 1452(b) and/or discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1), and remand this matter to the Massachusetts Superior Court.

## SECTION 4: FURTHER ARGUMENT

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION

165.    Under § 1447(c), the Court may remand the case "at any time" based on the lack of subject matter jurisdiction. When a district court discovers a jurisdictional defect in an improperly removed case, the court should remand the case immediately. Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999). Likewise, once a party raises by motion a failure in the statutory prerequisites for removal, an immediate remand is appropriate.

166.    Black-letter construction of the removal statute reflects due regard for the power reserved to the states to determine controversies brought in the state courts. Shamrock Oil & Gas Corp., 313 U.S. at 108-109. Therefore, federal courts must "confine their own jurisdiction to the precise limits" that the removal statute has defined. Id. at 109.

167.    Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)).

168.    In attempting to invoke this Court's diversity jurisdiction, a removing defendant must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).

169.    Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia

Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

170.     When determining the amount in controversy, the Court must assume that the allegations in the complaint are true and that a jury will return a verdict in the plaintiff's favor on all of the claims in the complaint. See Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." Korn v. Polo 1/ The 1st AC, like the original Complaint, alleges that both Plaintiffs are domiciled in California. (Compl. ¶ 30; 1st AC ¶ 31.). Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original); see also Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

171.     When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d at 566 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).

172.     "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

173.     "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

174.     "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum] when federal jurisdiction is challenged. . . . [A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). "Conclusory allegations as to the amount in controversy are insufficient." Matheson, 319 F.3d at 1090–91.

175.     Given the patent deficiencies of the removal notice and this Court's lack of subject matter jurisdiction, this Court should remand this matter immediately.

## II. LAW AND ARGUMENT

176.     The burden of establishing the appropriateness of removal to federal court rests squarely upon the Defendants. Alexander v. Electronic Data Systems Corp. (6th Cir. 1994), 13 F.3d 940, 948-49.

177.     Pursuant to United States Code Annotated, 28 U.S.C. § 1446(b):

> "...notice of removal of a civil action within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

178.     The initial pleading setting forth the claim for relief upon which such action or proceeding is based was the plaintiffs' Complaint.

179.     The removing defendant was served with a copy of this Complaint on April 14, 2023.

180.     Moreover, the case stated by the original complaint (initial pleading) was the essentially the same for removal purposes as the case stated in the Amended Complaint (with some additional claims and facts but the gravamen of the complaint is the same).

181.     Based on this date of service of the original complaint, the removing defendant had 30 days or until June 7, 2023, in which to file their Notice of Removal.

182.     The removing defendant did not file their Notice of Removal until June 12, 2023, which is outside the time prescribed in 28 U.S.C. §1446(b).

183.     Therefore, the removing defendant's Notice of Removal should be denied and this matter should be remanded to the Court where it was originally filed.

184.     As the removing defendant did not file their Notice of Removal until June 7, 2023, which is outside the time prescribed in 28 U.S.C. §1446(b), the plaintiff seek to remand this action to state court.

### III. INTERPRETATION OF THE REMOVAL STATUTE

185.   The removal statute is to be construed strictly out of due regard for the rightful independence of state governments. See Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 108-09.

186.   Title 28 section 1446(b) of the United States Code provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for
> relief upon which such action or proceeding is based...28 U.S.C. § 1446(b).

187.   The removal statute offers a party thirty days to determine if dual jurisdiction exists and to choose which court will hear the case. As stipulated in 28 U.S.C. § 1446(b), this right only exists for thirty days. See Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co. (N.D. Ohio 1990) 753 F. Supp. 660, 664. "To allow the removal of a case to federal district court based on an untimely, though substantively valid, petition would completely emasculate the effect of the thirty-day limitation." Therefore, failure to comply with the thirty day limitation to file a petition for removal is an absolute bar regardless of whether the removal would have been proper if timely filed." Id.

### IV. COMPUTATION OF TIME UNDER THE REMOVAL STATUTE

188.   Where "delivery of the initial pleading is made in a manner which, objectively viewed, is calculated to give fair notice to the defendant, the receipt is sufficient to trigger the statutory removal period." Pillin's Place, 771 F. Supp. at 208.

189.   As the provisions in 28 U.S.C. § 1446(b) must be strictly construed, where the defendant fails to file within the prescribed time period, the action must be remanded. Under strict construction, Fed.R.Civ.P. 6(e) may not be applied to extend the thirty-day deadline set by the removal statute, which specifically calls for the time to run following receipt by defendant. See Mitchell v. Kentucky-American Water Co. (E.D. Ky 1997) 178 F.R.D. 140, 142. Therefore, the thirty days in which to file for removal may not be extended by a three day grace period to accommodate 'mail time.'

### V. DEFENDANT FAILED TO TIMELY FILE NOTICE OF REMOVAL PURSUANT TO 28 U.S.C.§ 1446(B)

190.   The removing defendant must abide by the plain and clear meaning of the removal statute which allows for only thirty days from receipt by defendant.

191.   By the removing defendant's standard, computation of time would not begin until May 11, 2023, which is about 21 days after initial service to Defendant on April 14, 2023. Defendant's subjective view of computing statutory time is at odds with the intent of the removal statute, which requires a strict construction and prefers removal occur as soon as possible.

192.   Furthermore, the removing defendant admit to receiving the Amended Complaint on May 11, 2023.

193.   Given that the removing defendant was in receipt of the Amended Complaint on May 11, 2023, there is no logical explanation as to why the removing defendant would not have received the original Complaint on April 17, 2023.

194.   Defendant's slippery slope argument (i.e., being silent about the April 17, 2023 receipt date for the original complaint or otherwise denying by implication that it was received at all), portrays an 'imaginative lost homework' response that this Court should not accept, especially given the plethora of evidence from the Bristol sheriff and the USPS confirming that it was received.

195.   Following strict construction, the clear and plain meaning of the statutory language, and the local rule adopted by the Federal Court of Massachusetts, the thirty day computation of time prescribed by the removal statute began on the date of initial service to Defendant on April 14, 2023.

196.   The removing defendant was therefore required by statute to file a notice of removal by latest May 17, 2023.

197.   Even by the most generous leeway to be given, in the alternative, the removing defendant was still required to file a notice of removal by June 7, 2023 or otherwise, by the most stretched calculation, by June 9, 2023 before 6pm. In every case, the removal was untimely.

198.   NB: Furthermore, according to the "first-served rule" (which has been adopted by several judges in this district and which the first circuit has not opined on as yet), once the time for removal is passed for the first served defendants, that precludes the later served defendants or unserved defendants from later removal. In this case, the time for removal most definitely expired on or about May 14 or May 17, 2023, counting from service

of process of the original complaint on April 14, 2023. Therefore, defendant Upton & Hatfield, was precluded from later removal after May 17, 2023.

---

## SECTION 5: OTHER ARGUMENT

---

### I.  REMOVING DEFENDANT DID NOT INCLUDE ALL PAPERS SERVED ON IT BEFORE REMOVAL

199.    The removal statute, 28 U.S. Code § 1446 - Procedure for removal of civil actions, states the following:

> A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, **together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action**.

200.    Defendant Upton & Hatfield failed to "file a copy of all process, pleadings, and orders served upon" it with this court with its notice of removal. Thus, the removing defendant did not include all papers served on it, with its notice of removal as required by the removal statute.

201.    This failure to include the documents served on it via sheriff on 4/14/23, including the civil action cover sheet, the tracking order and the allowed motion to extend time to serve process on the defendants, as well as the documents served on it via sheriff on 5/8/23, including the civil action cover sheet, the tracking order and the plaintiff's emergency motion to reconsider the plaintiff's final emergency motion to extend deadline to in court's 2/3/23 order.

202.    The fact that these documents were served on the defendants by sheriff is shown via screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing and first class mailing by the sheriff to Hilliard's home address on 4/14/23. See also state court record and docket (entry #16). See again also **Exhibit 2**.

> Bristol, SS
>
> I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on April 14, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and Complaint and Demand For Jury Trial, Civil Action Cover Sheet, Civil Tracking Order and Allowed Motion To Extend Time to Serve Process on Defendants by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.
>
> Victoria A. Morales
> Deputy Sheriff

203.    The fact that these documents were served on the defendants by sheriff is shown via screenshot below of Sheriff's affidavit filed in state court showing service of process of the summons and amended complaint by certified mailing and first class mailing by the sheriff to Hilliard's home address on 5/8/23. See also state court record and docket (entry #18). See also again **Exhibit 3.**

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on May 8, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and First Amended Complaint, Civil Action Cover Sheet and Plaintiff's Emergency Motion To Reconsider The Plaintiff's Final (Emergency) Motion To Extend Deadline in Court's 2-3-23 Order by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.

Victoria A. Morales
Deputy Sheriff

204.  In its notice of removal, the removing defendant stated that they only included the state court docket. See page 4 of the notice of removal. See screenshot below.

Date Filed 6/9/2023 11:05 PM
Superior Court - Bristol
Docket Number 2273CV00430

Case 1:23-cv-11313   Document 1   Filed 06/09/23   Page 2 of 6

District of Massachusetts pursuant to 28 U.S.C. § 1391(a).

    a.   The Bristol County Superior Court in which the Civil Action is pending is located within the District of Massachusetts. 28 U.S.C. § 1441(a).

    3.   <u>State Court Documents</u>.  Pursuant to 28 U.S.C. § 1446(a), the removing Defendant, Upton & Hatfield, has not formally been served with any process, pleadings and orders, but a copy of the Amended Complaint is attached hereto as **Exhibit 1**. A copy of the state court docket is attached as **Exhibit 2**. As of the date of this removal, the only pending motion in the state court is Plaintiff's Motion for Funds on July 10, 2023 at 3:00 P.M.

205.  The failure of the defendants to include all documents served on it in state court is fatal to meeting the removal prerequisites.

206.  The removal statute is to be construed strictly and narrowly.

207.  Therefore, the removing defendant failed to meet the statutory prerequisites for removal.

208.  Because federal courts are courts of limited jurisdiction and because of federalism concerns, there is a presumption against removal jurisdiction. (See *Kokkonen v. Guardian Life Ins. Co. of Am.* (1994) 511 U.S. 375, 377 [holding that presumption against jurisdiction exists because federal courts are courts of limited jurisdiction]; *Shamrock Oil & Gas Corp. v. Sheets* (1941) 313 U.S. 100, 108-09 [indicating that federalism concerns and Congressional intent mandate strict construction of removal statutes].)

209.  The removing defendants' notice of removal fails to comply with the requirement of 28 U.S.C. § 1446(a), because they did not include, with the notice, all of the documents served upon the defendants in the state-court action. Defendants should not be excused from strictly complying with § 1446(a).

210.  This is another instance where the removing defendant has misstated the facts to the court. They aver under Rule 11 that they were not served with any pleadings, or orders, but yet they also admit that a partner of the firm, Russell Hilliard, was served with process on May 11, 2023 and that this constituted service or notice upon defendant Upton & Hatfield. But this partner of the firm, Russell Hilliard, was served not only with process by the sheriff but also with pleadings and orders from state court, prior to removal.

## II. DEFENDANT HAS NOT DEMONSTRATED THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 AND HAS NOT MET THEIR BURDEN TO DO SO

211.    The burden of establishing removal jurisdiction remains on the proponent of federal jurisdiction.'" *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) quoting *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006)).

212.    "In diversity cases, where the amount in controversy is in doubt, the Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992), citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-290, 58 S.Ct. 586, 590-591, 82 L.Ed. 845 (1938).

213.    In the removal context, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court." *Gaus*, 980 F.2d at 566.

214.    "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

215.    "If it is unclear what amount of damages the plaintiff has sought, … then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." Gaus, 980 F.2d at 566-67.

216.    Removal jurisdiction cannot be based on conclusory allegations by the removing defendant. Abrego Abrego, 443 F.3d at 685; see also Gaus, 980 F.2d at 567.  Rather, "the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

217.    The removing defendant is required to provide "summary-judgment-type-evidence" as to the amount in controversy. See, e.g., Korn v. Polo Ralph Lauren Corp., 536 F.Supp.2d 1199, 1205 (E.D.Cal. 2008), citing Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

218.    When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d at 566 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

219.    "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

220.    "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

221.    "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum] when federal jurisdiction is challenged. . . . [A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

222.    "Conclusory allegations as to the amount in controversy are insufficient." Matheson, 319 F.3d at 1090.

223.    The amount in controversy is determined based on the allegations in the plaintiff's complaint.

224.    Because the complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving that it is more likely than not that the amount in controversy exceeds $75,000.  See Abrego Abrego, 443 F.3d at 685; see also Gaus, 980 F.2d at 566-567; Sanchez, 102 F.3d at 404.

225.    The critical inquiry is the amount placed in controversy by the allegations in plaintiff's complaint." Korn, 536 F.Supp.2d at 1206 n. 4 (emphasis supplied); see gen., St. Paul Mercury, 303 U.S. at 291 ("status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal") (emphasis supplied); see also, e.g., Ray v. Wells Fargo Bank, N.A., Not Reported in F.Supp.2d, 2011 WL 1790123, *5 (C.D.Cal. May 09, 2011) ("the amount in controversy is determined at the time of removal and is to be decided based on the allegations in the operative pleading").

226.    In this instance, the removing defendant's evidence is insufficient to support removal jurisdiction.

227.    The plaintiff has not alleged a specific amount in controversy because the plaintiff does not have access to all of the information necessary to make such a calculation.

228.   In the complaint, I did not state the amount of damages. This is because I do not know the amount of damages. I only know it is likely to be over $50,000.

229.   I will need a damages expert to assist me with determining damages.

230.   The defendant can point to no reference in the complaint itself to damages above $50,000.

231.   It appears that only the defendants in this case, at this time, has information to establish the extent of the amount of damages. For example, only the defendants know how many times it disseminated defamatory material or information and how widespread the defamation has been disseminated. Without this information, I cannot determine the proper amount of damages.

232.   The removing defendant referenced an affidavit of damages that I was required to file in the Middlesex superior court pertaining to a jurisdictional amount issue raised by the superior court. This affidavit was filed to demonstrate that my damages was above $50,000. It was not intended to demonstrate actual damages. It was a threshold matter where I just needed to demonstrate that at a minimum, there was a likelihood that damages would be $50,000 or more.

233.   The representations and calculations presented therein was based on working from a certain assumption back down to establishing probability of the minimum damages necessary to remain superior court. For example, in the preface, I stated that I initially pled in the civil action cover sheet that the damages was at least $25,000. But because the minimum jurisdiction amount was changed at the time I filed that complaint in Middlesex superior court in or around early 2020, and I was not aware of the change, I put $25,000 instead $50,000 as the minimum amount of damages. It was because of this why the superior court sua sponte ordered a jurisdictional amount hearing, prior to service of process on the defendant.  See screenshot below:

**PREFACE**

4.   First, it should be noted that, as a pro se plaintiff, I was not aware that the minimum procedural amount for damages was changed from $25,000 to $50,000 for superior court cases. This change was made effective only as of January 1, 2020.  I filed this case on 1-9-20. I had no idea of this change at the time I filed this case. If I had known, I would have amended the complaint/civil cover sheet to indicate that damages exceeded $50,00. This is a simple error that can be fixed upon amendment of the complaint and/or civil cover sheet. NB: I submitted an amended civil cover sheet, attached to my response on 2-4-20.

234.   Thus, the defendants here misused the affidavit of damages above that they attached to their notice of removal (as the last exhibit). I was only stating that there was more than $50,000.  See screenshot below.

**DAMAGES WILL EXCEED $50,000**

18. I have pled claims for defamation, interference with contractual relations, intentional misrepresentation and intentional infliction of emotional distress and abuse of process and aiding/abetting in discrimination and retaliation based on race. There are adequate damages in this case more than $50,000.

235.   The various numbers thrown about, including reference to estimations of $500,000, was my pro se attempt to build the threshold argument for a minimum of $50,000 and were to be used as a thinking model or if/then scenario illustration or mathematical demonstration, and not a conclusive declaration of known damages. See screenshot below.

- TOTAL ESTIMATED DAMAGES: $500,000

104.     NB: Even if the above estimate of my damages is off-base by 50%, this would still mean estimated damages of $250,000. In fact, if the above estimate of my damages is off-base by 75%, this would still mean estimated damages of $125,000. My estimate would have to be wrong by as much as 95% in order for the damages to fall below $50,000. This would not be reasonable by any measure.

105.     At this stage of the proceeding, the court cannot assess liability or chances of defendant liability being found. The court must assume that the defendant will be found liable for the claims. The court cannot investigate the facts as if it were making a summary judgment decision. The court cannot assess the sufficiency of the stated claims, to survive a motion to dismiss. The court cannot weight credibility or the truth value of any statements or the likelihood of prevailing on the claims. The court can only inquire as to whether there is any reasonable possibility that the claims, if found in my favor, could result in any jury awarding me more than $50,000 in damages. The court is required to give deference to the plaintiff's stated damages claimed. Only discovery and a trial on damages can ascertain the damages with certainty. Also, it is up to a jury to determine damages especially on the tort claims such as defamation.

236.     Moreover, the judge in that case (i.e., Judge Christopher Barry Smith who also is a regional administrative justice) stated that based on the information provided, he was skeptical there was more than $50,000 in damages due to a lack of clarity as to whether the defamatory statements were widespread, but he thinks I met the burden that it would be at least $50,000.  See screenshot of Judge Barry-Smith's order on jurisdictional amount to remain in superior court.

11/19/2020   Endorsement on Submission of Affidavit Concerning Damages Amount for Craig Donais Case (#11.0): Other action taken
See order on page 14:

Because plaintiff identified damages of $25,000 on his civil action cover sheet, after notice a hearing was held on 11/13/2020 concerning whether plaintiff satisfied the jurisdictional amount requirements of Superior Court. Although I am skeptical of the damages explanations advanced by plaintiff in his affidavit and at hearing, given the limited circulation of the allegedly defamatory statements at issue, at this juncture, I am restrained to accept as true the complaint's allegations and not assess deeply the merits of the case.  Given the uncertainty inherent in gauging the value of reputational harm and defamation damages, plaintiff has alleged facts that conceivably could result in jurisdictional amount being satisfied. For these reasons, the case will remain in Superior Court.

237.     The removing defendant has therefore failed to present evidence of the amount in controversy.

238.     Instead, the removing defendant has offered only an over-inclusive, irrelevant figure that is clearly not the amount that has been placed in controversy by the complaint.

239.     Courts have consistently rejected efforts by Defendants to attempt to justify removal jurisdiction with over-inclusive figures that do not speak to damages actually sought by the complaint.

240.     The removing defendant's over-inclusive figure is insufficient under either a legal certainty or preponderance standard of review.

241.     Similarly, the removing defendant here has presented evidence of a figure that "does not address the claims as pled in Plaintiff's complaint."

242.     Because the removing defendant has failed to meet its burden, and all doubts must be resolved against removal jurisdiction, this case should be remanded to state court.

243.     Courts construe the removal statute narrowly and against the party seeking removal. In re Pharm. Indus. Average Wholesale Price Litig., 457 F. Supp. 2d 65, 70 (D. Mass. 2006) (citing Danca, 185 F.3d at 4).

244.     As a court of limited jurisdiction, a federal court must presume that a case lies outside its jurisdiction unless and until jurisdiction has been shown to be proper. See Gunn v. Minton, 568 U.S. 251, 256 (2013) (citing Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994)); United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008).

245.     Accordingly, "any ambiguity as to the source of law relied upon by the . . . plaintiff[] ought to be resolved against removal." Rossello-Gonzalez, 398 F.3d at 11 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). See also Callahan v. Sw. Airlines, No. 18-10563-MGM, 2018 WL 5849476, at *6–*8 (D. Mass. 2018) (remanding state negligence claim despite allegation that airline's conduct violated federal law); Alshrafi v.

Am. Airlines, 321 F. Supp. 2d 150, 165 (D. Mass. 2004) (issue of whether airline violated federal law insufficient to confer federal subject matter jurisdiction).

246.    It is well-recognized that "documents not generated within the state litigation generally are not recognized as 'other papers,' receipt of which can start a 30-day removal period under Section 1446(b)." 14C Fed. Prac. & Proc. Juris. § 3731 (4th ed.).

247.    Courts have held that the phrase "order or other paper" did not even include a U.S. Supreme Court decision in another case. See Pennsylvania v. Tap Pharm. Prods., Inc., 415 F. Supp. 2d 516, 526-27 (E.D. Pa. 2005).

248.    Other federal courts likewise have held that "order or other paper" includes only documents directly related to the pending case. See, e.g., Gibson v. Clean Harbors Env. Servs. Inc., 840 F.3d 515, 521 (8th Cir. 2016); Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 78 (1st Cir. 2014); McCormick v. Excel Corp., 413 F. Supp. 2d 967, 971 (E.D. Wis. 2006).

