# Exhibit 1

Welcome to the Caselaw Access Project! We allow free access to up to 500 cases per person per day — see our terms of use for details. Sign up for an account to use our API or apply for unlimited research scholar access.

# Marotta Gund Budd & Dzera LLC v. Costa, 340 B.R. 661 (2006)

March 31, 2006 · United States District Court for the District of New Hampshire · Civ. No. 05-CV-452-JD

340 B.R. 661

---

Case outline: Majority — Diclerico, District Judge.

Other formats: PDF, API

Citing cases: 11 cases cite to this case

View citation history in trends

Other databases:

**COURTLISTENER**

---

MAROTTA GUND BUDD & DZERA LLC and J. Richard Budd, III

*v.*

Pat V. COSTA and Robert H. Walker

United States District Court, D. New Hampshire.

### ATTORNEYS

*662 David M. Kohane, Jeffrey Milton Trau-rig, Michael D. Sirota, Cole Schotz Meisel Forman & Leonard PA (NJ), Hackensack, NJ, Peter G. Callaghan, Preti Flaherty Beliveau Pachios & Haley, Concord, NH, for Marotta Gund Budd & Dzera LLC and J. Richard Budd, III.

Charles A. Dale, III, David Himelfarb, Gadsby & Hannah, Boston, MA, Thomas J. Pappas, Wiggin & Nourie PA, Manchester, NH, for Pat V. Costa and Robert H. Walker.

## Opinion

*ORDER*

Author: DiCLERICO, District Judge.

The plaintiffs, Marotta Gund Budd & Dzera LLC ("MBGD") and J. Richard Budd, III, brought this state law action in state court in New York, alleging that the defendants defamed them by republishing statements originally made in motions filed in a bankruptcy case pending in the United States Bankruptcy Court for the District of New Hampshire. The defendants, Pat V. Costa and Robert H. Walker, removed the defamation action to the United States District Court for the Eastern District of New York, invoking its original jurisdiction over "all civil proceedings … arising in or related to cases under Title 11" of the United States Code. 28 U.S.C. § 1334(b).

The plaintiffs then moved to remand the action to state court for lack of subject-matter jurisdiction or, in the alternative, under either the "permissive" or "mandatory" abstention principles of 28 U.S.C. § 1334(c). *See, e.g., Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.),* 292 F.3d 61, 67-68 & n. 6 (1st Cir.2002). In response, the defendants opposed the motion to remand and cross-moved to transfer the case to this court under 28 U.S.C. § 1404(a), *663 which the plaintiffs opposed. The United States District Court for the Eastern District of New York (Ross, J.) granted the motion to transfer but took no action on the motion to remand, reasoning that the New Hampshire bankruptcy court, where this court could refer the motion, *see* 28 U.S.C. § 157, "is in the best position to determine whether this action is 'arising in' or 'related to' the pending

*663*

bankruptcy case." Order (Dec. 15, 2005), at 1. Once the case arrived here, the plaintiffs renewed their motion for remand or abstention and the defendants filed an objection. The plaintiffs also filed a reply to the defendants' renewed objection.[1]

At the outset, the court notes that, in accordance with Judge Ross's suggestion, the defendants have asked this court to refer the remand motion to the bankruptcy court; the plaintiffs have indicated that they do not object to that course. If this court lacks subject matter jurisdiction, however, it necessarily lacks the authority to refer the case to the bankruptcy court. *See Muratore v. Darr,* 375 F.3d 140, 147-48 (1st Cir.2004); *accord* Standing Order BK-1, *In re Referral of Title 11 Proceedings* (D.N.H. Jan. 18, 1994), *available at* http://www.nhd.usc-ourts.gov (referring cases which meet the standard for subject matter jurisdiction under section 1334(b)). This court must therefore decide for itself whether it has subject matter jurisdiction.[2]

