# Exhibit 6

UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS

ANDRE BISASOR, Plaintiff,

v.

CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC;
UPTON & HATFIELD, LLP; and MARY K. DONAIS, Defendants.

Case No. 1:23-CV-11313

## PLAINTIFF'S COMBINED OPPOSITION TO THE DONAIS DEFENDANTS' AND HILLIARD DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO G.L. c. 231, §59H ("ANTISLAPP MOTIONS")

1. I also OPPOSE the Donais' Defendants and the Hilliard Defendants' anti-slapp **motions**. This opposition hereby is combined to address both antislapp motions by the two sets of defendants (which largely repeat each other or feed off each other) and also incorporates by reference all of the factual and legal arguments found in the filings wherein I asserted my arguments, including all of the factual and legal arguments contained in the Amended Complaint and in Plaintiff's Combined Opposition to Defendants' Motions to Dismiss and in the attendant opposing affidavits.

2. Grounds for this opposition is more fully laid out as follows.

## I. PRELIMINARY STATEMENT - THIS COURT SHOULD CONSIDER FACTUAL ALLEGATIONS IN PLAINTIFF'S OPPOSITION

3. Because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint. See, e.g., Braxton v. Nichols, No. 08- CV-8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar.18, 2010); cf. Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (considering a pro se plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

4. Thus, the court should consider and incorporate into my complaint the factual allegations included in my opposition papers. Support for this is found in the following case law.

   a. In STEVENSON V. AMAZON.COM, INC (D. Mass. May. 13, 2016), Judge Dennis Saylor of the Massachusetts District Court stated the following: "The original complaint remains the operative complaint in this action. However, because plaintiff is proceeding pro se, the Court will deem the factual allegations in plaintiff's opposition memorandum and sur-reply to be part of the complaint for purposes of resolving defendant's motion to dismiss. Specifically, and for present purposes only, the operative complaint will be deemed to be (1) the allegations of the original complaint; (2) the factual allegations of the opposition to the motion to dismiss; and (3) the factual allegations of plaintiff's sur-reply to the motion to dismiss, all taken together."

   b. In PALMER V. SHCHEGOL (E.D.N.Y. Sep. 29, 2016), the court said the following: "Because Plaintiff's pro se status mandates a liberal reading of her papers, the facts of this case and the sufficiency of Plaintiff's pleadings are determined by reference to both Plaintiff's amended complaint and her opposition to the instant motion. See, e.g., Nielsen v. Rabin, 746 F.3d 58, 61 (2d Cir. 2014) (denial of leave to amend reversed where pro se plaintiff's complaint would state a claim for relief if it were amended to include the allegations in her opposition to defendant's motion to dismiss); Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (considering facts in pro se plaintiff's opposition to defendants' motion to dismiss in deciding whether to affirm district court's dismissal of plaintiff's claims); Mil'chamot v. New York City Hous. Auth., No. 15-cv-108, 2016 WL 659108, at *1 n. 1 (S.D.N.Y. Feb. 16, 2016) ("because a pro se plaintiff's allegations must be construed liberally, it is appropriate to consider factual allegations made in a pro se plaintiff's opposition papers on a motion to dismiss, so long as the allegations are consistent with the complaint"); Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Local 926, No. 12-cv-2387, 2014 WL 5783045, at *1 (E.D.N.Y. Nov. 6, 2014) (deciding dismissal of pro se plaintiff's complaint by referring to the facts alleged in plaintiff's complaint and opposition)."

c. In MELISSA ANN SHERLOCK v VINCENT STANCATO, (D. Mass 2011), the Massachusetts District Court stated the following: "As set forth in this court's Scheduling Order and Order on Defendant's Motion to Dismiss (Docket No. 12), this court deemed the plaintiff's original complaint to be amended by her "Response in Opposition to Motion to Dismiss" ("Response"). Thus, the Amended Complaint consists of both the original complaint (Docket No. 1-1) and the plaintiff's Response. (Docket No. 6)"

d. In NIELSEN V. ELAINE A. RABIN M.D. (2d Cir. 2014), the Second Circuit Court of Appeals stated the following: "We conclude that the allegations in the complaint and the opposition brief, taken together, sufficiently set forth the mental state element of the claim.". The court also stated that: ""Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir.2000). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.2010)." The court also stated: "The plausibility standard is not akin to a probability requirement...." Id. (internal quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."

e. In SHULER v. BROWN 2009 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF NEW YORK, the court stated: ""Generally, a court may not look outside the pleadings when reviewing a Rule 22 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." Gadson v. Goord, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, inter alia, Gil v. Mooney, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" Donhauser v. Goord, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], vacated in part on other grounds, 317 F. Supp.2d 160 (N.D.N.Y. 2004)."

f. In Ahmed v. Geo USA LLC; New York Southern District Court, 2014, Judge Jesse M. Furman stated the following: "In evaluating a Rule 12(b)(6) motion, the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Where, as here, the plaintiff is proceeding pro se, the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

g. In JAMES ARMAND v. JENNIFER OSBORNE, 2011, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK, the court stated: "Where a plaintiff proceeds prose, the court must construe the pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010). Application of the liberal pro se pleading standard is particularly important in cases in which the plaintiff alleges a violation of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d 3 The court has reviewed the entire Complaint and recites only those facts that are relevant to claims Plaintiff has asserted against Osborne or requests to add in his motion to amend. The court has omitted facts related to events that occurred after Plaintiff left Arthur Kill, as all claims related to those events were severed and transferred to the judicial district in which the facility the incident occurred at is located. 4 Cir. 2004)). A pro se complaint should not be dismissed without granting the plaintiff leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). In making its determination, the court must assume all facts alleged in the complaint to be true and must construe the complaint in the light most favorable to the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). Where, as here, a pro se plaintiff includes factual allegations in his opposition to the motion to dismiss that were not included in the original complaint, "the court may treat the new factual assertions as an amendment to the complaint," and thereby consider the additional factual assertions without converting the motion into a motion for summary judgment. Grimes by and through Grimes v. Sobol,

2

832 F. Supp. 704, 708 n.5 (S.D.N.Y. 1993) (quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 26 (2d Cir. 1988)). Here, the Plaintiff did provide additional factual allegations in his opposition to Defendant's motion to dismiss. The court has considered the factual allegations contained in Plaintiffs opposition to Defendant's motion to dismiss as amendments to the Complaint and has treated Defendant's motion to dismiss as a motion to dismiss the further amended Complaint under Fed. R. Civ. P. 12(b)(6). Plaintiffs memorandum in support of his motion to amend also includes some additional factual allegations, which do not pertain to Defendant Osborne and the motion to dismiss and which the court has only considered in relation to Plaintiffs motion to amend the Complaint. In order to construe the Plaintiffs pleadings liberally, all additional factual allegations from Plaintiffs opposition to Defendant's motion to dismiss have been considered as part of the Complaint for the purposes of reviewing Plaintiffs motion to amend, which focuses on adding new defendants and causes of actions. For purposes of the motion to dismiss, the court has considered additional factual allegations relevant to Plaintiffs claims against Osborne.

## II. OPENING/INTRODUCTION

5.  The Anti-SLAPP statute, G. L. c. 231, § 59H, was enacted to "counteract SLAPP suits, defined broadly as 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" Blanchard v. Steward Carney Hosp., Inc., 477 Mass 141, 147 (2017), quoting Duracraft v. Holmes Prods. Corp., 427 Mass 156, 161 (1998). "The main 'objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech.'" Id., quoting Duracraft, supra. To curtail SLAPP suits, the anti-SLAPP statute provides for a special motion to dismiss to dispose of claims based solely on a party's right to petition.

6.  To succeed on his Anti-SLAPP Motion, Donais must first "make a threshold showing through pleadings and affidavits that the claims against [him] are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Blanchard, supra (quotations omitted). If Donais were successful, then the burden would shift to the plaintiff, who could avoid dismissal (i) by establishing that the petitioning activity at issue lacked a reasonable basis in fact or law; or (ii) by establishing, to the motion judge's "fair assurance," that plaintiff's "primary motivating goal in bringing its claim, viewed in its entirety, was not to interfere with and burden [Donais'] petition rights, but to seek damages for the personal harm to it from the [Donais] alleged legally transgressive acts." Id. at 159-160 (quotation, ellipses, and alterations omitted).

7.  Donais' Anti-SLAPP Motion falters on the threshold inquiry. Donais has not established that his conduct constitute petitioning activity. The Anti-SLAPP statute defines petitioning activity as:

    > [1]any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any statement falling within constitutional protection of the right to petition government. G.L. c. 231, § 59GH.

8.  Even if Donais had engaged in petitioning activity, that does not necessarily mean they constituted petitioning activity protected by the Anti-SLAPP statute. The Anti-Slapp statute only protects constitutional petitioning protected by the first amendment.

9.  Statements directed at non-governmental entities or persons do not constitute petitioning activity.

10. Also, Donais has not established that his statements in 2019 and 2020, for example alleging to the police that plaintiff was claiming racism or that plaintiff had a mental disease, was petitioning activity

11. Also, Donais has not established that his statements in 2020, for example defaming plaintiff to his family members had any nexus with a government proceeding.

12. Donais has not shown that any of his statements automatically constitute petitioning activity protected by the Anti-SLAPP statute.

13. Donas' Anti-SLAPP Motion fails because the claims against Donais are not based on petitioning activity as defined in the Anti-SLAPP Statute.

14. Even if Donais' conduct were considered to be petitioning activity, the Motion must be denied if the Court concludes that plaintiff's primary goal in bringing suit was not to interfere with Donais' petitioning rights. To

make that determination, the Court must "assess the totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim." Blanchard, 477 Mass. at 160. Factors relevant to that inquiry include: 1) the course and manner of the proceedings; 2) the pleadings; 3) the affidavits and other evidence "stating the facts upon which the liability or defense is based;" and 4) whether plaintiff's claims are "worthy of being presented to and considered by the court" and "whether [they] offers some reasonable possibility of a decision in [their] favor." Id. at 160-161.