249.    In this instance, the removing defendant scavenged all the way back to 2020 (3 years ago) to a different case to try to dredge up a document that was not filed in this case nor referenced in this case by the plaintiff. The removing defendant is trying to apply something from a prior matter to this case. The problem that document did not and does not represent my current understanding of the case that I filed in Bristol superior court as it related to damages. That document filed in Middlesex superior court in 2020 did not have the benefit of my having had a hearing with a judge to help guide my thinking about the damages. The hearing with Judge Barry-Smith was enlightening and somewhat opened my eyes to how a court would likely look on the damages issues. Prior to that, as a pro se, I really had no real clue about that. So after the hearing and after the judge's ruling, I was constrained to think differently about the damages and I realized more than ever that I needed the help of an expert to do so, which I thought I would be able to attain at some point in the case. See **Exhibit 12**. The removing defendants therefore cannot take a 3-year old document about damages from another case in another court prior to a hearing on damages, then use that to force that into this case in Bristol superior court now removed to federal court. It was a stretch for them to do that.

250.    If a court document from another case is not an "order or other paper" under § 1446(b)(3), a fortiori neither is a document not arising from any judicial proceeding at all.

251.    If the basis for jurisdiction is not clear from the complaint, e.g., because plaintiff failed to specify the amount in controversy, the 30-day period for removal is not triggered. (See *Harris v. Bankers Life & Cas. Co.* (9th Cir. 2005) 425 F.3d 689, 694 [holding that basis for removal must appear within the four corners of a complaint to trigger 30-day removal period and that a defendant has no duty of inquiry to determine if removal is possible].)

252.    The damages therefore are not established as being over $75,000.

253.    The removing defendant has failed to meet its burden to demonstrate by a preponderance of the evidence that the amount in controversy is in excess of $75,000.

### III. DIVERSITY JURISDICTION IS NOT CLEARLY MET

254.    Diversity jurisdiction exists only where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The citizenships of all defendants must be different from the citizenships of all plaintiffs. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990).

255.    On information and belief, Upton & Hatfield has partners/members who reside or own property in Massachusetts. Therefore, on information and belief, some partners/members of the firm may be citizens of Massachusetts, and therefore there is or might not be complete diversity. According to information found on the internet:

    a.   Michael S. McGrath is a partner of the firm who regularly practices in "All Massachusetts State Courts" and "Massachusetts Federal District Court" and is currently sits on the Massachusetts Board of Bar Overseers (from 1997 – Present). He attended the evening division of New England School of Law while working as a paralegal at a general civil litigation firm and a trusts and estates firm in the Greater Boston area. During law school, Michael also served as an editor on Law Review, was a judicial honors intern with the Massachusetts Superior Clerk, and graduated cum laude in 2012. He is admitted to practice in Massachusetts and New Hampshire.

    b.   Jeanne Saffan, a partner, is admitted to practice in Massachusetts, New Hampshire, and New York and graduated Cum Laude from Suffolk University Law School in 2003.

    c. Brooke L. Shilo, after college, worked for several years at the Harvard Stem Cell Institute and Massachusetts General Hospital.

    d. Timothy J. Sullivan, a partner, began his legal career at a law firm in Chelmsford, Massachusetts where he represented individuals, municipalities, and businesses. Tim is admitted to practice in Massachusetts and New Hampshire in both state and federal courts.

    e. Madeline K. Osbon, prior to joining Upton & Hatfield, was a legal extern at an employment and business litigation firm in Cambridge, Massachusetts, and also worked as an extern with the General Counsel of the Worcester Red Sox.

    f. There are several more lawyers who have ties, affiliations to Massachusetts and/or actively practice in Massachusetts. NB: By the way this goes to the personal jurisdiction issue but that will be dealt with in a separate opposition filing later this week.

    g. This shows that several of the lawyers at Upton & Hatfield have significant ties to Massachusetts, actively practice law in Massachusetts and/or lived in Massachusetts. It appears from these facts that Upton & Hatfield may have partners/lawyers who are citizens of Massachusetts. Neither the court nor I should be required to take their word for it especially since the removing defendant has already submitted false or perjurious statements to the court.

256. NB: Limited liability companies and partnerships are considered citizens of the states in which their members or partners are citizens. In larger LLCs or partnerships, this can be a large number of states, which often precludes removal on the basis of diversity jurisdiction

257. Discovery is needed to further attest to whether any of these lawyers live in or own property or businesses in Massachusetts.

258. Jurisdictional discovery is appropriate prior to a determination on a motion for remand. (See Abrego Abrego v. Dow Chem. Co. (9th Cir. 2006) 443 F.3d 676, 691 [concluding that district court had not abused its discretion in denying defendant's request for jurisdictional discovery].) To the extent it may be helpful in proving that, e.g., complete diversity does not exist, the court should allow an opportunity to take discovery.

259. The plaintiff asks the court to defer decision on the motion to remand, as necessary, to allow discovery on the issue of the citizenship of the partners of the Upton & Hatfield firm.

260. Therefore, it has not been established that there is complete diversity in this case and there are real indications that there might not be.

## IV. DEFENDANTS STATED INTENT TO DEFEND IN STATE COURT AND EFFECTIVELY WAIVED REMOVAL

261. A defendant may waive its right to remove a case to federal court when its actions "indicate the defendant has invoked the jurisdiction of the state court or has taken actions that manifest the defendant's intent to have the case adjudicated in state court." Hernandez-Lopez v. Commonwealth of Puerto Rico, 30 F. Supp. 2d 205, 209 (D.P.R. 1998).

262. If a defendant manifests its assent to the jurisdiction by, for example, filing affirmative claims in the state court before filing a removal notice, it has made a waiver.

263. Because the defendants filed the oppositions in state court, they "submitted to the jurisdiction" of the state court and therefore waived their right to remove under 28 U.S.C. § 1441(a) and (b).

264. For example, the defendants asserted affirmative defenses in state court via their opposition filings, including asking the state court to decide the case on the merits.

265. The Hilliard defendants' counsel also reached out to me to offer acceptance of service / waiver of service in state court.

266. The Donais defendant counsel also sought to confer on the filing of a response to the complaint. They even requested more time from the state court to do so.

267. The defendants expressly indicated their intent to defend in state court and never once indicated to me or the state court their intention not to do so.

268. I believe this constitutes a waiver of removal and is but another factor that buttresses remand.

## V.  REMOVING DEFENDANT WAS NOT SERVED BEFORE REMOVAL

269. Defendants improperly removed the case prior to being served with the complaint.

270.   The removing defendant Upton and Hatfield was not served process at the time it initiated removal.

271.   Because the removing defendant Upton and Hatfield was not "served" according to its own admission, it could not exercise any right to remove the case. A party who is not officially made part of a case in state court because it has not received the summons directed to it, nor has been formally served process cannot remove a case to federal court. (See Vallejo v. Amgen, Inc. (C.D. Cal. Aug. 30, 2013, No. CV 13-03666 BRO (MANx)) 2013 WL 12147584, at *3 [ordering remand because the notice of removal was filed before the summons had even been in issued])

272.   Otherwise, this would mean a non-party can remove a case to federal court. It also wreaks havoc on when to count the removal timeline because a sneaky defendant can play games with when they received notice and can move the goalpost around to suit their agenda, in order to fit into the 30 day timeline, which is not fair nor right, such as is the case with the defendants in this instance.

273.   In Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999), the Supreme Court found that "mere receipt of the complaint unattended by any formal service" did not trigger a named defendant's time to remove a case from state court. Id. at 138.

274.   It is arguable that Defendant Upton & Hatfield thus acted prematurely by filing for removal before it had been formally served with the complaint. Section 1446(b) permits a defendant to remove only after it has been served with the complaint.

## VI. PLAINTIFF INTENDS TO AMEND THE COMPLAINT IN FEDERAL COURT TO ADD NON-DIVERSE PARTY AND TO EITHER DISMISS THE FEDERAL CLAIM OR TO SUBSTITUTE THE FEDERAL CLAIM FOR EQUIVALENT STATE CLAIM

275.   Even if removal jurisdiction exists at the time the notice of removal is filed, post-removal amendments may lead the court to remand the case.

276.   Under 28 U.S.C. section 1447(e), if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court.

277.   Likewise, if removal was based on a federal question, the elimination of the federal question creates discretion in the court to retain, remand or dismiss supplemental state claims. (See, e.g., Glover v. Borelli's Pizza, Inc. (S.D. Cal. 2012) 886 F. Supp. 2d 1200 [remanding to state court after plaintiff eliminated federal claim through amendment]; Markham v. Home Depot USA, Inc. (C.D. Cal. Jan. 10, 2014, No. CV 13-8431-GHK (JCGx)) 2014 WL 117102, at *1 [noting prior remand after non-diverse defendants had been added].)

278.   The plaintiff hereby seeks permission to amend the complaint to add a non-diverse party and to either dismiss the federal claim or to substitute out the federal claim for equivalent state-based claim. As it stands, 99% of the claims in this case are state-based claims. There is only one federal claim under Section 1981 relating to discrimination/retaliation/harassment based on race. But this claim has an equivalent state counterpart called the Massachusetts Equal Rights Act. With that being the case, there is no reason for this case to stay in federal court because as a pro se plaintiff, I may have mixed up the federal claim for the state claim on discrimination/retaliation/harassment based on race. Equity and judicial economy demands that the case be tried, based on state law claims, in one consistent state-based forum.

## VII.  STATE COURT APPEALS NEED TO BE RESOLVED

279.   The case should also remand because there are two proceedings in state court, one of which is an appeal that is currently underway in the Middlesex superior court and the other is an appeal that was waiting to be transferred by the Bristol superior court to the state appeals court right before the defendants filed their notice of removal. Although this reason alone by itself may not be adequate to trigger remand, remand becomes proper when combined in totality with all of the law-based and equitable reasons outlined herein

## VIII.  STATE COURT CLAIMS SHOULD BE SEVERED AND REMANDED

280.   Factors that district court considers when deciding whether to retain jurisdiction over supplemental state claims following dismissal of federal claims from a removed action include judicial economy, convenience, fairness, and comity. (See Millar v. Bay Area Rapid Transit Dist. (N.D. Cal. 2002), 236 F. Supp. 2d 1110, 1119.)

281.   Thus, when the removal is based on federal-question jurisdiction, a federal court can decline to assert supplemental jurisdiction over the other state-based claims. Because "[t]he removal statutes are to be strictly

construed against removal," "all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990).

282.   The Massachusetts legislature has chosen to adopt a comprehensive legislative scheme to expedite resolution of these disputes, and the court should be concerned that allowing this case to proceed in federal court now, at a time when the case has state court appeals that are still in the process of being resolved, would risk "emasculat[ing]" that scheme. See *Glen 6 Assocs., Inc.,* 770 F. Supp. at 229.

283.   Additionally, while the court should recognize that, under normal circumstances, "the questions of state law presented in this case" would not be considered "novel," Massachusetts civil rights action law, 93A law and defamation/antislapp law are continually evolving, and this court should be sensitive to the fact that the state courts may choose to fashion exceptions or changes to such proceedings, which this Court may not always anticipate. See *id.* at 228. Accordingly, to preserve the state statutory scheme, and in furtherance of the principles of efficiency, comity, and federalism, the court should abstain from exercising jurisdiction over this case.

284.   Moreover, principles of abstention afford federal courts the power to remand cases where the relief sought is equitable or otherwise discretionary, see *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 731, 116 S.Ct. 1712, 1728, 135 L.Ed.2d 1 (1996).

285.   In a case involving state-law claims, where even a single valid non-diverse cause of action exists, remand of the entire case is appropriate. (See *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.* (5th Cir. 2004) 390 F.3d 400, 411 [emphasizing that a single valid cause of action against a nondiverse defendant requires remand of the entire case]; *Christ v. Staples, Inc.* (C.D. Cal. Jan. 20, 2015, No. CV 14-07784 MMM JEMX) 2015 WL 248075, at *4 (citing *Gray*).)

286.   Further the federal court rules have established that: The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

287.   Though my case raises one question of federal law, my state-law claims do not have the "sort of significance for the federal system necessary to establish jurisdiction."

## IX. DEFENDANTS HAVE ENGAGED IN UNSAVORY DELAY AND DEFENDANTS HAVE LIED TO THE COURT

288.   Remand is warranted because removal per 28 U.S.C. § 1452 is untimely.

289.   Separately, the court should abstain from accepting jurisdiction per 28 U.S.C. § 1334(c) or remand to Massachusetts Superior Court on equitable grounds per 28 U.S.C. § 1452(b) because this matter was removed solely out of forum shopping and for purposes of delay on the eve of the deadline to file answer or response in state court.

290.   Thus, removal is highly prejudicial to the plaintiff, who now face the adjudication of the claims in federal court that were intended to be adjudicated in state court.

291.   The burden of demonstrating the appropriateness of removal lies squarely upon the removing party. "Removal statutes are to be strictly construed against removal and doubts resolved in favor of remand. Moreover, the burden is upon the removing party to show that federal jurisdiction exists, that removal was timely, and that removal is proper." *T&K Asphalt Servs., Inc. v. DDRC Gateway, LLC,* 976 F. Supp. 2d 38, 42 (D. Mass. 2013) (citations and internal quotation marks omitted). Defendant cannot meet this burden.

292.   Even though removal was untimely and this matter should be remanded for that reason alone, this matter should separately and independently be remanded on equitable grounds either based on abstention per 28 U.S.C. § 1334(c) or "equitable" remand per 28 U.S.C. § 1452(b) (or both). Where the matter was removed for the purposes of delay (i.e. forum shopping or gamesmanship), either abstention or equitable remand is appropriate.

293.   Such delay prior to removal and such strategic maneuvering are precisely the type of scenario that federal courts find constitute forum shopping and warrant abstention from accepting jurisdiction. As the U.S. District Court for the Southern District of New York noted while ordering remand in *Little Rest Twelve, Inc. v. Visan,* 458 B.R. 44, 60 (S.D.N.Y. 2011), "the removal petition[] produce[s] an unmistakable impression of forum-

shopping…, which appeared to remove the cases to avoid the state court forum…*shortly before the state court judge was about to issue a decision.*" (Emphasis added). So it is here, and remand is equally warranted.

294. There were several items that the state court was about to act on just prior to removal, including 4 motions to the state court judge relating to indigency-based waiver of litigation costs, and including transferring an appeal to the appeals court. NB: There were two notices of appeal filed at the time, one of which included an appeal of the decision of the state court judge to deny my motion to enter default on the defendants for being late. After discovering the filing of my notice of appeal on June 9, 2023, the defendants evidently wanting to avoid appellate review, at literally the eleventh hour (at 10.54pm on June 9, 2023), filed a notice of removal to this court.

295. The Defendants have, in state court, stonewalled and sought to delay with unsavory litigation tactics including misleading the court and myself about its intent to defend in state court, flagrantly flouting the state court's deadline for filing answer or response to the summons, etc.

296. They removed the case to this court to delay the state court proceedings, in order to buy time to file their answer or response to the summons, which they had been late to do by about 20 days already at the time. This removal was clearly an effort to game the system and to stun/confuse/throw off the plaintiff.

297. The Defendant has also lied to the court. They have done this exact thing before, in order to deceive courts to get their way and prevail. Indeed, this removal is not even Defendant's first attempt to avoid Massachusetts state-court jurisdiction in this matter, as explained in more detail in the amended complaint. It is mind-boggling that the defendants are here again doing similar things that were alleged in the amended complaint.

## X. PLAINTIFF HAS BEEN HARMED BY REMOVAL

298. The costs and harms attributable to the removal-and-remand process accrue even if the errant defendant removed the case on the basis of reasonable arguments with the purest of intentions, but even much more where the intentions are impure. These harms, which may be defined as the "private harms" and the "public harms" of an erroneous removal, often reach far beyond the parties to the case. Indeed, in every situation, it is fair to say that by the time a federal judge has reviewed the parties' submissions, found that the removal was erroneous, and remanded the case, the defendant's actions not only "have wrought needless litigation costs upon the other party," but also they have "upset the sensitive principles of federalism underlying our nation's dual court system, and frustrated judicial economy.

299. The most obvious costs of the removals are "private harms"-those tangible and intangible costs imposed directly upon the plaintiff who must argue the jurisdictional issues in the case. A plaintiff, of course, will suffer out-of-pocket fees and other expenses opposing the defendant's actions. But out-of-pocket expenses are only a small subset of all private harms, for when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims. As a result, by the very act of removing a case, the defendant can stay any further discovery or proceedings on the merits until the motion to remand has been resolved. This delay, in turn, can work to the disadvantage of the plaintiff. Thus, in every case, an erroneous removal confers some benefit upon the defendant at the expense of the innocent plaintiff.

300. Suffice it say I have been harmed by this removal. For example, it has frustrated my ability to seek legal counsel. It has also created disruption for me as a non-lawyer who is not familiar with federal practice. I also have had to deal with or address things on an emergency basis in this case given the expedited schedule in this court, and have had to miss other important deadlines. I had to incur costs of arranging transportation to federal court to file papers as a pro se on an emergency basis (at least initially). If removal is not proper in this case, it was not a harmless error to me. Furthermore, I had a state court hearing scheduled to review pending indigency motions for funds to assist me with litigation costs in state court, at the time that removal occurred. But that hearing got canceled in state court because of removal. Also, under the state indigency law, I had full access to obtain full assistance with the costs of litigation for the life of the state court litigation. In federal court, I have now lost that full access and full protection by the state legislature and state court under the indigency law which is not applied in federal court. This has and will put me at further disadvantage.

301. This removal should not have occurred and it was done out of pure gamesmanship. This is another factor that goes to support remand.

## XI. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES UNDER 28 U.S.C. § 1447(C)

302. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

303.    "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005).

304.    A party seeking fees need not establish that a notice of removal was frivolous. The Third Circuit, rather, has affirmed an award of attorneys' fees where "the assertion in the removal petition that the district court had jurisdiction was, if not frivolous, at best insubstantial." Mints v. Educ. Testing Serv., 99 F.3d 1253, 1261 (3d Cir. 1996).

305.    Here, defendant's notice of removal is at least insubstantial if not frivolous.

306.    The failure to remove by May 17, 2023 alone proves the point.

307.    Defendant's tortured attempt to avoid the 30-day time-bar based on the assertion that they only received complaint on May 11, 2023 is just as bad. This entire theory of jurisdiction rests on the falsehood that Russell Hilliard never received any complaint prior to May 11, 2023 —a falsehood that, even if true, would not establish jurisdiction.

308.    Fees are particularly warranted because of defendant's transparent ploy to delay and to lie to this court.

309.    In these circumstances, an award of attorneys' fees is warranted both to shift the cost of this ploy to defendant and to deter others from engaging in such gamesmanship in the future.

---

## SECTION 5: CONCLUSION

---

## I. CONCLUSION

310.    Courts generally construe this statute strictly in favor of state court jurisdiction and resolve all doubts in favor of remand. See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999). Cases do not belong in federal court if there is any doubt about subject matter jurisdiction. Further, "[a]ny doubts concerning the court's jurisdiction should be resolved against removal and in favor of remand to the state court." In re Massachusetts Diet Drug Litigation, 338 F.Supp.2d at 202 (citing Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3rd Cir.1990), cert. denied, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)).

311.    In addition, "the removal and diversity jurisdiction statutes should be strictly construed against federal jurisdiction to avoid infringing the rights of state courts to determine matters of state law." In re Massachusetts Diet Drug Litigation, 338 F.Supp.2d 198, 202 (D.Mass.2004) (and cases cited).

312.    The party seeking removal bears the burden of establishing that removal is proper. See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir.1989).

313.    Courts generally regard a defendant's failure to comply with the statute's procedural requirements as grounds for remand.

314.    See also Hinz v. Swisher Hygiene USA Operations, Inc., No. 4:13-CV-1183 (JAR), 2014 WL 520457, at *1 (E.D. Mo. Feb. 7, 2014) (holding §1446(b)(1)'s 30-day time limit is "mandatory" and a timely motion for remand for failing to observe the time limit will be granted); Tripp v. Kline, No. 4:06-CV-01252 (ERW), 2007 WL 844821, at * 3 (E.D. Mo. Mar. 19, 2017) (the §1446(b) time limits are mandatory and a "defendant's right to remove is foreclosed" if he fails to timely file a notice of removal).

315.    For the foregoing reasons, Plaintiffs respectfully request that this Court remand this action to the state court from which it was removed, in accordance with 28 U.S.C. § §1446(b) due to the fact that Defendants failed to remove this action within the time permitted.

## II.  PRAYER

316.    For the foregoing reasons, the plaintiff respectfully requests that the United States District Court for the District of Massachusetts deny the Notice of Removal, that it declines jurisdiction over this lawsuit, and that it issues an order of remand to the state court.

317.    Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Remand, and remand the case to the Superior Court. The Court should immediately remand this case to state court and award attorneys' fees to Plaintiff.

318.    The plaintiff in the alternative requests discovery related to remand to establish the citizenship of all of the partners of Upton & Hatfield and to establish if the defendants received the original complaint on April 7, 2023. These are critically important issues that must be resolved in order to determine whether this court has jurisdiction over this case.

319.   Also, since the claims in the case include both federal-question claims and state law claims, if the court finds it has jurisdiction over this case or that there is no procedural defect, then the plaintiff requests that this court exercise abstention over the state law claims that are best resolved in state court, and that the non-federal claims be severed and remanded. (§ 1441(c).)

## SIGNED UNDER PAINS AND PENALTIES OF PERJURY

Respectfully submitted,
Andre Bisasor
/s/andre bisasor
679 Washington Street, Suite # 8206
Attleboro, MA 02703

Dated: July 17, 2023

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was or will be served to the parties in this case via the court's electronic filing/service system.