*Standard of Revieiv*

In sparring over the issues of subject matter jurisdiction and abstention, the parties have accepted the factual allegations set forth in the complaint as true. The court will therefore do the same. *See, e.g., Gabriel v. Preble,* 396 F.3d 10, 11-12 (1st Cir.2005); *Muniz-Rivera v. United States,* 326 F.3d 8, 11 (1st Cir.2003). Although counsel for each side has submitted affidavits recounting certain events and appending certain filings from the bankruptcy proceeding, the court can consider these materials in ruling on the motion without necessitating an evidentiary hearing.[3] *See McIntyre v. United States,* 367 F.3d 38, 42 (1st Cir.2004); *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir.2001). When decided in this fashion, a motion to dismiss for lack of subject matter jurisdiction can be granted "only when the facts alleged in the complaint ... do not justify the exercise of subject matter jurisdiction." *Muniz-Rivera,* 326 F.3d at 11.

*Background*

664 | Budd is a principal of MGBD, a company "specializing in advising companies, creditors, investors, and other parties with interests in companies facing operational *664 and financial difficulties." Compl. ¶ 2. In November, 2004, MGBD entered into a management agreement with Robotic Vision Systems, Inc. ("RVSI") and Auto Image ID, Inc. (collectively, "the debtors"), two corporations that had just voluntarily filed for bankruptcy under Chapter 11. The agreement appointed Budd as the debtors' "Chief Restructuring Officer" and obligated the debtors to reimburse MGBD for his services and expenses in that regard.[4] The bankruptcy court subsequently issued an order that, *inter alia,* appointed Budd "as the person in control of' RVSI, or "the 'Controlling Person.' " Bkrtey. Ct. Order (Jan. 20, 2005), at 2.

Around this time, Costa, who remained RVSI's chairman, president, and chief executive officer, allegedly began making the statements about the plaintiffs which form the basis of their defamation action.[5] The plaintiffs claim that, in an e-mail to one of RVSI's consultants, Costa "falsely and maliciously accused Plaintiffs of 'improper actions' relating to the management of RVSI and engaging in 'assassination attempts' against Costa." Compl. ¶ 8. Costa also allegedly sent a letter to the Lehman Group, L.L.C., whose relationship to these matters is unclear, accusing Budd of various acts of malfeasance in managing RVSI, including "run[ning] a sham ... auction process" for the sale of one of RVSI's divisions and "perpetrating a fraud in a Federal court." *Id.* ¶ 10.

Costa subsequently filed a motion in the bankruptcy court seeking to oust Budd as RVSI's controlling person and to appoint a Chapter 11 trustee in his stead. According to the complaint, this motion contained a number of false statements about Budd, accusing him of "deceiving RVSI's shareholders and ... filing a false affidavit with the [bankruptcy] court." Compl. ¶ 12. Costa later filed a motion to modify and clarify the scheduling order the bankruptcy court had entered in connection with his motion to appoint a trustee, which allegedly-repeated many of the same false accusations about Budd set forth in Cos-ta's earlier filing. Costa allegedly made similar statements in other papers he filed in the bankruptcy court in response to motions by both the debtors and their counsel, Sheehan Phinney Bass + Green ("Sheehan Phinney"), to quash discovery demands he had made on them, also in connection with his motion to appoint a trustee.

The plaintiffs have disavowed any claim that Costa defamed them through the statements contained in these bankruptcy court filings. Rather, they assert that the defamation occurred when Costa posted those filings to a publicly available website, effecting a "re-publication" of the allegedly false state-

ments. Mot. Remand ¶ 5 (emphasis omitted); *accord* Compl. ¶ 34. The plaintiffs further assert that Costa defamed them in both (1) a letter he and Walker sent to Sheehan Phinney and (2) a letter Costa sent to Sheehan Phinney's co-counsel in representing the debtors, Drier LLP. These letters allegedly accused Budd of, *inter alia*, " 'perpetrating] a fraud on the RVSI Board of Directors, the company, and the [bankruptcy] court ....'" and " 'filfing] knowingly false affidavits....'" Compl. ¶ 23.