15. Based on all of the pleadings, affidavits and documents, including the granting of the plaintiff's motion to remain in Middlesex superior court, the Court should be satisfied that plaintiff has stated colorable claims for relief and that his primary motivating goal is to obtain relief for the harm he claims to have suffered to his reputation and business from the statements made about him by Donais.

### III. SUMMARY

16. The Court should deny Defendants' G.L. c. 231, § 59H Motion to Dismiss ("Anti-Slapp Motion") because the plaintiff filed this suit to vindicate legal rights and recover damages, not to chill Defendants' petitioning activity.

17. Defendants (a) defamed plaintiff and (b) were accomplices in the defamation scheme of Craig Donais ("Donais").

18. Donais, with Defendants' assistance, issued false statements claiming that plaintiff had committed crimes and had a mental disease. The defamatory statements, which spread across both NH and MA, damaged plaintiff's reputation and resulted in significant expenses.

19. In 2022, after spending years trying to address the harms caused by Donais and his accomplices, plaintiff filed suit against Defendants for recoveries to offset the financial burden the defamation has created.

20. The plaintiff is pursuing these recovery efforts to offset the amelioration costs associated with the defamation and other causes of action stated in the amended complaint.

21. Anti-slapp motions are intended to protect against the chilling of legitimate public protest, not to serve as cudgel to thwart valid claims. As a result, the standards applicable to antislapp motions involve burden shifting, but ultimately boil down to whether, based on the record, the Court is fairly assured that Plaintiff's claims are (a) "colorable" (i.e., have a reasonable basis) and (b) not intended to chill petitioning activity.

22. As explained below, Defendants do not meet their threshold burden to demonstrate that their defamatory statements and activity constitutes petitioning activity. Indeed, Defendants were not petitioning.

23. Further, issuing false statements to the police with bogus accusations is not equivalent to petitioning activity.

24. To the extent the burden shifts to plaintiff under the applicable analysis, however, the record shows that the claims against Defendants are colorable, worthy of consideration, viable and not brought to chill petitioning activity, but to seek damages. Based upon the record here, the Court should be "fairly assured" that this **is** not an anti-SLAPP case.

25. NB: Defendants make no effort to identify, apply or distinguish two controlling Supreme Judicial Court decisions, 477 Harrison Ave. LLC v. JACE Boston, LLC, 483 Mass. 514 (2019) and Blanchard v. Steward Carney Hospital, Inc., 483 Mass. 200 (2019), both of which warrant this Court denying the Anti-Slapp Motion.

26. In order to prevail on such a motion, the moving party "who 'asserts' protection for its petitioning activities [must] make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." The defendants did not make such a showing.

27. For these reasons, and those below**,** the Court should deny the Anti-Slapp Motion. Also, by statute, the Court may award plaintiff its reasonable fees and costs for opposing the Anti-Slapp Motion. Plaintiff requests that the Court provide plaintiff such relief.

### IV. PROCEDURAL ARGUMENTS

### A. The Hilliard Defendant's anti-slapp motion is untimely /The Defendant Hilliard's Anti-slapp Motion Is Defaulted In Any Case Because Defendant Failed To File On Time

28. The Hilliard Defendants' anti-slapp motion is untimely. It is not filed within 60 days after service of the complaint.

29. The Hilliard defendants brought the anti-slapp motion more than 60 days after being served with the complaint. I served the complaint on April 14, 2023 and the defendant filed the anti-slapp motion on June 16, 2023.

30. They would have had to serve the anti-slapp motion on or before June 13, 2023 in order to be timely.

31. Hence they were late by three days. They knew the time had passed but still chose to misuse the statute in order to obstruct my case. They did not even ask the court for permission for late filing.

32. Hence, his motion should be denied statutorily on those grounds simply for untimeliness and not meeting the requirements of the statute.

33. That the Hilliard Defendants have failed to provide even a cursory explanation to justify the untimely motion— raises more fundamental questions about the manner in which they intend to defend this suit. Defendant's attempt to dismiss the case under the Massachusetts Anti-SLAPP Statute fails for several reasons.

34. Defendant is barred from bringing this motion under the plain language of the statute. The plain text of the statute states that he has 60 days after service of the claim to file a special motion to dismiss. The Complaint in this case was filed on 6/18/22 and served on 4/14/23. 60 days from service would have made their special motion to dismiss due on 6/13/23.

35. But Defendant Hilliard did not file his motion by that date. Instead, he waited until June 16, 2023 to file. Without any notice whatsoever to the Plaintiff, he filed this motion on June 16, 2023. The motion is therefore procedurally defaulted on its face. Therefore, Defendant cannot succeed on his motion because he has failed to abide by the filing requirements of the statute. See **Exhibit 1 – Mass Anti-Slapp Statute.**

36. At no point in time did Defendant ask the court or the plaintiff for an extension of the statutory deadline for this motion.

37. The Hilliard Defendants never notified Plaintiff that he intended to file—or sought additional time for—this "antislapp motion." The filing of this motion came as a complete surprise to Plaintiff. This is particularly egregious because Defendant had sent other communications to me in state court since 5/23/23 when he first filed an appearance in state court and opposed my motion to enter default against Hilliard.

38. In fact, 3 weeks before Hilliard filed this motion, he told the state court that he was going to defend in state court. He knew for 3 weeks or more that he was going to file an antislapp motion but said nothing to me about it.

39. He apparently wanted to catch me off-guard. See **Exhibit 2 - Email Exchange With Hilliard Defendants.**

40. Courts have taken such filing requirements for an anti-slapp motion seriously.  In Blumenthal v. Drudge, the court ruled defendant Drudge's special motion to dismiss under the California anti-SLAPP statute to be procedurally defaulted because it was filed well after the 60-day deadline provided in the statute. See Blumenthal v. Drudge, Civ.A. 97-1968(PLF), 2001 WL 587860 (D.D.C. Feb. 13, 2001). The court ruled that "[a]lthough the statute states that the special motion 'may' be filed within 60 days and not that it 'must' be filed within that time, [that provision] has been interpreted by both federal and state courts to require filing within 60 days of the complaint or amended complaint unless otherwise permitted by the court in its discretion." Id. at *2. The court saw no reason to exercise its discretion and permit filing out of time. It reasoned, among other things, that the "requirement that the motion to strike be filed soon after the filing of the complaint best serves the purpose of the Anti-SLAPP statute—to provide for the early dismissal of meritless First Amendment-chilling lawsuits."

41. Here, as in Drudge, Defendant Hilliard plainly violated the statute and, if the statute is effective and applicable, their motion is procedurally defaulted. Indeed, prompt filing and adjudication is a necessary component of anti-SLAPP statutes.

42. As such, it is especially important that the "anti-slapp motion to dismiss" that is permitted be filed on time.

### B. Defendant's anti-slapp motion violates state-based procedure pursuant to the anti-slapp statute

43. Defendant's anti-slapp motion violates state-based procedure pursuant to the anti-slapp statute.

44. The anti-slapp statute requires that a movant brings a special motion to dismiss within 60 days of service of the complaint. This conflicts with the normal rules of procedure where a motion to dismiss must be brought within 20 days of service of the complaint. By combining the antislapp motion into a regular motion to dismiss, it creates a problem of attempting to extend the time for a motion to dismiss to be brought (automatically without court permission and potentially creates an end-run around such rules of the court), when this was not intended by the anti-slapp statute.

45. Because defendants' anti-slapp statute is combined into the motion to dismiss as a count or section of the larger motion to dismiss, it violates the statute and procedure. This constitutes a procedural defect.

46. Defendants' antislapp motion is also not labeled a special motion to dismiss and this also constitutes a procedural defect.

47. State-based procedure requires that defendants file a separate motion called a "special motion to dismiss" separate from a regular motion to dismiss under Rule 12, etc. The defendants have strayed from the norm or have violated proper state-based procedure and practice for an antislapp motion.

48. If the federal rules of procedure do not strictly apply to the antislapp motion, then the state-based anti-slapp statute procedure governs. (NB: If the federal rules strictly applied, then the antislapp motion could not be heard in federal court as it would violate Rule 12 and Rule 56 of the federal rules.). The state-based procedure requires that the defendants should have filed a separate motion as a special motion to dismiss, apart from their Rule 12 motion to dismiss. They did not do so. They included the antislapp motion within their motion to dismiss, which creates procedural issues in doing so and it has created complications because the antislapp is its own "beast" so to speak, with a separate statute and rule governing it.

49. Hence, this motion should be denied statutorily on those grounds simply for not meeting the requirements of the statute.

## C. The Court Should Deny Plaintiff's Motion Because Defendant Has Not Included Any Affidavits Or Other Evidence To Support His Antislapp motion

50. Defendants' anti-slapp motion does not have an affidavit and this constitutes a procedural defect.

51. Hence, this motion should be denied statutorily on those grounds simply for not meeting the requirements of the statute.

52. The defendants did not provide an affidavit that addressed the antislapp claims, which violates procedure as there is no basis to treat any claims by the defendants in their antislapp motion as true or correct.

53. Defendant has asserted no facts showing anything that supports his contention that he was engaged in petitioning activity or that his petitioning activity had factual or reasonable basis or that my motives were to chill petitioning activity.

54. A blanket conclusory declaration that all defendants' activity was petitioning activity is plainly false. The defendants do not even address the clear and plain factual and legal arguments made directly the amended complaint itself showing that, for example, there were claims for breach of contract, breach of fiduciary duty and interference with contract relations none of which had to do with his statements but all of which had to do with Donais' acts and conduct in intentionally engaging in a conflict of interest in violation of the rules of professional conduct and in breach of his fiduciary duty to me. These were acts that Donais did which were found to be wrong acts by a court and resulted in his disqualification due to this conflict of interest.

55. There is no affidavit by the defendants that challenges any of that or even addresses any of that. This is a tacit admission that they know that the antislapp motions are frivolous, otherwise they would address this most glaringly fatal point in the anti-slapp motions.