/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703

# <u>EXHIBITS</u>

## FOR

## PLAINTIFF'S MOTION FOR REMAND

**By Andre Bisasor**
**July 17, 2023**

# EXHIBIT LIST/TABLE OF CONTENTS

1. <u>Exhibit 1</u> –  **State Court Docket.**

2. <u>Exhibit 2</u> – **Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing and first class mailing by the sheriff to Hilliard's home address on 4/14/23.**

3. <u>Exhibit 3</u> – **Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's work address on 4/14/23.**

4. <u>Exhibit 4</u> - **Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's home address on 5/8/23.**

5. <u>Exhibit 5</u> – **Sheriff's affidavit filed in state court showing service of process of the summons and original complaint by certified mailing return receipt requested and by first class mailing by the sheriff to Hilliard's work address on 5/8/23.**

6. <u>Exhibit 6</u> - **ECF notification provided to me by email when the defendant submitted their document.**

7. <u>Exhibit 7</u> – **USPS tracking for sheriff's certified mailing to Russell Hilliard's home address on April 14, 2023.**

8. <u>Exhibit 8</u> - **Proof  of home address via mortgage deed filed with the NH registry of deeds by Russell Hilliard.**

9. <u>Exhibit 9</u> - **Upton & Hatfield's website showing their address.**

10. <u>Exhibit 10</u> – **Prior filed document of damages filed in November 2020 in Middlesex superior court.**

11. <u>Exhibit 11</u> – **Printout of federal court case - Hardy v. Square D Co., 199 F. Supp. 2d 676 (2002). NB: This case is spot on in terms of dealing with a similar situation to this case.**

12. <u>Exhibit 12</u> – **Transcript of hearing with Judge Barry-Smith in November 2020.**

# Exhibit 1

## 2273CV00430 Bisasor, Andre vs. Hilliard, Russell F et al

- Case Type:
- Torts
- Case Status:
- Closed
- File Date
- 06/20/2022
- DCM Track:
- A - Average
- Initiating Action:
- Defamation
- Status Date:
- 06/12/2023
- Case Judge:
- 
- Next Event:
- 

**All Information** | **Party** | **Event** | **Tickler** | **Docket** | **Disposition**

### Party Information

**Bisasor, Andre**
- Plaintiff

| Alias | Party Attorney |
|-------|----------------|
|       | Attorney |
|       | Pro Se |
|       | Bar Code |
|       | PROPER |
|       | Address |
|       | Phone Number |
|       | |

**More Party Information**

**Hilliard, Russell F**
- Defendant

| Alias | Party Attorney |
|-------|----------------|
|       | Attorney |
|       | Saturley, Esq., William C |
|       | Bar Code |
|       | 442800 |
|       | Address |
|       | Preti Flaherty Beliveau and Pachios, LLP |
|       | 60 State St Suite 1100 |
|       | Boston, MA  02109 |
|       | Phone Number |
|       | (617)226-3800 |
|       | Attorney |
|       | Sonneborn, Esq., Daniel R |
|       | Bar Code |
|       | 679229 |
|       | Address |
|       | Preti Flaherty Beliveau and Pachios, LLP |
|       | 60 State St Suite 1100 |
|       | Boston, MA  02109 |
|       | Phone Number |
|       | (617)226-3800 |

**More Party Information**

**Donais, Craig S**
- Defendant

| Alias | Party Attorney |
|-------|----------------|
|       | Attorney |
|       | Landers, Jr., Esq., Edwin F |
|       | Bar Code |
|       | 559360 |
|       | Address |
|       | Morrison Mahoney LLP |

- 250 Summer St
  Boston, MA  02210
- Phone Number
- (617)439-7583

**More Party Information**

**Donais Law Offices PLLC**
- Defendant

| Alias | **Party Attorney** |
|---|---|
| | - Attorney |
| | - Landers, Jr., Esq., Edwin F |
| | - Bar Code |
| | - 559360 |
| | - Address |
| | - Morrison Mahoney LLP |
| | 250 Summer St |
| | Boston, MA  02210 |
| | - Phone Number |
| | - (617)439-7583 |

**More Party Information**

**Upton and Hatfield LLP**
- Defendant

| Alias | **Party Attorney** |
|---|---|
| | - Attorney |
| | - Saturley, Esq., William C |
| | - Bar Code |
| | - 442800 |
| | - Address |
| | - Preti Flaherty Beliveau and Pachios, LLP |
| | 60 State St Suite 1100 |
| | Boston, MA  02109 |
| | - Phone Number |
| | - (617)226-3800 |
| | - Attorney |
| | - Sonneborn, Esq., Daniel R |
| | - Bar Code |
| | - 679229 |
| | - Address |
| | - Preti Flaherty Beliveau and Pachios, LLP |
| | 60 State St Suite 1100 |
| | Boston, MA  02109 |
| | - Phone Number |
| | - (617)226-3800 |

**More Party Information**

**Donais, Mary K**
- Defendant

| Alias | **Party Attorney** |
|---|---|
| | - Attorney |
| | - Landers, Jr., Esq., Edwin F |
| | - Bar Code |
| | - 559360 |
| | - Address |
| | - Morrison Mahoney LLP |
| | 250 Summer St |
| | Boston, MA  02210 |
| | - Phone Number |
| | - (617)439-7583 |

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 06/27/2023 02:30 PM | Civil A (New Bedford) | Lower Courtroom | Hearing for Funds | Yessayan, Hon. Raffi N | Rescheduled |
| 07/10/2023 03:00 PM | Civil A (New Bedford) | Lower Courtroom | Hearing for Funds | Yessayan, Hon. Raffi N | Canceled |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 06/20/2022 | 04/07/2023 | 291 | 06/12/2023 |

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---------|-----------|----------|----------|----------------|
| Answer | 06/21/2022 | 05/08/2023 | 321 | 06/12/2023 |
| Rule 12/19/20 Served By | 06/21/2022 | 10/19/2022 | 120 | 06/12/2023 |
| Rule 12/19/20 Filed By | 06/21/2022 | 11/18/2022 | 150 | 06/12/2023 |
| Rule 12/19/20 Heard By | 06/21/2022 | 12/19/2022 | 181 | 06/12/2023 |
| Rule 15 Served By | 06/21/2022 | 08/15/2023 | 420 | 06/12/2023 |
| Rule 15 Filed By | 06/21/2022 | 09/14/2023 | 450 | 06/12/2023 |
| Rule 15 Heard By | 06/21/2022 | 09/14/2023 | 450 | 06/12/2023 |
| Discovery | 06/21/2022 | 06/10/2024 | 720 | 06/12/2023 |
| Rule 56 Served By | 06/21/2022 | 07/10/2024 | 750 | 06/12/2023 |
| Rule 56 Filed By | 06/21/2022 | 08/09/2024 | 780 | 06/12/2023 |
| Final Pre-Trial Conference | 06/21/2022 | 12/09/2024 | 902 | 06/12/2023 |
| Judgment | 06/21/2022 | 06/20/2025 | 1095 | 06/12/2023 |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|-------------|-------------|---------------|--------------|
| 06/20/2022 | Complaint electronically filed. | 1 | Image |
| 06/20/2022 | Civil action cover sheet filed. | 2 | Image |
| 06/21/2022 | Case assigned to:<br>DCM Track A - Average was added on 06/21/2022 | | Image |
| 06/23/2022 | Determination regarding normal fees and costs ALLOWED FORTHWITH by Clerk waived in full , pursuant to G. L. c. 261, § 27C(2).<br>fling fee, summons, service of process<br><br>Judge: Sullivan, Jennifer A | 4 | |
| 06/28/2022 | One Trial case reviewed by Clerk, case to remain in the Superior Court.<br><br>Judge: Sullivan, Jennifer A | | |
| 06/28/2022 | Docket Note: 3 copies of the complaint, civil action cover sheet, civil tracking orders, 2 summonses and 1 copy of Determination regarding fees and costs sent to Self represented plaintiff this day | | |
| 09/19/2022 | Self-Represented Plaintiff Andre Bisasor's Request to extend time for service of process | 6 | |
| 09/24/2022 | Determination regarding extra fees and costs DENIED by judge , pursuant to G. L. c. 261, § 27C(2).<br>The application is DENIED with respect to the extra fees and costs indicated in the application, because I find that service can be effectuated by certified mail return receipt alone - Mass. R. Civ. P. 4<br><br>Judge: Dupuis, Hon. Renee P | 7 | Image |
| 09/24/2022 | Endorsement on Request for Waiver of Costs (#6.0): ALLOWED<br>Treating this filing as a motion to extend time for service, allowed, 60 day extension.<br><br>Judge: Dupuis, Hon. Renee P | | Image |
| 11/21/2022 | Self-Represented Plaintiff Andre Bisasor's Motion to extend time for service of process | 9 | Image |
| 11/29/2022 | Determination regarding normal fees and costs ALLOWED by judge waived in full , pursuant to G. L. c. 261, § 27C(2).<br>service by certified mail - plaintiff to provide to clerk, summons, complaint and addressed envelopes<br><br>Judge: Sullivan, Hon. Susan E | 9.1 | Image |
| 01/24/2023 | Endorsement on Motion to extend time to serve process on defendants (#9.0): ALLOWED<br>Plaintiff shall provide to clerk's office completed summonses, copies of complaint and civil action cover sheet, and envelopes addressed to defendants by 2/10/2023 and the clerk's office will arrange for service by certified mail.<br><br>Judge: Sullivan, Hon. Susan E | | Image |
| 02/03/2023 | Plaintiff Andre Bisasor's EMERGENCY Motion to extend time for service of process | 10 | Image |
| 02/03/2023 | Endorsement on Motion to extend deadline provided in Court's 1-24-23 ORDER (#10.0): ALLOWED in part. Extension for service of process to April 7, 2023. | | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| | Judge: Sullivan, Hon. Susan E | | |
| 04/05/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Motion to extend deadline in Court's 2-3-23 Order | 11 | Image |
| 04/05/2023 | Endorsement on Motion to Extend Deadline in Court's 2-3-23 Order (#11.0): DENIED | | Image |
| | Judge: Yessayan, Hon. Raffi N | | |
| 04/07/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Motion to reconsider the plaintiff's final (Emergency) motion to extend deadline in Court's 2-3-23 ORDER. | 12 | Image |
| 04/07/2023 | Endorsement on Motion to Reconsider the Plaintiffs Final (Emergency) Motion to Extend Deadline in Court's 2-3-23 Order (#12.0): ALLOWED Motion Allowed, to the extent that the plaintiff shall deliver all documents in accordance with the Court's previous Order to the clerk's office by 4/14/23. | | Image |
| | Judge: Yessayan, Hon. Raffi N | | |
| 04/14/2023 | General correspondence regarding Instructions for Service by Sheriff Via Certified Mail | 13 | Image |
| 05/04/2023 | Amended: First amended complaint filed by Andre Bisasor | 14 | Image |
| 05/05/2023 | Notice of 93A complaint sent to Attorney General First Amended Complaint | | Image |
| 05/15/2023 | Service Returned for Defendant Donais, Craig S: Service via certified mail; | 15 | Image |
| 05/15/2023 | Summons, returned SERVED  Applies To: Donais, Craig S (Defendant) | 15.1 | Image |
| 05/15/2023 | Service Returned for Defendant Hilliard, Russell F: Service via certified mail; | 16 | Image |
| 05/15/2023 | Summons, returned SERVED  Applies To: Hilliard, Russell F (Defendant) | 16.1 | Image |
| 05/15/2023 | Summons, returned SERVED certified mail regarding amended complaint.  Applies To: Donais, Craig S (Defendant) | 17 | Image |
| 05/15/2023 | Summons, returned SERVED  Applies To: Donais, Craig S (Defendant) | 17.1 | Image |
| 05/15/2023 | Summons, returned SERVED regarding amended complaint  Applies To: Hilliard, Russell F (Defendant) | 18 | Image |
| 05/15/2023 | Summons, returned SERVED  Applies To: Hilliard, Russell F (Defendant) | 18.1 | Image |
| 05/16/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Motion to allow service of process though the Clerks Office on newly added Defendants | 19 | Image |
| 05/22/2023 | Self-Represented Plaintiff Andre Bisasor's Motion for Default of Defendant Craig Donais and Affidavit | 20 | Image |
| 05/22/2023 | Self-Represented Plaintiff Andre Bisasor's Motion for Default of Defendant Russell Hilliard and Affidavit | 21 | Image |
| 05/22/2023 | Self-Represented Plaintiff Andre Bisasor's Motion to Transfer case to Taunton Location | 22 | Image |
| 05/23/2023 | Opposition to to Plaintiffs motion to Default him filed by Russell F Hilliard | 23 | Image |
| 05/23/2023 | Attorney appearance On this date William C Saturley, Esq. added for Defendant Russell F Hilliard | | |
| 05/23/2023 | Attorney appearance On this date Daniel R Sonneborn, Esq. added for Defendant Russell F Hilliard | | |
| 05/23/2023 | Self-Represented Plaintiff Andre Bisasor's Notice of intent to reply to Defendant Russell Hiliard's Opposition to Plaintiff's motion for Default | 24 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 05/23/2023 | Opposition to Plaintiff's motion for Default filed by Craig S Donais | 25 | Image |
| 05/23/2023 | Attorney appearance electronically filed. | | Image |
| 05/23/2023 | Attorney appearance<br>On this date Edwin F Landers, Jr., Esq. added for Defendant Craig S Donais, Defendant Donais Law Offices PLLC, Defendant Mary K Donais. | 26 | Image |
| 06/02/2023 | Endorsement on Motion to Transfer case to Taunton location (#22.0): DENIED<br><br>Judge: Yessayan, Hon. Raffi N | | Image |
| 06/02/2023 | Endorsement on Motion to allow service of process through the Clerk's office on newly added Defendant's (#19.0): No Action Taken<br>as this action is moot<br><br>Judge: Yessayan, Hon. Raffi N | | Image |
| 06/02/2023 | Endorsement on Motion for Default of Defendant Craig Donais (#20.0): DENIED<br>for the reasons stated in the opposition<br><br>Judge: Yessayan, Hon. Raffi N | | Image |
| 06/02/2023 | Endorsement on Motion for Default of Defendant Russell Hilliard (#21.0): DENIED<br>as for the reasons stated in the opposition<br><br>Judge: Yessayan, Hon. Raffi N | | Image |
| 06/09/2023 | Notice of appeal filed.<br><br>Applies To: Bisasor, Andre (Plaintiff) | 31 | Image |
| 06/09/2023 | Event Result:: Hearing for Funds scheduled on:<br>    06/27/2023 02:30 PM<br>Has been: Rescheduled    For the following reason: Request of Plaintiff<br>Jennifer A Sullivan, Presiding | | |
| 06/09/2023 | Notice of Removal to the United States District Court filed by<br><br>Applies To: Upton and Hatfield LLP (Defendant)<br><br>(Case 1:23-cv-11313) | 32 | Image |
| 06/12/2023 | ORDER: Endorsement Upon Further Consideration of Plaintiff's "[Emergency] Motion to Allow Service of Process Through the Clerk's Office on Newly Added Defendants" (Paper #19):<br>After further consideration, plaintiff's Emergency Motion is ALLOWED. Upon initial review of this Emergency Motion, the court was under the mistaken impression that service of the complaint had actually been made upon the newly added defendants; hence the initial margin endorsement reading, "No Action Taken as this matter is moot."<br>Plaintiff filed this Emergency Motion on 5/16/23. When the court reviewed this filing on 6/2/23, it also reviewed other documents in the docket, including the Notice of Appearance of Edwin Landers on behalf of the Defendants Donais Law Offices PLLC and Mary K. Donais, two of the newly added defendants (Paper #26, filed on 5/23/23, seven days after the plaintiff filed the Emergency Motion). After seeing this Notice of Appearance on behalf of the newly added defendants, the court mistakenly believed that, subsequent to the filing of plaintiff's Emergency Motion, service had actually been made upon the newly added defendants. The court's error in this regard was made quite clear when on 6/8/23, the court received plaintiff's "Emergency Request #1" (Paper #27) essentially addressing this same matter and informing the court that service of the complaint had not yet been made upon the newly added defendants. This being the case, the matter is obviously not "moot." Upon receipt of plaintiff's Emergency Request #1, the court treats it as a Motion to Reconsider the court's earlier endorsement on plaintiff's original Emergency Motion (Paper #19). Based on the foregoing, and upon further consideration, plaintiff's Emergency Motion to Allow Service of Process Through the Clerk's Office on Newly Added Defendants is ALLOWED.<br><br>Judge: Yessayan, Hon. Raffi N | 33 | Image |
| 06/12/2023 | Affidavit of Service/Return of Service Confirmation - Mary K. Donais | 34 | Image |
| 06/12/2023 | Affidavit of Service/Return of Service Confirmation - Donais Law Offices | 35 | Image |
| 06/12/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Notice to<br>the Clerk/Court of the Improper Filing & Incorrect Date of Filing by Defendant Upton & Hatfield of a Notice of Removal to Federal Court | 36 | Image |
| 06/12/2023 | Notice of appeal filed.<br><br>Applies To: Bisasor, Andre (Plaintiff) | 37 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 06/12/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Motion to Enter Default Against Defendant Craig Donais and Affidavit Based on Additional/New Information or in the Alternative [Emergency] Motion for Reconsideration of Plaintiff's Motion for Default of Defendant Craig Donais and Affidavit | 38 | Image |
| 06/12/2023 | Self-Represented Plaintiff Andre Bisasor's EMERGENCY Motion to Enter Default Against Defendant Russell Hilliard and Affidavit Based on Additional/New Information or in the Alternative [Emergency] Motion for Reconsideration of Plaintiff's Motion for Default of Defendant Russell Hilliard and Affidavit | 39 | Image |
| 06/12/2023 | Event Result:: Hearing for Funds scheduled on: 07/10/2023 03:00 PM Has been: Canceled      For the following reason: Case Disposed Comments: Case removed to US District Court Hon. Raffi N Yessayan, Presiding | | |
| 06/12/2023 | Case transferred to United States District Court. (Case: 1:23-cv-11313) | | |
| | | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Transferred to another Court | 06/12/2023 | |
| | | |

# Exhibit 2

16.

ORIGINAL

# Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _2273 CV 00 430_

_ANDRE BISASOR_ , PLAINTIFF(S),

v.

_RUSSELL HILLIARD +_
_CRAIG DONAIS_ , DEFENDANT(S)

**SUMMONS**

BRISTOL,SS SUPERIOR COURT
FILED

MAY 1 5 2023

JENNIFER A. SULLIVAN, ESQ.
CLERK / MAGISTRATE

THIS SUMMONS IS DIRECTED TO _RUSSELL HILLIARD_ .(Defendant's name)

<u>**You are being sued.**</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  <u>**You must respond to this lawsuit in writing within 20 days.**</u> If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:

    a.  Filing or mailing your **signed original** Answer with the Clerk's Office for Civil Business, _BRISTOL SUPERIOR COURT- NEW BEDFORD_ Court, _441 COUNTY ST, NEW BEDFORD, MA 02740_(address), by mail or in person, **AND**

    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _679 WASHINGTON STREET # 8-206, ATTLEBORO, MA 02703_

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at <u>**www.mass.gov.courts/case-legal-res/rulesofcourt.**</u>

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on April 14, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and Complaint and Demand For Jury Trial, Civil Action Cover Sheet, Civil Tracking Order and Allowed Motion To Extend Time to Serve Process on Defendants by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.

Victoria A. Morales
Deputy Sheriff



CERTIFIED MAIL

91 7199 9991 7030 5126 5076

United States Postage
PITNEY BOWES
02 1P        $ 004.75⁰
0000886866      APR 14 2023
MAILED FROM ZIP CODE 02740



**BRISTOL COUNTY SHERIFF'S OFFICE**
**THOMAS M. HODGSON**
**SHERIFF**
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hilliard

579 Sagamore Avenue

Unit 9

Portsmouth, NH 03801-5567



UNITED STATES POSTAGE

PITNEY BOWES

02 1P          $ 001.08⁰
0000886866    APR 14 2023
MAILED FROM ZIP CODE 02740



**BRISTOL COUNTY SHERIFF'S OFFICE**
THOMAS M. HODGSON
SHERIFF
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hilliard

579 Sagamore Avenue

Unit 9

Portsmouth, NH 03801-5567

Case 1:23-cv-00374-JL-TSM   Document 85-1   USPS.com®- USPS Tracking® Results   Page 48 of 123

# USPS Tracking®

FAQs ＞

Tracking Number:

Remove ✕

# 9171999991703054852549

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to the original sender at 10:58 am on June 30, 2023 in NEW BEDFORD, MA 02740.