665    *665 MGBD, "a limited liability company of the State of New York," Compl. ¶ 2, and Budd, who resides there, commenced this action against Costa, a Massachusetts resident, and Walker, a New York resident, in Nassau County Supreme Court in New York on July 15, 2005. In response, the defendants answered, asserting a counterclaim under the New York "anti-SLAPP" statute,[6] then filed a timely notice of removal of the case to the District Court for the Eastern District of New York. The notice of removal invoked that court's "original jurisdiction over this action under 28 U.S.C. § 1334 in that this action is a civil proceeding arising in or related to a case under Title 11." Notice Remov. ¶ 3(d).

Meanwhile, on August 25, 2005, Costa and Walker moved the bankruptcy court for an order requiring RVSI to indemnify them against the defamation suit, to advance them their expenses in defending it, and to accord administrative priority to these claims under 11 U.S.C. § 503(b)(1)(A). Both the official committee of unsecured creditors and the debtors objected to this motion, arguing that the defendants' claims were not entitled to priority, and the defendants were not entitled to indemnification, because their actions giving rise to the defamation suit had conferred no benefit on the estate.

On October 11, 2005, the bankruptcy court converted the debtors' cases to Chapter 7 proceedings upon motion of the official committee of unsecured creditors. In light of this development, which necessitated the appointment of a Chapter 7 trustee, the bankruptcy court denied Costa's motion to appoint a Chapter 11 trustee as moot. The bankruptcy court also can-celled a scheduled hearing on the defendants' motion for indemnification and administrative priority.

Just after the appointment of a Chapter 7 trustee, MGBD relinquished its duties to the debtors and, on November 15, 2005, filed an application with the bankruptcy court for final approval of its fees and expenses.[7] With Costa's assent, the Chapter 7 trustee then sought a continuance of the hearing on this and other final fee applications to permit additional investigation on whether to object to them, including discussions with Budd and Costa. The court granted the order, setting April 7, 2006, as the deadline to file any objections to the fee applications, and May 5, 2006, as the date of the hearing. So far, Costa has not filed any objection to MGBD's final fee application, though he represents in his objection to the motion to remand that he intends to do so. The bankruptcy court has yet to schedule a hearing or take any other action on the defendants' August 25, 2005, motion for indemnification and administrative priority of their expenses in defending this action.

*Discussion*

As previously noted, section 1334(b) provides the federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

666    [8] The plaintiffs argue that their defa *666 mation action neither arises in nor is related to the debtors' bankruptcy case and that this court therefore lacks subject-matter jurisdiction. The defendants, however, maintain that this action both arises in and is related to the bankruptcy case.[9] The court will address these contentions in turn.

I. *Whether This Is an Action "Arising In" The Bankruptcy Case*

" 'Arising in' proceedings generally 'are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.' " *In re Middlesex Power Equip.*, 292 F.3d at 68 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)); *see also Steele v. Ocwen Fed. Bank (In re Steele)*, 258 B.R. 319, 321 (Bkrtcy.D.N.H.2001). The defendants characterize this action as such a proceeding because "[t]he alleged defamatory statements concern plaintiffs' appointment in the bankruptcy ease as fiduciaries of the Debtors and their 'improper actions' relating to the management of the bankruptcy estate" and therefore "would not have occurred but for the existence of the Bankruptcy Case." Br. Opp'n Mot. Remand at 8. The court believes that this argument depends on an overly expansive view of the standard for "arising in" jurisdiction.

As the Fifth Circuit explained in *In re Wood*, section 1334(b)'s grant of jurisdiction over civil proceedings arising in cases under title 11 "seems to be a reference to those 'administrative' matters that arise *only*

*in bankruptcy* cases."[10] 825 F.2d at 96-97 (emphasis added); *see also, e.g., Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.),* 935 F.2d 1071, 1076 (9th Cir.1991) (ruling that proceeding did not "arise in a case under title 11 because it is not a cause of action ... that only arises in title 11 cases"). The standard therefore does not amount to a "but-for" test, conferring jurisdiction over any proceeding that owes its existence to a particular bankruptcy case in the manner the defendants suggest. *See Stoe v. Flaherty,* 436 F.3d 209, 218 (3d Cir.2006). Indeed, the Third Circuit rejected a like argument in *Stoe.* There, the district court had exercised "arising in" jurisdiction over an action by the debtor's former employee to recover missed severance payments from its officers, reasoning that "because [the debtor] stopped making payments as a consequence of the bankruptcy, [the] claim would not exist, but for the bankruptcy filing." *Id.* (internal quotation marks omitted). Disagreeing with this conclusion, the Third Circuit held that "claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance,* could only arise in the context of a bankruptcy case." *Id.* (emphasis added).