56. The defendants have not put forward any facts or details concerning the antislapp motions that would enable this court to determine the merits of the antislapp motion.

57. This court should not grant the anti-slapp motions when there are no facts set forth to support granting such relief.

## D. The Defendant blindsided plaintiff and failed to confer prior to filing the anti-slapp motion

58. "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Fed. R. Civ. P. 7.1(a)(2).

59. Donais' counsel did not discuss the antislapp motion with plaintiff prior to filing. He also did not discuss the spousal disqualification defense prior to filing.

60. Therefore, the court should deny Plaintiff's Motion for failing to comply with the Federal Rules of Civil Procedure.

61. Moreover, the Donais' counsel  never notified Plaintiff that he intended to file—or sought additional time for—this "antislapp motion." The filing of this motion came as a complete surprise to Plaintiff. This is particularly egregious because Defendant's counsel for Donais sought to communicate with me on more than one occasion leading me to believe he intended to defend this case in state court. In fact, right before he filed this motion, he sought to arrange a meeting with me. He apparently wanted to catch me off-guard. See **Exhibit 3 - Email Exchange With Defendants' Counsel for Donais.**

62. To add insult to injury, defense counsel for Donais still proceeded to file this frivolous, baseless, and meritless motion even though I told him to wait until we conferred, so that the issues could be narrowed. Ed landers filed his motion within 2 minutes of a supposed "conferring" phone call at 5.05pm on June 13, 2023 and this was while he was speaking first and had not allowed me a chance to speak. This is a violation of rule 7.1 and his certification on his motion to dismiss filing is false or misleading. I will prove this point to the court.  See **Exhibit 4.**

63. Even if Donais Counsel Ed Landers did actually confer before filing (which he did not do in actuality), it still would not save him because I explained to him this very point about breach of contract and fiduciary duty and he still filed his frivolous antislapp motion and failed to address this most glaring point.

64. The purpose of the conferring rule is not window dressing or a pointless formality. It is intended to ensure that parties have a chance to narrow or eliminate issues to be brought before a court so as to not waste the court's time with adjudicating matters that could have been resolved between the parties and that could have been reasonably narrowed before filing. The principle here is that the court is already very busy and congested. Its time is best used to resolve real controversies not frivolous ones that are obviously not to be brough to waste the time of the court Here, Donais defense counsel, Ed landers, knew that the breach of contract and duty claims and facts rendered his antislapp motion baseless. If he did not know, I brought it to his attention which is what the conferring process is intended to do. But he contumaciously and vexatiously still brought this antislapp motion hoping to get away with this frivolity, hoping the court won't notice it and hoping to get a windfall. This is unconscionable conduct and bespeak a retaliatory and oppressive malicious motive designed to punish me from seeking to hold his client accountable for lying defaming me and engaging in horrible racial attacks on me.

65. For these reasons alone, the antislapp motion should be denied. This is not a harmless error. The filing of an antislapp motion is a very serious matter and should not be done on a whim or without careful determination that it is not a frivolous motion, a point which is underscored by the fact that a plaintiff can be awarded attorney fees and costs if a defendant files a frivolous motion.

66. NB: It should be noted that Donais made this same argument about failure to confer in his opposition to my motions to stay proceedings due to two proceedings in state court and motion to amend the complaint. He should now be held to the same standard. So should Hilliard's counsel.

### E. Defendant's anti-slapp motion violates federal procedure

67. Defendants' anti-slapp motion violates federal rules of procedure.

68. Some federal courts in Massachusetts have held that the anti-SLAPP statute is a procedural rule that is inapplicable in federal court. See, e.g,. *Stuborn Ltd. P'ship v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003).

69. If the district court does not allow discovery then that would violate my rights under federal procedure 12 and 56.

70. When applied in federal court, the statute violates my due-process rights. The anti-SLAPP statute is not just a test of factual sufficiency for a limited set of claims; most notably, it includes a discovery stay until the motion is resolved. In Metabolife International, Inc. v. Wornick, the Ninth Circuit concluded that the stay directly conflicts with Rule 56(d). In Anderson v. Liberty Lobby, Inc., the Court interpreted Rule 56(d)—at that time codified as Rule 56(f)—to require that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Finding a direct conflict with the anti-SLAPP statute's "good cause" requirement, Metabolife quoted with approval a district court decision stating: "Section 425.16 limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered."

71. Many commentators have interpreted Metabolife as holding that the anti-SLAPP discovery stay can never apply in federal court, and the Ninth Circuit seems to agree.

72. Assuming that the anti-SLAPP statute's discovery stay does not apply in federal court, as Judge Kozinski observed, "the federal court special motion is a far different (and tamer) animal than its state-court cousin" because it no longer provides "defendants a quick and painless exit from the litigation."

73. A California anti-SLAPP motion applied in federal court, therefore, is more akin to Rules 12 and 56, thereby detracting from the claim that the anti-SLAPP statute does not directly conflict with the federal rules.

74. Hence, this motion should be denied on those grounds for not meeting the requirements of the statute.

## **G. Defendant's anti-slapp motion violates the federal right to jury**

75. Defendant's anti-slapp motion violates my federal right to jury.

76. When applied in federal court, the antislapp statute violates my due-process rights and right to a jury.

77. In a line of cases, beginning in Beacon Theatres, Inc. v. Westover, several federal courts have held that, after the Federal Rules of Civil Procedure merged courts of law and equity, a jury trial must take precedence over equitable proceedings to protect the right against issue or claim preclusion.

78. Similarly, it can be argued that the "substance" of the Seventh Amendment largely protected a party's right to have a jury conduct any fact-finding.

79. Facts should be decided by jury.

80. The antislapp statute should not apply in federal court, not simply or only because it is not merely procedural but also because it violates my right to have facts tried by a jury.

81. Similarly, because the antislapp statute carries with it an automatic award of attorney fees as punishment against a plaintiff, then it should be decided by jury.

82. In an advisory opinion, the New Hampshire Supreme Court has stated that a proposed anti-SLAPP law then being considered by the New Hampshire Legislature would be unconstitutional because it would deny a litigant the right to a jury trial on disputed issues of fact. The New Hampshire court said:

> Unlike [summary judgment motions] wherein the court does not resolve the merits of a disputed factual claim, the procedure in the proposed bill requires the trial court to do exactly that . . . [because] the trial court that hears the special motion to strike is required to weigh the pleadings and the affidavits on both sides and adjudicate a factual dispute. Because a plaintiff otherwise entitled to a jury trial has a right to have all factual issues resolved by a jury . . . the procedure in the proposed bill violates part I, article 20 [of the New Hampshire Constitution].
>
> Opinion of the Justices, 641 A.2d at 1015 (N.H. 1994) (citation omitted).

83. See also Opinion of the Justices (SLAPP Suit Procedure) 138 N.H. 445, 451, 641 A.2d 1012 (1994) ("A solution [to SLAPP suits] cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group.").

84. Many other courts have recognized and addressed the problems with "fact-finding" within anti-SLAPP cases. The Washington Supreme Court held that its state's anti-SLAPP statute, which required a trial court to make factual determinations involving the merits of a litigant's claim, without a trial violated the right to trial by jury and was therefore invalid.

85. The right to trial by jury is inviolate under the state constitution. Wash. Const, art. I, § 21.

86. "The right to have factual questions decided by the jury is crucial to the right to trial by jury." State v. Montgomery. 163 Wn.2d 577, 590, 183 P.3d 267 (2008) (citing Sofie v. Fibreboard Corp.. 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989)).

87. "'Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.'" In re Pers. Restraint of Matteson. 142 Wn.2d 298, 307, 12 P.3d 585 (2000) (internal quotation marks omitted) (quoting Addleman v. Bd. of Prison Terms &Paroles, 107 Wn.2d503, 510, 730 P.2d 1377 (1Q8R^; accord Lummi Indian Nation v. State, 170 Wn.2d247, 264,241 P^3d 1220(2010).

88. This issue has not been addressed by the federal court of this district in Massachusetts. It has not been addressed either by the first circuit.

89. Although Judge Denise Casper in this court's district applied the first circuit ruling on the Maine antislapp statute to the Massachusetts antislapp statute as it pertains to whether the MA statute is substantive law and thus conflicts with federal rules 12 and 56, she never addressed the federal right to a jury issue. She only addressed that she believed that the MA antislapp statute did not violate the federal rules of procedure 12 and 56, finding that the MA statute was substantive law and not merely procedural. NB: A finding that the statute was merely procedural would bar the statute from being applied in federal court in MA because it would violate federal court procedures.

90. Yet, the federal right to a jury argument goes beyond whether the MA statute is substantive state law or merely procedural. The federal right to a jury is a fundamental substantive right that should be guaranteed to every litigant in federal court who seeks to have their cases heard by a jury.

91. Because the MA statute applied in federal court does not allow for a jury to hear and decide facts, it violates my federal right to a jury, especially given that I specifically asserted a jury demand both in my original complaint and my amended complaint.

92. Hence, this motion should be denied on those and other such procedural grounds for not meeting or comporting with the requirements of the right to a jury.

93. NB: To the extent this court takes a position on this issue that finds that the application of the statute in federal court does not violate my right to a jury, then it may be ripe for appeal to the first circuit.

### H. Defendant is not entitled to bring an anti-slapp motion under NH law

94. The Donais defendants claim in their motion to dismiss that NH law applies to this case, even though it is filed in MA. This assertion is used to support their contention that the case should be transferred to the NH federal district court.

95. They go on to further argue that the 93A claim asserted by me in my complaint would fall away if NH law is applied because NH law does have the MA 93A statute. This is not entirely true because NH does have an equivalent consumer protection statute so the consumer protection claim would not necessarily go away (assuming arguendo that defendants' argument that NH law applies to this case is correct, which I don't concede is correct).