---

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

Feedback

## Delivered

**Delivered, To Original Sender**
NEW BEDFORD, MA 02740
June 30, 2023, 10:58 am

**Arrived at Post Office**
NEW BEDFORD, MA 02740
June 30, 2023, 5:47 am

**Arrived at USPS Regional Origin Facility**
SHREWSBURY MA DISTRIBUTION CENTER
June 27, 2023, 9:19 pm

**Unclaimed/Being Returned to Sender**
PORTSMOUTH, NH 03801
June 14, 2023, 2:19 pm

**Reminder to Schedule Redelivery of your item**
May 16, 2023

**Available for Pickup**

PORTSMOUTH, NH 03801
May 12, 2023, 5:56 am

**Notice Left (No Authorized Recipient Available)**

PORTSMOUTH, NH 03801
May 11, 2023, 3:32 pm

**Out for Delivery**

PORTSMOUTH, NH 03801
May 11, 2023, 6:10 am

**Arrived at Post Office**

PORTSMOUTH, NH 03801
May 11, 2023, 4:02 am

**Departed USPS Facility**

MANCHESTER, NH 03103
May 11, 2023, 3:24 am

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 6:23 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 4:50 pm

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 4:00 pm

**Departed USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 2:42 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 2:32 pm

**Arrived at USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 3:29 am

**Departed USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:36 am

**Arrived at USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:18 am

**Departed USPS Regional Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 10, 2023, 12:53 am

**Arrived at USPS Regional Origin Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 9, 2023, 4:59 pm

**Hide Tracking History**

---

## Text & Email Updates ⌄

---

## USPS Tracking Plus® ⌄

---

## Product Information ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# Exhibit 3

16.1

ORIGINAL

## Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _**# 2273 Cv00430**_

ANDRE BISASOR , PLAINTIFF(S),

v.

RUSSELL HilliarD , DEFENDANT(S)
+ CRAIG DONAIS

**SUMMONS**

BRISTOL,SS SUPERIOR COURT
FILED

MAY 15 2023

JENNIFER A. SULLIVAN, ESQ.
CLERK / MAGISTRATE

THIS SUMMONS IS DIRECTED TO  RUSSELL HilliarD  .(Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:

a.  Filing or mailing your **signed original** Answer with the Clerk's Office for Civil Business, Bristol Superior Court, 441 county st, NEW BEDFORD, MA 02740 (address), by mail or in person, **AND**

b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: 679 Washington Street, # 8206, Attleboro, MA 62703.

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on April 14, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and Complaint and Demand For Jury Trial, Civil Action Cover Sheet, Civil Tracking Order and Allowed Motion To Extend Time to Serve Process on Defendants by mailing both first class mail and certified mail return receipt requested to 159 Middle Street, Portsmouth, NH 03801.

Victoria A. Morales
Deputy Sheriff

CERTIFIED MAIL





UNITED STATES POSTAGE
PITNEY BOWES

02 1P
0000886866          $ 004.75⁰
                    APR 14 2023
MAILED FROM ZIP CODE 02740

91 7199 9991 7030 5126 5069



**BRISTOL COUNTY SHERIFF'S OFFICE**
**THOMAS M. HODGSON**
SHERIFF
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hillard
159 Middle Street
Portsmouth, NH 03801





**BRISTOL COUNTY SHERIFF'S OFFICE**
THOMAS M. HODGSON
SHERIFF
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hillard
159 Middle Street
Portsmouth, NH 03801

# USPS Tracking®

FAQs ›

Remove ✕

**Tracking Number:**

# 9171999991703051265069

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to the original sender at 11:34 am on May 15, 2023 in NEW BEDFORD, MA 02740.

___

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

### Delivered
**Delivered, To Original Sender**
NEW BEDFORD, MA 02740
May 15, 2023, 11:34 am

**In Transit to Next Facility**
May 14, 2023

**Arrived at USPS Regional Origin Facility**
SHREWSBURY MA DISTRIBUTION CENTER
May 12, 2023, 1:01 pm

**Unclaimed/Being Returned to Sender**
PORTSMOUTH, NH 03802
May 8, 2023, 6:06 pm

**Available for Pickup**
PORTSMOUTH, NH 03801
April 18, 2023, 5:51 am

**Notice Left (No Authorized Recipient Available)**

Feedback

PORTSMOUTH, NH 03801
April 17, 2023, 12:54 pm

**Departed USPS Destination Facility**

MANCHESTER, NH 03103
April 15, 2023, 11:11 pm

**Arrived at USPS Destination Facility**

MANCHESTER, NH 03103
April 15, 2023, 5:26 pm

**Departed USPS Regional Facility**

PROVIDENCE RI DISTRIBUTION CENTER
April 14, 2023, 10:45 pm

**Arrived at USPS Regional Origin Facility**

PROVIDENCE RI DISTRIBUTION CENTER
April 14, 2023, 10:41 pm

**Accepted at USPS Origin Facility**

NEW BEDFORD, MA 02740
April 14, 2023, 9:26 pm

**Pre-Shipment Info Sent to USPS, USPS Awaiting Item**

April 14, 2023

**Hide Tracking History**

---

**Text & Email Updates** ⌄

**USPS Tracking Plus®** ⌄

**Product Information** ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# Exhibit 4

18.

**ORIGINAL**

# Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2273 CV 00430

Andre Bisasor , PLAINTIFF(S),

v.

Russell Hilliard, et.al DEFENDANT(S)

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Russell Hilliard . (Defendant's name)

BRISTOL,SS SUPERIOR COURT
FILED

MAY 1 5 2023

JENNIFER A. SULLIVAN, ESQ.
CLERK / MAGISTRATE

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a *Bristol* copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:

    a.  Filing or mailing your **signed original** Answer with the Clerk's Office for Civil Business, *Superior court - New Bedford* Court, 441 County St., NEW Bedford, MA 02740 (address), by mail or in person, **AND**

    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: 679 WASHINGTON STREET, 8-206, ATTLEBORO, MA 02703

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on May 8, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and First Amended Complaint, Civil Action Cover Sheet and Plaintiff's Emergency Motion To Reconsider The Plaintiff's Final (Emergency) Motion To Extend Deadline in Court's 2-3-23 Order by mailing both first class mail and certified mail return receipt requested to 579 Sagamore Avenue – Unit 9, Portsmouth, NH 03801-5567.

Victoria A. Morales
Deputy Sheriff



CERTIFIED MAIL

91 7199 9991 7030 5485 2549



UNITED STATES POSTAGE
PITNEY BOWES

02 1P    $ 005.41⁰
0000886866    MAY 08 2023
MAILED FROM ZIP CODE 02740



UNITED STATES POSTAGE
PITNEY BOWES

02 1P    $ 008.79⁰
0000886866    MAY 08 2023
MAILED FROM ZIP CODE 02740



**BRISTOL COUNTY SHERIFF'S OFFICE**
THOMAS M. HODGSON
SHERIFF
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hilliard
579 Sagamore Avenue
Unit 9
Portsmouth, NH 03801-5567





UNITED STATES POSTAGE
PITNEY BOWES

02 1P        $ 010.05⁰
0000886866    MAY 08 2023
MAILED FROM ZIP CODE 02740



**BRISTOL COUNTY SHERIFF'S OFFICE**
**THOMAS M. HODGSON**
**SHERIFF**
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hilliard

579 Sagamore Avenue

Unit 9

Portsmouth, NH 03801-5567

Case 1:23-cv-00374-JL-TSM    Document 85-5    Filed 07/18/23    USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs ›

Remove ✕

Tracking Number:

# 9171999991703054852549

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to the original sender at 10:58 am on June 30, 2023 in NEW BEDFORD, MA 02740.

---

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

Feedback

### Delivered
**Delivered, To Original Sender**
NEW BEDFORD, MA 02740
June 30, 2023, 10:58 am

**Arrived at Post Office**
NEW BEDFORD, MA 02740
June 30, 2023, 5:47 am

**Arrived at USPS Regional Origin Facility**
SHREWSBURY MA DISTRIBUTION CENTER
June 27, 2023, 9:19 pm

**Unclaimed/Being Returned to Sender**
PORTSMOUTH, NH 03801
June 14, 2023, 2:19 pm

**Reminder to Schedule Redelivery of your item**
May 16, 2023

**Available for Pickup**

PORTSMOUTH, NH 03801
May 12, 2023, 5:56 am

**Notice Left (No Authorized Recipient Available)**

PORTSMOUTH, NH 03801
May 11, 2023, 3:32 pm

**Out for Delivery**

PORTSMOUTH, NH 03801
May 11, 2023, 6:10 am

**Arrived at Post Office**

PORTSMOUTH, NH 03801
May 11, 2023, 4:02 am

**Departed USPS Facility**

MANCHESTER, NH 03103
May 11, 2023, 3:24 am

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 6:23 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 4:50 pm

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 4:00 pm

**Departed USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 2:42 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 2:32 pm

**Arrived at USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 3:29 am

**Departed USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:36 am

**Arrived at USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:18 am

**Departed USPS Regional Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 10, 2023, 12:53 am

**Arrived at USPS Regional Origin Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 9, 2023, 4:59 pm

**Hide Tracking History**

---

**Text & Email Updates**                                    ⌄

---

**USPS Tracking Plus®**                                      ⌄

---

**Product Information**                                      ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# Exhibit 5

*18.1*

# ORIGINAL

## Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2273 CV 00430

ANDRE BISASOR , PLAINTIFF(S),

v.

RUSSELL Hilliard, et. al, DEFENDANT(S)

BRISTOL,SS SUPERIOR COURT
FILED

MAY 1 5 2023

JENNIFER A. SULLIVAN, ESQ.
CLERK / MAGISTRATE

### SUMMONS

THIS SUMMONS IS DIRECTED TO RUSSELL Hilliard . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:

    a. Filing or mailing your **signed original** Answer with the Clerk's Office for Civil Business, BRISTOL SUPERIOR COURT - NEW BEDFORD Court, 441 county St., NEW Bedford, MA, 02740 (address), by mail or in person, **AND**

    b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: 679 WASHINGTON STREET, #8-206, ATTLEBORO, MA 02703

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

Bristol, SS

I, Victoria A. Morales, Deputy Sheriff, in and for the County of Bristol, Commonwealth of Massachusetts, do hereby certify and return that on May 8, 2023 in compliance with MGL Chapter 223A section 6 subsection 3 I served the within named defendant, Russell F Hilliard, with a true attested copy of the within Summons and First Amended Complaint, Civil Action Cover Sheet and Plaintiff's Emergency Motion To Reconsider The Plaintiff's Final (Emergency) Motion To Extend Deadline in Court's 2-3-23 Order by mailing both first class mail and certified mail return receipt requested to 159 Middle Street, Portsmouth, NH 03801.

Victoria A. Morales
Deputy Sheriff

CERTIFIED MAIL



91 7199 9991 7030 5485 2532

UNITED STATES POSTAGE
PITNEY BOWES

02 1P        $ 014.20⁰
0000886866   MAY 08 2023
MAILED FROM ZIP CODE 02740

**BRISTOL-COUNTY SHERIFF'S OFFICE**
**THOMAS M. HODGSON**
**SHERIFF**
**108 COURT STREET, P.O. BOX 8928**
**NEW BEDFORD, MASSACHUSETTS 02740-8928**

Russell F Hilliard
159 Middle Street
Portsmouth, NH 03801





**BRISTOL COUNTY SHERIFF'S OFFICE**
**THOMAS M. HODGSON**
**SHERIFF**
108 COURT STREET, P.O. BOX 8928
NEW BEDFORD, MASSACHUSETTS 02740-8928

Russell F Hilliard
159 Middle Street
Portsmouth, NH 03801

# USPS Tracking®

FAQs ›

**Remove ✕**

Tracking Number:

## 9171999991703054852532

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to the original sender at 10:24 am on June 6, 2023 in NEW BEDFORD, MA 02740.

---

**Get More Out of USPS Tracking:**

    USPS Tracking Plus®

Feedback

### Delivered
**Delivered, To Original Sender**
NEW BEDFORD, MA 02740
June 6, 2023, 10:24 am

### Arrived at Post Office
NEW BEDFORD, MA 02740
June 6, 2023, 7:19 am

### Departed USPS Regional Facility
PROVIDENCE RI DISTRIBUTION CENTER
June 5, 2023, 10:31 pm

### Arrived at USPS Regional Origin Facility
PROVIDENCE RI DISTRIBUTION CENTER
June 5, 2023, 12:23 pm

### In Transit to Next Facility
June 4, 2023

### Arrived at USPS Regional Origin Facility

SHREWSBURY MA DISTRIBUTION CENTER
June 3, 2023, 11:59 pm

**Unclaimed/Being Returned to Sender**

PORTSMOUTH, NH 03802
May 31, 2023, 11:13 am

**Reminder to pick up your item before May 25, 2023**

PORTSMOUTH, NH 03801
May 16, 2023

**Available for Pickup**

PORTSMOUTH, NH 03801
May 12, 2023, 5:56 am

**Notice Left (No Authorized Recipient Available)**

PORTSMOUTH, NH 03801
May 11, 2023, 12:19 pm

**Distribution to PO Box in Progress**

PORTSMOUTH, NH 03801
May 11, 2023, 6:10 am

**Arrived at Post Office**

PORTSMOUTH, NH 03801
May 11, 2023, 4:27 am

**Departed USPS Facility**

MANCHESTER, NH 03103
May 11, 2023, 3:24 am

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 6:23 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 4:50 pm

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 4:00 pm

**Departed USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 2:42 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 2:32 pm

**Arrived at USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 11:58 am

**Hide Tracking History**

---

**Text & Email Updates** ⌄

---

**USPS Tracking Plus®** ⌄

---

**Product Information** ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# Exhibit 6

## Activity in Case 1:23-cv-11313 v. Donais et al

From: ECFnotice@mad.uscourts.gov (ecfnotice@mad.uscourts.gov)

To: courtcopy@mad.uscourts.gov

Date: Friday, June 9, 2023 at 10:54 PM EDT

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered by Sonneborn, Daniel on 6/9/2023 at 10:53 PM EDT and filed on 6/9/2023

| | |
|---|---|
| **Case Name:** | v. Donais et al |
| **Case Number:** | 1:23-cv-11313 |
| **Filer:** | Upton & Hatfield, LLP |
| **Document Number:** | 1 |

Docket Text:
**NOTICE OF REMOVAL by Upton & Hatfield, LLP ( Filing fee: $ 402, receipt number AMADC-9898752 Fee Status: Filing Fee paid) (Attachments: # (1) Civil Cover Sheet Civil Cover Sheet, # (2) Category Form Category Form, # (3) Exhibit 1 - Amended Complaint, # (4) Exhibit 2 - State Court Docket, # (5) Exhibit 3 - Previously filed Plaintiffs Affidavit Concerning Damages Amount for Craig Donais Case, Middlesex Superior Court Civil Action No. 2081CV00087, paper no. 11, filed November 12, 2020)(Sonneborn, Daniel)**

**1:23-cv-11313 Notice has been electronically mailed to:**

   quickquantum@aol.com

Daniel R. Sonneborn     dsonneborn@preti.com, jcrowley@preti.com

**1:23-cv-11313 Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-0
] [430f59918785e44209846349b092e02a73228f6c03bd829dc013182222879c11ccc
a2a3a532ac025e4389afe30a424c932e5f9288aae5d1f918ab69e1eba4c77]]
**Document description:**Civil Cover Sheet Civil Cover Sheet
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-1

] [03867de8a62b4f09724feac4592759cd935ee788351860c9d7d05a35378bdb3da4e
258b2a4a2378a5506e8b0e970096e6390ff274c10d4d9cb89d6173f5a02cd]]
**Document description:**Category Form Category Form
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-2
] [3bec2cb3145c868fce33ab2c181ef571a7a027aa0cb31c58da9ac8ab536ed922221
3bfc5d5a1d00d79a0c3eea92703295468d0c395100ba5bb48215a63c82b80]]
**Document description:**Exhibit 1 - Amended Complaint
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-3
] [ce2c7447178010bb4a870aa004f31f5b409e425614fc4ef88bc1b159a56024d761a
9eef5b72bb5b5c8b2ecc7ffda5fd24e6066a717a49574bbca5b6eb99799fb]]
**Document description:**Exhibit 2 - State Court Docket
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-4
] [15480e061321093790584746088e82fabb994963a9b11ccb329a6ed90b137788a45
fbed01890705841e6c7219a8ee69bcacc676d31cef0a0957b324caf4f5cf7]]
**Document description:**Exhibit 3 - Previously filed Plaintiffs Affidavit Concerning Damages Amount for Craig Donais
Case, Middlesex Superior Court Civil Action No. 2081CV00087, paper no. 11, filed November 12, 2020
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/9/2023] [FileNumber=10358841-5
] [606fd962b91dd8682376dcabe81f0b6da4acbbe726fa1c397ed771571d6c60748e7
4e92c3ba81e445cc2dd98bf083676b0b0b7a6277a2f0f84b4066713a1e639]]

# Exhibit 7

# USPS Tracking®

FAQs ›

Remove ✕

**Tracking Number:**

# 9171999991703054852549

Copy     Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to the original sender at 10:58 am on June 30, 2023 in NEW BEDFORD, MA 02740.

---

**Get More Out of USPS Tracking:**

     USPS Tracking Plus®

Feedback

### Delivered
**Delivered, To Original Sender**

NEW BEDFORD, MA 02740
June 30, 2023, 10:58 am

**Arrived at Post Office**

NEW BEDFORD, MA 02740
June 30, 2023, 5:47 am

**Arrived at USPS Regional Origin Facility**

SHREWSBURY MA DISTRIBUTION CENTER
June 27, 2023, 9:19 pm

**Unclaimed/Being Returned to Sender**

PORTSMOUTH, NH 03801
June 14, 2023, 2:19 pm

**Reminder to Schedule Redelivery of your item**

May 16, 2023

**Available for Pickup**

PORTSMOUTH, NH 03801
May 12, 2023, 5:56 am

**Notice Left (No Authorized Recipient Available)**

PORTSMOUTH, NH 03801
May 11, 2023, 3:32 pm

**Out for Delivery**

PORTSMOUTH, NH 03801
May 11, 2023, 6:10 am

**Arrived at Post Office**

PORTSMOUTH, NH 03801
May 11, 2023, 4:02 am

**Departed USPS Facility**

MANCHESTER, NH 03103
May 11, 2023, 3:24 am

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 6:23 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 4:50 pm

**Arrived at USPS Facility**

PORTSMOUTH, NH 03801
May 10, 2023, 4:00 pm

**Departed USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 2:42 pm

**Arrived at USPS Facility**

MANCHESTER, NH 03103
May 10, 2023, 2:32 pm

**Arrived at USPS Regional Facility**

NASHUA NH DISTRIBUTION CENTER
May 10, 2023, 3:29 am

**Departed USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:36 am

**Arrived at USPS Regional Facility**

MIDDLESEX-ESSEX MA DISTRIBUTION CENTER
May 10, 2023, 2:18 am

**Departed USPS Regional Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 10, 2023, 12:53 am

**Arrived at USPS Regional Origin Facility**

PROVIDENCE RI DISTRIBUTION CENTER
May 9, 2023, 4:59 pm

**Hide Tracking History**

---

**Text & Email Updates** ⌄

---

**USPS Tracking Plus®** ⌄

---

**Product Information** ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# Exhibit 8

BK 5094 PG 2290

Return to:

Russell F. Hilliard, Esq.
Upton & Hatfield, LLP
159 Middle Street
Portsmouth, NH 03801



C/H
L-CHIP
ROA067402

009533

2010 MAR 10 AM 10: 02

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

## QUITCLAIM DEED

Joanne R. Whiting, of Portsmouth, New Hampshire, grants to Joanne R. Whiting

and Russell F. Hilliard, husband and wife, of Portsmouth, New Hampshire (mailing

address: 579-9 Sagamore Ave., Portsmouth, NH 03801) as joint tenants with rights of

survivorship, with QUITCLAIM COVENANTS:

> Unit 9 of Tidewatch Condominium, a condominium located in Portsmouth,
> County of Rockingham and State of New Hampshire, as established by Tidewatch
> Associates, Inc., pursuant to New Hampshire R.S.A. 356-B by Declaration dated
> December 30, 1986 and recorded in the Rockingham County Registry of Deeds at
> Book 2653, Page 1156, and as subsequently amended.

Meaning and intending to describe and convey all the same premises conveyed to

the Grantor by deed of warranty dated September 9, 2003 and recorded at Book 4146,

Page 825, Rockingham County Registry of Deeds.

WITNESS my hand this ___5___ day of March, 2010.

Joanne R. Whiting

# Exhibit 9



# Contact Upton & Hatfield, LLP Today

## We are the Granite State's Law Firm

| First Name | Last Name |
| Phone | Email |

Are you a new client?

How can we help you?

☐ I acknowledge that I have read and agree to these terms and conditions.

Submit Form →



603-716-9777

Home

Testimonials

Videos

About Us

Practice Areas

Locations

Payments

Contact Us

Blog

f   in   ▶

**CONCORD OFFICE**
10 Centre Street,
P.O. Box 1090
Concord, NH 03302
603-716-9777
Map & Directions [+]

**PETERBOROUGH OFFICE**
20 Grove Street, Suite 130,
P.O. Box 574
Peterborough, NH 03458
603-945-5911
Map & Directions [+]

**PORTSMOUTH OFFICE**
159 Middle Street,
1st Floor
Portsmouth, NH 03801
603-605-0755
Map & Directions [+]

The information on this website is for general information purposes only. Nothing on this site should be taken as legal advice for any individual case or situation. This information is not intended to create, and receipt or viewing does not constitute, an attorney-client relationship.