Thus, while the defendants may be correct that they could not have made the allegedly defamatory statements about the plaintiffs' management of the debtors had the debtors not declared bankruptcy in the *667 first place, this point is irrelevant to whether the defamation action arises in the bankruptcy case within the meaning of section 1334(b). Like the plaintiffs action for missed severance payments in *Stoe,* there is nothing about the nature of a defamation action that limits its existence to bankruptcy proceedings.

Indeed, claims subject to "arising in" jurisdiction consist primarily of those proceedings peculiar to bankruptcy cases and denominated as core by section 157(b)(2): "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, and the like." 1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv], at 3-31 (Alan M. Resnick & Henry J. Sommer, eds., 15th ed.1995 & 2004 supp.).

The defamation action plainly does not fit any of those categories.[11] *Cf. Longchamps Elec., Inc. v. Rothenberg (In re Wrenn Assocs., Inc.),* 2004 WL 1746117, at *4-*6 (Bkrtcy.D.N.H. July 26, 2004) (treating mechanic's lien claims by subcontractor to recover against property owner for unpaid work as core proceedings in general contractor's bankruptcy because, *inter alia,* such claims "only valid to the extent that monies are owed the general contractor," so adjudicating them "will of necessity involve the determination of the amounts owed to the Debtor" and therefore "involve what is property of the estate" under § 157(b)(2)(A)).

The defendants also argue that this action arises in the bankruptcy proceeding based on a string of cases they cite for the proposition that "actions based on statements or conduct by fiduciaries in their capacity as such are clearly subject to the jurisdiction of the bankruptcy court." Br. Opp'n Mot. Remand at 8. By and large, these cases recognized "arising in" jurisdiction over state-law claims against a bankruptcy trustee or his representatives for actions taken on behalf of the estate, reasoning that the claims "would not have arisen but for the defendant's obligations and conduct as a trustee." *Kirk v. Hendon (In re Heinsohn),* 231 B.R. 48, 57-59 (Bkrtcy.E.D.Tenn.1999), *aff'd,* 247 B.R. 237 (E.D.Tenn.2000); *see also Carter v. Rodgers,* 220 F.3d 1249, 1254 (11th Cir.2000); *In re Harris Pine Mills,* 44 F.3d at 1437; *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.),* 155 B.R. 521, 525 (9th Cir.BAP1993); *Chambers v. Silliman (In re Bryan),* 308 B.R. 583, 586 (Bkrtcy.N.D.Ga.2004); *accord Walsh v. Nw. Nat'l Ins. Co. of Milwaukee, Wisc. (In re Ferrante),* 51 F.3d 1473, 1476 (9th Cir.1995) (treating trustee's claim against bond ensuring predecessor trustee's performance, based on his embezzlement of estate assets, as core proceeding).

*668 Based on these authorities, the defendants construct two syllogisms in support of their claim for "arising in" jurisdiction. The court believes both are flawed. The first syllogism likens the plaintiffs to trustees, and the defendants' allegedly defamatory statements to the claims against trustees, arguing that "such statements were based upon duties and obligations imposed on plaintiffs under bankruptcy law...." Br. Opp'n Mot. Remand at 11. But the defendants have not sued the plaintiffs for violating their duties under the bankruptcy code, *cf. In re Harris Pine Mills,* 44 F.3d at 1437, or even for actions they took in apparent furtherance of those duties, *cf. Heinsohn,* 231 B.R. at 57-59. Instead, the *defendants were themselves sued* for making allegedly defamatory statements accusing the plaintiffs of derogating from their duties in managing the debtors during the bankruptcy. None of the defendants' authorities extends "arising in" jurisdiction this far from the underlying bankruptcy proceeding. *Cf. Hoffman v. Roberto,* 85 B.R. 417, 422-23 (W.D.Mich.1988) (finding no "arising in" jurisdiction over defamation and related claims based on defendants' publication of court's reasons for appointing trustee in bankruptcy of plaintiffs business and commencement of baseless adversary proceeding against plaintiff).