96. But all of this goes to a more important point. If NH law applies, then the antislapp motion must go away or fall away because NH does not have an antislapp statute. The defendant cannot have it both ways. This is a self-contradictory position and the defendants should be estopped from making it, as it contradicts their prior argument (supporting improper venue and forum conveniens), that NH law applies.

97. The defendants are not entitled to bring an antislapp motion under NH law. Therefore, the antislapp motion must be dismissed or denied.

98. So, either defendants give up their motion to dismiss for improper venue and forum conveniens and to transfer to NH, or they give up their antislapp motion. They cannot have their cake and eat it too.

99. NB: Even if NH law applies, it does not require transfer to NH or dismissal for improper venue, because MA federal court is more than capable of applying NH law, if the court so finds that NH law applies. Moreover there are other grounds why this court should not transfer to NH or dismiss for improper venue, outside of the question of whether NH law applies.

100. Similarly, Donais asserts that his statements were made in NH. Therefore, his petitioning activity would have occurred, to the extent any occurred, in the state of NH. But NH does not have an antislapp law. So Donais cannot assert antislapp claim while in NH and while under NH law. The same goes for Hilliard.

101. Moreover, Donais has asserted that Massachusetts and its court has no personal jurisdiction over him. He is also thus saying that MA law does not apply to him. Therefore, he cannot assert an antislapp claim in this case.

102. If this court has no personal jurisdiction over the defendants, then the antislapp motion must be dismissed.

103. Donais (and the other defendants) are seeking to obtain a windfall in this court, using Massachusetts law as both a shield and a sword, while also claiming this court and this state has no jurisdiction and that NH law applies in any event.

### Federal question claim defeats the antislapp statute

104. The presence of the federal question claim in this case nullifies or defeats the antislapp statute.

105. The antislapp motion can only apply only in diversity cases, not in federal question cases.

106. The defendants have asserted both a diversity basis and federal question basis for jurisdiction.

107. I have shown in my motion to remand that diversity jurisdiction does not exist for this case. That leaves only the federal question (that is, of course, if the court finds that there are no procedural defects or bar to subject matter jurisdiction as articulated in my motion to remand).

108. A federal question implicates federal law.

109. A diversity case implicates the federal court sitting in the place of a state court dealing with state law.

110. But if there is no diversity, then the federal court has no grounds to apply state law procedure in the adjudication of a federal law question.

### An Anti-Slapp Action Is A Counterclaim And Thus Cannot Be Asserted in A Motion to Dismiss in Federal Court

111. The anti-SLAPP suit statute was intended to encourage participation in public interest matters and avoid the chilling of such participation through "abuse of the judicial process."

112.     But in reality the anti-slapp motion is also a counteraction against the non-moving party, who brought a lawsuit (against the moving party bringing the antislapp motion) in retaliation for petitioning activity by the moving party, and is essentially an action alleging an abuse of process or wrongdoing committed by the non-moving party who brought the lawsuit.

113.     Therefore, I am being accused of abuse of judicial process by the defendants. In filing the antislapp motion, Donais is saying that "I abused the judicial process", instead of simply saying that "I have no case". These are accusations that I sought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances and that I sought to deter a citizen from exercising their right to petition or to punish them for doing so or to intimidate an opponent's exercise of petitioning rights. These are all elements of a counterclaim of wrongdoing. Thus, an Anti-SLAPP action is essentially an abuse of process tort claim. It is purportedly "based on Donais' petitioning activity" because he supposedly believes that the activity of my filing a lawsuit against him is itself an illegitimate abuse of process. His anti-slapp motion is also an injunction against me and this is evidenced by the fact that the motion carries with it an automatic stay on all discovery and prevents me from obtaining any discovery against the defendant that could help me prove my case. The anti-slapp action involves procedures, legal arguments and pleadings that have nothing to do with Donais defending against my actual claims. The things I would have to do to defend against an abuse of process claim, I now have to do to defend against an anti-slapp action.

114.     So, I am required to defend myself against these charges, spending time and resources to prove that I did not commit the wrongdoing of abuse of process and that my claims are not retaliations intended to stop free speech before a government body.

115.     Furthermore, there is a <u>burden-shifting mechanism</u> contained within the anti-slapp statute which essentially puts me in a <u>defensive posture</u> and the concomitant automatic award of attorney fees and costs creates recovery on a claim. If none of this makes the anti-slapp action a claim or counterclaim (however much it might be in disguise) then I don't know what will. (See Halmar Robicon Group, Inc. v. Toshiba Int'l Corp., 127 Fed. Appx. 501, 503 (Fed. Cir. 2005) (automatic stay [operates] as against actions in which debtor is in *defensive posture*) emphasis supplied.)).

116.     Moreover, by way of analogy with bankruptcy law, in Koolik v. Markowitz, the court held that: *"[S]ince a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding'... to include any pleading that asserts a claim on which relief is sought. In this way, the Second Circuit held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit*." Please note that Koolik v Markowitz states that the definition of a counterclaim is any pleading that asserts a claim on which relief is sought and this by definition is an action or proceeding against the debtor.

117.     Even if, assuming *arguendo*, the anti-slapp motion could be parsed out to NOT technically be a counterclaim (on which I disagree), then it is without dispute that the anti-slapp motion is an "action or proceeding against a [plaintiff]", and thus still a counterclaim.

118.     Ironically, this anti-slapp motion is itself a SLAPP suit/action against me intended to deter me from my petitioning activity. By any means his anti-slapp claim is frivolous and intended to harass me and deter me and increase the cost and burden of litigation for me. It was as strategic decision for the defendants to use the statute's automatic stay on discovery to prevent me from gaining discovery from them. Thus,  the defendants have misused this statute. Nonetheless by seeking to do this, the defendants have accused me of wrongdoing and falsely so. They have twisted the purpose of the statute on its head to do exactly to me what the statute was intended to stop. I, as a person of little means and resources, could in no way be the perpetrator of a SLAPP action (which is intended for very narrow circumstances which do not apply to me or this case).

119.     In applying the procedural mechanisms of the statute, the defendants are effectively allowed to significantly interrupt my ability to pursue all of my claims and to stay discovery on all my claims until or unless the Court denies the antislapp motion.

120.     Please note that many courts across the nation are finding that anti-slapp motions are being used in the exactly the same way that SLAP lawsuits are used…to delay litigation, and discovery, and tie up resources of the Plaintiff with frivolous use of the anti-slapp motion. The anti-slapp motion has become a paradoxical form of vexatious litigation where the anti-SLAPP action is used as an effective counteraction against a plaintiff's use of

judicial processes themselves, by accusing the plaintiff of an affirmative act of wrongdoing, namely intimidating or punishing an opponent. The defendants' purpose in using this motion is to use it as a counterclaim or a counteraction.

121.    By electing to file an action under this special statute, the defendants knowingly and purposefully are seeking to collect, assess and recover a claim with a monetary award against me. [NB: An award of attorney fees in this case would literally bankrupt me given that I was granted indigency status by the state court and given that there are two big law firms involved with at least 4 or more seasoned attorneys on the case, along with associates and paralegals assisting them on the case. The attorney fees would be astronomical.].

122.    According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees would not be awarded for conduct I engaged in prior filing suit. It would be awarded because I am being accused of wrongdoing in purportedly bringing an improper legal action. Defendants have asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. And no matter how frivolous the motion may be, I now have to defend against the merits of defendants' charges of wrongdoing that have nothing to do with my claim against him.

123.    According to the legal dictionary, a claim is defined as: "*1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a claim) for money due, for property, for damages or for enforcement of a right.*" A counterclaim is defined as "*A claim by a defendant opposing the claim of the plaintiff and seeking some relief from the plaintiff for the defendant.*" (See http://legal-dictionary.thefreedictionary.com/claim).  Mr. Donais in his anti-slapp action has made a legal assertion and demand for money (which makes it a legal claim) and he has used it in the context of opposing my claim against him and he is seeking relief against me as the plaintiff. This clearly meets the criteria for being a claim/counterclaim.

124.    Mr. Donais is attempting to put me in a defensive posture to answer charges of wrongdoing and abuse of process and to collect payment of an automatic money judgment attorney fees and costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not be a money award).

125.    The defendant is not allowed to assert a counterclaim in a motion to dismiss in federal court. As such, it violates the federal rules of procedure in a significant way. Consequently, the antislapp motion should be denied on procedural grounds because it is essentially a counterclaim demanding an automatic award of money in a motion to dismiss, without discovery, without a jury and without summary judgment procedure applied.

126.    NB: Donais cannot assert a counterclaim if he is also asserting there is no personal jurisdiction.

127.    NB: I believe this may be an issue of first impression for this court.

## J. The Defendant and Insurer have likely violated Section 176D and this further defeats the antislapp defense because it is not petitioning activity

128.    On information and belief, Attorney Ed Landers, who has filed an appearance in this case as counsel for Donais/the Donais defendants is also insurance counsel for the malpractice insurance carrier that covers Donais legal malpractice coverage in Massachusetts.

129.    As insurance counsel, Ed Landers has a duty to do due diligence to determine if there is liability and to promptly offer settlement if liability is clear, under Section 176D.

130.    It can be inferred that Ed Landers and the insurance carrier knows that liability is clear and that is why Ed Landers has failed to allege a failure to state a claim. As a result, it can be inferred that there is a violation Section 176D. This, I intend to add the insurance carrier for Donais as a party to this case so that I can bring all claims into one suit, as much as is possible. I ask the court to allow me to add the insurance carrier. NB: Even if Ed Landers is not insurance counsel, the insurance carrier must know about this case and the allegations of breach of fiduciary duty (which is essentially a malpractice claim). There is no conceivable scenario where an insurance carrier for malpractice for Donais has not been notified of this case and the claims therein. Because the malpractice insurance for Donais is for his practice in MA, it can be inferred that the insurance carrier is based in MA or has a home office in MA or is incorporated or otherwise registered in MA. This goes further to the grounds for remand.