© 2023 All Rights Reserved.
Site Map   Privacy Policy



SCORPION

# Exhibit 10

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                SUPERIOR COURT DEPARTMENT

| | | |
|---|---|---|
| ANDRE BISSASOR, | ) | **11/12/2020** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2081CV00087 |
| | ) | |
| CRAIG DONAIS; | ) | |
| Defendant. | ) | **RECEIVED** |
| | ) | |

## PLAINTIFF'S AFFIDAVIT CONCERNING DAMAGES AMOUNT FOR CRAIG DONAIS CASE

1. I, the plaintiff, being duly sworn, hereby depose and say:

2. The facts stated herein are based on my personal knowledge and are true, correct, and accurate.

3. I hereby provide the following affidavit concerning the procedural damages amount.

### PREFACE

4. First, it should be noted that, as a pro se plaintiff, I was not aware that the minimum procedural amount for damages was changed from $25,000 to $50,000 for superior court cases. This change was made effective only as of January 1, 2020. I filed this case on 1-9-20. I had no idea of this change at the time I filed this case. If I had known, I would have amended the complaint/civil cover sheet to indicate that damages exceeded $50,00. This is a simple error that can be fixed upon amendment of the complaint and/or civil cover sheet. NB: I submitted an amended civil cover sheet, attached to my response on 2-4-20.

5. NB: I have not yet served the complaint on the defendant as I have not yet received the summons from the court. I also intended to amend the complaint for other reasons, prior to service of process on the defendant.

6. In determining whether to dismiss the action, the judge should consider the amount reasonably likely to be recovered by the plaintiff and whether that amount is marginally or substantially higher than $50,000; whether the matter would be more appropriate for a jury of twelve or a jury of six; and whether resolution of the matter will be substantially delayed by dismissal, or particularly costly to the parties because of the number of filings that will need to be repeated in the Superior Court. A judge should also consider other relevant factors presented by the parties and whether the action is similar in scope to those that fit within the $50,000 limitation.

7. This is not a hearing on the merits. There should be no consideration of the strengths or weaknesses of the case. And there should be no credibility determinations made.

8. The only question before the court is whether there is no reasonable possibility that the claims could yield damages equal to or greater than $50,000. I made no preparations to address any other question

1

or issue before the court and for the respondent to try to suggest any other question would constitute a due process violation as I would be blindsided and not prepared, and would be a surprise to me.

9.  The claims are complex claims of defamation, discrimination, etc that are more suited to superior court litigation.

10. Changing courts would represent additional delay and more filings that would further complicate this matter.

11. Even if the court thinks it is a close call, the court has the discretion to accept the case.

12. The superior court allows e-filing and other forms of electronic or remote access, not readily available in district court. This would be more suitable and convenient for the plaintiff. District court may not have all of the e-filing facilities of superior court.

### Aggregation of claims

13. Where a single plaintiff has multiple unrelated claims against a single defendant, that plaintiff can aggregate those claims – that is, add the amounts together – to satisfy the amount in controversy requirement. The plaintiff in this case has stated several claims against the defendant, which when aggregated more than satisfies the requirement of $50,000 in damages, including but not limited to: defamation, discrimination/retaliation, breach of fiduciary duty, abuse of process, interference with contractual relations, negligence, misrepresentation, intentional infliction of emotional distress, invasion of privacy, false light, etc.

### Legal certainty test

14. The standard for dismissing a complaint for lack of meeting the amount in controversy is a rather high one in federal court. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed, only then can the case be dismissed. See: St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

15. This can be applied to the state court amount in controversy requirement.

16. Similarly, the rule governing dismissal for want of jurisdiction in cases brought in the federal court is that the sum claimed by the plaintiff controls if the claim is apparently made in good faith. Thus, the court is required to give deference to the plaintiff's stated damages.

17. NB: Proof of damages are not proper at the beginning of a case without discovery and an opportunity to marshal evidence of the extent of damages. At the time of filing this case, there is some "inherent uncertainty in the amount of damages."

## DAMAGES WILL EXCEED $50,000

18. I have pled claims for defamation, interference with contractual relations, intentional misrepresentation and intentional infliction of emotional distress and abuse of process and aiding/abetting in discrimination and retaliation based on race. There are adequate damages in this case more than $50,000.

19. For instance, the defamation damages are significant. Reputational damages affect economic, reputational, financial concerns. Emotional distress damages are also significant. Discrimination and dignity torts damages are also significant. Breach of fiduciary duty and fraud are also significant. Interference with contractual relations damages are also significant. This will be further shown below.

## DEFAMATION LEGAL STANDARD IN MASSACHUSETTS

20. Defamation per se will give rise to presumed damages for a plaintiff, meaning the plaintiff in question need not actually prove they suffered any injury or harm as a result of the statement in question.

21. Actual damages are the fair compensation of the plaintiff, which include:
    a. Harm to reputation
    b. Pecuniary out of pocket losses
    c. Lost future wages
    d. Emotional distress/mental suffering, etc.

22. NB: For mental suffering, a plaintiff can recover for any mental suffering that would be the "natural result" of the defamation. See Shafir v. Steele, 431 Mass. 365, 727 N.E.2d 1140 (2000).

## DEFAMATION AND DAMAGING STATEMENTS WERE INTENTIONALLY AND MALICIOUSLY INFLICTED BY MR. DONAIS

23. Mr. Donais made false statements about me that are defamatory and damaging to my reputation.

24. The very purpose of him making these statements was to damage me and harm my reputation and credibility.

25. He made a written statements to others saying that I accused him of race discrimination because he declined to represent me in a case against a defendant hotel, that I became upset and angry because he declined representation and thus accused him with no reason or basis of being a racist.

26. He also made to statements to others that implied or suggested falsely and maliciously that I was dangerous and suggesting falsely that I am capable of hurting and harming his wife and young child. He thus has attacked my character. This is tantamount to criminal defamation. This was based on nothing except that I am black. This is dog whistle racism intended to hurt and harm my reputation.

27. He has made false statements to others that I hacked or bugged his telecommunications systems at his office.

28. These statements were made to third parties and in a manner that was public.

29. The statements were statements of fact, not opinion.

30. The statements were not privileged.

31. The statements were made with malicious intent and reckless disregard of the truth.

32. The statements either caused me economic loss or are actionable without proof of economic loss.

33. These statements are capable of a defamatory meaning, especially in the context and manner in which Mr. Donais made them.

34. In making these statements, Mr. Donais was motivated by racial animus and intended exploit my race as a black man and use it against me.

35. The statements by Mr. Donais were false negative statements about me. It is analogous to a man saying that a woman falsely accusing him of rape. If the woman made no such accusation, then the statement is defamatory and harmful to her reputation and intended to create despise and contempt of her in the community. The same is true in this case where Mr. Donais false stated that I frivolously accused him of race discrimination as such a statement is likewise defamatory and harmful to my reputation and intended to create despise and contempt of me in the community and the public.

36. Mr. Donais' false and defamatory statements were gratuitously and maliciously made in order to harm, annoy, embarrass, humiliate and burden and oppress me as the plaintiff. It had no other purpose. Similarly, these statements were made in malice and reckless disregard of the truth.

37. Mr. Donais completely fabricated a lie and perjured himself in the process to publicly malign me. I felt utterly violated and hurt that someone—an attorney nonetheless--would exploit the issue of racism, which is something so painful for so many people in this country, just so he/his former client could win the case.  Mr. Donais was trying to undermine plaintiff/his spouse valid concerns and real experiences related to the discrimination and retaliation suffered at the Homewood Suites property, in order to make it seem as though plaintiff/his spouse were irrational and that were predisposed to groundlessly, frivolously, without any cause, falsely accuse any and every one of being racist (which plaintiff did not do and is completely false).

38. Similarly, given the racial nature of the perjury in this instance, this crime could also be construed, considered, or classified as a hate crime (at least at the federal level if not also at the state level).

39. Hate crimes are criminal acts motivated by bias or prejudice towards particular groups of people. To be considered a hate crime, the offence must meet two criteria: First, the act must constitute an offence under criminal law; second, the act must have been motivated by bias.

40. Mr. Donais fabricated and utilized his lie about racism to willfully intimidate Plaintiff and to interfere with and injure Plaintiff because of his race, and it was done in connection with Plaintiff's federally protected right to patronize a public accommodation. What Mr. Donais did not only qualify as a crime of perjury but also likely as a hate crime.

41. Hate crimes are by definition very damaging, both emotionally and otherwise.

42. Mr. Donais' acts are tantamount to a hate crime because it was motivated by racial animus and it was done to exploit my race to bring harm to me. He targeted me because I am black. He used his position as an officer of the court to use my race as a weapon against me. Blacks are vulnerable to these kinds of attacks and stirred up sensibilities. He wanted to make a caricature of me as despicable untrustworthy irrational human being. It is a form of racialized character-assassination and a racialized attack against me.

43. Mr. Donais only brought up that I accused him of racism because I am black. It was thus racially motivated. If I were white, such a fabricated lie would not stick.

44. Moreover, Mr. Donais wanted to intimidate me and to shut me up and to silence me. He was using this racial element to protect his colleagues and his friend and longtime client. He thus set out to damage me (and my wife) in on our pocketbook, in our housing, in our legal rights and in our case. He also essentially tried to interfere with our contract for housing by trying to wrongly and perjuriously influence the court against us.

## DEFAMATION DAMAGES CAUSED BY MR. DONAIS

45. In this case, the defendant defamed me, and this defamation by the defendant was also intended to interfere with my contractual relations with Homewood Suites of Nashua.

46. By his above described conduct, the defendant published or allowed to be published false, disparaging, defamatory, and materially misleading statements about me.

47. As described herein above, the defendant intentionally and with malice published false, disparaging, defamatory, and materially misleading statements about me with the intent to damage my reputation.

48. As described above, the defendant negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about me.

49. Defendant's false, disparaging, defamatory, and materially misleading statements are not privileged.

50. Defendant published or allowed to be published the false and defamatory statements with malevolent intent, ill-will and/or with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

51. Defendant' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject me to contempt and tended to and continue to tend to diminish the esteem, respect, goodwill and/or confidence in which I am held.

52. These statements are untrue and harmed me.

53. These statements made by the defendant are defamatory per se and have injured my reputation and exposed me to contempt and financial injury.

54. I have been harmed by the defendant' actions including insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to my reputation and personal humiliation, shame, and disgrace.

55. As a result of the malicious defamatory conduct on the part of the defendant, I have suffered economic and consequential damages.

56. Defendant' actions were malicious and showed intentional disregard for my rights, and accordingly punitive damages are appropriate against the defendant.

57. The defendant exhibited particularly egregious conduct and acted with malice or fraud. The defendant maliciously and willfully calculated its actions to harm me.

58. As a direct and foreseeable consequence of the defendant' defamation, I have suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to my reputation.

59. As a result, thereof, I have been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and emotional distress.

## BREACH OF FIDUCIARY DUTY / ABUSE OF PROCESS

60. Mr. Donais has inflicted significant harm upon me/my spouse in the district court and the superior court and in the public.

61. Firstly, Mr. Donais had inside knowledge of my self-disclosed understanding of the strategies, weaknesses, and discussions about my case from me directly. Inside knowledge of such information creates an automatic advantage to the defendants. If the reverse were true, and I had information about the strategies, weaknesses, and discussions about the defendants' approach to defending the case, there would be no doubt that I would have had an advantage. Such advantage can play out in subtle or not so subtle ways.

62. Similarly, Mr. Donais used his prospective client conversation with me against me, to directly inflict harm by defaming me and accusing me of falsely/frivolously accusing Mr. Donais of race discrimination because he did not take his case. This false accusation against me has sullied me and subjected me to humiliation in the court proceedings, with the implication that I am a frivolous liar

who plays the race card without rhyme or reason and is to be discredited as an irrational, unstable, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminishes my character and discredits him in the eyes of the court and in the public record.

63. If I had never spoken to Mr. Donais on 1-9-17 about a prospective client relationship, Mr. Donais could not have had the opportunity to fabricate this lie against me.

64. Mr. Donais has used his position as a prospective lawyer to me as a prospective client as a basis to injure me by falsely accusing me of falsely accusing Mr. Donais of race discrimination in the context of a conversation wherein I was seeking to form an attorney-client relationship with Mr. Donais, and wherein I shared with Mr. Donais certain confidential information, thus taking Mr. Donais into his confidences and placing his trust in Mr. Donais. Mr. Donais exploited and abused the trust that Plaintiff extended to Mr. Donais in seeking to have a conversation with him about our case. Mr. Donais turned around and has used that private privileged conversation as a basis to fabricate lies on me. This is an utter abuse and ethical travesty that has befallen me. This is a breach of fiduciary duty. This also goes to the conflict of interest. Mr. Donais was never going to be able to be loyal to me or my spouse, and the trust and confidences that I placed in him, because ultimately, he was loyal to Dave Akridge as a principal for the opposing party. His conflict of interest further created the fuel by which he found it useful to falsely accuse me, in order to harm and damage me, my spouse and our case in the interest of protecting and advancing the interests of the opposing party.

## FIDUCIARY DUTY AND ETHICAL DUTY | NOTE ON ETHICAL VIOLATIONS AND ATTORNEY DECEIT

65. The **allegations against Mr. Donais including lying, false swearing, perjury under oath, filing a false affidavit, as well as false statements to others and engaging in deceitful, fraudulent, and dishonest conduct**.

66. Mr. Donais' acts also includes a breach of fiduciary duty in that Mr. Donais not only violated rule 1.18 in intentionally engaging in a conflict of interest representation, but also violated rule 1.6 and rule 4.4 by divulging information obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client. Although the information divulged in Donais' 2017 affidavit contains numerous falsehoods especially including the accusation that my spouse accused him of race discrimination for not taking the case, the attempt to make such revelations violates the letter and spirit of Rule 1.18, Rule 1.6 and Rule 4.4. It was malicious act and represented an attempt to harm plaintiff/his spouse as prospective clients, in the interests of helping his client defendant Homewood Suites of Nashua and its key principal Dave Akridge who is a long-time friend, associate and client of Mr. Donais. This is a gross

7

breach of fiduciary duty. When prospective clients meet with layers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party. This is a logically sophisticated point that being made here. The false statement by Mr. Donais, about plaintiff accusing Mr. Donais of race discrimination, had no bearing on the issue of the disqualification motion of former co-counsel Karl Terrell (i.e. this motion was what prompted the defendants to obtain an affidavit from Mr. Donais). In fact, on January 11, 2017, Mr. Donais failed to tell Mr. Terrell or Mr. Akridge about this accusation from my husband when Mr. Donais disclosed to Mr. Terrell and Mr. Akridge what plaintiff said on the January 9, 2017 call. It clearly would not have been relevant then (even if it were true, which it is not true) which could be the only explanation that Mr. Donais could offer as to why he failed or forgot to mention it then (we know that the real reason he failed to mention it then was because it did not happen and it was thus a lie for him to state this later in March 2017, but I am using this point for illustrative purposes only) and it certainly would not be relevant in March 2017 when Mr. Donais drafted his affidavit wherein for the first time he concocted and fabricated this specious and false allegation against my husband. Mr. Donais intent was clear: to hurt, damage, harm, oppress, defame, scandalize my spouse. **This is forbidden by the rules. So even if Mr. Donais maintains that his affidavit is true, he still violated the rules of ethics. Hence Mr. Donais' violations are multiple, layered and intertwined with a web of layered misconduct making a very serious combinations of violations of ethics that rises to the level of extreme seriousness**.

67. Again, this is an intellectually sophisticated point in showing the reasoning that would still arrive at a violation of the rules of conduct by Mr. Donais even if he were telling the truth in his affidavit (which he is not). See Rule 1.6. Confidentiality of Information: "(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)." See also Rule 4.4: Respect for Rights of Third Persons: "(a) In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."

## INTERFERENCE WITH ADVANTAGEOUS RELATIONS OR CONTRACTUAL RELATIONS

68. I possessed a contractual and an advantageous relation with Hilton and thereby all Homewood Suites franchises.

69. I also had a contractual relation with Homewood Suites of Nashua.

70. The defendant intentionally interfered with the advantages of my relationship with Hilton as well as Homewood Suites of Nashua through improper motives or means.

71. As a result of the defendant's conduct, my advantageous relations may be irretrievably damaged. I have suffered and will continue to suffer substantial and irreparable harm.

72. I anticipated further advantageous relations with Hilton as well as Homewood Suites of Nashua in the future.

73. Mr. Donais malevolently sought to interfere with said contractual relations and advantageous relations. Said relations contain significant value. This value has been noted as being in the six figures, as an agreed in a settlement MOU that was reached after mediation and post-mediation negotiation with Homewood Suites of Nashua but was reneged upon when they sough to add new terms not agreed after the fact and thus settlement stalled. The point is that the scale of the damages was recognized by this agreed upon MOU that stated the value was in the six figures. Because of confidentiality concerns, I refrain from stating the actual amount here but should the court want more information, I can then provide it to the court.

74. By his above described conduct, the defendant has knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with my actual and potential advantageous relations and contractual relations.

75. As a result of the defendant's intentional interference, I have suffered and continues to suffer damages.

### INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

76. Defendant have caused harm to me, including stress, loss of sleep, emotional upset, anxiety, etc.

77. Defendant caused or created emotional distress for me.

78. Defendant knew that his actions towards or concerning me would cause emotional distress.

79. Defendant intentionally inflicted emotional distress on me when as a direct and proximate result of Defendant's actions and inactions, I was caused to suffer severe emotional distress as the result of which a reasonable person in my position would have suffered similar emotional distress under like circumstances.

80. I have sustained damages as a result of Defendant's intentional infliction of emotional distress.

81. Alternatively, I have pled a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

## DAMAGES FROM RACIAL BIAS/HATE CRIME

82. With respect to my claim of a hate crime of perjury animated by racial bias, the facts here will be before a jury and are likely to result in a verdict favoring me.

83. Courts have authorized compensation to a plaintiff for the injury caused by the defendant's wrongful breach of rights, and also have suggested that an action to redress racial discrimination might be likened to an action for defamation or some other dignitary tort[1].

84. Dignitary torts as injuries to the personality have been defined as follows: Though economic or physical loss may be associated with the injury, the primary or usual concern is not economic at all, but vindication of an intangible right... in a great many of these cases, the only harm is the affront to the plaintiff's dignity, the damage to his self-image, and the resulting mental distress.

85. There are three elements to the injury resulting from a dignitary tort: (1) economic loss; (2) emotional distress and other harm to the plaintiff's personality; and (3) loss of rights. Each of these three elements has been judicially recognized as an appropriate basis for an award of compensatory damages to a victim of discrimination related to their housing situation.

86. Loss of rights has also been recognized as an independent element of damages in discrimination cases[2]. In an early appellate decision, the Seventh Circuit directed the district court to compensate the plaintiff, in a discrimination case, "for the loss of her civil rights and any mental anguish suffered by her." The plaintiff was entitled to damages for her loss of rights, because "the deprivation of a constitutional right carries with it damages distinct from those which are embodied in the concept of humiliation and which deserve compensation."

87. Therefore, even when no mental anguish, emotional distress, or economic loss is shown, damages may be awarded simply for loss of rights.

88. I am entitled to protection from the feeling of inferiority -the "stigmatic" injury-resulting from racial bias. This is the type of injury the Court had in mind in Curtis v. Loether, when it described the race discrimination action by a black plaintiff as a dignitary tort and likened it to an action for defamation.

---

[1]  Over the years, a number of lower courts have treated discrimination cases as tort actions. See, e.g., Dillon v. AFBIC Development Corp., 597 F.2d 556, 562 (5th Cir. 1979); See also Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 901-02 (3d Cir. 1977).

[2] Examples of other early discrimination cases that have awarded compensatory damages for humiliation, embarrassment, or other forms of emotional distress are Bradley v. John M. Brabham Agency, Inc., 463 F. Supp. 27,32 (D.S.C. 1978) (award for emotional distress); Young v. Parkland Village, Inc., 460 F. Supp. 67,72 (D. Md. 1978) (award for emotional distress); Stevens v. Dobs, Inc., 373 F. Supp. 618, 623 (E.D. N.C. 1974) (award for mental anguish, humiliation, and embarrassment). 40 478 F.2d at 384. See also Seaton v. Sky Realty Co., 491 F.2d 634 (7th Cir. 1974) (award for embarrassment and humiliation); Wright v. Owen, 468 F. Supp. 1115, 1118 (E.D. Mo. 1979) (award for distress and humiliation); Harrison v. Otto G. Heinzeroth Mortgage Co., 430 F. Supp. 893, 897-98 (N.D. Ohio 1977) (award for plaintiff "upset and troubled" by a "very painful experience").

89. Courts have recognized that an individual's rights are something that can be infringed upon and create damages for which a person should be afforded relief. Civil rights then are economic rights functioning as legally enforceable claims which are structured in legislation.

**EMOTIONAL DAMAGES**

90. Plaintiff's damages are based on emotional distress, which will be based on testimony of the plaintiff and witnesses as well as the facts and circumstances of this case.