As the defendants' second syllogism, they liken themselves to the trustees in the cited cases, arguing that, as the trustees' duties to the debtors compelled them to take the actions complained of there, so too did the defendants' similar duties compel them to make the allegedly defamatory statements here. The defendants' duties, however, existed prior to the bankruptcy filing, by virtue of serving as the debtors' officers or directors, rather than as a re-suit of the bankruptcy proceedings. Thus, unlike the duties of a trustee, the defendants' duties did not proceed from the bankruptcy case, so claims against them based on their purported allegiance to those duties do not arise in the bankruptcy case.[12] *Cf. In re Bryan,* 308 B.R. at 586; *In re Heinsohn,* 231 B.R. at 57.

For similar reasons, the defendants' heavy reliance on *Lorence v. Does 1 through 50 (In re Diversified Contract Servs., Inc.),* 167 B.R. 591 (Bkrtcy. N.D.Cal.1994), is misplaced. There, a former trustee sued the attorneys who represented her during the bankruptcy case, alleging that they had committed various torts under state law when they secretly informed the bankruptcy judge that the trustee had been defrauding the estate. *Id.* at 593. The bankruptcy court exercised "arising in" jurisdiction over the former trustee's claims because the defendants' "obligations to her arose in connection with a bankruptcy case." Furthermore, their alleged breach of those obligations was committed at and in connection with a hearing before the bankruptcy judge." *Id.* at 595.

The plaintiffs' defamation claim has neither of these features. It is not based on any particular duty that the defendants owe the plaintiffs, let alone one that arose in the bankruptcy case. Nor did the defendants' allegedly tortious behavior occur in the course of the bankruptcy proceedings. Although the defendants suggest otherwise, the complaint makes clear that the defamation claim is based on the defendants' repetition of certain allegations Costa initially made in his motion to appoint a trustee and related filings, rather than in the filings themselves. *In re Diversified Contract Servs.* does not support

669

*669 the exercise of "arising in" jurisdiction here.[13] The defamation action is not a proceeding "arising in" a bankruptcy case within the meaning of section 1334(b).

II. *Whether This Is an Action "Related To" the Bankruptcy Case*

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 105 (1st Cir.2005); *In re Middlesex Power Equip.,* 292 F.3d at 68. *As* these cases show, the First Circuit uses this formulation of the standard for "related to" jurisdiction, known as the *"Pacor"* test. *Balzotti v. RAD Inv.,* 273 B.R. 327, 329 n. 1 (D.N.H.2002); *In re Steele,* 258 B.R. at 322.[14] The defendants argue that the defamation action is thus "related to" the bankruptcy case in three ways: (1) Costa plans to object to MGBD's final fee application to the bankruptcy court on the same bases articulated through the allegedly defamatory statements, (2) "one of the Debt- or's last remaining assets, a malpractice claim against MGBD and Budd, could be adversely impacted by this defamation action, thereby affecting the ultimate recovery obtained by MGBD's creditors," and (3) the defendants have moved the bankruptcy court to require the debtors to indemnify them against the defamation action and advance them their legal fees in defending it. Obj. Renewed Mot. Remand at 2.