11

131.    This also applies to the insurance carrier for Upton & Hatfield, who Attorney Dan Sonneborn, who has entered an appearance on this case for Upton & Hatfield and Russell Hilliard, is also to be insurance counsel.

132.    But it also goes to the grounds for defeating the antislapp motion.

133.    This claim involving violation of section 176D is or should be an integral part of this case.

134.    The refusal of Ed Landers and Dan Sonneborn to inform me of the name of the insurance company should not bar me from adding the insurance carrier to this case, as I can do so simply as Company Doe or Doe Company, until discovery occurs to reveal the correct name.

135.    To the extent that Ed Landers and Dan Sonneborn and/or the respective insurance carriers have violated Section 176D because their client has asked them not to do so in order to protect his reputation by not offering settlement promptly though liability is clear, then both the defendants and the insurance carriers/insurance counsel have engaged in unlawful conduct, wrongdoing, and are joint tortfeasors or jointly culpable for said violations, conduct and wrongdoing. Discovery will likely reveal the extent of this issue.

136.    I therefore ask for limited discovery now to obtain the name of the insurance company and who its insurance counsel is, as well as further information regarding its duty or refusal to offer prompt settlement as to the clear liability in this case.

## K. The Defendant has engaged in sanctionable conduct

137.    The defendant Hilliard has lied to the court  He has perjured himself in this court as shown in the motion to remand and affidavit. He has thus violated rule 11.

138.    The defendants have also violated local rule 7.1.

139.    The defendant has violated the rules of professional conduct as adopted and enforced by this federal court on all attorneys who appear or practice in this federal court.

140.    The defendant Hilliard has sought to skirt or skirted service of process in state court by refusing certified mail from a sheriff.

141.    The defendants have engaged in pure gamesmanship in removing this case from state court to this court.

142.    Why did not the defendant tell the state court that they intended to remove to federal court?

143.    Why did not the defendant tell me that they intended to remove to federal court?

144.    Why did the defendant Hilliard lie in his affidavit that he only received the amended complaint only on May 11, 2023 via first class mail only, thereby effectively denying that he did not receive any other mailing of the complaint or amended  complaint by the sheriff both by certified mail and first class mail?

145.    Why make the frivolous argument that I served him and not the sheriff served him? Why argue that it appears I attempted to serve them under Rule 4 when they know that I served them based on the state court order?

146.    Why argue that they was not served because the sheriff did not include a signed receipt in the return of service, when they know that does not vitiate service? NB: It does not say who it should be signed by. Why play these games with service?

147.    NB: As proof that they intentionally made these misleading arguments to the court, it should be noted that in their motions to dismiss, the defendants did not assert a request to dismiss due to insufficiency of process or insufficiency of service of process or failure to serve process. They evidently abandoned that argument because they know that it is bad faith and false to assert that. Otherwise, why not double down on it? They used it to defeat a motion to default in state court and federal court. But they abandon it in their motions to dismiss. This is very telling.

## L. Clarification/Addition of Facts Involving Defamation by Donais to His Family/Sons

148.    I am adding by way of this opposition papers that Craig Donais' son, Garrett Donais, was also told of the defamations in this complaint, by their parents Craig Donais and Mary Donais. Craig Donais himself included his sons in the defamations in 2020. This defamation is not petitioning activity and is not protected by the antislapp statute. Donais is not free to defame me to his family, friends or colleagues. He is not free to defame to his wife or his sons or his parents or his uncles, aunts, nephews, brothers, sisters, grandparents. Just because they are family does not make the defamation any less damaging. In fact, telling lies on black men was a horrific sport in times past in this country, and such lying relied upon by family members resulted in many black men being lynched maimed and killed.

149.    I hereby clarify this as part of my complaint or otherwise add this to my complaint as part of my claims against Donais. This will further defeat the antislapp motion. This is not petitioning activity and cannot be construed as such.

### M. Granting the Antislapp Motion Would Be Unfair and Would Result in Undue Prejudice for plaintiff.

150. It would be unfair to the defendants and contrary to the rules of to allow him to this antislapp motion.

151. Granting the Antislapp Motion would be unfair and would result in undue prejudice for plaintiff.

## VI. SUBSTANTIVE LEGAL AND FACTUAL ARGUMENTS

### A. The Defendants' anti-slapp motion are a frivolous and vexatious use of the anti-slapp statute and are without merit

152. The Defendants' anti-slapp motions are a frivolous and vexatious use of the anti-slapp statute and are without merit.

153. The anti-slapp statute requires that a special movant who "asserts" protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against [the moving party] are "based on" [the moving party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. The defendants have made no showing. In fact, they ignores 99% of my complaint because they know they cannot show that my claims are based on petitioning activities alone. They fail to cite any specific petitioning activity made, other than general blanket conclusory assertions with no specifics.

154. In the landmark Duracraft case, the defendant failed to show that Duracraft had sued him "on the basis" of his petitioning activity because Duracraft, when filing its own suit of contractual breach of confidentiality, produced documentation to indicate that its suit did have a substantial basis other than the defendant's (moving party's) petitioning activity.

155. Similarly, in this case, as one example, I had a contract with the defendant Donais as a prospective client. He breached his contract with me in divulging attorney-client privilege information to others who were not authorized or permitted to receive such information. He also subsequently engaged in harassment of me based on my race. I have the documentation to prove this and will do so upon granting an evidentiary hearing. Also, the defendant is in possession of further documentation that will further prove my arguments and he should be required to produce these documents via limited discovery.

156. NB: Contrary to defendant's assertions, the defendant had a personal vendetta against me and falsely accused me of accusing him of racial discrimination, which is manifestly untrue. The defendant is outright lying and manufacturing false claims and assertions in order to create a sham petitioning situation.

157. I am not a corporation; I am a sole individual minority without much resources.

158. NB: The statute's legislative history reveals that the typical mischief that the anti-SLAPP statute was intended to remedy was lawsuits directed at individual citizens of modest means for protesting development projects by big corporations. Plante v. Wylie, 63 Mass. App. Ct. 151, 156 (2005) (citing Kobrin, 443 Mass. at 336 and Office One, Inc. v. Lopez, 437 Mass. 113, 121-122 (2002)).

159. Moreover, the typical process for filing an anti-slapp motion involves a situation where the defendant first initiates a lawsuit against me and then I hit him back with a frivolous lawsuit in order to shut him up. This is not situation at bar. I was the one who initiated suit against the defendant and he is one trying to hit me back with a slapp motion in order drain my resources and stop me from exercising my right to due process, my right to discovery, and my right to prosecute my meritorious case in an attempt to prevent the defendant from defaming me and interfering with my advantageous relations, and from defaming me in the eyes of the community in which I am held with esteem, and to disparage me in the eyes of the larger business community wherein I conduct business and advantageous relations, and thus destroy my ability to earn a living as an individual business consultant (and impede my ability to take care of my family as a minority with limited resources).

### B. Donais Is A Public Figure and Government Person And Cannot Assert Anti-Slapp in This Case

160. Donais works for state government or holds positions or affiliations with state government. As such he is a government person or government agent for purposes of this case. For example, he works as an attorney for the Mayor's office or a board under the Mayor's office.

161. As such, the antislapp statute does not apply to him because government cannot petition itself.

162. Also, Donais is an attorney. Attorneys are members of the state bar. They are thus state actors as members of the state bar.

163. He is also deemed an officer of the court. As an officer of the court, he cannot assert antislapp because his activities cannot be petitioning activities since government cannot petition itself.

164.    Moreover, my breach of fiduciary claims arise out of his conduct as an attorney and not as a private citizen. His conduct pertaining to the police and the ADO was an attorney. His false affidavit was an attorney. Thus, he cannot be said to be petitioning government when acting out of his capacity as an attorney. Antislapp should be dismissed on these grounds.

## C. There Was No Proceeding Pending At Time Plaintiff Brought His Lawsuit In Bristol Superior Court

165.    The Anti-Slapp Statute does not apply to claims brought after petitioning activity is concluded.

166.    All of the statements at issue were not related to any judicial or government proceeding at the time.

167.    Any judicial proceeding or government proceeding that could marginally relate to any of the statements were concluded. For example, regarding the statements in 2019 and 2020 to the Police and the ADO, both the police matter and the ADO matter were concluded and closed in 2020.

168.    It is therefore impossible for me to have brought this lawsuit in June 2022 with the motive to chill petition activity that had long concluded and was not pending, Any and all actions were concluded before this lawsuit was initiated.

169.    See *Radfar v. City of Revere*, Civil Action 1:20-cv-10178-IT, 8 (D. Mass. Sep. 9, 2021) ("Plaintiff asserts that Covino's activity was improper and amounted to an abuse of process and malicious prosecution, where Covino's statements were false and where Covino knew Plaintiff did not commit the crimes he accused her of committing. A person subject to false and malicious petitioning activity is not precluded from seeking damages for personal harm caused by such activity. Because <u>Plaintiff waited until the conclusion of the actions undertaken by the government as a result of Covino's petitioning activity, Plaintiff's *Complaint* [#1] did not interfere with Covino's petitioning activity. In assessing the totality of the circumstances "pertinent to the [Plaintiff's] asserted primary purpose in bringing [her] claim[s], " the court finds Plaintiff has demonstrated that she brought these claims to vindicate her own rights, not to infringe on Covino's petitioning rights, and moreover, has offered some reasonable possibility of a favorable result.</u> *Id.* Accordingly, Defendant Covino's Special Motion is denied.")

## D. The Plaintiff's Motive Was Not To Chill Petitioning

170.    Plaintiff Did Not Bring This Suit to Chill Petitioning Activity.

171.    Plaintiff's objective and goal was to stop harm and injury from the defendant.

172.    This is shown by the meritorious claims asserted by the plaintiff which are provable.

173.    This is shown by the fact that the defendants have not challenged the factual plausibility or validity of the complaint in the motions to dismiss.