91. The defendant is in possession of certain supporting documents which will further reveal the extent of damages.

92. The plaintiff will likely also be able to prove significant emotional distress damages. Instead retaliation for raising certain complaints about the defendant's conduct, the defendants sought to punish and humiliate the plaintiff.

93. The plaintiff further believes that the plaintiff has the possibility of proving that the defendants' discriminatory and retaliatory conduct was of the nature that requires the imposition of punitive damages, which could greatly magnify the compensatory damages award. See Monteiro V. City of Cambridge, Civ. Action No. 01 -3727 (trial court affirmed 2008 jury award of $ 1,042,400 in compensatory damages and $ 3.5 million in punitive damages in single count of retaliation).

94. With respect to the plaintiff's claim of retaliation, a claim further animated by racial bias, the facts here will be before a jury and are likely to result in a verdict favoring the plaintiff. "'Retaliation is a separate claim from discrimination, 'motivated, at least in part, by a distinct intent to punish or to rid… someone who complains of unlawful practices.'" Prof. Lulu Sun v. Univ. of Massachusetts/Dartmouth, 2011 WL 2214047, *22 (MCAD 2011) quoting Ruffino, 908 F. Supp. at 1040.

95. Accordingly, in addition to his claims of discrimination and retaliation, the plaintiff is likely to prevail on their other tort claims as well such as defamation.

96. Emotional distress damages are available even where the plaintiff has not sought medical treatment. Medical testimony, although relevant, is not necessary. A plaintiff's own testimony may be sufficient to establish humiliation or mental distress[3]. Hence, expert medical testimony is not required in order

---

[3] See Williams v. TWA, 660 F. 2d 1267 (8th Cir. 1981). See also Hammond v. Northland Counseling Center, 218 F.3d 866 (8th Cir. 2000); Ross v. Douglas County, Nebraska, 234 F. 3d 391 (8th Cir. 2000). The U.S. Supreme Court has noted with respect to emotional distress damages that a genuine injury in this respect may be evidenced by one's conduct and observed by others. Carey v. Piphus, 435 U.S. 247, 264 n. 20 (1978). The Eighth Circuit has held that a plaintiff's own testimony may be adequate to support such an award and the testimony of family and friends is also probative. Kucia v. Southeast Arkansas Community Action Corp., 284 F. 3d 944, 947 (8th Cir. 2002) (plaintiff's own testimony enough); Morse v. Southern Union Co., 174 F. 3d 917, 925 (8th Cir. 1999) (affirming $100,000 emotional distress award where family members corroborated plaintiff's testimony); Kim v. Nash Finch Co., 123 F. 3d 1046, 1065 (8th Cir. 1997) ( award of $100,000 affirmed where plaintiff, his wife and his son testified regarding anxiety, sleeplessness, stress, depression, high blood pressure, headaches and humiliation). In one case the amount awarded the complainant was $75,000 in emotional distress damages, where the respondent placed the complainant in fear and the discriminatory act was

11

to award damages for emotional distress. The victim's testimony, or that of his family or friends has been found sufficient (see *Johnson v. Hale,* 940 F.2d 1192 (9th *Cir.* 1991; *Human Rights Commission v. LaBrie, Inc.,* 668 A. 2d 659 (1995)).

97. NB: Aggravated Damages: Aggravated damages are awarded where an element of aggravation is involved in the respondent's conduct. Such damages have been considered to be available where a person has acted high-handedly, maliciously, insultingly, or oppressively. Although it was initially held that such damages were not available in discrimination complaints, it is now clear that they are. An award of a larger amount of damages by way of aggravated damages serves to compensate the victim for damage occasioned by the defendant's conduct where an element of aggravation is involved in that conduct, and not to punish the defendant.

## CALCULATION OF DAMAGES

98. It should be noted that I have not yet been able to comprehensively and precisely calculate damages suffered and state that I am going to need the assistance of a damages expert to do so in a proper manner. I note that my damages are ongoing, and documentation related to these damages will be supplemented seasonably throughout the case. Moreover, regarding certain damages, the amount to be awarded is reserved for a jury to determine, as is, for example, the case for the punitive damages or emotional distress damages to be awarded. With respect to court costs and attorneys' fees, those will be determined upon petition to the Court after judgment in plaintiff's favor and cannot be ascertained at this juncture.

99. However, having said that, it should also be noted that, if I prevail on my claims, I will have available to me a full range of damages for compensatory damages, special damages, emotional damages, aggravated damages and punitive damages that could potentially approach the six figures range, or even exceed $1 million.

100.     Mr. Donais interfered with my contract with Homewood Suites of Nashua and Hilton Hotels. At a minimum, the value of the damages from that interference is in the six figures and this can been seen from the results of a mediation in 2018 which arrived a minimum value of compensation for damages (NB: this can been communicated to the court under seal or in camera, as that information is potentially confidential).

101.     As a result of the defamation of Mr. Donais, I have suffered lost opportunities, damage to relationship with Hilton; loss of rights; loss of social interaction; impact on relationships in the community, etc. I suffered humiliation due to these defamatory remarks by Mr. Donais. I have

---

done public. The complainant and her family were afraid to leave the house. The children experienced nightmares, their schoolwork suffered, and the complainant sought medical assistance.

suffered insult, mental suffering, fear and anxiety, mental pain and suffering, mental anguish, emotional distress, personal humiliation, shame, disgrace, mortification, hurt feelings, loss of enjoyment of life, severe anger, appetite loss, lack of energy, mood swings, and sleep disturbances in addition to impairment of my reputation and standing in the community.

102.     Based on all of the above I believe my actual economic damages and non-economic damages are worth at least minimally around $250,000, depending on the method of calculation/estimation. Furthermore, I believe some kind of punitive damages should be added. The total amount of damages should be estimated minimally to be around $350,000 to $400,000.

103.     An estimate of the calculation of my damages, minimally, can be seen as follows:

- Defamation - $100,000
- Dignitary tort/racial stigma/discrimination - $100,000
- Interference with Contractual Relations - $50,000
- Breach of Fiduciary Duty/ Malpractice - $50,000
- Emotional distress damages - $100,000
- Punitive damages - $100,000

- TOTAL ESTIMATED DAMAGES: $500,000

104.     NB: Even if the above estimate of my damages is off-base by 50%, this would still mean estimated damages of $250,000. In fact, if the above estimate of my damages is off-base by 75%, this would still mean estimated damages of $125,000. My estimate would have to be wrong by as much as 95% in order for the damages to fall below $50,000. This would not be reasonable by any measure.

105.     At this stage of the proceeding, the court cannot assess liability or chances of defendant liability being found. The court must assume that the defendant will be found liable for the claims. The court cannot investigate the facts as if it were making a summary judgment decision. The court cannot assess the sufficiency of the stated claims, to survive a motion to dismiss. The court cannot weight credibility or the truth value of any statements or the likelihood of prevailing on the claims. The court can only inquire as to whether there is any reasonable possibility that the claims, if found in my favor, could result in any jury awarding me more than $50,000 in damages. The court is required to give deference to the plaintiff's stated damages claimed. Only discovery and a trial on damages can ascertain the damages with certainty. Also, it is up to a jury to determine damages especially on the tort claims such as defamation.

106.     In order to assume that the damages for my claims as alleged cannot exceed $50,000, the court must assume a significantly under-estimated calculation of damages similar to the following:

- Defamation - $10,000
- Dignitary tort/racial stigma/discrimination - $5,000
- Interference with Contractual Relations - $5,000

- Breach of Fiduciary Duty/ Malpractice - $5,000
- Emotional distress damages - $10,000
- Punitive damages -$5,000
- _____
- TOTAL ESTIMATED DAMAGES: $40,000

107. This would not be reasonable by any measure. In a case like this, emotional damages alone can reasonably be expected to exceed $50,000 (in light of the case precedents cited in my previous pleading). Moreover, a jury could award punitive damages which significantly raises the possibility of a total award of over $50,000.

## SIGNED UNDER PAINS AND PENALTIES OF PERJURY

I hereby depose and saith under oath that the above statements are true and correct to the best of my knowledge and recollection.

Respectfully submitted,

_____
Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
(781) 492-5675

DATED:   November 6, 2020

14

# Exhibit 11

Case 1:23-cv-00374-JL-TSM Document 13-6 Filed 09/13/23 Page 92 of 123

Welcome to the Caselaw Access Project! We allow free access to up to 500 cases per person per day —
see our terms of use for details. Sign up for an account to use our API or apply for unlimited research
scholar access.

# Hardy v. Square D Co., 199 F. Supp. 2d 676 (2002)

April 10, 2002 · United States District Court for the Northern District of Ohio · Case No.
3:02 CV 7054

199 F. Supp. 2d 676

---

Case outline: Majority — Katz, District Judge.

Other formats: PDF, API

Citing cases: 6 cases cite to this case

View citation history in trends

Other databases:

**COURTLISTENER**

---

Brian J. HARDY, Administrator, etc., Plaintiff,

*v.*

SQUARE D COMPANY, et al., Defendant

United States District Court, N.D. Ohio, Western Division.

# Opinion

*MEMORANDUM OPINION*

Author: KATZ, District Judge.

Pending before this Court is Plaintiffs' Motion to Remand. Based upon careful
consideration of Plaintiffs' Motion, Defendant's Response, Plaintiffs' Reply,
and the entire record herein, the Court will grant Plaintiffs' motion and the
matter will be remanded to the Lucas County Court of Common Pleas.

*I. BACKGROUND*

On or about November 24, 1997, decedent James Milton Hardy was fatally in-
jured while working on a die casting machine at his employer Doehler-Jarvis
Toledo, Inc. Decedent's injuries allegedly were caused by a failure of a limit

switch manufactured by Defendant Square D Company ("Square D"). On May 4, 1998, Plaintiff Brian J. Hardy, Administrator of the Estate of James Milton Hardy, filed a wrongful death suit in the Court of Common Pleas, Lucas County Ohio. Plaintiff voluntarily dismissed that suit on December 28, 2000 and subsequently reached a settlement with Doehler Jarvis in an unknown amount.

On December 21, 2001, Brian Hardy refiled a wrongful death and survival action on behalf of James Milton Hardy and all wrongful death beneficiaries against Square D and John Doe Number One.[1] *677 Plaintiffs allege that Defendant Square D was negligent and is strictly liable with respect to "a limit switch and its component parts which were either designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold and/or rebuilt and/or reworked and/or reconditioned the limits switch at issue." Pls.' Mot. at 2. On December 27, 2001 Plaintiffs filed a First Amended Complaint.

677

The original complaint, along with summons, was received via certified mail by Square D's agent, CT Corporation System ("CT"), on December 27, 2001. The Complaint was postmarked December 24, 2001. On December 28, 2001, CT notified two individuals at Square D via email as to receipt of service and forwarded a copy of the complaint via Federal Express 2nd Day delivery. Square D alleges to have received a copy of the complaint on January 2, 2002. For reasons not made apparent to the Court, a copy of the original complaint is not a part of the record.[2]

Plaintiffs' First Amended Complaint allegedly was served, albeit it is not entirely clear to whom, on January 2, 2002. Square D alleges to have received a copy of the amended complaint on January 3, 2002. The record does not reveal the method of transmission or postmark date of the amended complaint. Plaintiffs assert, and Defendant does not contest, that the amended complaint "did not change any of the general standards or allegations in the original complaint." Pls.' Mot. at 2.

On January 30, 2002, Square D filed a Notice of Removal from the Lucas County Court of Common Pleas to the United States District Court, Northern District of Ohio, pursuant to 28 U.S.C. §§ 1441, 1446. As grounds for removal, Defendant asserted that "[t]his court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000."[3] Defs.' Notice at 2.

On February 6, 2002, Plaintiffs timely filed a motion to remand the matter to the state court. *See* 28 U.S.C. § 1447(c). Plaintiffs assert that Defendant's notice of removal was untimely filed because Square D did not file the notice within thirty days of receipt of the original complaint. The Court addresses below Defendant's numerous arguments in opposition to Plaintiffs' motion.

*II. DISCUSSION*

*A. Standard for Removal*

28 U.S.C. § 1446 governs the procedure for filing a notice of removal. Pursuant to this statute:

678

> *678 The notice of removal ... shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

Courts generally construe this statute strictly in favor of state court jurisdiction and resolve all doubts in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527, 534 (6th Cir.1999). "However, while the removal requirements are strictly applied, they should also be given practical effect in accordance with the statute's apparent intent." *Standifird v. Town of Boxborough,* 2000 WL 1530885, at *1, 230 F.3d 1347 (1st Cir.2000) (citing *Hendrix v. New Amsterdam Cas. Co.,* 390 F.2d 299, 301-302 (10th Cir.1968); *McGuigan v. Roberts,* 170 F.Supp. 372, 373-374 (S.D.N.Y.1959)); *see also Shelton v. City of Hartford,* 1999 WL 200695, at *1, 1999 U.S. Dist. LEXIS 4875, at *2 (D.Conn. Feb. 23, 1999). The party seeking removal bears the burden of establishing that removal is proper. *See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989). Courts generally regard a defendant's failure to comply with the statute's procedural requirements as grounds for remand.

The crux of the instant matter is the thirty day period in which a defendant must file the removal notice. The parties raise two primary issues regarding this filing period: (1) they dispute the applicability of Federal Rule of Civil Procedure 6 to the computation of time under the removal statute, and (2) they adopt different positions as to what constitutes "receipt," and what act therefore triggers the thirty day filing period. Although not explicitly addressed by the parties, a critical issue begging resolution arises from the fact that service was not accomplished through personal delivery but rather effectuated through mail service. This scenario requires the Court to determine whether "receipt" is to be construed in reference to the date of physical re-

ceipt of summons and/or complaint, or alternatively whether "receipt" instead properly is defined by reference to the relevant state statute governing service of process.

*B. Overview of the Parties' Claims*

Defendant asserts that Federal Rule of Civil Procedure 6 is applicable to the computation of time under the removal statute and offers two different calculations, each utilizing a different date as the trigger date for the thirty day removal period. Both scenarios, according to Defendant's calculations, result in a timely filing of Defendant's removal notice. In its computations Defendant uses: (1) January 2, 2002, the date on which Square D physically received a copy of the original complaint; and (2) December 28, 2001, the date CT sent notice of service to Square D. Defendant utilizes these dates because it asserts
679    that service upon its agent does  *679 not constitute "receipt" for the purposes of the removal statute. Defendant also relies upon application of Rules 6(a) and (e), which ostensibly extend Defendant's filing period by a number of days to account for weekends and mail time.

Plaintiffs assert that Rule 6 is inapplicable to computing the removal statute's filing period. Plaintiffs also argue that December 27, 2001, the date of service upon Square D's agent, CT, is the proper trigger date for calculating the thirty day filing period. Neither Plaintiffs nor Defendant make reference in their calculations to the date on which the summons and complaint were mailed.

As the applicability of Rule 6 to the removal statute is a matter of first impression in this district, and the Court finds no decision from the Sixth Circuit addressing this issue, the Court presents alternative analyses of the removal statute's thirty day filing period, both with and without reference to the Federal Rules' computation of time provisions. In its discussion of the applicability of Rule 6, the Court also addresses the parties contentions as to the sufficiency of service upon an agent for purposes of the removal statute's "receipt" requirement.

*C. Computation of the Removal Statute's Thirty Day Filiny Period*

Defendant first utilizes January 2, 2002, the date of actual physical receipt by Square D of the Complaint, to compute the statute's filing period. Using this date, the January 30, 2002 filing of the notice of removal is within the thirty day window. However, as discussed *infra,* the Court does not regard January 2, 2002, as the operative date for computing the filing period.

Alternatively, Defendant uses December 28, 2001, the date CT notified Square D of CT's receipt of summons and the original complaint. Using December 28 as a starting point, Defendant applies Rule 6(a) and concludes that "the 30 days set forth in § 1446 started on December 29, 2001 and ended on January 27, 2002." Def.'s Resp. at 5. Defendant then points to Rule 6(e) and adds three

days to extend the "period for filing the notice of removal … from January 27, 2002 until January 30, 2002." *Id.*

Plaintiffs assert that receipt by a designated agent constitutes receipt for purposes of the removal statute and thus argue that January 2, 2002 is not a proper starting point for the computation of the thirty days. Plaintiffs argue that December 27, the date CT received summons and service, is the proper starting point. Using this date, Plaintiffs argue that Defendant's notice was untimely filed. Plaintiffs arrive at this conclusion by arguing that Rule 6 is inapplicable to the computation of time because the "removal statute is to be construed strictly out of due regard for the rightful independence of state governments." Pls.' Reply at 3.

*1. Application of Federal Rule of Civil Procedure 6 to 28 U.S.C. § 1446(b)*

Preliminarily, the Court notes that by its express terms, Rule 6(a) appears to contemplate application to the removal statute. Federal Rule 6(a) provides:

> In computing *any period of time* prescribed or allowed by these rules, … or *by any applicable statute,* the day of the act … from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday.…

Fed.R.Civ.P. 6(a) (emphasis added).

*680*    Moreover, by its terms, Rule 6(e) is not limited, as suggested by some courts, merely to computing the time in which a party must effectuate service. *See, e.g.,*   *\*680  Skidaway Assoc., Ltd. v. Glens Falls Ins. Co.,* 738 F.Supp. 980, 981 (D.S.C.1990). Instead, the rule provides that "[w]henever a party has the right or is required to do some act … within a prescribed period after the service of a notice or other paper upon the party.…" Fed. R. Civ. P. 6(e). The Court does not construe this language as limiting application of the rule only to computing the time in which a party must effectuate service of process, but instead reads the rule as arguably applicable to computing the time in which any action is required of a party, so long as that required action is triggered by "service of a notice or other paper upon the party." Fed.R.Civ.P. 6(e).

Ultimately, this Court does not take issue with the theory that Rules 6(a) and (e) are applicable to the instant action, on the facts of this particular case.[4] However, the Court notes that the parties' computations in the instant action fail to acknowledge two important facts: (1) "receipt," as measured by the statute, is through either (a) "service" or (b) "otherwise"; and (2) in the instant action, "service," and therefore arguably "receipt" for the purposes of the removal statute, was effectuated through mail service. *See* 28 U.S.C. § 1446(b) (providing that the removal notice must be filed "within thirty days after the receipt by the defendant, *through service or otherwise* ") (emphasis added).[5] The latter point is critical because it appears that Rule 6(e) would be properly

read and applied only in light of a state's rules governing service of process.[6] Ohio Rule 5, which is nearly identical to the corresponding Federal Rule 5, provides that "[s]er-vice by mail is complete *upon mailing."* Oh. Civ. R. 6(B) (emphasis added). Common sense dictates that in instances of mail service, it is only upon reference to the mailing date as the service date, and therefore "receipt" date, that application of Rule 6(e) would comport with a strict construction of the removal statute and therefore be permissible.

In the instant action, Plaintiffs effectuated service of process through certified mail, and this was the manner by which Defendant, or specifically CT, first received a copy of the summons and complaint. Therefore, "receipt," for purposes of the removal statute, was through "service," and the trigger date would be December 24, 2001, the date Plaintiffs mailed the summons and complaint. Cognizant that "the day of the act ... from which the designated period of time begins to run shall not be included," Fed. R. Civ. R. 6(a), the Court calculates that the thirty day *681 period concluded on January 23, 2002. However, Rule 6(e) provides:

681

> Whenever a party has the right or is required to do some act ... within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Fed.R.Civ.P. 6(e). Applying this provision, Defendant would have had until January 26 to fie its removal notice. As this date falls on a Saturday, the last day on which Defendant could have filed is extended to Monday, January 28. *See* Fed. R. Civ. R. 6(a) (explaining that "[t]he last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days").

Defendant argues not only that is entitled to the additional filing time as provided for in Rule 6, but also that the proper trigger date for purposes of the time computation is the date of actual receipt. The Court views this as an unsound "have its cake and eat it too" approach, and finds that it would be not only inequitable but also contrary to the strict construction principle applied to the removal statute. Defendant cannot avail itself of an interpretation that allows it, in essence, to account for mail time by gauging "receipt" as the date of actual receipt, as opposed to date of mailing, and then add on an additional time period, which realistically would amount to a double accounting of the mailing period.

A number of courts have applied Rule 6 in computing the removal statute's filing period. *See Standifird v. Town of Boxborough,* 2000 WL 1530885, at *1, 230 F.3d 1347 (1st Cir.2000) ("notice of removal was timely filed, measured pursuant to Fed. R.Civ.P. 6(a), within thirty days of defendant's receipt of the complaint"); *Wells v. Gateways Hosp. & Mental Health Ctr.,* 1996 WL 36184, 76

F.3d 390 (9th Cir.1996) (using Rule 6(a) to extend filing deadline from thirtieth day, which landed on a Sunday, to the following Monday); *In re Diet Drugs Prods. Liab. Litig.,* 1999 WL 554584 (E.D.Pa. July 19, 1999) (permitting defendant to file on Monday, *ie.,* day thirty two, pursuant to Rule 6(a), when thirty day period expired on a Saturday; *Grossman v. ABC Appliance, Inc.,* No. 98-75211, 1999 U.S. Dist. LEXIS 2786, at *5 (E.D.Mich. Feb. 9, 1999) (determining pursuant to Rule 6(e) that "the thirty day period outlined in section 1446(b) is extended by three days where service was accomplished through the mail"); *Medina v. Wal-Mart Stores, Inc.,* 945 F.Supp. 519, 521 (W.D.N.Y.1996); *Barton v. Lloyd's of London,* 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); Orr v. *Trina, Inc.,* 1994 WL 28028 (N.D.Cal. Jan. 25, 1994) (concluding that because service was through certified mail, "[t]he limitation period also must include three days pursuant to F.R.C.P. Rule 6(e) for a total of 33 days"); *McGovern v. Mucklow,* 1992 WL 160639 (E.D. Pa. June 24, 1992) (determining that "[w]hen the party who is required to serve notice chooses to do so by mail, ... the opposing party receives an additional three days to remand the action"). Unfortunately, it is not clear from the facts set forth in these decisions whether these courts computed the removal statute's filing period from the service date as defined in the relevant state statute, or instead from the date of physical receipt by a defendant and/or its agent.