Essentially, the defendants' first two arguments reduce to the point that "if the allegations [the plaintiffs] claim in this suit are proven true, there would be little question that [they] breached their ... obligations to the Debtors," disqualifying MGBD from receiving its fees and rendering the plaintiffs liable for malpractice. Obj. Renewed Mot. Remand at 4. The defendants assert, and the plaintiffs do not dispute, that the truth of the complained-of statements will be an issue decided in the defamation case. But the defendants fail to explain, with reference to the standards of bankruptcy law or otherwise, how their allegedly defamatory allegations, even if true, would necessarily prevent MGBD from collecting its fees from the bankruptcy estate or support a malpractice action. This is a significant omission in light of the plaintiffs' argument that, because "the Bankruptcy Court's review of those fees will be perfunctory and *670 limited solely to a review of whether the fees MGBD received were contemplated by and conformed to the MGBD management agreements," it would likely be entitled to the fees even if the plaintiffs committed the alleged malfeasance.[15] Reply Br. at 18-19. Without any assistance from the defendants in this regard, the court cannot conclude that determining the truth of the statements at issue in this action will conceivably affect the bankruptcy estate. *See In re Asbestos Litig.,* 271 B.R. 118, 125 (S.D.W.Va.2001) (refusing to recognize "related to" jurisdiction based on removing defendants' "incomplete and indeterminate" showing).

670

As the third basis for "related to" jurisdiction over the defamation claim, the defendants assert that, be-cause they have sought indemnification against that claim from the debtors in the bankruptcy court, the outcome of this suit will conceivably affect whether the estate has to reimburse the defendants, and in what amount. Courts have taken different views on whether actions spawning indemnification claims against a debtor, or having the potential to do so, fall within their "related to" jurisdiction. *See* 1 Collier, *supra*, ¶ 3.01[4][c], at 3-27—3-29. In *Pacor* itself, however, the Third Circuit ruled that "related to" jurisdiction did not extend to a products liability claim against a distributor of the debtor's product, even though the distributor had responded by filing a third-party complaint against the debtor seeking indemnification. 743 F.2d at 996. The court reasoned that the products liability claim was "[a]t best … a mere precursor to the potential third party claim for indemnification," which, furthermore, would have no preclusive effect on the debtor. *Id.* at 995. Because "there would be no automatic creation of liability against [the debtor] on account of a judgment against" the distributor, the court distinguished cases ex-tending "related to" jurisdiction over a claim against a debtor's guarantor whom the debtor has agreed to indemnify, where a judgment against the guarantor "would automatically result in liability" against the debtor. *Id.*

Here, although the defendants have sought indemnification against the defamation claim from the debtors through the motion filed with the bankruptcy court, the debtors have opposed any such relief on the ground that the defendants' allegedly defamatory statements did not benefit the estate. Given this state of affairs, any favorable judgment the plaintiffs obtain in this action will not "automatically re-sult in liability" against the debtors. The possibility of indemnification from the bankruptcy estate, then, does not bring the defamation claim within this court's "related to" jurisdiction under the rule ar-ticulated in *Pacor. See Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.,* 73 B.R. 1018, 1023-24 (D.Me.1987) (applying *Pacor* in rejecting "related to" jurisdiction over claim against debtor's agent for acts undertaken in that capacity, despite debtor's agreement to indemnify agent, because "the indemni-fication provision is subject to a number of conditions that render [the] right to indemnification uncertain").

Although there are cases that have founded "related to" jurisdiction on potential indemnification claims, *see, e.g., Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.),* 86 F.3d 482, 494 (6th Cir.1996), the defendants have not brought any of those authorities 671 to this court's attention.[16] *Philippe v. Shape, Inc.,* 103 *671 B.R. 355 (D.Me.1989), is not such a case. There, the court exercised "related to" jurisdiction based on the absence of "any indication that [the claimed] indemnification is subject to any conditions, including those of the type found in *Pacor* and *Omni Hotels*" so that "a judgment in favor of the Plaintiff … would automatically result in indemnification lia-bility on the part of [the debtor]." *Id.* at 357. Because the defendants' claim for indemnification is dis-puted, *Philippe* is inapposite here.[17] Furthermore, given the First Circuit's continued allegiance to *Pacor,* this court is not free to apply a different rule. Because the defamation claim would not "automatically result in liability" against the debtor, the defendants' request for indemnification does not confer "re-lated to" jurisdiction here under controlling First Circuit law.