174.    This is shown also by the fact that I filed a lawsuit against Hilton Hotels with 21 defendants, including Craig Donais as a lesser defendant, which was litigated for about 5 years and eventually was settled in good faith. This lawsuit rose out of that settled lawsuit. Donais was involved in the settlement negotiations for 2 years out of the 5 years (part of which dragged out because the Covid emergency) and then he backed out at the last minute just before the settlement paperwork was finalized and signed by the 20 defendants.

175.    This is shown also by the fact Donais was the one who renege on being included in that global settlement in bad faith. I agreed to include Donais in the global settlement negotiations with Hilton in good faith on claims, not to chill, but to be made whole; Donais reneging on a settlement that would essentially cost him nothing as he got to piggyback on the coattails of a larger global settlement with Hilton hotels, shows bad faith. He had the chance to end this litigation but he chose to resurrect it and prolong it. Now Donais wants to claim antislapp. This is bad faith.

176.    The history of the litigations related to Donais and these matters supports the fact that this was not brought to chill petitioning but to vigorously pursue justice.

177.    This is shown by the fact of the filing of the ADO complaint against Donais, which shows that this was in good faith. In fact, the ADO told me that for my defamation claim, I should pursue it in court because I can recover for reputational harm there, but the ADO is not designed to facilitate recovery for reputational harm.

178.    This is further shown by the fact that I filed a bar complaint in MA and they told me that I should pursue the matter in superior court and come back after the case was done with the case (i.e., implying after I had gathered more evidence or rulings in my favor).

179. This is shown also by the fact that a right to know lawsuit was pursued to obtain records pertaining to this matter on Donais' prior bar complaints in NH, which shows good faith in pursuing the case, not to chill petitioning.

180. This is shown also by the fact Judge Christopher Barry Smith in Middlesex superior court said he believes that this is an actionable claim for defamation (based on similar claims in this case). See transcript of hearing with Judge Barry-Smith in November 2020. See **Exhibit 10**. See also ruling where he ordered that he case remain in superior court as meeting the jurisdictional amount for damages. See **Exhibit 11**.

181. This is also shown by the fact that another judge, Judge Amy Messer in NH superior court, denied Donais motion to dismiss on similar claims in this case.

182. This is shown by the fact another judge, Judge Charles Temple in NH superior court, in the original lawsuit filed on these matters, denied Hilton defendants motion to dismiss, and also ruled ion my favor in preliminary injunction hearing, resulting in the Hilton defendants seeking mediation and settlement with me to resolve that lawsuit.

183. This is also shown by the fact that another judge, Judge Paul Moore in NH circuit court, found Donais to have violated the rules of conduct regarding conflict of interest with regards to me as prospective client, thereby resulting in Donais disqualification in that case. This supports my breach of contract, breach of covenant of good faith/fair dealing and breach of fiduciary duty claims against Donais.

184. All of these things show that my motive was not bad faith or to chill petitioning and it shows that several judges have found merit to the various claims that I am now asserting in this case or that form part of the foundation for the claims asserted in this case. This lawsuit is a credible good faith sound meritorious lawsuit.

## G. Anti-Slapp Statute does not apply to criminal conduct

185. Criminal conduct alleged in complaint is not protected by anti-slapp statute.

186. If a person engages in criminal conduct, he cannot anti-slapp protection on that conduct.

187. I have alleged (and will prove) that Donais engaged in criminal conduct when he committed felonious perjury and when he engaged in an attempt to tamper with a witness. NB: These are similar acts that Donais was found to have committed by a Connecticut superior court judge, which was referred to the ADO of NH and which thereafter followed Donais' withdrawal or retirement of his law license from state of Connecticut.

188. The fact that Donais was found by a judge to have committed similar acts in another unrelated case, buttresses my complaint that he has done a similar thing in this case. See amended complaint.

189. The act of going to the police in 2019 was not protected by the antislapp statute and the statements made to the police are not protected by the antislapp statute because the statements made involved giving felonious perjurious statements to the police. Those statements are not protected by the anti-slapp statute. Similarly, the act of getting the police to call me was an attempt to use his police connections to intimidate me. Such conduct is not protected by the antislapp statute. NB: Lying or perjurious speech is not protected activity under the anti-slapp statute.

190. Two California cases support this holding. In Gerbosi, an attorney, Gaims, hired a private investigator, Pellicano, to investigate the ex-girlfriend, Finn, of his client, Pfeifer. 193 Cal.App.4th at 440. Pellicano installed a wiretap on Finn's telephone, and was eventually indicted on conspiracy and wiretapping charges for doing so. Gerbosi, 193Cal.App.4th at 441. Finn and her neighbor, Gerbosi, filed suit against Gaims, Pellicano, Pfeifer, and the telephone company for multiple statutory violations and torts arising from the wiretapping. Gerbosi. 193Cal.App.4th at 441. Gaims filed anti-SLAPP motions to strike both Finn's and Gerbosi's complaints. Gerbosi. 193 Cal.App.4th at 442. The trial court denied both motions. Gerbosi. 193 Cal.App.4th at 442. With respect to Gerbosi's claims, the California Court of Appeals held that the claims did not arise from any protected activity on the part of Gaims. Gerbosi. 193 Cal.App.4th at 444. In so holding, the court stated, "Agism's status as a lawyer…unrelated to any representation of any client in relationship to Gerbosi does not bring Gaims under the protective umbrella for acts in furtherance of protected 'petitioning' activity." Gerbosi. 193 Cal.App.4th at 444. With respect to Finn's claims, the court held that those claims which alleged criminal conduct were not subject to the anti-SLAPP statute, because wiretapping is not "'protected by constitutional guarantees of free speech and petition.'" Gerbosi, 193 Cal.App.4th at 445-46 (quoting Flatlev v. Mauro, 39 Cal.4th 299, 317, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006)). The court compared the case to Flatlev, which held that California's anti-SLAPP statute "'cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.'" Gerbosi. 193 Cal.App.4th at 445-

46 (quoting Flatlev, 39 Cal.4th at 317). The Gerbosi court held that "wiretapping in the course of representing a client," unlike writing a letter or making telephone calls on behalf of a client, could not be considered to be protected under any scenario. 193Cal. App. 4th at 446.

191.   See also  Dillon v. Seattle Deposition Reporters, LLC, 179 Wash.App. 41, 316 P.3d 1119, 1133 (2014).

### The complaint alleges numerous facts and claims that do not involve petitioning activity

192.   The complaint alleges numerous facts and claims that do not involve petitioning activity.

193.   For example, Donais committed intentional defamation intended to injure plaintiff. Also, the breach of contract and fiduciary duty claims do not involve petitioning activity

194.   Similarly, threatening and intimidating speech is not covered by the anti-SLAPP statute. Threatening and intimidating speech which violates the law and does not receive First Amendment protection is not covered by the anti-SLAPP statute. Nat'l Coal. On Black Civic Participation v. Wohl, No. 20 Civ. 8668 (VM), 2021 WL 480818 at *14 (S.D.N.Y. Jan. 12, 2021) (holding that speech which plausibly violated the VRA and KKK Act was not "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest" and was not covered by anti-SLAPP.)

195.   If Donais did any petitioning, it was sham petitioning. The antislapp motion to dismiss must be denied if the opposing party presents "prima facie evidence that at least one of the moving party's petitioning activities was 'devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [nonmoving party]." Nader II, 2013 ME 51, ¶ 14, 66 A.3d 571 (quoting Nader I, 2012 ME 57, ¶¶ 33, 36, 41 A.3d 551).

196.   Furthermore, these non-petitioning activities include:
   a.   Breach of contract
   b.   Breach of covenant of good faith and fair dealing
   c.   Breach of fiduciary duty
   d.   Communications with family members
   e.   Communications to private non-government persons
   f.   Activity outside of litigation
   g.   Interference with contractual relations with an attorney
   h.   Interference with advantageous relations with another attorney
   i.   Communications to me in a settlement/attempt to sabotage settlement with larger group of defendants
   j.   Fraudulent misrepresentation during settlement discussions. NB: Counsel for lying in settlement, fraud and deceit are not protected in settlement negotiation

197.   Consequently, the antislapp motion cannot prevail. The court must deny any antislapp motion directed at a complaint that alleges any claims based on non-petitioning activity. See MARGARET J. REICHENBACH vs. TIMOTHY G. HAYDOCK, 92 Mass. App. Ct. 567 (2017) ( Thus, although the alleged behavior includes petitioning activities, the Reichenbachs' claim is not based solely on petitioning activities and asserts a substantial basis beyond petitioning. See Duracraft, 427 Mass. at 168 (denying motion to dismiss where a substantial basis existed beyond petitioning activity).).

198.   My complaint includes several allegations as the basis of my complaint outside of that which the defendant cites as the basis for his petitioning rights. This includes:
   a.   I refute the facts stated in defendants' pleadings and filings that pertain to or is relevant to the antislapp motion. They are either untrue, misleading or based on belief and not personal knowledge.
   b.   I deny that what Hilliard has stated in his affidavit is true and correct and refer to what is stated further in my affidavit in this regard.
   c.   The acts and harms that I experienced from Donais do not arise from any petitioning activity from him.
   d.   The claims I brought in this action are not intended to chill any petitioning activity.3
   e.   To the extent they are not or could not be based on personal knowledge, they should be stricken or otherwise ignored by the court, and if necessary, I request that they be stricken.
   f.   Defendant has published the following false and defamatory statements of purported fact concerning me as follows:
      •   I accused him of racism for declining to represent me
      •   I burglarized and bugged his office phone and office thus committing a felony crime

- I fabricated a recording to put his voice on it to make him say things he did not say.
- I am a criminal offender.
- I have a mental disease

g. NB: These statements are lies and defamatory. This is not protected speech. Any reasonable person would reasonably want to vindicate their right to stop the reputational harm from such false and injurious statements including filing a lawsuit after all else had failed, including a bar complaint. I also tried to settle with Donais but he strung me along thinking that the negotiation was in good faith only to find out at the end that he really did not want to settle.

h. Defendant Donais published the false and defamatory statements as alleged above to third parties.

i. To state or imply that someone is or did any of the above is per defamatory.

j. By defaming me, Donais sought to publicly humiliate me and force me to live with a continual question mark over me.

k. Furthermore, contrary to Mr. Donais' allegations, at the time I filed the lawsuit in June 2022, the police matter had already been closed; since August 2020, so there was no petitioning activity that I could have been trying to chill. I filed the lawsuit almost 2 years later.

l. NB: There are certain things that create tortious wrongdoing even if it is couched under the garb of free speech. This is the reason why one cannot "yell fire" in a crowded building. The law recognizes legitimate exceptions to the unfettered right to say anything one wants about anyone regardless of its truth or falsity and regardless of it damage to people's reputation. These are necessary limitations that protect vulnerable people in our society from reputational attacks that can diminish their ability to make a living or to have a successful career, among other things.