In making its determination, this Court finds instructive the rationale articulated in those decisions determining that Rule 6 is inapplicable to the removal statute. The Court does not necessarily agree that Rule 6 is inapplicable, but rather finds the reasoning nonetheless relevant to this Court's decision. Notably, a number of courts de- *682 dining to compute the removal statute's filing period in conjunction with Rule 6, particularly 6(e), have done so based upon the resulting "double accounting" noted above. *See, e.g., Mitchell v. Ky-Am. Water Co.,* 178 F.R.D. 140, 142 (E.D.Ky.1997) (finding it "illogical to apply Fed.R.Civ.P. 6(e), allowing for a three-day grace period to accommodate 'mail time', to the removal statute which states that the time-clock does not start ticking until after 'mail time' has run, i.e., after the defendant receives service"); *Connors v. Philadelphia,* 1994 WL 198659, - , 1994 U.S. Dist. LEXIS 6596, at *2 (E.D.Pa. May 20, 1994) (finding "no logical reason to add three days to the allotted period" because "the thirty-day period for removal did not begin to run until after Defendants received the Complaint in the mail").

The Court recognizes that Plaintiffs object to application of Rule 6 to the computation of time under the removal statute.[7] However, even if the Court were to apply Rule 6, Square D did not file its removal notice until January 30, 2002 and its notice thus was untimely, based upon the reasoning set forth above.

*2. Adequacy of service upon a party's agent*

Presuming for the sake of argument that the operative date is not the mailing date, but rather the date of actual physical receipt by Defendant, the Court still determines that Defendant's removal notice was untimely filed. The

Court discusses below the parties contentions regarding what date properly is regarded as the "receipt" date for calculating the filing period.

Plaintiffs assert that receipt, and therefore the thirty day filing period, commences "when notice is received by one authorized to accept service of process," Pls.' Reply at 5, and thus argue that "the thirty day computation of time prescribed by the removal statute began on the date of initial service to Defendant on December 27, 2001." *Id.* at 6.

Defendant cites to *Cygielman v. Cunard Line Ltd.,* 890 F.Supp. 305 (S.D.N.Y.1995), which purportedly supports Defendant's argument that "the time for removal runs from receipt of the pleading by the defendants rather than the statutory agent." Def.'s Resp. at 4. In *Cygielman,* the court determined that a "defendant's right to a federal forum ought not to depend upon the rapidity and accuracy with which statutory agents inform their principals of the commencement of litigation against them." *Cygielman,* 890 F.Supp. at 307. However, Defendant's rebanee upon that case is misplaced.

Despite Defendant's assertion that drawing a distinction "between a statutory agent and CT ... ignores the limited purpose served by CT," Def.'s Resp. at 4, the cases cited in *Cygielman,* and a number of cases citing *Cygielman,* make precisely such a distinction. *See Skidaway Assoc., Ltd. v. Glens Falls Ins. Co.,* 738 F.Supp. 980, 982 (D.S.C.1990) ("service on a statutory agent ... does not start the running of the removal statute time limitation period as would service on the defendant or an agent designated by the defendant"); *Farris v. Youngblood,* 248 F.Supp. 598, 599 (E.D.Tenn.1965) ("time for removal ... is computed from the date the defendant, or an agent appointed by him, actually re *\*683* ceives the process, as opposed to the date a statutory agent of the defendant receives the summons"); *Barber v. Willis,* 246 F.Supp. 814, 815 (N.D.Ga.1965); *Isbell v. Osgood,* 234 F.Supp. 602, 603 (E.D.Okla.1964); *Hall v. Bowman,* 171 F.Supp. 454, 455 (E.D.Mo.1959); *Mahony v. Witt Ice & Gas Co.,* 131 F.Supp. 564, 567 (W.D.Mo.1955); *see also Auguste v. Nationwide Mut. Ins. Co.,* 90 F.Supp.2d 231, 233 (E.D.N.Y.2000) (noting that "[a] few courts have recognized that these equitable concerns do not apply with the same force where a defendant has hand picked an agent, like CT Corporation System here, to receive service of process"); *Recyclers Consulting Group, Inc. v. IBM-Japan, Ltd.,* 1997 WL 615014, at *3-4 (S.D.N.Y. Oct. 3, 1997) (explaining the "significant distinction" between service on a statutory agent as opposed to a defendant's designated agent).

While this Court disagrees with the rather imprecise manner in which the aforementioned cases delineate between "statutory" and "designated" agents, the courts' rationale for doing so nonetheless is sound and applicable to the instant action. In these cases, the "statutory" agent really was a "default" agent, *i.e.,* an agent not personally "designated" by a defendant, but rather established through operation of law, such as an attorney general, highway commissioner, or insurance commissioner. Circumstances giving rise to service upon a default agent might include a party's failure to comply with a statute requiring the party to select an agent, or an inability to locate the se-

lected agent. In such circumstances, a state's corporation statute frequently will prescribe an alternate party upon whom service may or must be made. For example, in Ohio, foreign corporations, such as Square D, are required to "maintain an agent, sometimes referred to as the 'designated agent,' upon whom process against the corporation may be served" within the state. Ohio Rev.Code § 1703.041. Similarly, domestic corporations in Ohio (and Delaware as well) are required to "have and maintain an agent, sometimes referred to as the 'statutory agent,' upon whom any process ... may be served." Ohio Rev.Code § 1701.07. For foreign corporations, the secretary of state "shall be the agent ... if the corporation has failed to designate another agent when required to do so ..., or if the license of a corporation to do business in this state has expired or has been canceled." Ohio Rev.Code § 1703.19.

While most cases addressing the issue have made a distinction between a "statutory" agent on the one hand and a "designated" agent on the other, it is clear that the proper distinction, if to be made, is not on the arbitrary title or classification given to the agent, but rather on the role that a defendant plays in the appointment of the agent.[8] If a defendant, as in the instant action, specifically selects or designates, through contract or because compelled by statute to do so, an agent for purposes of receipt of service, then it stands to reason that such an agent will have a higher level of accountability to the defendant than a "default" agent. Conversely, if an agent, such as an attorney general or highway commissioner, is established by operation of law, without having been personally selected by a party, then such agent may not have the same level of accountability to a party regarding prompt notification and
684    *684 forwarding of service. In the latter scenario, it is arguably fair to diverge from the normal principle that service upon an agent constitutes service upon the principal party, and therefore compute the removal statute's filing period from date of receipt by a defendant, as opposed to its agent. *See Tech Hills II v. Phoenix Home Life Mut. Ins. Co.,* 5 F.3d 963, 968 (6th Cir.1993) (noting that "as a general rule, a complaint is considered received by a corporation when it is received by an agent authorized to accept service of process").

In the instant action, however, Defendant provides no compelling reason for the Court to depart from this well-established principle. *See Her Majesty the Queen,* 874 F.2d at 339 (noting that the party seeking removal bears the burden of establishing that removal is proper). Defendant does not assert that CT is not Square D's agent of choice, nor does it assert that CT was not authorized to receive service of process on Square D's behalf. Therefore, the Court regards the date of service upon CT, December 27, 2001, as the date of service upon Square D. Thirty days from December 27 falls on Saturday, January 26, 2002. Even if Defendant could avail itself of a carry over to Monday, as provided for in Rule 6(a), the thirty day period expired on Monday, January 28. Based upon the double accounting principle discussed above, it would not be appropriate to afford Defendant the three extra "mailing" days provided for in Rule 6(e). Similarly, even if the operative date were December 28, 2001, the date on which Square D received notice of service upon CT, Defendants removal notice was due on Sunday January, 27. Even assuming that Defendant

was entitled to a Monday carryover per Rule 6(a), the notice still was untimely. Using either date, the removal notice was timely only if Defendant can avail itself of the three day mailing period provided for in Federal Rule of Civil Procedure 6(e), which this Court has determined is not appropriate.

Ultimately, the Court is guided by the well-established principle that in deciding removal issues, courts generally construe the removal statute narrowly against removal, and doubts are resolved in favor of state court jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214, 1219 (1941); *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 492 (6th Cir.1999) (stating that "[a]ll doubts are resolved against removal"); *Brierly,* 184 F.3d at 534 (explaining that "in the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts").

*III. CONCLUSION*

For the foregoing reasons, Defendant failed to timely file its notice of removal, and the Court will grant Plaintiffs' Motion to Remand (Doc. No. 9).

IT IS SO ORDERED.

*JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for Remand (Doc. No. 9) is granted. The matter is remanded to the state court from which the action was removed, the Court of Common Pleas, Lucas County, Ohio.

1 . Square D asserts that it is the sole Defendant named in the action. Plaintiffs assert, and the caption on the amended complaint indicates, that John Doe Number One is listed as an additional defendant. However, Plain *677 tiffs' motion and reply list only Square D as a defendant and do not include "et al." in the case caption. Based upon the record before the Court, it is unclear as to the status of John Doe in this action.

2 .

> A defendant ... desiring to remove any civil action or criminal prosecution from a State court shall file in the district court ... a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant. ...

28 U.S.C. § 1446(a). The Court notes that the parties do not utilize in their computations any dates relevant to the filing, service, or receipt of the amended

complaint. As Defendant has not argued that it could not ascertain, from the face of the original complaint, that removal was proper, the Court's analysis centers on the dates applicable to the filing, service, and receipt of the original complaint.

3    . Plaintiffs are Ohio citizens. Square D is incorporated in Delaware and has its principle place of business in Illinois and thus is a citizen of those states.

4    . The Court makes clear that its reasoning as to the applicability of Rules 6(a) and (e) is based upon the particular facts of the instant case. Rule 6(e) obviously would be irrelevant where service is effectuated through personal delivery. That said, the Court notes that it perceives no inequity in applying Rule 6(a), regardless of the method of service, to computing the removal statute's filing period.

5    . The "or otherwise" language in the statute has been interpreted to address those situations, *e.g.,* in which mere filing, as opposed to service of a complaint is required by the local rules, or when a party receives a courtesy copy of a complaint prior to proper filing and service of the same. The Supreme Court in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), addressed when the removal statute's "receipt" requirement is satisfied in light of four different scenarios involving the cross-riming of service of summons and filing or service of the complaint. The Court ultimately concluded that a party must first be subject to a court's authority, *i.e.,* be properly served with summons, before receipt of a complaint can trigger the removal statute's thirty day filing period.

6    .As service was made while the action was subject to state court jurisdiction, state law determines when service is made; however, federal law defines the procedure for removal.

7    . In support of its argument that Rule 6 is inapplicable to the removal statute, Plaintiffs invoke the "receipt rule." Plaintiffs' reliance upon this rule is misplaced for two primary reasons: (1) the United States Supreme Court expressly rejected this rule in *Murphy Bros.;* and (2) even had the Supreme Court not abrogated the "receipt rule," the rule has no application to the instant inquiry because that rule addresses the cross-timing of the summons and complaint, which were served simultaneously in the instant action.

8    . This point is illustrated by the fact that the Ohio Code refers to an agent selected by a domestic corporation as a "statutory" agent, yet refers to an agent selected by a foreign corporation as a "designated" agent. Without proper consideration of the level of accountability of these agents to a defendant, blind adherence to the mere title given these agents would result in a vastly differ-

ent outcome for foreign and domestic defendant corporations seeking removal.

terms
privacy
accessibility

Site text is licensed CC BY-SA 4.0.
Source code is MIT licensed.
Harvard asserts no copyright in
caselaw retrieved from this site.
©2023 The President and Fellows
of Harvard University.

# <u>Exhibit 12</u>

```
                                    Volume:    I
                                    Pages:     1-40
                                    Exhibits:  0
```

            COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX COUNTY                         SUPERIOR COURT

```
* * * * * * * * * * *
                    *
ANDRE BISSASOR      *
                    *
v.                  *   Docket No. 2081CV00087
                    *
CRAIG DONAIS        *
                    *
* * * * * * * * * * *
```

 HEARING

     BEFORE THE HONORABLE CHRISTOPHER K. BARRY-SMITH

APPEARANCES:

For the Plaintiff:
Pro Se

BY:  PRO SE

For the Defendants:
Pro Se

BY:  PRO SE

                        Woburn, Massachusetts
                        Courtroom via Zoom
                        November 13, 2020


                    Sherri L. Breach
                    Approved Court Transcriber

**2**

1 I N D E X
2                                      PAGE
3 Court Findings                         22
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**3**

1        (Court called to order.)
2        (Parties present.)
3        (10:30 a.m.)
4        THE CLERK:  All right.  Can Mr. Donais hear
5 me?
6        MR. DONAIS:  I can, Your Honor.
7        THE CLERK:  Okay.  Very good.
8        And you are not -- you do not intend to turn
9 on your video, correct?
10        MR. DONAIS:  I'm not planning on it.
11        THE CLERK:  Okay.  I just wanted to make sure
12 that it wasn't that you couldn't get on.  All right.
13        And Mr. Hilliard --
14        MR. DONAIS:  (Indiscernible - 10:31:12 - poor
15 audio connection).  I'm just observing.
16        THE CLERK:  Okay.  And Mr. Hilliard, are you
17 here just as an observer as well?
18        MR. HILLIARD:  I'm just observing as well.
19        THE CLERK:  Okay.  Very good.  So --
20        MR. HILLIARD:  Thank you.
21        THE CLERK:  -- I am just waiting for Mr.
22 Bissasor to link in.
23        (Pause)
24        THE CLERK:  All right.  I think I -- all
25 right.  I think Mr. Bissasor calling in.  Let me admit

**4**

1 him as well.
2        Mr. Bissasor?
3        MR. BISSASOR:  Yeah.
4        THE CLERK:  Okay.  Can you hear me?  This is
5 Beatriz Van Meek.
6        MR. BISSASOR:  Yes, I can hear you.
7        THE CLERK:  Okay.  Very good.  Since you are
8 -- can you see your -- you're on the phone exclusively,
9 correct?
10        MR. BISSASOR:  Yes.
11        THE CLERK:  Okay.  Very good.  So just so you
12 are aware, Mr. Donais and Mr. Hilliard are both in the
13 Zoom as well, but they are just going to be observing.
14 That's all.  They're not participating in the hearing.
15        MR. BISSASOR:  Oh.
16        THE CLERK:  So you are going to be presenting
17 your position before Judge Christopher Barry-Smith this
18 morning who has joined us just now.  He is on as well
19 and he is the one who is going to be deciding what goes
20 on at this point -- from this point forward.
21        So let me just put you on speaker view here
22 for the judge to be able to focus if -- actually, there
23 aren't many people here.  So hold on a second.  Let me
24 do gallery instead.
25        All right.  So, Your Honor, with your

**5**

1 permission may I call the case?
2        THE COURT:  Yes.  Ms. Van Meek, there's
3 another person waiting and I don't know if we're
4 expecting anybody else.
5        THE CLERK:  No.  I only see the three that I
6 have here who are Mr. Donais, Hilliard and Bissasor.
7        THE COURT:  Oh, you know what?  I --
8        THE CLERK:  Is it the phone number?
9        THE COURT:  Yes.
10        THE CLERK:  Okay.  That's Mr. Bissasor.
11        THE COURT:  (Indiscernible - 10:34:07 - poor
12 audio quality)
13        THE CLERK:  Okay.
14        THE COURT:  Okay.  Yes, please.  If you want
15 to call the case.  Thank you.
16        THE CLERK:  Okay.  Very good.  Thank you,
17 Your Honor.
18        Your Honor, before you this morning is
19 Middlesex Superior Court Civil Action 2020CV87.  This
20 is a request for hearing in the matter of Andre
21 Bissasor versus Craig Donais, and it is actually a
22 request for hearing from Mr. Bissasor to reconsider the
23 issue surrounding the jurisdictional amount of his
24 case.
25        Mr. Bissasor, could you please identify

**6**

1 yourself to the Court and for the record?
2         MR. BISSASOR: Yes. Thank you. My name is
3 Andre Bissasor, plaintiff, the plaintiff.
4         THE COURT: Good morning, Mr. Bissasor.
5         And so I see Mr. Donais and Mr. Hilliard. Do
6 you want to introduce yourselves or how do you want to
7 handle that?
8         THE CLERK: Your Honor --
9         MR. HILLIARD: Well, Your Honor, my name is
10 Russ Hilliard. I'm an attorney in New Hampshire. I
11 represent Mr. Donais who is also an attorney in some --
12         THE COURT: Yeah.
13         MR. HILLIARD: -- related proceedings.
14         THE COURT: Okay. Well --
15         MR. HILLIARD: We're just observing.
16         THE COURT: Yeah. That's fine. Given the --
17 let me explain the process this morning, especially to
18 Mr. Bissasor.
19         The reason the defendants are observing is
20 that the notice that came out is -- it's strictly
21 issued by the Court. Mr. Bissasor, it's not that --
22 the reason is quite straightforward. Your civil action
23 cover sheet claimed damages of $25,000 or more. As you
24 know now, the jurisdictional amount in Superior Court
25 is $50,000. So the notice was issued that the case

**7**

1 would be sent to District Court simply because of that.
2         The way I would like to approach this hearing
3 this morning is to hear from you about damages. I will
4 tell you that for purposes of this -- I've read your
5 papers. There's a lot of information here. Most of it
6 has to do with the alleged merits of your claim. I'm
7 not especially interested in that because it can get
8 quite complicated.
9         I'm mostly focused on the following: If you
10 are correct, what can you tell me about damages you've
11 suffered? There might eventually be more proceedings
12 in this case where the defendants say that your case
13 should be dismissed or summarily judged because it
14 doesn't meet the defamation standards. But that's not
15 what we're about today. I'm just focused on if you
16 have a likelihood to recover more than $50,000.
17         So I'm going to presume that you can prove
18 defamation. And I'm going to ask you what damages
19 you've suffered as a result of what you allege in your
20 complaint.
21         So now I will hear from you, Mr. Bissasor.
22         MR. BISSASOR: Thank you so much, Judge.
23         I -- before we start, I wanted to clarify, so
24 is it that Mr. Hilliard and Mr. Donais will not
25 participate or say anything in this hearing; is that

**8**

1 correct?
2         THE COURT: I think that's their intention.
3 I will tell you if they change their mind and want to
4 be heard, I'm happy to hear them. The reason is -- I
5 think the reason they're taking their postures in this
6 hearing is because this was just something that the
7 Court did on its own and not a motion of theirs. But
8 my understanding is they're just here to listen.
9         But to be clear, they -- if they have
10 anything to offer, I will hear them. But mostly I want
11 to hear from you and not them.
12         MR. BISSASOR: Yeah. So the reason why I'm
13 asking that is because there are two preliminary issues
14 if they do intend to join (indiscernible - 10:38:02 -
15 not speaking clearly).
16         Number one is that I don't see that Mr.
17 Hilliard has entered an appearance on this case as of
18 yet, but I would like the Court to know that I intend
19 to move to disqualify him because he would be a witness
20 in this matter.
21         And so that's one issue.
22         The second issue is there are some
23 confidentiality issues in a related -- in a matter
24 that's in New Hampshire that is in the process of being
25 determined in a civil proceeding. And if they intend

**9**

1 to discuss things from that confidential situation,
2 then that's going to be a problem because it's going to
3 complicate the issue.
4         So I don't intend to discuss anything that
5 would be of a confidential nature from that proceeding,
6 but if they do intend to bring things up from that,
7 then we're going to have to address that with the Court
8 because it's going to complicate the issue in terms of
9 what can be discussed from that proceeding and what
10 cannot be.
11         THE COURT: All right. Well --
12         MR. HILLIARD: Your Honor, I don't -- Your
13 Honor, I don't intend to say anything today.
14         THE COURT: Okay. That's not going to be an
15 issue.
16         So let's return to the question I have. If
17 you're correct and Mr. Donais filed a affidavit that
18 you say was false and that turns out to be true, what
19 harm have you suffered?
20         MR. BISSASOR: Okay. So I would like to say
21 first of all, Your Honor, that the only reason really
22 why we're here today is because as a pro se party I was
23 not aware that there was a change in the requirement
24 from the $25,000 to proceed in Superior -- $25,000 --
25         THE COURT: Yeah. Yeah.