*Conclusion*

For the foregoing reasons, the plaintiffs' renewed motion for remand (doc. no. 8) is GRANTED on the ground that the court lacks subject matter jurisdiction. The court therefore does not reach the plain-tiffs' abstention arguments. The case is remanded to the Nassau County Supreme Court pursuant to 28 U.S.C. § 1447.

SO ORDERED.

1  . Both sides have requested oral argument on the motion, but neither "outlin[es] the reasons why oral argument may pro-vide assistance to the court" as required by L.R. 7.1(d). The requests are therefore denied.

2  . Similarly, the District Court for the Eastern District of New York should have decided whether it had subject matter juris-diction over this case before deciding to transfer it here. "Transfer under § 1404(a) is possible only if venue is proper in the original forum and federal jurisdiction existed there. If subject matter jurisdiction is lacking, there is no power to do any-thing with the case except dismiss" or remand it. 15 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice & Procedure* § 3844, at 332 (2d ed.1984 & 2005 supp.).

3  .The court has also taken judicial notice of certain other events in the bankruptcy case. *See Rodi v. S. New England Sch. of Law,* 389 F.3d 5, 12 (1st Cir.2004). That case actually represents two different petitions, *In re Robotic Vision Sys., Inc.,* No. 04-

14151-JMD, and *In re Auto Image ID, Inc.,* No. 04-14152-JMD (Bkrtcy.D.N.H. Nov. 19, 2004), which have been administratively consolidated.

4    . The bankruptcy court later approved this agreement as well as a subsequent amended and restated version of it. The latter version was approved over Costa's objection.

5    . The complaint alleges that Costa is "presently on administrative leave," but does not say when this leave began. Compl. ¶ 4. The complaint identifies Walker merely as "a former officer and director of RVSI...." *Id.* ¶ 5. The court will therefore assume for purposes of this motion that Costa and Walker were still officers or directors of RVSI at the time they made the allegedly defamatory statements.

6    . In general, this provision allows the defendant "in an action involving public petition and participation," as more specifically defined in the statute, to recover certain categories of damages from the plaintiff to that action. N.Y. Civ. Rights Law §§ 70-a, 76-a.

7    . Beginning in early 2005, MGBD had been compensated for its services on a monthly basis as a result of the court's approval of the amended and restated management agreement.

8    .In turn, section 157(b) empowers bankruptcy judges to decide "all core proceedings arising under title 11, or arising in a case under title 11," but not "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. §§ 157(b)(1), (c)(1).

9    . The defendants acknowledge that this action does not arise under title 11 within the meaning of section 1334(b).

10    . In their original brief in opposition to the remand motion, filed in the Eastern District of New York, the defendants argued that the Second Circuit had rejected aspects of the Fifth Circuit's holding in *Wood.* The First Circuit, however, appears to have embraced *Wood's* interpretation of the term "arising in" as it appears in both sections 1334(b) and 157(b), at least in dicta. *In re Middlesex Power Equip.,* 292 F.3d at 68; *In re Parque Forestal, Inc.,* 949 F.2d 504, 510 (1st Cir.1991), *overruled on other grounds, Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 14, 120 S.Ct 1942, 147 L.Ed.2d 1 (2000). The defendants do not argue to the contrary in their submissions to this court.

11    . The defendants rely on *Maitland v. Mitchell (In re Harris Pine Mills),* 44 F.3d 1431 (9th Cir.1995), for the proposition that "postpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." *Id.* at 1437 (footnote omitted). Although the court appears to have based this holding on 28 U.S.C. § 157(b)(2)(0), which defines core proceedings to include those "affecting the liquidation of the assets of the estate," the defendants do not convincingly explain how the defamation claim itself — as opposed to the statements forming the basis of it — is "for conduct arising out of" the sale of estate property. *See infra; cf. Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168 (1st Cir.1987) (ruling that debtor's breach of contract claim against purchaser of estate assets "falls within the literal wording of 28 U.S.C. § 157(b)(2)(0) ... because the claim arose out of the debtor's efforts to liquidate estate assets" and therefore qualifies as core proceeding).