### i. Racism

m. I did not allege racism, contrary to allegations and statements of Mr. Donais.

n. Donais falsely stated that I accused him of racism, and had issued a statement claiming that the actual reason for his removal was racism. Mr. Donais' reference was an intentional reference to negative stereotypes about black people. Mr. Donais' false claim that I issued a statement that Donais was discriminating against me due to racism was an attempt to intimidate persons of color from speaking up about discrimination.

o. Lawyers cannot be immune from accountability for engaging in horrific racial targeting and harassment of black people.

p. Mr. Donais made several comments about me that had racial undertones and that mocked me for opposing racism. NB: Judge Christopher Barry-Smith also acknowledged the racially discriminatory connotations of Mr. Donais' alleged statement about me falsely complaining about racial discrimination. See Exhibit 10

### ii. Criminal

q. The allegations that suggest that I was a criminal or "offender" are false.

### iii. Mental Disease

r. The allegations that suggest that I have a mental disease are false.

### iv. Injury

s. Mr. Donais actions have injured me, my reputation and my business. His defamatory acts and conduct against me has led to the harming of my business, consulting, entrepreneurial and professional endeavors.

t. I have had sleepless nights, worry, anxiety, mood swings because of this. It has caused me much emotional distress.

u. Mr. Donais' allegations and statements caused me harm. This includes my spouse/family who have experienced humiliation by the disparaging comments by Mr. Donais about me. It is the injury to me and my family that drove the need to stop the defamation, not any desire to chill petitioning activity.

v. I am a black man in America. There are already systemic disadvantages that I face as consultant and entrepreneur. Thus, to add smears and defamatory statements publicly hurts me professionally and personally.

w.  My wife has also been injured by this defamation and harassment. Mr. Donais has targeted both of us.

x.  Several business associates mentioned to me that these statements have created a negative image of me.

y.  I simply want the harassment to stop. I want to be left alone so that I can make a living and take care of my family, as I have a right to do without being impeded by defamatory comments by Mr. Donais.

z.  I did not file this lawsuit to retaliate against petitioning activity. I am seeking redress of a number of related grievances that have harmed and injured me.

aa. I simply would like Mr. Donais to stop making false and untrue statements about me.

bb. I filed this lawsuit almost 2 years after any police investigation had closed and after any ADO complaint process had closed and was no longer an issue9. I could not have been motivated to chill petitioning of any kind.

cc. I have suffered actual injury in the form of expenditures of money and severe emotional distress.

### iv. Emotional Distress

dd. Mr. Donais continued publishing defamatory statements about me over the course of several months, even after he knew of or was aware of the emotional distress he had already inflicted upon me.

ee. Mr. Donais is abusing the purpose of the anti-slapp statute.

ff. As a result, I have endured mental pain and suffering, experiences fear and anxiety, a lack of energy, moods swings and sleep disturbances. These demonstrate the extreme and outrageous conduct by Mr. Donais, having a severe and traumatic effect upon my emotional tranquility.

### v. Meritorious Claims

gg. I have meritorious claims against Mr. Donais; Judge Christopher Barry-Smith confirmed that I had valid claims against Mr. Donais.

hh. Similarly, this is a meritorious defamation case that attempt to prevent Mr. Donais from to target me, harass me, and defame me in the eyes of the community in which I am held with esteem, and to disparage me in the eyes of the larger business community wherein I conduct business and advantageous relations, and thus destroy my ability to earn a living as an individual business consultant (and impede my ability to take care of my family as a minority with limited resources).

ii. By recognizing the validity of the claims, Judge Christopher Barry Smith effectively made the antislapp motion moot; Judge Christopher Barry Smith said that my claims were based on allegations that if proven true would show that Mr. Donais intended to defame me, and cause me emotional distress. Hence, Judge Christopher Barry-Smith implicitly elevated my claims to a threshold of plausibility to cause damages necessary to remain in superior court. This is grounds to deny the anti-slapp motion.

### vi. Malice

jj. Mr. Donais knowingly made false statements about me. His statements were made with malice.

kk. Moreover, I allege in my complaint that he defamed me with malice and malicious intent.

ll. He has recklessly sought to publish and republish the defamatory material in 2019.

### vii. Other claims

mm.  For example, I alleged against Mr. Donais the following wrongs: breach of contract, interference with advantageous relations, violation of MCRA, intentional infliction of emotional distress, race discrimination and harassment. None of these pertain to any petitioning activity.

nn. Petitioning activity is the only conduct complained of. Hence, the antislapp motion must be defeated.

oo. My lawsuit is driven by the wrong acts committed against me including defamation, and not any petitioning activity.

### viii. Violations of MCRA - Harassment:

pp. My lawsuit is also driven by the harassment and discrimination and hostile environment caused, created or facilitated by Mr. Donais and his friends. I simply want to not be ridiculed, mocked, derided or castigated.

qq. I simply want the harassment to stop and to be left alone without being harassed.

rr. Mr. Donais evidently believes he has the right to target, mock, deride, harass, defame and lie about me with impunity and without accountability, regardless of the damage to my ability to make a living, or provide for my family.

ss. The bottom line is that my attempt to stop defamation is not stifling free speech. I simply wanted to protect myself from a powerful bully who is irrationally fixated and obsessed with defaming me and harassing me because of race. I simply want to prevent falsehoods being used to hurt my reputation and character and have a chance at having a successful business. I simply wanted to stop Mr. Donais from promoting the lie that I accused him of racism, or any other lie that he concocted in his attempts to smear me. Simply, I want Mr. Donais to leave me alone and stop harassing me for my race or any other tortious reason.

tt. Mr. Donais repeatedly published statements accusing me of making frivolous claims of racism. These allegations support an inference that Mr. Donais' conduct constituted intimidation designed to keep me from exercising my rights under art. 16 of the Massachusetts Declaration of Rights.

### ix. No Petitioning

uu. Furthermore, Mr. Donais claims in his anti-slapp motion that his comments were intended to be serious comments directed to government as petitioning activity. He was attempting to use false assertions to paint me in a false negative light, to raise doubts about my character, and ultimately to subject me to public ridicule, and scorn in the eyes of the larger communities with which I am held in esteem.

vv. Even assuming arguendo there was petitioning, I assert that Mr. Donais' comments and conduct is motivated by malice. The allegations of falsity, coupled with the allegations of ill will and animus on the part of Mr. Donais toward me, are sufficient in demonstrating a meritorious claim for defamation.

ww. Mr. Donais has made statements implying or indicating I was a criminal. Mr. Donais has sullied my reputation in the community. These have nothing to do with any petitioning.

xx. No petitioning activity were related to his alleging I frivolously alleged racism; or suggesting that I was a criminal; etc.

### x. Admission of Liability

yy. Mr. Donais admitted that he had a conflict of interest. A judge found that he breached fiduciary duty. He thus had to disqualify himself. This involved no petitioning activity.

zz. His admission demonstrated that my claims are meritorious and that I have a valid claim.

aaa. Hence his after the fact petitioning argument is a sham. NB: I can provide evidence of this in an evidentiary hearing.

### xi. Contract & Covenant of Good Faith

bbb. Mr. Donais breached his contract with me in treating me unfairly. I have the documentation to prove this and will do so upon granting an evidentiary hearing.

ccc. Also, the defendant is in possession of further documentation that will further prove my arguments and he should be required to produce these documents via limited discovery. NB: Mr. Donais has not disputed that there was a contract.

ddd. Mr. Donais also breached his duty of good faith and fair dealing to me, intentionally engaged in wrongful conduct, and knowingly injured/harmed me.

### xii. Contractual or Advantageous Relations

eee. I had a prospective economic advantage in the marketplace derived from my experience and background in conference planning and related activities including speaking, consulting and training.

fff. Mr. Donais knew about my continuing efforts to engage in business in the marketplace, and also knew about my role as a speaker and conference planner, including for certain police-involved community-based events.

ggg. Mr. Donais intentionally interfered with the prospective advantages of my relationships with existing and prospective business and professional associates through improper motives or means

hhh. As a result of Mr. Donais' misconduct, my prospective business advantages are irretrievably damaged.

    iii.  Furthermore, during times relevant to this matter, I enjoyed advantageous relationships with various persons and groups in NH, including the Manchester Police Department as well as with the NAACP and members of the AG office. I anticipated further advantageous relations with such in the future.

    jjj.  The conduct described above was the clear use of improper motives and means to accomplish the interference with my contract rights and advantageous relations secured by me in the community.

    kkk.  This interference with contract rights and advantageous relations and prospective business advantage caused me injury and damages.

    lll.  In 2017, 2019 and 2020, Mr. Donais was put on notice that his comments and conduct were harming me and my business. He maliciously continued to make or publish such comments even after such time and beyond. He was fully aware of the damage to my business he was causing.

199.    These are just some of the examples but there are many others contained in my complaint.

200.    The Defendants have thus taken this matter and transformed it into a disingenuous, dishonest, frivolous anti-slapp complaint.