**10**

```
1      MR. BISSASOR:  -- was --
2      THE COURT:  I (indiscernible - 10:39:50 -
3  simultaneous speech)
4      MR. BISSASOR:  -- (indiscernible - 10:39:52 -
5  simultaneous speech).
6      THE COURT:  Mr. Bissasor, I read your --
7      MR. BISSASOR:  Yeah.
8      THE COURT:  -- papers.  I understand that.
9  And that's why instead of talking about the whole case,
10  I just want to talk about one thing because the only
11  question before me today is do you have -- is there a
12  likelihood that more than $50,000 are at issue in this
13  litigation.
14      So I understand the reason.  I'm not holding
15  it against you that you didn't write 50 instead of 25.
16  But we are --
17      MR. BISSASOR:  Right.  Right.
18      THE COURT:  -- where we are and I just want
19  to hear what damages you've suffered.
20      MR. BISSASOR:  Okay.  So in terms of the
21  damages, I -- you know, the defamation that has
22  occurred, if those were assumed to be true, those would
23  be significant.  I suffered from emotional distress and
24  harm.  My wife has also suffered emotional distress and
25  harm from the defamation.  The defamation carries a
```

**11**

```
1  presumed amount of harm that goes with it and so forth
2  in terms of reputational harm.
3      You know, and I should say also just
4  parenthetically that I am not a damages expert.  I
5  would probably try to enlist the assistance of someone
6  who can better explain how defamation damages and
7  (indiscernible - 10:41:18 - not speaking clearly)
8  reputations and brands and all those things.
9      And I should also mention that I'm also in
10  the process of trying to seek and obtain counsel, which
11  in the next couple of weeks I hope to be able to bring
12  on.
13      So I'm not by any means an expert on damages
14  and that isn't all (indiscernible - 10:41:34 - not
15  speaking clearly) articulate, especially at the outset
16  of a case and especially without discovery and further
17  production of evidence.
18      But to your question, I suffered tremendous
19  emotional damages, emotional damage that can be proven
20  by witness testimony, by testimony of my spouse and
21  officer's evidence  that will be presented in the
22  court.  And if the -- if the defamation is assumed to
23  be true, then emotional damages would go with that and
24  the reputation damage that goes with that would be, I
25  think, more than enough to satisfy the (indiscernible -
```

**12**

```
1  10:42:13 - not speaking clearly) requirement.
2      I should also state as I stated in my
3  pleadings, Your Honor, that the Court is generally,
4  from my understanding and correct me if I'm wrong, is
5  supposed to take note of the state of damages by the
6  plaintiff.  So there should be deference given to the
7  fact that I'm stating that there is more than $50,000
8  worth of damages.  In fact, in my pleadings I show that
9  the damages would be in the six figures or more.
10      And the Court, I believe, should take
11  deference to that and, you know, this -- and I know
12  you've read the pleadings, but I just want to say this
13  for the record, that if it were not but for the fact of
14  me making that little mistake -- well, I guess it's not
15  a -- it's a big -- it's probably not a little mistake,
16  but for me saying 25 instead of -- exceed -- I did not
17  say exceed 25,000 instead of saying the damages exceed
18  50,000, we would not be here because the Court would
19  have to, from my understanding, take that as
20  (indiscernible - 10:43:10 - not speaking clearly).
21      And so I've corrected that error.  I've
22  submitted it through a cover sheet amendment that does
23  say exceed 50,000 since I was notified of this issue.
24  And, you know, overall (indiscernible - 10:43:27 - not
25  speaking clearly).  Again, you know, the way in which
```

**13**

```
1  the defendant started to interfere with a proceeding
2  that was taking place when we got here, that to me
3  (indiscernible - 10:43:45 - not speaking clearly)
4  underlying, you know, ability to assemble the matter
5  with the defense (indiscernible - 10:43:54 - background
6  noise).
7      And it's also the situation where the value
8  of the case was discovered to be in the six figures.
9  And I can't go into detail right now about that because
10  it does involve a settlement negotiation situation,
11  which has been stalled and whatnot.  But the bottom
12  line is that the case has not been resolved and its
13  impact and its interference by the defendants in that
14  matter has, you know, interfered with that proceeding,
15  that litigation, those claims who the defendant
16  represented at one point and then no longer represents
17  them.
18      And I should be clear about that.  When he
19  represented them, that is when the majority of the
20  wrongful acts took place.
21      So the bottom line, Your Honor, is that the
22  -- you know, I want to point out, too, Your Honor, that
23  surrounding the issue of racial (indiscernible -
24  10:45:07 - not speaking clearly) which is what I
25  indicated in the pleadings, Your Honor, it's almost as
```

**14**

1  if you can compare it to the well known example of the
2  (indiscernible - 10:45:18 - not speaking clearly) that
3  occurred in Chicago.  That subjected Mr. Spooley
4  (phonetic) to amend and file a contempt in the
5  community because there was the exception of a
6  frivolous false claim of an accusation of racism.
7       And I use that as an example in my pleadings,
8  Your Honor, that Mr. Donais has all but accused me of
9  accusing him of racial discrimination in a frivolous
10  manner; that there was no conceivable way in which my
11  accusation against him that he was racially
12  discriminating against me at around the time in
13  question, there would be no way for it to be valid.
14  There is no way for it to make sense or it --
15       THE COURT:  All right.  Let me interrupt.
16  Let me interrupt for a second.  Let me interrupt
17  because you're getting into the merits now and I'm --
18       MR. BISSASOR:  Oh, I'm sorry.
19       THE COURT:  -- really just -- I think your
20  example --
21       MR. BISSASOR:  Oh, okay.
22       THE COURT:  -- is a good one about false
23  racism claims being covered widely in a particular city
24  or state or country that thereby hurts someone's
25  reputation.

**15**

1       One of the questions on my mind here is that
2  we don't seem to be dealing with a broad circulation of
3  alleged false acts.  It's an affidavit in a court
4  proceeding and I don't have any information that it was
5  publicized broadly.  So since we're talking about
6  reputation and emotional harm, I guess I'm curious for
7  your response in that regard.
8       I'm wondering who you think saw this and how
9  it hurt you because this is different than, you know, a
10  newspaper or a television station covering at length
11  something that turned out to be false.  This is much
12  more of a closed circuit.  That's why I'm wondering
13  about reputational harm issues alleged.
14       What's your answer to that?
15       MR. BISSASOR:  My answer to that, Your Honor,
16  would be first of all that, you know, these filings
17  that he made in an affidavit were in a public filing.
18  It's on record.  It's public, number one.
19       Number two, those accusations did affect the
20  underlying defendants and made them more (indiscernible
21  - 10:47:38 - not speaking clearly) to defend all
22  (indiscernible - 10:47:46 - not speaking clearly)
23  potential resolving the case resulting in, you know, a
24  pretty (indiscernible - 10:47:53 - not speaking
25  clearly).

**16**

1       So my argument would be (indiscernible -
2  10:47:57 - not speaking clearly).  It made them feel as
3  though my underlying claim of discrimination against
4  the other -- the hotel defendants.  They were emboldon
5  to say if I'm that crazy to accuse Mr. Donais falsely
6  of racial discrimination, there's no way I'm going to
7  prevail in court or with a jury.  And that was
8  (indiscernible - 10:48:19 - not speaking clearly) in
9  the court or even a jury (indiscernible - 10:48:24 -
10  background noise) with this statement.
11       And I should also point out that
12  (indiscernible - 10:48:45 - not speaking clearly)
13  attention in the press and in the news because the
14  matter did involve a related in-court New Hampshire
15  proceeding.  And that proceeding was published on the
16  news and it was taken up by the New Hampshire Bar.  It
17  was published all across New Hampshire about this case,
18  Your Honor.
19       So I would definitely say that it does meet
20  the broad publication requirement.
21       Furthermore, beyond that, Mr. Donais has also
22  beyond the court made statements to other people.  He
23  also went to the police in New Hampshire and provided
24  the affidavit to them because he was trying to obtain a
25  certain allegation against us with his connections

**17**

1  there at the New Hampshire police station.  And I would
2  argue retaliation because we had brought these claims
3  against him.
4       So --
5       THE COURT:  Well, let me get back -- let me
6  get back to my main question.  And it seems that the
7  main thrust of your damages contention is emotional
8  harm.  So let me just ask a few things about, you know,
9  sort of the manifestation of emotional harm.
10       Have you been employed and lost any jobs
11  because of this alleged false affidavit?
12       MR. BISSASOR:  I -- because of my situation,
13  I am -- you know, I'm an independent consultant, so the
14  way that this would damage me more so in terms of that
15  kind of (indiscernible - 10:50:29 - not speaking
16  clearly) employment.  But, yes, I was --
17       THE COURT:  But I --
18       MR. BISSASOR:  -- I --
19       THE COURT:  You used the word --
20       MR. BISSASOR:  (Indiscernible - 10:50:36 -
21  simultaneous speech).
22       THE COURT:  You used the word --
23       MR. BISSASOR:  (Indiscernible - 10:50:39 -
24  simultaneous speech).  I have damages.
25       THE COURT:  I want to know about --

18

1    MR. BISSASOR:  Yes.  It has damaged me in
2  that it damaged my professional reputation.  It damaged
3  my credibility.  It damaged my (indiscernible -
4  10:50:50 - not speaking clearly) in the community.
5    I should also mention that I work with the
6  NWCP in New Hampshire as a consultant and, you know, I
7  was called -- ironically, Your Honor, I was invited to
8  work with the New Hampshire NWCP and their efforts in
9  bringing the New Hampshire community together to
10  dialogue events and conferences between the National
11  Association of Police Chiefs in New Hampshire and the
12  local community of people of color.
13    And the reason why I was brought in is
14  because I have a background in conflict resolution and
15  negotiations, consulting, training and putting on
16  events and programs and so forth.  I learned that at
17  Harvard and at other universities and in other contexts
18  professionally as well.
19    So I was starting as a consultant.  So that
20  -- this whole situation ironically with them attacking
21  my character and making me feel as if I'm, you know,
22  this crazy person.
23    I should also point out, Your Honor, that in
24  the context of them going to the New Hampshire Police,
25  they also told the New Hampshire Police that I have --

19

1  pretty much that I was mentally ill and they thought I
2  was crazy, that I had a serious lapse in reality.  He
3  also told the New Hampshire Police that things that
4  would suggest that I'm a dangerous criminal.
5    For example, he told the New Hampshire Police
6  that they needed to get around the clock protection
7  from me and my wife because he was essentially in fear
8  that we would hurt and harm (indiscernible - 10:52:30 -
9  not speaking clearly) and his wife.  And they wanted --
10  he wanted special protective detail around the clock to
11  watch over and look over us, Your Honor.  And it was
12  based on nothing.  We didn't -- I have not had any
13  interaction with this gentleman other than one phone
14  call in January 2017.  I left a voice mail prior to
15  that when he called me back on January 9th.  And there
16  was a court proceeding on January 18th where we were
17  before the Court.  Those were the only times I've had
18  any interactions with Mr. Donais.  Other than that I've
19  had no interactions.
20    There's been no basis to say that I'm a
21  danger to him.  There's no -- (indiscernible - 10:53:07
22  - not speaking clearly), my wife and I.  We -- we stood
23  on the board with the Mayor of Boston for youth
24  competitions and judging youth competitions and doing
25  things.  I was part of my church in teaching.  I have a

20

1  bachelor's in theology.  (Indiscernible - 10:53:23 -
2  not speaking clearly), you know, as well.
3    So, you know, for him to suggest that I was a
4  dangerous criminal and he needs protection from me, his
5  wife and his children are in danger, Your Honor, it's
6  beyond the pale.  And it tarnishes my credibility.  It
7  tarnishes my character.  It's in public filings.  These
8  reports to the police are also public documents now.
9  Anybody who tries to look up any kind of (indiscernible
10  - 10:53:50 - not speaking clearly) with the New
11  Hampshire Police on my name would show that he has
12  written these false accusations against me, Your Honor.
13  And it damages me in the community.  It damages me with
14  the New Hampshire Police, with the work that I was
15  supposed to be doing with the New Hampshire Police and
16  whatnot.
17    THE COURT:  Do you have any reason to believe
18  that people have accessed it and it has harmed you?
19  That's what I'm asking.  I understand --
20    MR. BISSASOR:  Yes.  Yes, I do.  I do.  The
21  NWCP is aware --
22    THE COURT:  (Indiscernible - 10:54:12 -
23  simultaneous speech).
24    MR. BISSASOR:  The NWCP is aware of this
25  matter and it affects the issues with them --

21

1    THE COURT:  How has it affected --
2    MR. BISSASOR:  -- (indiscernible - 10:54:21 -
3  simultaneous speech).
4    THE COURT:  How has it affected your
5  relationship with them?
6    MR. BISSASOR:  Some of the events that we
7  were planning to do with respect to the NWCP and the
8  police are no longer being held at this point.  And
9  overall, Your Honor, it just -- you know, the thing
10  about the damages here, Your Honor, I want to point
11  out, too, is that from my understanding defamation can
12  be (indiscernible - 10:54:51 - not speaking clearly).
13  Right.
14    In this case I've established that there's
15  multiple people, multiple entities, multiple
16  organizations that Mr. Donais has provided or published
17  this information to.  It's people who -- you know, the
18  police chief, the detectives at the New Hampshire
19  Police are aware of this matter.  It's in public
20  filings.  It's in multiple courts.  The New Hampshire
21  Supreme Court published documents that was picked up by
22  the state.
23    In fact, at one point -- I should mention,
24  Your Honor, at one point I was trying to seek some
25  legal help with the underlying case and I was calling

22

1  around for some New Hampshire attorneys and the
2  attorneys said they were aware of the case because of
3  the full published line in the New Hampshire Bar and I
4  guess there are other email lists that go out to the
5  lawyers in New Hampshire whenever certain things are
6  published by the Supreme Court.
7       So, Your Honor, I will be able to show
8  there's no -- without doubt once we get into the
9  details of this case that there's wide publications,
10 there's multiple publications, and there's presumed
11 damages, Your Honor.  Once someone receives the
12 defamatory information which (indiscernible - 10:56:06
13 - not speaking clearly) community, it's presumed to
14 damage, particularly the stuff about the criminal
15 allegations, particularly that I'm a danger to him and
16 all of that.
17      THE COURT:  Is that in your complaint?
18      MR. BISSASOR:  What part?
19      THE COURT:  About him talking to the police?
20 I thought your complaint concerned an affidavit filed
21 in a court proceeding.  Now you're talking about some
22 other things.  Are they in the complaint?
23      MR. BISSASOR:  It's in the subsequent
24 response -- in the affidavit I provided Your Honor
25 because that's -- that  -- some of those acts have been

23

1  ongoing.  So I would have to amend the complaint as I
2  mentioned in the affidavit and I think in my response
3  previously that my intention is to amend the complaint
4  prior to serving Your Honor which I believe I have the
5  right to do as a matter of course to update the actions
6  and to get a little bit more thorough.
7       But I also intend to get some assistance to
8  the amendment as well just to make sure that
9  (indiscernible - 10:57:12 - not speaking clearly)
10 possible --
11      THE COURT:  (Indiscernible - 10:57:18 -
12 simultaneous speech) --
13      MR. BISSASOR:  -- allegations regarding the
14 issues with the New Hampshire Police was -- it is not
15 in the complaint, but it is in the subsequent affidavit
16 that I was asked to provide to the Court.
17      And I explain -- and I'm stating it on the
18 record that these are part of my damages.  These will
19 be able to be proved in the Superior Court.
20      I should also mention, Your Honor, just --
21 and I hope you know this is -- you know, but, you know,
22 I have some health issues that I'm dealing with, Your
23 Honor, and related to the COVID and whatnot.  And
24 eFiling them into your court is just more suitable and
25 it will allow me to be able to prosecute this case more

24

1  properly, Your Honor.  If I am to show up for a hearing
2  or anything like that, which I believe the District
3  Court, they're not as (indiscernible - 10:58:11 - not
4  speaking clearly) of the remote access.
5       THE COURT:  I understand.  I understand.
6       So the civil action cover sheet says $25,000,
7  but your position is it's more like a million dollar
8  case.  Do I have that correct?
9       MR. BISSASOR:  (Indiscernible - 10:58:29 -
10 not speaking clearly), but, yes.  It will be -- based
11 on the history of what I've researched, Your Honor, of
12 cases that involved defamation of similar nature seem
13 to be more in the million dollar range (indiscernible -
14 10:58:46 - not speaking clearly) on matters of
15 defamation like this, particularly where there's
16 aggravated circumstances, intentional, willful damages
17 that would render not only a sense of outrage, but also
18 in the sense of punitive and so forth.
19      THE COURT:  All right.  I understand your
20 position.
21      I'm going to take the matter under
22 advisement.  I'm going to take a look at what the law
23 says about how concrete the plaintiff needs to be about
24 damages at this stage of a defamation case, and I'll
25 make a decision on whether it's going to stay in

25

1  Superior Court or get sent to District Court.
2       I'll do that sometime next week and we'll get
3  those to everybody.
4       MR. BISSASOR:  Your Honor, one other thing is
5  that it's not just the defamation feature.  There are
6  other claims as well, and I think the law says that you
7  can aggregate the different claims together which
8  would, you know, be permissible against one defendant
9  to arrive at that.
10      Your Honor, I just want to say lastly, you
11 know, (indiscernible - 10:59:45 - not speaking clearly)
12 $50,000 case, I mean, each of the claims that I argue
13 in my pleadings, Your Honor, I think in my affidavit
14 and in my response that shows that what my
15 (indiscernible - 10:59:57 - not speaking clearly)
16 damages for each of the different claims are, where
17 there's the race claim, where there's the defamation
18 claim, there's the interference, where there's the
19 emotional --
20      THE COURT:  Okay.  I'll review your papers
21 carefully before making a decision.  But I have to end
22 the hearing.  I've got another one at 11:00.
23      Thank you very much.
24      MR. BISSASOR:  Okay.  Thank you.
25      THE COURT:  Thank you.

26

```
1        THE CLERK:  All right, Counsel.  This ends
2  the hearing for 10:30.  Thank you very much for your
3  attendance.
4        (Proceedings concluded at 11:00 a.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

27

```
1          C E R T I F I C A T I O N
2  I, SHERRI L. BREACH, DO HEREBY CERTIFY THAT THE
3  FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
   FROM THE
4  RECORD OF THE COURT PROCEEDINGS IN THE ABOVE-
   ENTITLED
5  MATTER.
6        I, SHERRI L. BREACH, FURTHER CERTIFY THAT
   THE
7  FOREGOING IS IN COMPLIANCE WITH THE
   ADMINISTRATIVE
8  OFFICE OF THE TRIAL COURT DIRECTIVE ON
   TRANSCRIPT
9  FORMAT.
10       I, SHERRI L. BREACH, FURTHER CERTIFY THAT I
11 NEITHER AM COUNSEL FOR, RELATED TO, NOR
   EMPLOYED BY ANY
12 OF THE PARTIES TO THE ACTION IN WHICH THIS
   HEARING WAS
13 TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY
   NOR
14 OTHERWISE INTERESTED IN THE OUTCOME OF THE
   ACTION.
15 _____           12/31/21 SHERRI L.
16 BREACH              DATE HUNT REPORTING COMPANY
17 12 CRAIN HIGHWAY, #2 GLEN BURNIE, MD 21061
   410-766-4868
```

28

```
1  The Commonwealth of Massachusetts OFFICE OF COURT
2  MANAGEMENT, Transcription Services
3            AUDIO ASSESSMENT FORM
4        For court transcribe:  Complete this
5  assessment form for each volume of transcript produced,
6  and include it at the back of every original and copy
7  transcript with the certificate page, word index, and
8  CD PDF transcript.
9        TODAY'S DATE:_12/31/21___TRANSCRIBER
10 NAME:___Sherri L. Breach_____
11       CASENAME:_Andre Bissasor v Craig Donais
12 DOCKET NUMBER: 2081CV00087
13       RECORDING
   DATE:__11/13/20_____TRANSCRIPT
14 VOLUME:_1____OF__1____
15       (circle one) TYPE:  FTR
16 QUALITY:  EXCELLENT    GOOD    FAIR    POOR
17       (circle all that apply) ISSUES (include time
   stamp): background noise  time stamp:_10:43:54;
19 10:48:24_low audio low audio at sidebar
20 __ simultaneous speech 10:39:50; 10:39:52; 10:50:36;
21 10:50:39;  10:54:12; 10:57:18__ speaking away from
22 microphone   other: _not speaking clearly__
23 _10:38:02; 10:41:18; 10:41:34; 10:42:13;
24 10:43:10; 10:43:27; 10:43:45; 10:45:18;
25 10:47:38; 10:47:46; 10:47:53; 10:48:19;
```

29

```
1  10:48:45; 10:50:29; 10:50:50; 10:52:30;
2  10:53:07; 10:53:50; 10:54:51 other:  poor audio quality
3  ____  _10:31:12; 10:34:07;
4        COMMENTS: This audio was horrible,.  The main
5  sound was coming from the courtroom  All the background
6  noise in the courtroom drowned out the audio from the
7  Zoom conference.  In addition, the parties appearing
8  via Zoom (judge and parties) were extremely difficult
9  to hear as they sounded like they were  a million miles
10 away from a microphone, and also were not speaking
11 clearly, therefore resulting in many, many
12 indiscernibles
13          1-1
14
15
16
17
18
19
20
21
22
23
24
25
```