12    . The court expresses no opinion on whether the defendants were, in fact, acting in accordance with their duties to the debtors in making the allegedly defamatory statements. As noted *supra,* that point has been disputed in the bankruptcy court by both the debtors and the creditors' committee.

13    . Likewise, the other cases cited by the defendants, in which courts took "arising in" jurisdiction over a debtor's malpractice claim against his attorneys for their work in the bankruptcy case, also fail to support "arising in" jurisdiction. *See Simmons v. Johnson, Curney & Fields, P.C.,* 205 B.R. 834, 836-41 (Bkrtcy.W.D.Tex.1997); *Billing v. Ravin Greenberg & Zackin, P.A.,* 150 B.R. 563, 565-67 (D.N.J.1993), *rev'd on other grounds,* 22 F.3d 1242 (3d Cir.1994); *accord Stanley v. First Nat'l Bank of Sparta (In re Murphy),* 213 B.R. 813, 817 (Bkrtcy.S.D.Miss. 1997) (exercising "arising in" jurisdiction over claim by creditor against its attorneys for malpractice allegedly giving rise to trustee's claim against creditor). Again, unlike attorneys who represent a party to a bankruptcy proceeding, the defendants accrued no duty as a result of the bankruptcy cases.

14    . The defendants argued before the District Court for the Eastern District of New York that other courts in the Second Circuit had adopted an alternative test for "related to" jurisdiction. Br. Opp'n Mot. Remand at 19. They do not urge any alternative test upon this court and, in fact, acknowledge that the *Pacor* test applies. Obj. Renewed Mot. Remand at 4. In any event, as this court noted in *Balzotti,* it is "obliged to apply the *Pacor* formulation by binding First Circuit precedent," despite criticism of it in some quarters. 273 B.R. at 329 n. 1.

15    . Naturally, this court expresses no opinions on the merits of MGBD's fee application, including the appropriate standard of review by the bankruptcy court, or the merits of any malpractice claim against the plaintiffs.

16    . In their brief in the Eastern District of *671* New York, the defendants discussed *Rubin Baum Levin Constant & Friedman v. Mushkin (In re Masterwear Corp.),* 241 B.R. 511 (Bkrtcy.S.D.N.Y.1999), where the bankruptcy court extended "related to" jurisdiction over a law firm's claim seeking indemnification from the directors of a debtor against an action the debtor had filed to recover legal fees paid to the firm. *Id.* at 514. Although the court recited the *Pacor* test, it ultimately applied a rule,

derived from district court cases, that " '[r]elated to' jurisdiction ... exists if a disputed or conditional indemnity claim has a 'reasonable legal basis.' " *Id.* at 515-16 (quoting *Back v. LTV Corp. (In re Chateaugay Corp.),* 213 B.R. 633, 640 (S.D.N.Y.1997)). The court concluded that the directors had "articulated a 'reasonable legal basis' " for their own indemnification claim against the debtor with reference to both the directors' conduct on behalf of the debtor and the relevant provisions of the debt- or's by-laws. *Id.* at 516-17. Here, in contrast, the defendants have not presented any such analysis to this court, but have simply attached a copy of the motion for indemnification they filed in the bankruptcy court to their opposition. In any event, the "reasonable legal basis" test conflicts with *Pacor,* which remains the law in this circuit.

17    . Although the defendants also discuss *In re Wrenn,* that case dealt with "arising in," not "related to," jurisdiction.

**Caselaw**
Search
API
Trends
Bulk Data
By Jurisdiction
Fetch PDFs

**Gallery**
CAP Labs
Research
Coursework
Fun Stuff
Community Apps
Our Apps
Community Tutorials

**Docs**
About CAP
Docs Overview
API
Bulk Data
Search

terms
privacy
accessibility

Site text is licensed CC BY-SA 4.0. Source code is MIT licensed. Harvard asserts no copyright in caselaw retrieved from this site. ©2023 The President and Fellows of Harvard University.