201.    My complaint was not based on the defendant's petitioning activity and there are no circumstances under which it could be construed that my complaint was based **solely** on the defendant's petitioning activity and nothing more. As such, it simply cannot be said that I filed my complaint merely to intimidate or chill the defendant's exercise of his right to petition, and there is no basis to conclude that my case as a whole is meritless. No-one in my situation would have known or understood that the defendants defamatory comment in accusing me of false racism accusations was motivated or intended to be a petition to a government entity.

202.    Furthermore, Defendant engaged in an attempt to settle this case. Hence the defendant's anti-slapp motion is based on a "sham". I can provide evidence of this in an evidentiary hearing.

203.    He is thus disqualified from obtaining protection under § 59H because he was not "petitioning" in the sense of personally seeking redress of a grievance of his own. See Fustulo v. Hollander , 455 Mass. 861 (2010).

204.    Hence, based on the above, there are adequate grounds to deny the anti-slapp motion. However, as mentioned before, I need limited discovery and time to collect and submit affidavits and incorporate additional points and arguments that would completely defeat this frivolous motion.

## B) Plaintiff Is Likely To Succeed On The Merits

205.    While it is crucial, for the reasons stated above, that motions to dismiss under the Anti- SLAPP statute be filed promptly, here, as in Drudge, Plaintiff's suit is hardly meritless.

206.    The claims I have made in this case are likely to succeed. The allegations outlined in the complaint regarding Donais' conduct is supported by detailed facts—all before any discovery has even commenced. These are not allegations based on suspicions or innuendo. I have amassed and alleged evidence—much of it taken from the Defendant's own statements and conduct—that the Defendant knowingly or recklessly defamed me. As a result of the Defendant's defamatory actions, I was publicly defamed among other things, which is unquestionably false. The relief that I am seeking is limited to the specific defamatory falsehoods that Defendants published about me individually which are the subject of the tort claims alleged in the Complaint. In short, I ask that Defendants stop defaming me. This lawsuit is not about Donais' free speech or petitioning rights. Defendant's attempt to argue otherwise is merely a smokescreen for a weak defense on the merits of the tort claims stated in my complaint. While Free speech is sacrosanct in this country, it has its limits, and those limits are reached when an innocent person is maliciously and falsely defamed to further another's agenda. Defendant's Special Motion to Dismiss should thus be dismissed. [NB: The suggestion that this suit is part of a larger attempt to "muzzle" Donais is preposterous. Indeed, Mr. Donais has increased his allegations by increasing the number of persons that he spreads the falsehoods to.].

207.    So the Defendant's motion to dismiss would still fail because Plaintiff's claim is likely to succeed.

208.    "SLAPP suits are often brought for 'purely political purposes' in order to obtain 'an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.'" Drudge, 2001 WL 587860, at *3. [O]ne of the common characteristics of a SLAPP suit is its lack of merit. But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. … Thus, while SLAPP suits "masquerade as ordinary lawsuits" the

conceptual features which reveal them as SLAPPs are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal right or to punish them for doing so. Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs.

209.    I was forced to bring this lawsuit because I asked Donais several times to stop defaming me but he refused. He in fact further mocked, ridiculed and defamed after that. I tried to ignore it but I suffered embarrassment, humiliation, lost business and opportunities, all because the Defendant has breached his implied contract with me, has treated unfairly because of my race and has sought to target me and publish false and defamatory statements about me, about my character and my activities.

210.    This lawsuit has literally contributed to the draining of my resources. I could hardly have been trying to tie up defendant with a meritless claim to my own detriment.

211.    The callousness, the duplicity and the abuse of process by Defendant should not be countenanced by this court.

212.    The reasons behind the adoption of the Anti-SLAPP Act involve scenarios where a developer sued the activists and the community organization alleging they 'conducted meetings, prepared petition drives, wrote letters and made calls and visits to government officials, organized protests, organized the preparation and distribution of … signs and gave statements and interviews to various media. Such activism … was met with years of litigation and, but for the ACLU's assistance, would have resulted in outlandish legal costs to defend. Though the actions of these participants should have been protected, they, and any others who wished to express opposition to the project, were met with intimidation. This view of SLAPPs is thus exactly in line with the definition offered by the Drudge Court—and completely different from the case that I brought.

213.    Much like this case, the Court in Drudge reasoned that the suit "[bore] little resemblance" to a SLAPP action and concluded that it could not "characterize the suit as meritless … or conclude at this stage that plaintiffs have not been injured in their reputations or that 'winning is not [their] primary motivation', so far as it appears, they have brought this suit to 'vindicate a legally cognizable right.'" Drudge, 2001 WL 587860, at *4 (second alteration in original).

214.    Unlike a traditional SLAPP suit, there is no economic bullying here, and I am certainly not a "large private interest[] [aiming] to deter common citizens from exercising their legal right[s]." Id. at *3.

215.    To the contrary, I am a lone individual who is meritoriously seeking legal recourse for damage to my personal reputation after Defendants published false and misleading statements of fact about me to a wide audience. For all these reasons and the reasons stated in Plaintiff's concurrently filed opposition to Defendants' motion to dismiss, Plaintiff's claims are not appropriately deemed a SLAPP suit and are likely to succeed on the merits.

216.    In Kobrin, the Massachusetts high court said that in analyzing the merits of an anti-SLAPP motion to dismiss, "our only concern, as required by the statute, is that the person be truly 'petitioning' the government in the constitutional sense." 861 N.E.Qd at 68 n.14. Donais has not established that the conduct on which Plaintiffs' claims are based consist solely of Donais' own protected petitioning activity. Therefore, he has not made the initial showing required before the burden is shifted to the Plaintiff, and it is unnecessary to proceed to that step of the analysis.

217.    Defendant's statements are not petitioning activity. They were not being presented for consideration or review by a government body. Furthermore, statements that are tangential to an issue under consideration or review by a governmental body are also not entitled to the protection of the anti-SLAPP law. See Global NAPs, 63 Mass. App. Ct. at 607 ("tangential statements intended, at most, to influence public opinion in a general way unrelated to governmental involvement" are not covered by the statute).

218.    I have evidence that (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. This evidence requires an evidentiary hearing and therefore I request such a hearing. I also request limited discovery in order to be able to fully prove my case.

219.    According to the statute, I have a right to request specific discovery by motion and a hearing in order to provide good cause. I am requesting permission of the court to allow some "discovery" including the necessary production of documents, and interrogatories and deposition.

## D. Plaintiff Is Entitled To Attorneys' Fees and Costs

220.    A court must award a prevailing defendant attorney's fees and costs, but a prevailing plaintiff is also entitled to attorney fees and costs if the anti-SLAPP motion was "frivolous or . . . solely intended to cause unnecessary delay."

221.    I also ask this Court to award me fees and costs incurred in being forced to prepare and file an opposition to this wholly frivolous anti-slapp motion (i.e. if the Court denies his motion). Given Defendant's extreme and unreasonable conduct towards me to date, both within this litigation, and in connection with events outside of this litigation, it is evident that the only reason why he would file this anti-slapp motion is to further harass me by forcing me to incur additional legal fees by preparing responses to his anti-slapp motion.

222.    For all the reasons stated above, the Anti-SLAPP Act is ineffective for purposes of this case, and is rendered moot by reason of Defendants' untimely filing. The Plaintiff is entitled to attorneys' fees and costs for all of these reasons. The court may award reasonable attorney fees and costs to the responding party if the court finds that a motion is frivolous or is intended to cause unnecessary delay. Given the numerous, significant, and obvious procedural and substantive barriers to success on this motion, Plaintiff can only assume that this motion was intended to further delay discovery in this case.

223.    Moreover, should the Court (appropriately) hold that the Anti-SLAPP Act is inapplicable to this case, attorneys' fees are also proper as a party may recover attorneys' fees from an opposing party by demonstrating that the party acted in bad faith either by filing a frivolous action, or by litigating a properly filed action in a frivolous manner.

### Request for Limited Discovery Under The Statute

224.    According to the statute, the court shall consider pleadings and supporting and opposing affidavits stating the facts" and may permit additional discovery upon a motion for good cause.

225.    Similarly, when considering a motion to strike under the anti-SLAPP statute, the court should apply a summary judgment-like analysis to determine whether the plaintiff has shown, by clear and convincing evidence, a probability of prevailing on the merits.

226.    Thus, when deciding whether the moving party has shown, by a preponderance of the evidence, that the claim was based on an action involving public participation and petition, the court also must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Mountain Park. 125 Wn.2d at 341: Gerbosi. 193 Cal.App.4th at 444.

227.    NB: When it comes to an anti-slapp motion, the stakes are high for the non-moving party because of the automatic award of fees if the special motion is granted.

228.    As point of note, I also understand that even if this court rules in my favor, it still is important to preserve the record just in case of an appeal. This is critical because if discovery is ordered, and later the movant wins an appeal, I could be automatically stuck with the movant's cost of discovery. It is therefore prudent for me to secure the record from now and it is not unreasonable for me to be concerned about this, which comes from my reading of several cases related to anti-slapp motions in the state of Massachusetts.

229.    In light of the foregoing, it is evident that good cause exists therefore to grant this request.

### III. CONCLUSION

230.    If this court has what it needs in order to make a decision on the anti-slapp motion, I hope that the court rules in my favor. It would be a travesty, if after all this effort, if the court rules otherwise. The court should allow the case to proceed on the merits and allow me to have my day in court to prove my case.

231.    Wherefore I request that this Court:
   a.  Deny the Anti-Slapp Motion to Dismiss in its entirety;
   b.  Award me any fees and costs incurred in opposing this Motion.

232.    If this court denies all of the above requests, then in the alternative, I would like to ask that the court:
   a.  Allow me the opportunity to take limited discovery as permitted by statute.
   b.  Allow me to have an evidentiary hearing to show why limited discovery is needed, as permitted by statute.

233.    WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

Respectfully submitted,

Andre Bisasor
/s/andre bisasor
679 Washington Street, Suite # 8206
Attleboro, MA 02703

Date: July 19, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was or will be served to the parties in this case via the court's electronic filing/service system.

/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703