UNITED STATES DISTRICT COURT - DISTRICT OF NEW HAMPSHIRE

ANDRE BISASOR, Plaintiff,

v.

CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC; UPTON &
HATFIELD, LLP; and MARY K. DONAIS, Defendants.

Case No.1:23-cv-00374-JL

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DONAIS DEFENDANTS' MOTION TO
DISMISS
AND
PLAINTIFFS SUPPLEMENTAL OPPOSITION TO DONAIS DEFENDANTS'
INCORPORATED ANTISLAPP MOTION
[ALL COMBINED]
WITH
MEMORANDUM AND AFFIDAVIT INCORPORATED**

1. I, the plaintiff in the above-captioned case, hereby submits this **supplemental** opposition to the motion to
   dismiss filed by defendants Craig Donais, Mary Donais and Donais Law Offices ("Donais defendants")
   filed on 9/26/23, and supplemental opposition to the Donais defendants' incorporated antislapp motion.

2. In support of this Opposition, I also file this incorporated affidavit setting forth plaintiff's facts and
   incorporated memorandum setting forth Plaintiff's arguments and reasons why Defendants' Motions to
   Dismiss should be denied and this case should be allowed to proceed to discovery and to trial,

3. NB: This court instructed me to include all arguments I wish to make in this supplemental opposition. I
   interpret that instruction expansively and hereby try to provide expansive arguments against dismissal.  I
   also included screenshots of exhibits incorporated into the opposition and/or attached certain exhibits
   where deemed helpful. Although this is intended to be expansive, it is not exhaustive (in part because of
   limited time). However, I also reserve the right to further state my defenses or rebuttals against dismissal in
   a sur-reply to any reply by the Donais defendants, and further in any opposition to the Hilliard defendants'
   motion to dismiss when that is filed by 12/4/23 (especially since the Hilliard defendants have asserted that
   they are incorporating certain defenses in the Donias defendants' motion to dismiss).

4. I hereby incorporate the oppositions to the defendants' motions to dismiss filed in the MA federal court.
   This opposition  incorporates by reference all of the factual and legal arguments found in the filings wherein
   I asserted these defenses against dismissal, including all of the factual and legal arguments contained in the

Initial Opposition to the Donais Defendants' Motion to Dismiss filed in this court, the Amended Complaint filed in state court, and in Plaintiff's Combined Opposition to Defendants' Motions to Dismiss and in Plaintiff's Combined Opposition to Defendants' Anti-Slapp Motions[1], and the supplemental oppositions and the attendant opposing affidavits filed in MA federal court.

5. I oppose the motion to dismiss in its entirety and in all its arguments, reasoning, claims, considerations, suggestions, insinuations, pleadings, statements, conclusion and requests and relief sought. I oppose and defend against the motion to dismiss attacks upon my complaint in full and completely.

6. I ask the court to grant a pro liberal construction to this filing.

7. In support of this supplemental opposition, I the Plaintiff state the following.

### I. NEW DEFENSES ARE EITHER IMPROPER OR WAIVED AND FORECLOSED
#### 1. Background

8. I filed this action in Bristol Superior Court of the state of Massachusetts alleging various claims, including defamation, breach of contract, etc., against the Donais and Hilliard. I then amended the complaint once before service of process and before the defendants entered an appearance or filed any documents in state court. then the Donais defendants.

9. After I served process on the defendants, the defendants removed the case to the United States District Court for the District of Massachusetts (MA federal court).

10. The Donais defendants then filed a motion to dismiss asserting Rule 12(b)defenses that the MA federal court lacked personal jurisdiction and that the MA federal court was an improper venue (moving to dismiss "pursuant to Federal Rule of Civil Procedure 12(b)(2)") as well as the anti-slapp defense and spousal disqualification. The first motion to dismiss by the Donais defendants stated the following:

> NOW COME Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC (the "Donais Defendants"), by their attorneys, and hereby request that this Honorable Court dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(3), Forum Non Conveniens, and anti-SLAAP or, in the alternative, transfer this matter to the District of New Hampshire. In support of this motion, the Donais Defendants rely upon their Memorandum in Support of this Motion to Dismiss or, in the alternative, to Transfer to the District of New Hampshire, filed herewith. WHEREFORE, Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC

---

[1] NB: I refute the assertion of the facts stated in the Donais defendants' filings that pertain to or is relevant to the antislapp motion. I refer to what is stated in my filings in this regard as correct and true. To the extent the statements by the Donais defendants in their filings are not supported by any affidavit of their asserted facts, these should be stricken or otherwise ignored by the court on this basis, and if necessary, I request that they be stricken by the court.

request that this Honorable Court dismiss all claims against them, or, in the alternative, transfer this matter to the District of New Hampshire.

11. See also screenshot below of the first motion to dismiss by the Donais defendants stated the following:

**DEFENDANTS CRAIG S. DONAIS, MARY K. DONAIS AND DONAIS LAW OFFICES PLLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO DISTRICT OF NEW HAMPSHIRE**

NOW COME Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC (the "Donais Defendants"), by their attorneys, and hereby request that this Honorable Court dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(3), Forum Non Conveniens, and anti-SLAAP or, in the alternative, transfer this matter to the District of New Hampshire. In support of this motion, the Donais Defendants rely upon their Memorandum in Support of this Motion to Dismiss or, in the alternative, to Transfer to the District of New Hampshire, filed herewith.

WHEREFORE, Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC request that this Honorable Court dismiss all claims against them, or, in the alternative, transfer this matter to the District of New Hampshire.

12. The memorandum accompanying the first motion to dismiss by the Donais defendants stated the following (on page 3):

Plaintiff's claims concerning alleged statements made by the defendants concern statements made to the courts, police, or other public bodies or organizations involved in petitioning activity. Complaint ¶¶ 21, 37-39, 120, 133-134, 152, 213-221, 272, 316, 319. Pursuant to Fed. R. Civ. P. 12(b)(2), Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC now move that the Complaint be dismissed on the grounds that the Donais Defendants are not subject to the personal jurisdiction of this Court. In the alternative, they now move that the Complaint be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). In the alternative, they now move that the complaint be dismissed for forum non conveniens. In the alternative, they now move that the Complaint be dismissed pursuant to Mass. Gen. Laws c. 59H. In the alternative, pursuant to 28 U.S.C. §1404(a), Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC request that this action be transferred to the District of New Hampshire.

13. See also screenshot below of first motion to dismiss by Donais defendants (on page 3):

Plaintiff's claims concerning alleged statements made by the defendants concern statements made to the courts, police, or other public bodies or organizations involved in petitioning activity. Complaint ¶¶ 21, 37-39, 120, 133-134, 152, 213-221, 272, 316, 319.

Pursuant to Fed. R. Civ. P. 12(b)(2), Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC now move that the Complaint be dismissed on the grounds that the Donais Defendants are not subject to the personal jurisdiction of this Court. In the alternative, they now move that the Complaint be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). In the alternative, they now move that the complaint be dismissed for forum non conveniens. In the alternative, they now move that the Complaint be dismissed pursuant to Mass. Gen. Laws c. 59H. In the alternative, pursuant to 28 U.S.C. §1404(a), Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC request that this action be transferred to the District of New Hampshire.

14. The MA federal court did not address whether it had or lacked personal jurisdiction over the Defendants, but instead transferred the case to this Court, in the District of New Hampshire, which the MA federal court believed was the "fairest thing to do" as it relates to all parties. (Order, July 27, 2023, Docket No. 60.)

15. The MA federal court also stated that there would be no statute of limitations issue upon transferring to the NH federal court. NB: This indicates that the MA federal court understood that the defendants were waiving the statute of limitations defense.

16. Upon arrival in NH, the NH federal court instructed the parties to refile any motions that were pending in MA federal court no later than by 9/27/23. But, on 9/26/23, instead of filing any answer, the Donais defendants filed a second motion to dismiss, this time asserting for the first time that I had failed to state a claim for which relief could be granted and asserting new affirmative defenses of statute of limitations, absolute litigation privilege and failure to conform the complaint to Rule 8c, while also reasserting the anti-slapp defense and spousal disqualification defense. The second motion to dismiss jettisoned the prior asserted defenses of lack of jurisdiction, improper venue, forum conveniens, or transfer. This is because the defendants prevailed to a certain extent in convincing the MA federal court that the fairest thing to do was to transfer the case to NH federal court and so the defendants already used and prevailed on that motion to dismiss in MA federal court.

17. By doing so, and by leaving out the new defenses from their first motion to dismiss, they misled the MA federal court that they were willing to move forward on the merits of the case, meaning moving forward on the substance of the case. By not asserting failure to state a claim, or statute of limitations defense, in their first motion to dismiss in MA federal court, the MA federal court was led to believe that all of the motion to dismiss defenses would be disposed of upon transfer to NH federal court. This is why the MA federal court indicated that "it would be the fairest thing to do", that no party would be "injured at all", and that the case could proceed on the "merits". If the MA federal court had received failure to state a claim defenses or statute of limitations or litigation privilege defenses, from the Donais defendants, it may have proceeded to address those arguments instead of effectuating a transfer.

18. The initial uncorrected transcript of the 7/27/23 hearing in MA federal court states, as follows:

COURT: All right. I've read all the pleadings, argument will not exceed 10 minutes a side. Where I want to start, Mr. Bisasor, is, um, as I've looked at these papers it does seem to me that **the fairest thing that I might do is transfer this case to the District Court in New Hampshire**, and the reason I say that is there are very real issues as to whether I have personal jurisdiction over the people you've sued here in the District of Massachusetts, and, um, where there's no such issues in the District of New Hampshire and **we can get on to the actual merits of the case**? What do you say to my transfer -- not dismissing the case, taking no other action on the case, but transferring it to the District of New Hampshire?

MR. BISASOR: Um, your Honor -- thank you, your Honor. I would say that, um, I believe that it may not be in the interests of justice to transfer the case to another forum in New Hampshire because, um –

So I understand with the transfer there wouldn't be a dismissal –

THE COURT: That's right.
MR. BISASOR: -- or **potential statute of limitations issues** if --
THE COURT: No.
MR. BISASOR: Okay, so with the transfer there will be none. Okay.

19. NB: The correct version of the transcript of the 7/27/23 hearing in MA federal court should show that the judge explicitly stated that there would be no statute of limitations issue if the case is transferred (for which I am currently seeking corrections to the transcript in MA federal court). These corrections would highlight the MA federal court's intention to prohibit the defendant from asserting unfair statute of limitations defenses upon transfer. Based on what the judge actually said in the hearing, it is my contention that the judge did not intend to allow the defendant to sandbag me with unfair assertion of defenses after transfer was ordered. The judge appeared to be sensitive to this issue which is why he made the effort to try to clarify on the record that the defendants should try to sandbag me after transfer with tricks and unfairness.

**2. Second Motion to Dismiss By The Donais Defendants Is Fundamentally Different From The First**

20. The Donais defendants have fundamentally transformed their first motion to dismiss into a whole new second motion to dismiss. It is not the same motion to dismiss.

21. New defenses and arguments were added (such as failure to state a claim, and statute of limitations defenses, etc., which are not allowed to be done after the initial deadline to file a motion to dismiss passed).

22. See screenshot below of page 2 of the second motion to dismiss.

> 3.    Donais Defendants deny wrongdoing.  Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8(a), Plaintiff's Complaint against the Donais Defendants should be dismissed because (a) all statements by or on behalf of Donais are absolutely privileged, (b) Plaintiff has entirely failed to allege sufficient facts to state a cause of action against Mary Donais, (c) each count separately fails to state a cause of action, and (d) the FAC fails to comply with Rule 8, inasmuch as it is not a short and concise pleading.  Also, to the extent that certain causes of action are based upon (in whole or in part) either (a) a 2017 telephone call between Donais and Plaintiff, (b) a March 2017 affidavit filed by Donais in another matter, or (c) Donais' 6/18/19 statements to the Manchester Police, such causes of action should be dismissed as time-barred.  Furthermore, the Donais Defendants should be awarded their attorneys' fees and costs incurred in defending against and moving to dismiss Plaintiff's claims pursuant to M.G.L. c. 231, § 59 H.

23. The court gave the defendants an opportunity to refile the motion to dismiss that was filed in MA federal court, not to transform or add new defenses and arguments after the fact.

24. There was nothing preventing the defendant from asserting statute of limitations and privilege defenses or failure to state a claim defenses in the MA federal court.

### 3. The New Affirmative Defenses are Improper and Untimely and Should be Denied

25. Motions under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); see also Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004). As the Ninth Circuit has noted, "[a] fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived." American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000).

26. The Donais Defendants filed a motion to dismiss on June 12, 2023 asserting only personal jurisdiction, improper venue, and forum conveniens/transfer defenses, and incorporating an anti-slapp motion within the motion to dismiss (which is also improper to do).

27. Further relief under Fed. R. Civ. P. 12(b)(6) by now adding statute of limitations and absolute privilege is therefore foreclosed. The assertion of affirmative defenses such as statute of limitations and privilege are foreclosed.

28. The Federal Rules clearly require a defendant to answer or otherwise respond within 21 days after being served with a summons and complaint.

29. Rule 12(a)(4)(A) provides that the filing of a Rule 12 motion, including a Rule 12(b) motion to dismiss, automatically extends the defendant's time to answer the complaint until fourteen days after notice of the court's resolution of the motion (unless the court sets a different date).

30. Defendants' second motion to dismiss should be rejected as it is untimely and fails to comply with the requirements of Fed. R. Civ. P. 12(b).

31. Because their Rule 12(b) motion to dismiss is their second, and successive Rule 12(b) motions to dismiss are not permitted except to raise a subject matter jurisdiction defense, the Court must deny the motion to dismiss. See **Exhibit 1** – Minnesota Federal Court ruling.

## VI. NEW DEFENSES ARE INTERPOSED TO DELAY PROGRESS IN THIS CASE

32. The Donais defendants filed a motion to dismiss on 6/12/23 in MA federal court ("first motion to dismiss").

33. The defendants waited until 9/26/23 to raise new defenses in a second motion to dismiss in this court.

34. This represents approximately 5 months of delay including after a motion to dismiss hearing in MA federal court and then a transfer to this court. These defenses are waived due to unreasonable delay.

35. The Donais Defendants' motivation is evidently to derail this litigation, contrary to the MA court's order indicating that proceedings should continue to proceed to the actual merits.

36. The Donais Defendants simply should not be able to make, at this time, any arguments regarding pleading deficiencies that they could and should have made several months ago.

37. Donais Defendants' motion should be denied under Fed. R. Civ. P. 12(g) as an untimely, successive motion to dismiss, intended merely to delay these proceedings.

38. In June 2023, the Donais Defendants, represented by the same counsel, saw no deficiency in the claims set forth in the Amended Complaint in MA federal court and filed a Rule 12(b)(6) motion citing only improper venue, personal jurisdiction, transfer, spousal disqualification and antislapp defenses.

39. At no time did the Donais Defendants cite or raise a defense of statute of limitations, failure to state a claim or privilege in their first motion to dismiss. See **Exhibit 5** for first motion to dismiss filed in MA federal court.

40. I hereby incorporate by reference my consolidated opposition to the two motions to dismiss filed by the Donais and Hilliard Defendants in MA federal court, particularly my arguments regarding Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10(b).

41. The Amended Complaint was based on the same causes of action and asserted the same claims in MA federal court as in NH federal court.

42. In their second motion, the Donais Defendants attempt to backtrack by newly objecting to claims they previously found sufficient. If the MA federal court action were still pending, the Donais Defendants would be barred from filing an additional motion to dismiss on grounds that were previously available. The Donais Defendants should not be permitted to continue this pattern of making this case as prolonged and expensive as possible.

43. Rule 12(g) contemplates that defendants will advance "every available Rule 12 defense and objection he may have that is assertable by motion." Moore v. Ford Motor Co., No. 92 C 1130, 1994 U.S. Dist. LEXIS 652, *5-6 (N.D. Ill. Jan. 26, 1994); see also U.S. Fidelity & Guaranty Co. v. Jepsen, No. 90 C 6931, 1991 U.S. Dist. LEXIS 16818, *6 (N.D. Ill. Nov. 1, 1991) ("The purpose of Rule 12(b)(6) is to prevent litigants from interposing defenses in a piecemeal fashion for purposes of delay.").

44. Rule 12(g) thus bars a party from filing a successive motion to dismiss to assert a defense or objection he could have raised, but failed to raise, in a previous Rule 12 motion. Stoffels v. SBC Communs., Inc., 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006).

45. "Generally, courts have denied defendants' attempts to file multiple pre-answer motions to dismiss, finding such motions contravene the purpose of Rule 12(g): to prevent litigants from interposing defenses in a piecemeal fashion and eliminate unnecessary delay at the pleading stage." Donnelli v. Peters Secs. Co., L.P., No. 02 C 0691, 2002 U.S. Dist. LEXIS 16305, *10 (N.D. Ill. Aug. 28, 2002) (citing cases).

46. Rule 12(g) applies in cases where, as here, the motion to dismiss is filed in response to a refiled or amended Complaint. For example, the defendant in U.S. Fidelity, after initially defaulting, moved to dismiss the plaintiff's amended Complaint under Rule 12(b)(6). The motion was granted in part and denied in part. When the plaintiff filed its second amended Complaint, the defendant, after again initially defaulting, filed

a motion to dismiss the second amended Complaint under Rule 12(b)(6). Finding that the second motion to dismiss contained arguments made and considered by the court in the first motion, or that could have been made but were not, the court denied the motion on this basis under Rule 12(g). The court noted that the purpose of Rule 12(b)(6) is "to prevent litigants from interposing defenses in a piecemeal fashion for purposes of delay," and found that the defendant's second motion to dismiss was "simply another delaying tactic" in its pattern of delay. U.S. Fidelity, 1994 U.S. Dist. LEXIS 16818 at *6. As in U.S. Fidelity, the entire second motion consists of arguments that could have made in the first motion, but did not.

47. Fed. R. Civ. P. 12(h)(2) preserves the defense of failure to state a claim only for pleadings under Fed. R. Civ. P. 7(a) or motions for judgment on the pleadings, and does not apply to motions to dismiss. See U.S. Fidelity, 1991 U.S. Dist. LEXIS 16818 at *4 n.2 ("Rule 12(h)(2) is inapplicable to motions to dismiss."); Stoffels, 430 F. Supp. 2d at 647 ("A review of the relevant authorities confirms that Rule 12(g) normally bars successive pre-answer motions to dismiss. Professors Wright and Miller state that the ban against successive pre-answer motions extends to the three 'substantial defenses' listed in 12(h)(2), including failure to state a claim upon which relief can be granted under Rule 12(b)(6). 'The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion.'") (quoting 5C Charles Wright & Arthur Miller, Federal Practice and Procedure § 1385 at pp. 727-729 (1990)).

48. The Donais Defendants simply should not be able to make, at this time, any arguments regarding pleading deficiencies they could and should have made several months ago. See Moore, 1994 U.S. Dist. LEXIS 652 at *5-6 ("Clearly, in their first motion to dismiss, the Defendants could have objected on the grounds that Plaintiff's fraud and consumer fraud counts failed to state a claim on which relief could be granted, but for unknown reasons, they did not. To allow the Defendants to assert, in their second motion to dismiss the same counts, arguments which could and should have been introduced in the first motion to dismiss would contravene the purpose of Rule 12(g). Accordingly, the Defendants' Motion to Dismiss Counts V and VI is denied.").

49. Motions to dismiss filed for delay are prohibited.

50. Every case faced by Donais has been met with delay tactics preventing an adjudication on the merits.

## II. THE DONAIS DEFENDANTS' RULE 12(B) FAILURE-TO-STATE-A-CLAIM DEFENSE IS IMPROPER AND SHOULD BE DENIED

### 1. Donais Defendants Should Have Stated Any Failure-to-State-a-Claim Defense In First Motion

51. The Donais defendants' failure-to-state-a-claim defense was available to it at the time it filed its first motion to dismiss in the MA federal court. Thus, the current arguments of the Donais defendants made in their second motion to dismiss could have been raised in their first motion to dismiss. See 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

52. Therefore Rule 12(g)(2) applies, and unless the Donais defendants can avail themselves of an exception, its successive Rule 12 motion is improper. There are two relevant exceptions, but neither applies here. First, a party may, after filing one Rule 12 motion, file a Rule 12(c) motion for judgment on the pleadings to raise defenses of "[f]ailure to state a claim upon which relief can be granted," "[failure] to join a person required by Rule 19(b)," and "[failure] to state a legal defense to a claim." Fed. R. Civ. P. 12(h)(2). But a motion for judgment on the pleadings is only available "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). Here the pleadings have not yet closed, so the first exception does not apply. Second, even if a party has already filed one Rule 12 motion, he or she may file an additional Rule 12(b) motion to dismiss to assert a subject-matter-jurisdiction defense. Fed. R. Civ. P. 12(h)(3). But the Donais defendants do not raise a subject-matter-jurisdiction defense. Since neither of these exceptions apply, the Court may not consider the Donais defendants' second motion to dismiss.

53. Although the Donais defendants may not have waived their right to raise its failure-to-state-a-claim defense, they have forfeited their opportunity to raise that defense in the context of a Rule 12 motion (other than one for judgment on the pleadings). Rule 12(g)(2) bans all successive Rule 12 motions raising previously available defenses unless the successive motion fits into one of the two categories described above – certain motions for judgment on the pleadings, and motions to dismiss based on subject matter jurisdiction. Rule 12(h)(1) states that a party waives a number of defenses if those defenses are not raised in an earlier Rule 12 motion, but the rule specifically excepts the failure-to-state-a-claim defense (along with a few others).

54. Together, these two rules indicate that a party who files a Rule 12 motion without raising a failure-to-state-a-claim defense gives up their opportunity to raise that defense prior to the closing of the pleadings, but retains the right to present the defense later – the defense has not been waived – in a pleading, a Rule 12 motion for judgment on the pleadings, or at trial. Fed. R. Civ. P. 12(h)(2).

55. Adherence to Rule 12's formalities is not some kind of annoyance that can whimsically jettisoned. The Court must still follow the rule's dictates. A district court errs if it considers an improper successive Rule 12 motion, and it is also **error** for a district court to construe a successive and improper Rule 12 motion as a motion for judgment on the pleadings if the pleadings have not yet closed. Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 321 (3d Cir. 2015) (finding that the district court erred when it considered a successive pre-answer motion to dismiss for failure to state a claim); see also Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 703 (10thCir. 2014) (suggesting the same); English v. Dyke, 23 F.3d 1086, 1090-91 (6th Cir. 1994) (suggesting the same).

56. A district court may not ignore the ban on improper successive Rule 12 motions. The Third Circuit addressed this matter at some length in Leyse: "We emphasize that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal."

57. Litigants and federal courts are all better off when parties consolidate their defenses in one motion.

58. For example, at the time the Donais defendants filed its first motion to dismiss in MA federal court, where the Donais defendants asserted only its personal-jurisdiction defense, the Donais defendants had no reason to know that it would succeed on that defense; it was of course within the realm of possibility that the MA federal court could have not transferred the case to NH federal court, or it could have ruled on the first motion to dismiss finding that it did have personal jurisdiction over the case, and if it did find that it had jurisdiction, and if the Donais defendants also asserted its failure-to-state-a-claim defense, the MA federal court could have dealt with the failure-to-state-a-claim issues that are now before this Court right at that time, possibly saving the parties nearly 6 months of motion to dismiss litigation.

59. The point is that based on the information available at the time the first motion to dismiss was filed, the consolidation of all available defenses would have best served principles of efficiency and judicial economy.

60. The Court should therefore deny the Donais defendants' motion, but permit the Donais defendants to refile their motion as a Rule 12(c) motion for judgment on the pleadings after the pleadings have closed.

61. This approach will shoehorn the Donais defendants' motion into the Rule 12(h)(2) exception to the ban on successive Rule 12 motions, and will alter little of the substance of the motion because the Donais defendants will be permitted to raise its failure to state a claim defense in the context of the motion for judgment on the pleadings. Also, the standard of review in a motion for judgment on the pleadings is the same as that in a Rule 12(b)(6) motion to dismiss. NanoMech, Inc. v. Suresh, 777 F.3d 1020, 1023 (8th Cir. 2015).

62. The court must therefore deny this motion to dismiss in accordance with Rule 12(h)(2).

63. As outlined above, the court should have no discretion in the matter as this is dictated by the rules of procedure and the court is bound by the rules of procedure. I should not be expected to defend against defenses that are outlawed by the rules of procedure.

64. NB: The Court should pay careful attention to the reply of the Donais defendants to this argument. The counsel for the Donais defendants is honor bound and duty bound to not offer a frivolous defense. Counsel is bound to follow the rules of procedure and is bound to be honest and fair under the rules of professional conduct. Counsel is required to admit to the court that they are not permitted to file a new rule 12b failure to state a claim defense in a second motion to dismiss but only in a rule 12c motion for judgment on the pleadings. If they obscure or dodge this point, it goes to the honor and integrity of defense counsel.

## **2. Improper Assertion of Rule 12(b) Defenses in Second Successive Preliminary Motion to Dismiss**

65. A defendant is required to serve an answer on plaintiff within "20 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). [A defendant waiving service is allowed a response time of 60 days (90 days if defendant was addressed outside any federal judicial district). Fed. R. Civ. P. 12(a)(1)(A(ii)].

66. Instead of answering within that 20-day period, a defendant may choose to make a preliminary Rule 12(b) motion to dismiss. Should a defendant choose that course of defense, and the motion prove unsuccessful,

defendant is allowed 10 days after service of the court's unfavorable decision on the motion to answer. Fed. R. Civ. P. 12(a)(4)(A).

67. The seven challenges that Federal Rule 12(b) specifically allows to be made by preliminary motion are the following:

–(1) lack of subject-matter jurisdiction;
–(2) lack of personal jurisdiction;
–(3) improper venue;
–(4) insufficient process;
–(5) insufficient service of process;
–(6) failure to state a claim upon which relief can be granted; and
–(7) failure to join a party under Rule 19.

68. A defendant wishing to raise any one of these seven challenges has two options.

a) Option one is to raise any and all of the defenses in the answer. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). The answer is the responsive pleading required to the complaint. Fed. R. Civ. P. 7(a).

b) Option two is to raise any and all of these defenses in a preliminary motion, one made before the answer is pleaded. "But a party may assert the following defenses by motion: [listing the seven defenses]. A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The party may join all motions under Rule 12 into a single motion. Fed. R. Civ. P. 12(g)(1).

c) Those are the only two options. A defendant who brings a preliminary motion to dismiss that asserts fewer than all of the defenses and later attempts to assert an additional Rule 12(b) defense for the first time in the answer will in most instances[2] waive it.

69. Similarly, a defendant cannot make successive preliminary motions to dismiss; one is the quota allowed:

Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion. Fed. R. Civ. P. 12(g)(2).

---

[2] Rule 12(h) provides exceptions to waiver for the defense of failure to state a claim, see Fed.R.Civ.P. 12(h)(2), whereby it can be asserted only in a Rule 12c motion for judgment on the pleadings after pleadings have closed, and lack of subject matter jurisdiction at any time, see Fed.R.Civ.P. 12(h)(3).

70. The reason the rules limit defendant to one preliminary motion is that it is the efficient method to dispose of all of the preliminary, threshold or jurisdictional motions. Without that limitation, defendants could delay the proceeding for a long time by doling out the successive motions one after the other. For example, a defendant could move to dismiss for insufficient service of process; following denial of that motion, defendant could move to dismiss for improper venue. The string could continue through multiple preliminary motions.

71. All of the seven grounds for dismissal found in Federal Rule 12(b) are threshold issues that can and should be disposed of before the parties and the court proceed to the work of deciding the merits of the case. By requiring defendants to assert these defenses early–in a preliminary motion–the rules prevent defendants from laying in the weeds and springing such successive grounds for dismissal on a plaintiff later should progress in the litigation not be favorable to the defendants.

### 3. Waiver of Rule 12(b) Defenses By Waiting To Assert Them In Second Successive Preliminary Motion to Dismiss

72. While Fed. R. Civ. P. 12(g)(2) requires a defendant who makes a preliminary motion under Rule 12 to consolidate all of its Rule 12(b) defenses into that motion, the enforcement provision is found in Fed. R. Civ. P. 12(h):

> (1) When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)-(5) by:
> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> (B) failing to either:
> (i) make it by motion under this rule; or
> (ii) include it in a responsive pleading or in an amendment allowed by rule 15(a)(1) as a matter of course.
> (2) When to Raise Others. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
> (A) in any pleading allowed or ordered under Rule 7(a);
> (**B) by a motion under Rule 12(c)**; or
> (C) at trial.
> (3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.
> Fed. R. Civ. P. 12(h).

73. These defenses must be consolidated into any preliminary motion brought under rule 12 [Fed. R. Civ. P. 12(g)(2)]. Failure of defendant to assert one or more of these defenses in one of the preceding manners results in waiver of the defense(s).

74. This procedurally-based argument, as referenced in Fed.R.Civ.P. 12(g), provides that a defense is waived if not included in any first motion filed under Rule 12.

75. The Donais defendants had previously raised an insufficient service of process defense in their opposition to default in both state court and in MA federal court.  The Donais defendants then thereafter moved to dismiss for personal jurisdiction, impoper venue and transfer but excluded insufficient service of process.

76. It is clear that the Rule 12(b) of lack of personal jurisdiction, improper venue, insufficient process and insufficient service of process are forever waived at this juncture.

77. For example, if Donais asserted an insufficient process defense in its second motion to dismiss, it would be clear that such defense was waived.

78. Therefore, at the very least, the assertion of a defense of failure to state a claim in a second motion to dismiss under Rule 12(b) is improper and prohibited.

79. The court therefore has no choice but to deny the motion to dismiss for failure to state a claim for which relief can be granted.

80. Aside from the antislapp defense[3], this leaves the affirmative defenses of statute of limitations and absolute litigation privilege. (NB: The defendant did not assert any defense of a qualified privilege), which shall be addressed in the next section.

## IV. NEWLY ASSERTED AFFIRMATIVE DEFENSES ARE UNTIMELY AND/OR WAIVED

81. The federal rules generally require parties to respond to allegations made against them. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

82. The federal rules also establish time limits for filing a responsive pleading for defendants "who did not answer before removal." Fed. R. Civ. P. 81(c)(2).

83. Under the federal rules, a defendant has 7 days to file any pleadings that may be required. Fed. R. Civ. P. 81(c)(2).

---

[3] NB: As stated previously in my initial opposition to the motion to dismiss, the anti-slapp motion must be denied because it is procedurally improper to assert such a motion under NH law

## V. STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSES SHOULD BE DENIED
### 1. Statute of Limitations Affirmative Defense Is Untimely And/or Waived

84. A statute of limitations defense is an affirmative defense. It is waived if not asserted in first motion to dismiss if it was available to be asserted in the first motion to dismiss.

85. An absolute privilege defense is an affirmative defense. It is waived if not asserted in first motion to dismiss if it was available to be asserted in the first motion to dismiss.

86. The statute of limitations defenses are waived due to unreasonable delay. It is also waived by operation of the rules of procedure.

87. Similarly, this affirmative defense of statute of limitations should not be pled in a motion to dismiss unless it is apparent on the face of the complaint. But the statute of limitations defense offered by the Donais defendants in their second motion to dismiss is not apparent on the face of the record. The defendants cannot dispute facts in the complaint. But the defendants are trying to use their second illicit motion to dismiss to dispute facts asserted in the complaint. The court must assume as true the facts asserted in the complaint. Here the below the complaint states the following (in paragraphs 886 – 888):

> NB: Otherwise, even without this tolling, **the deadline would have been Monday, June 20, 2022 given that June 18, 2022 fell on a Saturday and thus according to the rules, the deadline would bump over to the next business day of Monday June 20, 2022**, which is when my e-filed complaint was docketed by the court, after **I had e-filed it on Saturday, June 18, 2022** and of which there is proof of it being electronically filed on June 18, 2022. Since the core events alleged started on or about June 18, 2019, or otherwise in or around June 2019, then either way the plaintiff is covered regarding any statute of limitations issue for this complaint for claims that carry a 3-year statute of limitations. **It should be noted however that given that the plaintiff e-filed his complaint on Saturday, June 18, 2022**, then the actual time period for which the plaintiff can seek recovery for claims that carry a 3-year statute of limitations, goes back 106 days to March 4, 2022. Therefore, for any events that occurred between March 4, 2022, and June 18, 2022, the plaintiff can recover damages for, under a three-year statute of limitation.

88. The Donais defendants cannot dispute that I efiled my complaint on 6/18/22 in a motion to dismiss. Similarly, the defendants cannot dispute that 6/18/22 falls on a Saturday. Therefore the Donais defendants' statute of limitations defense is frivolous, bad faith and should be ignored or stricken. It is also false, misleading and an attempt to be less candid with court, to confuse the court and is thus also sanctionable.

### 2. Statute of limitations Defense is Meritless

89. This case was filed on Saturday June 18, 2022. The events relevant to the claims for which the plaintiff seeks recovery (for claims that carry a 3-year statute of limitations) occurred in June 2019, 2020, in 2021 and 2022.

At all times relevant to the claims and damages of this case, there were less than 3 years that elapsed between these events and the filing of the complaint in state court.

90. NB: The actual statute of limitations deadline (for claims that carry a 3-year statute of limitations) would be 3 years plus 106 days based on the tolling created by the SJC during the Covid emergency in 2020. See Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338 (2021) (holding that its 2020 COVID-19 statute of limitations tolling order tolled the statute of limitations for all civil actions, not just those actions for which the limitations period would have expired during the tolling period).

91. Hence, all cases that had events starting between March 17, 2017, and June 30, 2020, are allowed automatically to an additional 106 days to the statute of limitations deadline, making it in this instance, Monday, October 3, 2023.

92. But the plaintiff does not need necessarily to avail himself of this additional time period in order for his complaint to be deemed timely. NB: Otherwise, even without this tolling, the deadline would have been Monday, June 20, 2022 given that June 18, 2022 fell on a Saturday and thus according to the rules, the deadline would bump over to the next business day of Monday June 20, 2022, which is when my e-filed complaint was docketed by the court, after I had e-filed it on Saturday, June 18, 2022 and of which there is proof of it being electronically filed on June 18, 2022. See screenshot below.

93. Since the core events alleged started on or about June 18, 2019, or otherwise in or around June 2019, then either way the plaintiff is covered regarding any statute of limitations issue for this complaint for claims that carry a 3-year statute of limitations.

94. It should be noted that given that the plaintiff e-filed his complaint on Saturday, June 18, 2022, then the actual time period for which the plaintiff can seek recovery for claims that carry a 3-year statute of limitations, goes back 106 days to March 4, 2022. Therefore, for any events that occurred between March 4, 2022, and June 18, 2022, the plaintiff can recover damages for, under a three-year statute of limitation.

95. Also, for any events that took place in 2020 or after, the statute of limitations has not expired for any claims in this complaint. Similarly, for plaintiff's 93A claims and racial harassment claims under Section 1981, those have a statute of limitations of 4 years and are not expired at this time, if counting from the events that

occurred in June 2019. In addition, the plaintiff's breach of contract claims have a 6-year statute of limitations and are not expired at this time.

96. NB: Although references may have been made to certain events that occurred in 2017 or prior to the year 2019, these are only referenced for context or background and the plaintiff does not intend, in this lawsuit, to seek recovery of damages for these events, that occurred in 2017 or prior to the year 2019, for claims that carry a 3 year statute of limitations. The plaintiff only intends to seek recovery where possible in this lawsuit for damages flowing from events, known to the plaintiff, that occurred in the year 2019 and thereafter (as it relates to claims that carry a 3-year statute of limitations).

97. However, the plaintiff does intend to seek damages for the breach of implied contract cause of action, as an exception to the 3-year statute of limitations, which in this case does not apply because breach of contract claims carry a 6 year statute of limitations, which means every act that is a breach of implied contract described in this complaint is brought timely via this complaint.

### 4. Misleading Statements and Omissions Concerning Statute of Limitations Defense

98. It should be noted that certain dishonest statements were made in the motion to dismiss by the Donais defendants. For example, they claim that the 6/18/19 comments by Craig Donais are time barred because I filed my complaint on 6/20/22, based on arguing a 3 year timeline for statute of limitations. But they lied to this court. First, I filed the complaint electronically in state court on 6/18/22 which was on a Saturday. See screenshot of efiling receipt below.



## Filing Submitted

Envelope Number: 1252251
Case Number: 1252251
Case:

This is a notification that the filing below has been SUBMITTED to the Clerk's Office for review. A subsequent notification will issue when the Court ACCEPTS or REJECTS the document for electronic filing.

| Filing Details | |
| --- | --- |
| Court | Superior Courts |
| Date/Time Submitted | 6/18/2022 11:58 PM EST |
| Filing Code | Complaint Electronically Filed |
| Page Count | 6 |
| Submitted By | Andre Bisasor |
| Submitting Attorney | |
| View Document | Download Document |
| This link is active for 45 days. | |

99. The state court did not docket it until 6/20/22 because of the weekend.  See screenshot of 2022 calendar below.

### Calendar for June 2022 (United States)

| | | | June | | | |
|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

Phases of the Moon: 7 ◑  14 ○  20 ◔  28 ●

100.    Second, because 6/18/22 fell on a Saturday, the deadline fell to the next business day of 6/20/22. See Massachusetts Rules Of Civil Procedure 6(a) which states: "***The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the <u>next day which is not a Saturday, a Sunday, or a legal holiday</u>.***"

101.    See also screenshot of Massachusetts Rules Of Civil Procedure 6(a) below taken from Mass.gov website:

## (a) Computation

In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute or rule, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 77(c), "legal holiday" includes those days specified in Mass. G.L. c. 4, § 7 and any other day appointed as a holiday by the President or the Congress of the United States or designated by the laws of the Commonwealth.

102.    Either way, the 6/18/19 comments would not be time barred. The defendants know this but they lied blatantly to this court in order to mislead this court in order to win at all costs, ethics and honesty be damned.

103.    Similarly, they also fail to indicate that the statute of limitations for breach of contract is 6 years but instead give the court the impression that my claims are time barred because they were filed 5 years later. The Donais Defendants thus misled the court.

104.    NB: This is an example of why so many people are fed up and frustrated in this country leading to societal unrest and a total lack of confidence in the foundational institutions of our democracy, including the judicial system. It is why so many average-americans are cynical of the justice system and believe that the well-connected and the rich can essentially "get away with murder" in the proverbial sense as they pour tons of money and resources into hiring big-time defense lawyers who invariably engaged in a scorched earth policy of trying to muddy up the plaintiff with irrelevant crap and in wielding, without any conscience, an array of dirty, under-handed or downright unethical tactics to out-maneuver, discredit, and stifle legitimate attempts at a redress of grievances by the proverbial "little guy" as well as by the poor, the vulnerable, the marginalized and the voiceless of our society. Even Harvard Law School itself recognizes this problem where on its walls at the Weinstein Building, it states the following: a) Jonathan Swift: "Laws are like cobwebs, which may catch small flies, but let wasps and hornets break through." b) Anacharsis: "Written laws are like spiders' webs, and would catch the weak and poor, but easily be broken by the mighty and rich." c) Derek Bok (former Harvard president): "There is far too much law for those who can afford it and far too little for those who cannot

105.    None of the Donais defendants' assertions regarding statute of limitations is correct. NB: I took great pains to preemptively address these points in my complaint, which debunks the Donais defendants' contentions in their motion to dismiss. Please carefully read my complaint in detail for more information which is incorporated herein.

### 5. Tolling of Statute of Limitations.

<u>Covid Tolling:</u>

106.    The actual statute of limitations deadline (for claims that carry a 3-year statute of limitations) would be 3 years plus 106 days based on the tolling created by the SJC during the Covid emergency in 2020. See Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338 (2021) (holding that its 2020 COVID-19 statute of

limitations tolling order tolled the statute of limitations for all civil actions, not just those actions for which

the limitations period would have expired during the tolling period).

107.    In this case, this covid tolling would bring the June 2019 events squarely and amply within the statute

of limitations for 3 year limitation claims.

<u>Discovery Rule and Equitable Tolling</u>:

108.    I did not discover the 2019 and 2020 acts of Donais until summer of 2020 and the fall of 2020.

109.    Moreover, Donais took active steps to prevent me from finding out about these events in order to

prevent me from discovering these acts. This includes making false statements to mislead me about these

events.

110.    NB: If the defendants contributed to the plaintiff's missing the deadline, the defendants are estopped

from using that as a basis to find fault with plaintiff. The rationale is as follows: if there is an obstruction to

plaintiff by the defendants that prevents plaintiff from meeting a court deadline, then fundamental fairness

and due process would suggest that plaintiff should not be penalized for the delay caused by the defendants.

There are three legal principles or doctrines that illustrate the basis for this:

   a) Equitable Tolling: Equitable tolling is a means by which a deadline can be delayed when the
      circumstances of common fairness and equity demand.  Tolling is not a permanent release from the
      deadline. It is a stopping of the clock in the interest of equity.  When equity no longer demands it,
      the running of the clock continues. This principle states that administrative parties should avoid per
      se standards that are way too rigid when it comes to deadlines or statute of limitations if there are
      extenuating circumstances. A "petitioner" is "entitled to equitable tolling" if there are circumstances
      that stood in his way" and prevented timely action.
   b) Equitable Estoppel: Equitable estoppel comes into play if the administrative party has taken active
      steps to prevent the petitioner from meeting the deadline or statute of limitations." Equitable estoppel
      "springs from basic considerations of fairness.
   c) Contra Non Valentem: The doctrine of contra non valentem is Latin for "a prescription does not
      run against one who is unable to act". This is a legal principle that shows that the statute of limitations
      is not applicable, or a prescriptive period does not begin to run, against a petitioner where (1) some
      legal cause prevented petitioner's timely action, (2) some condition associated with the process
      prevented the petitioner from acting, (3) the counterparty prevented the petitioner from acting.

<u>Republication</u>

111.    Moreover, in 2019 and 2020, Donais republished his prior defamatory statements to the police. This

republication, including all of the alleged defamatory statements about me from 2017, restarts the statute

of limitations clock and therefore every claim that I have that relates to 2017 has a fresh new clock to start from in 2019 and 2020.

112.    Similarly, Donais took steps to mislead me about the existence of his acts related to the republishing and expansion of these defamation acts. I was deliberately told that he did not make any statements to the police. Any part of the 2019 events that could be touched by a time limit should be tolled by equitable tolling or equitable estoppel, discovery rule tolling, republication, or otherwise treated as a continuing violation in repeated conduct through continuing into 2019, 2020 and 2021.

<u>Continuing Violations</u>

113.    Moreover, discrimination and retaliation is or can be a continuing violation that reach back into time from when the first acts began. I was subjected to continuing acts into 2019 and 2020 and 2021, and so the statute of limitations does not reach to the timeframe of many things in the complaint. NB: I am alleging relating the discrimination and retaliation could also be a breach of contract and breach of covenant of good faith and fair dealing (i.e. a 6 years' time limit). By violating my civil rights, Donais violated his duty and obligation to me, as an attorney and office of the court bound by the rules of ethics, to not engage in discrimination and retaliation.

<u>Duress</u>

114.    More particularly, Plaintiff was threatened by Donais attempt to threaten and intimidate the plaintiff, dissuading him from pursuing his complaint.  The threat also included the prospects of Donais, using his power and connections with the police to hurt me. This threat was delivered to Plaintiff by his police officer connections. The duress is an element of or inherent in the underlying causes of action complained of herein. The duress and coercion exerted by the Donais Defendants has been such as to have actually deprived Plaintiff of his freedom of will to institute suit earlier in time, and it rose to such a level that a person of reasonable firmness in Plaintiff's situation would have been unable to resist.

115.    The Donais Defendants are equitably estopped from arguing that any statute of limitations has not been tolled as the Donais Defendants wrongfully forced Plaintiff to refrain from commencing this action by threats, duress, lies and other misconduct.

<u>Further Note On Statute of Limitations For All Claims</u>

116.   Beyond that, principles of continuing violations, discovery rule, equitable tolling, equitable estoppel, applies to toll any thing that could be touched by a time limit issue. Beyond that, I pled that other defamatory events by Donais that took place subsequent to 2019, 2020 and 2021.

117.   Anything that took place in 2019, 2020 and 2021 would not be subject at all to any time limit challenge.

118.   Furthermore, any statute of limitations applicable to defamation, intentional and reckless infliction of emotional distress, and other torts listed in this complaint is tolled.

119.   A 4 year limitations apply to discrimination under Section 1981, MERA, 93A, and 6 years apply to breach of contract and all torts sounding in contract.

120.    The statute of limitations issue cannot be resolved in a motion to dismiss and should be denied.

121.   Moreover, once allowed to amend, the statute of limitations issue can be further straightened out.

## V. ABSOLUTE PRIVILEGE AFFIRMATIVE DEFENSES SHOULD BE DENIED
### 1. Absolute Privilege Defense is Improper

122.   Federal Rules of Civil Procedure 8(c), 12, and 15 prescribe the processes for raising affirmative defenses and addressing untimely affirmative defenses.

123.   Rule 8(c) states in relevant part: "In response to a pleading, a party must affirmatively state any avoidance or affirmative defense (including ... statute of limitations)."

124.   The proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings. Carr v. Tillery , 591 F.3d 909, 913 (7th Cir. 2010), citing Forty One News, Inc. v. County of Lake , 491 F.3d 662, 664 (7th Cir. 2007), and McCready v. eBay, Inc. , 453 F.3d 882, 892 n.2 (7th Cir. 2006) ; see also Amy St. Eve & Michael A. Zuckerman, The Forgotten Pleading , 7 Fed. Cts. L. Rev. 152, 172 (2013).

125.   Failure to follow this process may "deprive[ ] the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms." Harris v. Secretary, U.S. Dep't of Veterans Affairs , 126 F.3d 339, 343 (D.C. Cir. 1997) ; see also Blonder-Tongue Laboratories, Inc. v. University of

Illinois Foundation , 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (purpose of Rule 8(c) is to give opposing party notice of affirmative defense and opportunity to contest it).

126.    Courts have carved out a narrow and pragmatic exception if the availability of a defense is apparent in the plaintiff's complaint itself. E.g., Muhammad v. Oliver , 547 F.3d 874, 878 (7th Cir. 2008) ; see also Charles Alan Wright & Arthur R. Miller, et al. , 5B Federal Practice & Procedure § 1357 (3d ed. 2019). But such exception does not apply here. The Donais defendants had already filed an earlier motion to dismiss, and there are factual disputes regarding the timeliness of the defense, and the defense depends on evidence outside the pleadings. See again Burton v. Ghosh, 961 F.3d 960, 964-65 (7th Cir. 2020).

## 2. Absolute Privilege Defense is Untimely And Waived

127.    The Donais defendants had a restricted amount of time to file their motion to dismiss including all affirmative defenses by June 13, 2023 in MA federal court, which was 7 days after they removed the case to MA federal court.

128.    An affirmative defense is waived when it has been knowingly relinquished and forfeited when the defendant has failed to preserve the defense by pleading it. Reed , 915 F.3d at 478, citing Wood v. Milyard , 566 U.S. 463, 470 & n.4, 132 S.Ct. 1826, 182 L.Ed.2d 733 (2012). See also Burton v. Ghosh, 961 F.3d 960, 965 (7th Cir. 2020).

129.    The Donais defendants reasonably knew of the availability of this affirmative defense at the time of the first motion to dismiss. Thus, raising that defense through later motion to dismiss should be considered untimely. See Burton v. Ghosh, 961 F.3d 960, 966 (7th Cir. 2020) ("But if the defense is untimely and the delay prejudices (i.e., significantly harms) the plaintiff, it is forfeited and normally may not be considered by the court.").

130.    This late assertion of these defenses significantly harms me as the plaintiff. This defense is being presented "at the eleventh hour, without excuse and without adequate notice to the plaintiff."  No reason for the late presentation of the defense is made, and no excuse can be justified because the defendants had the same information as they had then regarding the complaint. The complaint has not changed. They

simply chose not to assert it. In failing to do so, they waived it and forfeited it. In the alternative, they can only assert it in a rule 12c motion after pleadings have closed.

131.    There has undue delay in asserting these defenses and there will be undue prejudice to the plaintiff as the opposing party. See Burton v. Ghosh, 961 F.3d 960, 965 (7th Cir. 2020)(By "prejudice," we do not mean whether the defense will succeed on the merits and cause the plaintiff to lose. We mean unfair prejudice, meaning that the late assertion of the defense causes some unfairness independent of the potential merits of the defense. For example, in Reed v. Columbia St. Mary's Hospital , we held that a plaintiff was prejudiced by an untimely defense first raised at summary judgment, based on information that had always been in the defendant's control…).

132.    I have been blindsided by it for the first time. I had already prepared and filed oppositions to the first motion to dismiss. And I did not vigorously contest the transfer to NH under the understanding that new defenses could not be raised in a new motion to dismiss.  Judge Young stated that there would be no statute of limitations issue.

133.    The failure to raise the defense in the first motion to dismiss "did not wipe the slate clean and render irrelevant the previous failure to raise it". Burton v. Ghosh, 961 F.3d 960, 968 (7th Cir. 2020).

134.    The defense is forfeited and the untimely assertion of the defense prejudices the plaintiff.

135.    On this record, allowing defendants' late defense would be "an abuse of discretion even under the liberal standard of Rule 15(a)(2)." Burton v. Ghosh, 961 F.3d 960, 969 (7th Cir. 2020).

136.    In Burton v. Ghosh, 961 F.3d 960, 970-71 (7th Cir. 2020), the court stated the following:

> Burton was further prejudiced by defendants' improper raising of res judicata in a late motion to dismiss. The events here show why presenting affirmative defenses in a motion to dismiss can be so troublesome. It allows a defendant to ambush a plaintiff, distorting the process contemplated by the Rules and impairing plaintiff's ability to confront untimely defenses. Ghosh and Wexford filed their Rule 12(b)(6) motion after discovery had concluded and with a summary judgment deadline looming. Burton's attorneys were expecting to address the merits of the case, not an untimely res judicata defense brought years into the litigation. They had limited time to respond to an unexpected motion that required them not only to address the defense on its merits but also to search years of litigation history to determine whether the defense had been waived or forfeited.

> This procedural tactic thus gave defendants the benefit of an amended pleading without having to address in their motion whether amendment was appropriate. Defendants said nothing in the motion about Rule 8(c), the timing of affirmative defenses, or the standard for amendment. They first addressed the core issue—the propriety of the amendment—only in their reply, after Burton correctly pointed out that the

motion to dismiss put the cart before the horse. And even when they got there, defendants argued in reply, when it was too late for plaintiff to be heard on the issue, that the district court was required by case law to allow the new defense.

These tactics blindsided plaintiff. He had to both rebut the substantive defense and bring to the court's attention the procedural issue that should have required its own motion for leave to amend from defendants. And because defendants did not raise the core issue until their reply, plaintiff was unable to respond as effectively as if the issue of amendment had been raised properly. The procedural errors created by defendants' improper motion to dismiss unfairly prejudiced Burton's ability both to contest the merits of the res judicata defense and to encourage the district court to exercise its discretion to forbid amendment of the answer. This is the kind of procedural prejudice that led us to reverse in Venters , 123 F.3d at 968. Cf. Jackson , 213 F.3d at 393 (plaintiff was not prejudiced when district court permitted defendant to amend answer because the court required defendant to request leave to amend, required defendant to brief the motion separately, and gave plaintiff opportunity for additional discovery to oppose motion).

137.   This tracks similarly in this case. I am being further prejudiced by defendants' improper raising of statute of limitations, privilege and failure to claim defenses in a late or second motion to dismiss.

138.   Moreover, these affirmative defenses should not be presented in a motion to dismiss because it allows the defendant to ambush a plaintiff, distorting the process contemplated by the Rules and impairing plaintiff's ability to confront untimely defenses.

139.   The Donais defendants filed their Rule 12(b)(6) motion after the first motion to dismiss and after transfer after a motion to dismiss hearing took place, and while the plaintiff was traveling during a vulnerable time where I was expected to address the merits of an untimely defense in a second motion to dismiss.

140.   I had limited time to respond to an unexpected motion that required me not only to address the defense on its merits but also spend time trying to determine whether the defense had been waived or forfeited.

141.   This procedural tactic thus gave the Donais defendants the benefit of an amended defense pleading without having to address in their motion whether amendment was appropriate. Defendants said nothing in the motion about Rule 8(c), the timing of affirmative defenses, or the standard for amendment. The motion to dismiss put the cart before the horse here. The defendants argue that the district court is required to accept the new defenses asserted in the second motion to dismiss and that the case must be dismissed.

142.   These tactics have blindsided the plaintiff. I have had to both rebut the substantive defense and bring to the court's attention the procedural issue that should have required its own motion for leave to amend from defendants.

143.   The procedural errors created by defendants' improper motion to dismiss unfairly prejudices my ability both to contest the merits of these new defenses and to encourage the district court to exercise its discretion to forbid amendment of the defense at this stage in a second motion to dismiss. This is the kind of procedural prejudice that led the court to reverse in Venters , 123 F.3d at 968. Cf. Jackson , 213 F.3d at 393 (plaintiff was not prejudiced when district court permitted defendant to amend answer because the court required defendant to request leave to amend, required defendant to brief the motion separately, and gave plaintiff opportunity for additional discovery to oppose motion).

### 3. Absolute Litigation Privilege Does Not Apply and This Defense is Meritless

144.   Although the defense is improper and untimely, I hereby preserve my rights by stating the following, protectively, so that I am not prejudiced.

145.   First, the absolute litigation privilege is an affirmative defense. It is something that is asserted in an answer after conceding the facts or validity of the facts. It is not a defense asserted under rule 12b. It is not an antecedent defense that operates prior to looking at facts pertaining to the causes of action of the complaint itself.

146.   It should be noted that the Donais defendants did not assert the absolute litigation privilege in their first motion to dismiss. This was a tacit concession or admission that the statements alleged to be defamatory or wrongful are not protected by absolute litigation privilege and that the statements are false and are not properly connected to any judicial proceeding.

147.   The litigation privilege, which concerns non-evidentiary areas, basically is a defense to suit. See Mass. G. Evid. Art. V(h)(1) (2019). Where it applies, "[w]ritten or oral communications made by a party, witness, or attorney prior to, in the institution of, or during and as a part of a judicial proceeding involving said party, witness, or attorney are absolutely privileged even if uttered maliciously or in bad faith." Id. at 93. Such "[s]tatements made in the course of a judicial proceeding that pertain to that proceeding are . . . absolutely privileged and cannot support [civil liability]." Correllas v. Viveiros, 410 Mass. 314, 319 (1991).

148.   A party claiming the privilege must have "serious[ly] consider[ed]" litigation "in good faith." Mack v. Wells Fargo Bank, N.A., 88 Mass. App. Ct. 664, 667 (2015), quoting Sriberg v.Raymond, 370 Mass. 105,

109 (1976). Consequently, the party asserting the privilege "must do more than speculate about the possibility of a judicial proceeding in the future." Harmon Law Offices, P.C. v. Attorney Gen., 83 Mass. App. Ct. 830, 838 (2013).

149.     The litigation privilege protects an attorney's statements made while "engaged in his function as an attorney," both during and prior to litigation. Mack, 88 Mass. App. Ct. at 669, quoting Sriberg, 370 Mass. at 109.

150.     The litigation privilege does not apply when the individual claiming the privilege "was neither 'a party, counsel [n]or witness in the institution of, or during the course of, [that] judicial proceeding' when [the individual] engaged in the conduct complained of." Mack, supra at 668, quoting Sriberg, supra at 108. Moreover, the privilege does not "encompass attorneys' conduct in counselling and assisting their clients in business matters generally." Mack, supra at 667, quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 192 (1998).

151.     The party asserting the litigation privilege bears the burden of showing that a particular communication is privileged. Mack, 88 Mass. App. Ct. at 668.

152.     A judge determines whether the litigation privilege applies "on a case-by-case basis, after a fact-specific analysis, with a proper consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation." Fisher, 69 Mass. App. Ct. at 365-366.

153.     In order for the litigation privilege to apply, the key inquiry is "whether a proceeding is sufficiently judicial or quasi judicial in nature." Id. at 366.

154.     A proceeding which included "the right to counsel, the right to present evidence, and the right to cross-examine adverse witnesses, and the threat of perjury," constituted a "quasi judicial" proceeding. Id. at 369.

155.     In the Fisher case in MA, the court determined that "the State police trial board possesses the authority and provides the procedural protections that differentiate a quasi judicial board from one that merely performs an administrative function." Id. See Visnick v. Caulfield, 73 Mass. App. Ct. 809, 813 (2009) (holding that statements made in letter regarding intention to file complaint with Equal Employment

Opportunity Commission covered by litigation privilege because such proceedings are "sufficiently judicial in nature").

156.    As to both Donais' responses to the ADO complaint and his statements to the police, the defendants have not met his burden to show that the absolute litigation privilege bars plaintiff's claims against Donais. See Harmon Law Offices, P.C., 83 Mass. App. Ct. at 838.

157.    Accordingly, it is error to apply the absolute litigation privilege in this case.

### *i. Donais' ADO Proceedings*

158.    In the absence of any litigation, the absolute litigation privilege is unavailable. See Mack, 88 Mass. App. Ct. at 667.

159.    Donais failed to submit sufficient facts or other information to reasonably conclude that the ADO proceedings were "judicial or quasi-judicial in nature," thus triggering the absolute litigation privilege. Fisher, 69 Mass. App. Ct. at 366.

160.    The  responses to the ADO by Donais did not have to be and were not filed under the penalty of perjury with this agency. However, the Fisher case requires more in order to deem an administrative proceeding as judicial or quasi judicial, namely, the presentation of evidence, cross-examination of adverse witnesses, and a decision by an impartial decision maker. See id. at 369. The instant case, thus, is easily distinguishable from Fisher, where it was held that the judge erred in determining that a State police trial board hearing, conducted under State police rules and regulations, was not a proceeding sufficiently judicial or quasi judicial in nature to apply the litigation privilege. Id. at 367-369. There, the Fisher court held that a State police trial board hearing is "'a formal administrative proceeding,' . . . which, as the Supreme Judicial Court has noted, 'appears analogous to a military court martial board.'" Id. at 367, quoting Burns v. Commonwealth, 430 Mass. 444, 448 n.6, (1999). We stated in Fisher:

161.    "[T]he State police trial board possesses the authority and provides the procedural protections that differentiates a quasi judicial board from one that merely performs an administrative function. The safeguards built into the hearing process serve to reduce the need for tort actions to control injurious statements or testimony. . . . The procedural due process protections featured at trial board hearings,

including the right to counsel, the right to present evidence, the right to cross-examine adverse witnesses, and the threat of perjury, also serve to enhance the reliability of the evidence to be assessed by impartial decision-makers." Fisher, supra at 369.

162.    Unlike the State police trial board hearings that deemed quasi judicial in Fisher, Donais failed to present any basis to support a conclusion that the ADO claims are resolved through a judicial or quasi judicial proceeding. No authority -- statutory, regulatory, case law, or otherwise – is presented that suggests that that the ADO proceedings provide for the presentation of evidence by plaintiff, cross-examination of witnesses by plaintiff, etc. Rather, ADO complaints are resolved as part of the agency's administrative functions. See Fisher, 69 Mass. App. Ct. at 369 (outlining "procedural protections that differentiate a quasi judicial board from one that merely performs an administrative function"). Donais therefore failed to meet his burden to show that the ADO proceedings are judicial or quasi judicial in nature. Given the lack of a judicial or quasi-judicial proceeding, Donais cannot invoke the litigation privilege as a bar to plaintiff's claims. See Harmon Law Offices, P.C., 83 Mass. App. Ct. at 838 ("even assuming that the requested documents constitute statements or communications, they do not relate to . . . contemplated or instituted [judicial or quasi judicial proceedings]").

163.    Also, the plaintiff has not invoked any court proceeding as a basis for claims or to recover. In none of these court proceedings has the plaintiff alleged statements were made as a basis for defamation or any other claim.  Donais cannot claim litigation privilege for any of that.

164.    The ADO in NH, like the IRS or SEC is not a proper adjudication forum, as it is special in character different from a judicial proceeding and is more administrative than judicial. Thus, litigation privilege does not apply. If it does apply, it is only a qualified privilege subject to factfinding and false statements with malice voids any privilege. Similarly, it is not petitioning but if it is treated as petitioning, it is false or sham petitioning devoid of facts or truth.

### ii. Donais' Police Statements

165.    Similarly, the statements to the police cannot provide a basis for a litigation privilege defense.

166.   When Donais sent the email to the police, there was no proceeding. Any potential or possible criminal complaint was closed.

167.   Plaintiff's allegations, accepted as true, "'plausibly suggest[]' . . . an entitlement to relief" (citation omitted). Iannacchino, 451 Mass. at 636. The complaint sufficiently alleges that Donais defamed plaintiff subjecting plaintiff to hatred, contempt, ridicule, and obloquy because they inaccurately portray plaintiff-- all of which is false.

168.   Plaintiff's claim that Donais was defaming plaintiff with Mary Donais knowledge and/or assistance, like other conditions of mind, can be "averred generally." Id. at 849, citing Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974).

169.   Therefore, Plaintiff alleged facts, which, if proved, would entitle plaintiff to relief against Craig Donais, Mary Donais and Donais Law Office, as well as for conspiring with Donais to defame plaintiff. See Iannacchino, 451 Mass. at 636.

### iii. No Reasonable Factual Support To Go To The Police

170.   Donais could have waited until he had enough basis to go to the police regarding any purported illegal recording. But Donais knew he lied in the affidavit and that's why he got nervous about being found out by the ADO and so offered a preemptive strike at the recording about it being fabricated, showing he was lying.

171.   Similarly, the lie in the affidavit and to the police was excessive and went beyond the scope of the matter before the court, which was the disqualification of Donais' former co-counsel Karl Terrell. Donais went outside of the scope of what was relevant to the proceeding. Thus, his statements are not related to the proceeding and thus not protected by litigation privilege. If it was petitioning activity. it is sham petitioning because it was untrue and devoid of any basis.

### iv. Injury

172.   Furthermore, general damages are presumed in a defamation action. This is sufficient to constitute harm.

173.    Donais' statements had caused damage to me. Defendants concede this by asserting that the damages in this case are $500,000 and/or that the court should accept $500,000 in damages. Defendants have not refuted this amount of damages. By removing to federal court, the defendants are also conceding that a minimum the damages are $75,000.

174.    Also, I was injured in that I could not return to NH because of Donais' defamatory statements about me to the police resulting in a department-wide police watch implemented by the police to be on the lookout for me because of Donais' lie that I was going to physically hark him, his wife and children, and thus he damaged my ability to work in NH with the police or with the NAACP in NH, or engage in any social or community relations in NH through or with them or otherwise. I was put in fear of my life because of a false police report by Donais intended to get me caught up in a heightened encounter with NH police.

175.    Furthermore, the reputational effects harmed me in NH and MA. For example, the NAACP is regional organization which includes the new England region. The harm in NH was also in MA.

176.    Similarly, the statements to the clerks in MA harmed me in MA and damages me in my future dealings with those clerks. These off record ex parte communications in secret with the clerk staff was done unofficially and outside of the judicial context. He exploited his contacts and connection with court staff to engage in secret off the record attempts to coordinate and conspire to harm my case administratively, outside of formal judicial interaction, while he was not a party and not entered appearance on the case and not served as a party in the case. This is not legitimate petitioning activity. And it is subject to litigation privilege. NB: Discovery is needed to reveal the extent and full circumstances of this secret relationship and contacts with clerk staff and the facts regarding any off the record statements and conversations outside of the formal judicial context.

177.    But even assuming arguendo that this is petitioning activity (which I don't concede that it), it is void because the improper nature of it, and there is no petitioning activity because the defamation claim and related claims in this case are inextricably intertwined with clear non-petitioning activity by Donais including breach of contract, breach of fiduciary duty, and statements to non-governmental persons such has family members, spouse and children, etc.

### v. Donais' Communications to MA Middlesex Superior Court Clerk Staff and Judge

178.    Communications to court clerk staff in MA by Donais was not based on pleadings or statements during a proceeding.

179.    These communications were made by Donais to clerk staff, off the record and outside of any proceedings, in order to secretly affect things administratively, not judicially.

180.    Here are examples of Donais contacts with the MA Middlesex Superior Court clerk staff and judge.

181.    Donais (and Hilliard) voluntarily appeared in the MA case on November 11, 2020 for a jurisdiction amount hearing, claiming to purportedly "observe".

182.    Donais secretly contacted a clerk staff in February 2021 off the record and tried to, off the record, coordinate dismissal with a clerk staff. This resulted in removal and transfer of the clerk staff when this misconduct was discovered by the supervisor of the clerk staff.

183.    Donais again secretly contacted a clerk staff in July 2022 and tried again to coordinate dismissal with a clerk staff by lying to a clerk staff that there was no settlement in order to try to trigger dismissal via off the record communication outside of any proceeding and while he was not a party to the case, not served process in the case and having not entered appearance in the case.

184.    Donais appeared in a court hearing in MA voluntarily hanging out in the court before the judge in MA in 2021 when there was no hearing scheduled for my MA case, evidently seeking to establish off the record contact and connection with the judge in the MA case.  This is questionable if not unethical conduct at best.

185.    Donais later appeared on November 30, 2021 in my MA case but not as a party served and without entering any appearance on the case, and waited until the hearing was off the record to lie to the judge and to influence the judge as a non-served party and without entering appearance in the case.

### vi. Other Points

186.    It should be noted that, in the original and final analysis, I was/am the one petitioning government and Donais is the one who seeking to shut me and my wife up from petitioning the ADO and the courts. He sought to hurt me and my wife in our petitioning government in the original hotel case. All of his actions subsequently was him trying to SLAPP me and my wife.

187.   It should be noted that any reference made to any court proceeding in NH was not made as a basis for any claim or to recover but was by way of background information and I explicitly stated in my complaint that I do not seek to recover for said information.

188.   Furthermore, to the extent Donais' antislapp is based on statements made to the ADO, I have already shown that the ADO proceeding is not a proper adjudicatory forum and is not a judicial proceeding. Also, there was no true petitioning activity that could have occurred since Donais did not initiate the ADO complaint against himself. Any statement made was only based on a response to allegations made against him.

189.   It should be noted that the Donais defendants buried their antislapp motion to avoid the problem of their asserting affirmative relief in a separate motion which could waiver personal jurisdiction and to obfuscate the personal jurisdiction waiver issue.

190.   Also, the defendants cannot plead antislapp in the alternative. It cannot be an afterthought. The goal is to speed up the assessment of that assertion first.

191.   Conversely, if the court finds there is NH law that applies to this case because of NH events, then it cannot apply antislapp in this case.

192.   This is an important point. The court cannot apply procedural Massachusetts law to a NH federal court case. This is a big deal in terms of the difference between procedural law and substantive law. The Donais defendants wants to apply Massachusetts procedural law in NH while also asserting that NH law is the law of the case. This cannot stand. The court must deny the antislapp motion as procedurally barred in this case and then proceed to apply NH law.

## VI. FURTHER REBUTTAL TO FAILURE TO STATE A CLAIM DEFENSE

### 1. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

193.   A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni* 31 F.3d 813, 813 (9th Cir. 1994) (citing *Buckey v. Los Angeles,* 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Parks Sch. of Bus., Inc. v.*

*Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).[1] "'The federal rules require only a `short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block,* 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley,* 355 U.S. at 47, 78 S. Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though "'`it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.'" *Gilligan,* 108 F.3d at 249 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'`The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.*

194.    Finally, it is well established that pro se complaints, "however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe,* 449 U.S. 5, 9,101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quotation marks omitted); *see Ortez v. Wash. County,* 88 F.3d 804, 807 (9th Cir.1996) ("Because Ortez is a pro se litigant, we must construe liberally his inartful pleadingf.]") (citation omitted).

195.    "In civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988); *see Morrison v. Hall,* 261 F.3d 896, 899 n. 2 (9th Cir.2001) (citing *Karim-Panahi* 839 F.2d at 623; *Haines v. Kerner,* 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)); *Frost v. Symington,* 197 F.3d 348, 352 (9th Cir.1999) (citing *Karim-Panahi* 839 F.2d at 623).

196.    When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S. Ct. 2490, 53 L. Ed. 2d 557 (1977).

197.    In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir.1994), *cert, denied,* 515 U.S. 1173, 115 S. Ct. 2640, 132 L. Ed. 2d 878 (1995) (citations omitted).

198.    At this stage of the litigation, the district court must resolve any ambiguities in the plaintiffs favor. *See Int'l Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *see also Smith,* 84 F.3d at 1217; *Miree,* 433 U.S. at 27 n. 2, 97 S. Ct. 2490.; *Federal Civil Procedure Before Trial* § 9:212.1c, at 9-55.

### 2. Further on Legal Standard Governing Motions to Dismiss Pursuant to Rule 8(a)

199.    Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added).

200.    The Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n.20 (citing Supreme Court case).

201.    Further, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

202.    The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).

203.    Rather than turn on the *conceivability* of an actionable claim, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

204.    As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

"[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense....[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

205.   However, "in a *Pro Se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F.Supp.2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *Pro Se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

206.   Moreover, a *Pro Se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint-to the extent those papers are consistent with the allegations in the complaint. *Stegemann v. United States*, 9:21-CV-0949 (MAD/ML), 15-19 (N.D.N.Y. Mar. 27, 2023)

## VII. REBUTTAL TO INCORPORATED ANTISLAPP MOTION

### 1. Complaint Alleges Non-Petitioning Activities Throughout All Claims and So Antislapp Cannot Apply

207.   The defamation claim is based on clear non-petitioning activities as well as petitioning activities.

208.   The defamation claim cannot be  subject to antislapp dismissal.

## 2. Anti-Slapp does Not Apply To Legal Malpractice Claims

209.   My complaint alleges legal practice as the core basis from which almost all claims springs forth from.

210.   Donais committed legal practice against me in several ways as noted below.

211.   Donais failed to disclose a conflict to me and failed to seek consent to waive the conflict before representing the opposing party in the same case he entered in a contract (implied) or fiduciary duty with me on. Donais failed to get a waiver of the conflict from me.

212.   Donais also failed to protect my client confidentiality and misused client confidential conversation as an opportunity to make fraudulent misrepresentations about said conversation to others.

213.   Donais divulged client confidential information protected by attorney-client privilege to the police. Donais' statements to the police did not require or necessitate divulging this client confidential information, which again was misused as an opportunity to make fraudulent misrepresentations about said conversation to others.

214.   Donais engaged in a breach duty of loyalty to plaintiff regarding communications to police in 2019.

215.   Donais violated rules of professional conduct regarding conflict of interest and regarding client confidentiality.

216.   This constitutes both breach of contract and breach of fiduciary duty as an attorney. This is also essentially legal malpractice.

217.   An antislapp motion will ordinarily not be sustained as to a professional negligence or breach of fiduciary duty claim, since the gravamen of the lawsuit is not the attorney's petitioning or litigation activity per se, but rather the attorney's decisions, actions or omissions which resulted in the petitioning or litigation activity. See Freeman v. Schack, 154 Cal.App.4th 719 (Distr. 1, 2007) (Attorney sued by clients for allegedly switching sides in the middle of antitrust litigation could not prevail on special motion to strike where causes of action for negligence and breach of fiduciary duty were not within the scope of Anti-SLAPP protections.). See also Hylton v. Frank E. Rogozienski, Inc., 177 Cal.App.4th 1264 (Distr. 4, 2009) (Attorney defendant filed special motion against former client's professional negligence claim on the basis that the claim arose from attorney's petitioning activity. The special motion was denied on the basis that the

gravamen of the client's claim was for attorney's negligence in client's representation, not the petitioning activity itself.).

### 3. Waiver of Antislapp Motion

218.    The seeking of an anti-slapp motion is seeking affirmative relief. They cannot seek affirmative relief of MA state while contending MA law does not apply and that there is no personal jurisdiction of the MA state.

219.    Antislapp is an attempt to adjudicate on the merits of the case. It invokes summary judgment procedure.

220.    A defendant cannot assert antislapp under the laws of MA while asserting MA law does not apply ad MA has no jurisdiction. This is a fundamental contradiction.

### 4. Recent Supreme Court Case Refutes Applicability of Antislapp in Federal Court

221.    A recent US supreme court case in 2019 establishes that the antislapp does not apply in federal court. See Yagman v. Colello, 139 S.Ct. 823 (2019).

222.    It should be noted that the first circuit issued an opinion in 2010 (Godin v. Schencks, 629 F.3d 79, 1st Cir. 2010) stating that the Maine antislapp statute can apply in federal court.

223.    Later, in 2016, Judge Denise Casper applied this to the MA antislapp statute. See Steinmetz v. Coyle & Caron, Inc. , No. 15-cv-13594-DJC, 2016 WL 4074135 (D. Mass. July 29, 2016).

224.    That case appealed to the First Circuit Court of Appeals in 2017. See Steinmetz v. Coyle & Caron, Inc., 862 F. 3d 128 - Court of Appeals, 1st Circuit 2017. However, the First Circuit did not reach a decision but kicked it back to the MA supreme judicial court, stating that "as there is no controlling precedent from the SJC on this determinative question of state law, we certify it for resolution by that court."  NB: It is not clear whether there has been any resolution by the First Circuit on this issue thereafter.

225.    Since then, however, this US supreme court Yagman v. Colello decision came down in 2019 and arguably supersedes both Judge Casper's 2017 opinion and the First Circuit's 2010 opinion as well as any subsequent holding by any other court.

226.    This US supreme court opinion is relevant to this case as it arguably supersedes the above.

227.    The US supreme court essentially ruled that the federal rules of procedure effectively "answers the same question" as the MA antislapp statute and therefore the federal rules of procedure preempts or trumps the MA antislapp statute.

228.    Similarly, the requirement that affidavits be provided with the antislapp papers defeats federal rule 11.

229.    These points deserve closer scrutiny in light of the recent US supreme court case.

230.    Furthermore, the Massachusetts anti-SLAPP statue violates the critical right to a jury trial.

231.    The MA federal court, via the esteemed judge William Young, has also noted in the past, the antislapp statute may not be "constitutional when tested against the Seventh Amendment," and it may " impinge on the parties' Seventh Amendment right to a jury trial, inasmuch as it would require this Court to make factual findings and credibility determinations that the Constitution reserves to a properly constituted jury of the people" and that "such findings are reserved to the fact-finder and, absent the parties' waiver of their right to a trial by jury, are not properly within the Court's domain" and that "ironically, the procedural devices upon which the common anti-SLAPP statutory model relies is one that excludes those very citizens from participation, frequently placing juror fact-finding in the hands of trial judges". See Hi-Tech Pharm., Inc. v. Cohen, 208 F. Supp. 3d 350, D. Mass 2016.

232.    Specifically, the MA federal court should not have to weigh the credibility of the parties' respective affidavits, to "impose some sort of rough justice based on affidavits — those 'Potemkin Village[s] of today's litigation landscape … all lawyer-painted façade and no interior architecture", as this court has stated in the past. Hi-Tech Pharm., Inc. v. Cohen, 208 F. Supp. 3d 350, D. Mass 2016.

233.    Because the Massachusetts anti-SLAPP statute is not intended to allow for the dismissal of meritorious claims, this issue should be reviewed more closely in light of the recent Yagman US supreme court case.

### 5. Anti-slapp Does Not Apply to Allegations of Criminal Conduct

234.    Donais' alleged criminal conduct includes perjury, witness tampering, hate crime based on race/racial stereotyping, criminal libel, submitting a false police report, falsification by affidavit, etc.

235.    The antislapp does not apply to alleged criminal conduct.

236.    These allegations are interwoven throughout the complaint and are also intertwined with other non-petitioning activity.

237.    Therefore, the antislapp cannot apply in this case.

### 6. NH Statements Are Not Subject to AntiSlapp Statute

238.    Statements that are alleged to be petitioning activity took place in NH. This is conceded by defendants.

239.    Thus the statements in NH are not subject to antislapp law or protection because NH does not have an antislapp law.

### 7. A Valid contract defeats the antislapp

240.    I had a valid implied attorney client relationship with Donais and a valid implied contract. This is additional grounds that invalidates application of the antislapp law.

241.    See M.A. Mills, P.C. v. Kotts, 640 S.W.3d 323 (Tex.App.Distr. 14, 2022)(Attorney sued client for failing to honor business management agreement, and client filed a special motion asserting its rights to free association (or, rather, disassociation in this case). The special motion was denied because, although attorney's complaint did relate to the right of association, the contract was valid and attorney could make a prima facie case as why he should recover.).

### 8. Reasons Why I Could Not or Did Not File Suit to Chill Petitioning

242.    I initially filed suit against Donais for the similar claims in January 2020 both in MA and NH.

243.    I brought these suits before any purported or alleged petitioning activity by Donais in June 2019 and August 2020.

244.    Donais' communications with the police in June 2019 were not disclosed to me until around the summer of 2020.

245.    Donais' communications with the police in August 2020 were not disclosed to me until around October of 2020.

246.    These events did not occur at the time I first brought suit against Donais seeking damages for defamation and breach of fiduciary duty.

247.    The events of July and August 2020 did not occur at the time I filed suit in early 2020.

248.    Those claims could not have been brought to chill petitioning

249.    It should be noted that the NH superior court case filed in January 2020 involved 21 defendants including the Hilton Hotels defendants and Craig Donais as a (lesser) individual but related defendant. The claims against the Hilton Hotel defendants survived a motion to dismiss and prevailed in a preliminary injunction hearing, resulting in the Hilton Hotels suggesting mediation. This case was this established as meritorious. The claims, after some hiccups in the settlement process, and after re-filing the case in January 2020, were later fully settled by all (20) defendants except Donais, who backed out of the settlement at the last minute before the signing of the settlement agreement. Donais then sought to instigate the resurrection of the Hilton case in NH superior court as the only remaining defendant and immediately sought dismissal. The NH superior court soundly denied Donais motion to dismiss, twice, including a motion to reconsider. Donais, not to daunted, then sought appeal to the NH supreme court and the case has been stayed there for the past year or so because of a conflict of interest by at least 4 NH supreme court justices, out of 5, due to the connections that Donais has with the NH supreme court. This goes to the venue and transfer issue as well because of Donais and Hilliard's pervasive connections in NH and NH courts requiring recusal of at least 3 or 4 other superior court judges thus far. I cannot obtain a fair trial in that environment of pervasive conflicts in a small legal community of NH. Similarly, almost all the lawyers in NH that I contacted were conflicted out because of Donais and Hilliard.

250.    Similarly, the concurrently filed MA Middlesex superior court case in January 2020, was first stalled because of Covid in 2020 and then in 2021, was subject to the shenanigans of off the record interference by Donais with clerk staff and later was dismissed for lack of service of process to Donais (i.e., statutory 1-88 dismissal without prejudice and not on the merits), which Donais has lied about, even though he did receive service. The matter has been on appeal with the MA appeals court and has been stayed as well due to an issue with incorrect transcripts needing to be revised but there has been delays by the transcriber in revising/correcting them). However, it is anticipated that the appeal will be resolved soon. If the appeals court vacates the dismissal, then the case will resume in the Middlesex superior court with some of the same

claims in this case. This will mean that there could end up being conflicting orders between this court and the state court. This is why I asked this court to stay this case until resolution of the state court appeal.

251.   Because of these appeals on both the NH superior court case, which has been stayed for some time, and because the Middlesex superior court is on appeal, then I had to file another case in MA superior court in June 2022, in order to preserve the statute of limitations of the events that occurred in June 2019 and August 2020. I simply added the events of 2019 and 2020 as continuing acts of the defendants. Because I could not have brought the initial claims to chill petitioning activity that I did not even know about, then provides clear proof that this case could not have been brought to chill petitioning activity.

252.   It should be noted I also filed a police complaint, prosecuted an ADO complaint in NH, filed a bar complaint in MA, filed appeals in both NH and MA,  filed a public records suit, and civil suits, all in attempt to get at the truth and prove that Donais damaged and injured me.

253.   NB: Judge Barry-Smith of the Middlesex superior court in November 2020, in a jurisdiction amount hearing to remain in superior court, found that defamation claims were valid and could yield damages above $50,000.  This is further evidence that my claims are valid, meritorious and caused me injury for which I seek to recover and is not brought to chill petitioning.

254.   NH found no dismissal; MA found merit to stay in superior court;

255.   It should be noted also that Judge Paul Moore of the NH Nashua circuit court found that Donais should be disqualified for engaging in a conflict of interest which is evidence that my breach of fiduciary and breach of contract claims are valid, meritorious and caused me injury.

256.   The original Hilton Hotels case settled which shows merit to my claims. Donais has argued failure to state a claim in his motion to dismiss which is a tacit admission to the validity to my claims and he also engaged in settlement negotiations for over 1 year on these claims, which again shows validity and merit as Donais would engage in such settlement negotiations if he believed there was no merit to my claims.

257.   All of this goes to showing no intent or motive to chill any purported petitioning.

### 9. Purported Petitioning Activity Was a Sham for Defamation, Intimidation/Harassment and Breach of Loyalty and thus Any Purported Petitioning is Devoid of Reasonable Factual Support

258.    Defamation claim is intertwined with petitioning and non-petitioning

259.    Donais did not do any affidavit for his motion to dismiss Why? This failure shows that any petitioning

is devoid of factual support.

### 10. Litigation Privilege Activity Should Not Be Conflated With Petitioning Activity

260.    Defendants conflate arguments for litigation privilege with arguments for petitioning activity.

Something could be subject to litigation privilege but not be petitioning activity. Simply making a statement

in connection with a litigation does not make it petitioning activity. If called as a witness or defending a suit,

that is not petitioning. Petitioning must be initiated by a party.

### 11. Courts Must Be Cautious With Granting Antislapp Motions

261.    The Massachusetts Supreme Judicial Court recently expressed the following concern with the anti-

SLAPP statute and case law:

> "Although originally drafted with a particular purpose in mind -- that is, the prevention of lawsuits used
> by developers to punish and dissuade those objecting to their projects in the permitting process -- the
> anti-SLAPP statute's broadly drafted provisions, particularly its wide-ranging definition of petitioning
> activity, have led to a significant expansion of its application. The ever increasing complexity of the anti-
> SLAPP case law has also made resolution of these cases difficult and time consuming. We recognize
> that this case law may require further reconsideration and simplification to ensure that the statutory
> purposes of the anti-SLAPP statute are accomplished and the orderly resolution of these cases is not
> disrupted." (Citations omitted.) Exxon Mobil Corp., 489 Mass. at 728 n.5.

> Furthermore, we have difficulty reconciling the admonition that a judge should be cautious in ending a
> party's petitioning activity at the early stage of a litigation with a standard that places the burden of proof
> on the nonmoving party, requires the judge to be fairly assured that the burden is met, and leaves this
> determination to judicial "discretion" after considering each claim "holistically in light of the litigation."
> Blanchard II, 483 Mass. at 203-205, 207, 210. In other contexts, dismissing a case at an early stage of
> the litigation requires a far more exacting burden on the moving party and, typically, requires that we
> view allegations or evidence in the light most favorable to the nonmoving party. See, e.g., Dunn v.
> Genzyme Corp., 486 Mass. 713, 717 (2021) (in context of motion to dismiss, court must accept facts
> asserted in complaint as true and draw all reasonable inferences in plaintiff's favor); Casseus v. Eastern
> Bus Co., 478 Mass. 786, 792 (2018) (summary judgment standard is "whether, viewing the evidence in
> the light most favorable to the nonmoving party, all material facts have been established and the moving
> party is entitled to judgment as a matter of law" [citation omitted]). See note 14, supra.

262.    The donais' communications to the police, to the MA court, and in the private settlement negotiation

of the MA case cannot constitute the basis for application of the antislapp law.

263.    Donais conveniently leaves out communications by Donais and Hilliard to other attorneys, to family, to friends, etc., all of which do not constitute petitioning activity cannot constitute the basis for application of the antislapp law.

264.    I hereby incorporate fully as if stated herein the factual and legal arguments contained in Plaintiff's Combined Opposition to Defendants' Anti-Slapp Motions[4], and the supplemental oppositions and the attendant opposing affidavits filed in MA federal court. The key sections of the Plaintiff's Combined Opposition to Defendants' Anti-Slapp Motions is also cited below.

### B. Defendant's anti-slapp motion violates state-based procedure pursuant to the anti-slapp statute

1.  Defendant's anti-slapp motion violates state-based procedure pursuant to the anti-slapp statute.
2.  The anti-slapp statute requires that a movant brings a special motion to dismiss within 60 days of service of the complaint. This conflicts with the normal rules of procedure where a motion to dismiss must be brought within 20 days of service of the complaint. By combining the antislapp motion into a regular motion to dismiss, it creates a problem of attempting to extend the time for a motion to dismiss to be brought (automatically without court permission and potentially creates an end-run around such rules of the court), when this was not intended by the anti-slapp statute.
3.  Because defendants' anti-slapp statute is combined into the motion to dismiss as a count or section of the larger motion to dismiss, it violates the statute and procedure. This constitutes a procedural defect.
4.  Defendants' antislapp motion is also not labeled a special motion to dismiss and this also constitutes a procedural defect.
5.  State-based procedure requires that defendants file a separate motion called a "special motion to dismiss" separate from a regular motion to dismiss under Rule 12, etc. The defendants have strayed from the norm or have violated proper state-based procedure and practice for an antislapp motion.
6.  If the federal rules of procedure do not strictly apply to the antislapp motion, then the state-based anti-slapp statute procedure governs. (NB: If the federal rules strictly applied, then the antislapp motion could not be heard in federal court as it would violate Rule 12 and Rule 56 of the federal rules.). The state-based procedure requires that the defendants should have filed a separate motion as a special motion to dismiss, apart from their Rule 12 motion to dismiss. They did not do so. They included the antislapp motion within their motion to dismiss, which creates procedural issues in doing so and it has created complications because the antislapp is its own "beast" so to speak, with a separate statute and rule governing it.
7.  Hence, this motion should be denied statutorily on those grounds simply for not meeting the requirements of the statute.

### C. The Court Should Deny Plaintiff's Motion Because Defendant Has Not Included Any Affidavits Or Other Evidence To Support His Antislapp motion

---

[4] NB: I refute the assertion of the facts stated in the Donais defendants' filings that pertain to or is relevant to the antislapp motion. I refer to what is stated in my filings in this regard as correct and true. To the extent the statements by the Donais defendants in their filings are not supported by any affidavit of their asserted facts, these should be stricken or otherwise ignored by the court on this basis, and if necessary, I request that they be stricken by the court.

8.  Defendants' anti-slapp motion does not have an affidavit and this constitutes a procedural defect.

9.  Hence, this motion should be denied statutorily on those grounds simply for not meeting the requirements of the statute.

10. The defendants did not provide an affidavit that addressed the antislapp claims, which violates procedure as there is no basis to treat any claims by the defendants in their antislapp motion as true or correct.

11. Defendant has asserted no facts showing anything that supports his contention that he was engaged in petitioning activity or that his petitioning activity had factual or reasonable basis or that my motives were to chill petitioning activity.

12. A blanket conclusory declaration that all defendants' activity was petitioning activity is plainly false. The defendants do not even address the clear and plain factual and legal arguments made directly the amended complaint itself showing that, for example, there were claims for breach of contract, breach of fiduciary duty and interference with contract relations none of which had to do with his statements but all of which had to do with Donais' acts and conduct in intentionally engaging in a conflict of interest in violation of the rules of professional conduct and in breach of his fiduciary duty to me. These were acts that Donais did which were found to be wrong acts by a court and resulted in his disqualification due to this conflict of interest.

13. There is no affidavit by the defendants that challenges any of that or even addresses any of that. This is a tacit admission that they know that the antislapp motions are frivolous, otherwise they would address this most glaringly fatal point in the anti-slapp motions.

14. The defendants have not put forward any facts or details concerning the antislapp motions that would enable this court to determine the merits of the antislapp motion.

15. This court should not grant the anti-slapp motions when there are no facts set forth to support granting such relief.

### E. Defendant's anti-slapp motion violates federal procedure

16. Defendants' anti-slapp motion violates federal rules of procedure.

17. Some federal courts in Massachusetts have held that the anti-SLAPP statute is a procedural rule that is inapplicable in federal court. See, e.g.,. *Stuborn Ltd. P'ship v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003).

18. If the district court does not allow discovery then that would violate my rights under federal procedure 12 and 56.

19. When applied in federal court, the statute violates my due-process rights. The anti-SLAPP statute is not just a test of factual sufficiency for a limited set of claims; most notably, it includes a discovery stay until the motion is resolved. In Metabolife International, Inc. v. Wornick, the Ninth Circuit concluded that the stay directly conflicts with Rule 56(d). In Anderson v. Liberty Lobby, Inc., the Court interpreted Rule 56(d)—at that time codified as Rule 56(f)—to require that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Finding a direct conflict with the anti-SLAPP statute's "good cause" requirement, Metabolife quoted with approval a district court decision stating: "Section 425.16 limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered."

20. Many commentators have interpreted Metabolife as holding that the anti-SLAPP discovery stay can never apply in federal court, and the Ninth Circuit seems to agree.

21. Assuming that the anti-SLAPP statute's discovery stay does not apply in federal court, as Judge Kozinski observed, "the federal court special motion is a far different (and tamer) animal than its

state-court cousin" because it no longer provides "defendants a quick and painless exit from the litigation."

22. A California anti-SLAPP motion applied in federal court, therefore, is more akin to Rules 12 and 56, thereby detracting from the claim that the anti-SLAPP statute does not directly conflict with the federal rules.

23. Hence, this motion should be denied on those grounds for not meeting the requirements of the statute.

### G. Defendant's anti-slapp motion violates the federal right to jury

24. Defendant's anti-slapp motion violates my federal right to jury.

25. When applied in federal court, the antislapp statute violates my due-process rights and right to a jury.

26. In a line of cases, beginning in Beacon Theatres, Inc. v. Westover, several federal courts have held that, after the Federal Rules of Civil Procedure merged courts of law and equity, a jury trial must take precedence over equitable proceedings to protect the right against issue or claim preclusion.

27. Similarly, it can be argued that the "substance" of the Seventh Amendment largely protected a party's right to have a jury conduct any fact-finding.

28. Facts should be decided by jury.

29. The antislapp statute should not apply in federal court, not simply or only because it is not merely procedural but also because it violates my right to have facts tried by a jury.

30. Similarly, because the antislapp statute carries with it an automatic award of attorney fees as punishment against a plaintiff, then it should be decided by jury.

31. In an advisory opinion, the New Hampshire Supreme Court has stated that a proposed anti-SLAPP law then being considered by the New Hampshire Legislature would be unconstitutional because it would deny a litigant the right to a jury trial on disputed issues of fact. The New Hampshire court said:

> Unlike [summary judgment motions] wherein the court does not resolve the merits of a disputed factual claim, the procedure in the proposed bill requires the trial court to do exactly that . . . [because] the trial court that hears the special motion to strike is required to weigh the pleadings and the affidavits on both sides and adjudicate a factual dispute. Because a plaintiff otherwise entitled to a jury trial has a right to have all factual issues resolved by a jury . . . the procedure in the proposed bill violates part I, article 20 [of the New Hampshire Constitution].

> Opinion of the Justices, 641 A.2d at 1015 (N.H. 1994) (citation omitted).

32. See also Opinion of the Justices (SLAPP Suit Procedure) 138 N.H. 445, 451, 641 A.2d 1012 (1994) ("A solution [to SLAPP suits] cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group.").

33. Many other courts have recognized and addressed the problems with "fact-finding" within anti-SLAPP cases. The Washington Supreme Court held that its state's anti-SLAPP statute, which required a trial court to make factual determinations involving the merits of a litigant's claim, without a trial violated the right to trial by jury and was therefore invalid.

34. The right to trial by jury is inviolate under the state constitution. Wash. Const, art. I, § 21.

35. "The right to have factual questions decided by the jury is crucial to the right to trial by jury." State v. Montgomery. 163 Wn.2d 577, 590, 183 P.3d 267 (2008) (citing Sofiev. Fibreboard Corp.. 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989)).

36. "'Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.'" In re Pers. Restraint of Matteson. 142 Wn.2d 298, 307, 12 P.3d 585 (2000) (internal quotation marks omitted) (quoting Addleman v. Bd. of Prison Terms & Paroles, 107 Wn.2d 503, 510, 730 P.2d 1377 (1Q8R^; accord Lummi Indian Nation v. State, 170 Wn.2d 247, 264, 241 P^3d 1220 (2010).

37. This issue has not been addressed by the federal court of this district in Massachusetts. It has not been addressed either by the first circuit.

38. Although Judge Denise Casper in this court's district applied the first circuit ruling on the Maine antislapp statute to the Massachusetts antislapp statute as it pertains to whether the MA statute is substantive law and thus conflicts with federal rules 12 and 56, she never addressed the federal right to a jury issue. She only addressed that she believed that the MA antislapp statute did not violate the federal rules of procedure 12 and 56, finding that the MA statute was substantive law and not merely procedural. NB: A finding that the statute was merely procedural would bar the statute from being applied in federal court in MA because it would violate federal court procedures.

39. Yet, the federal right to a jury argument goes beyond whether the MA statute is substantive state law or merely procedural. The federal right to a jury is a fundamental substantive right that should be guaranteed to every litigant in federal court who seeks to have their cases heard by a jury.

40. Because the MA statute applied in federal court does not allow for a jury to hear and decide facts, it violates my federal right to a jury, especially given that I specifically asserted a jury demand both in my original complaint and my amended complaint.

41. Hence, this motion should be denied on those and other such procedural grounds for not meeting or comporting with the requirements of the right to a jury.

42. NB: To the extent this court takes a position on this issue that finds that the application of the statute in federal court does not violate my right to a jury, then it may be ripe for appeal to the first circuit.

### H. Defendant is not entitled to bring an anti-slapp motion under NH law

43. The Donais defendants claim in their motion to dismiss that NH law applies to this case, even though it is filed in MA. This assertion is used to support their contention that the case should be transferred to the NH federal district court.

44. They go on to further argue that the 93A claim asserted by me in my complaint would fall away if NH law is applied because NH law does have the MA 93A statute. This is not entirely true because NH does have an equivalent consumer protection statute so the consumer protection claim would not necessarily go away (assuming arguendo that defendants' argument that NH law applies to this case is correct, which I don't concede is correct).

45. But all of this goes to a more important point. If NH law applies, then the antislapp motion must go away or fall away because NH does not have an antislapp statute. The defendant cannot have it both ways. This is a self-contradictory position and the defendants should be estopped from making it, as it contradicts their prior argument (supporting improper venue and forum conveniens), that NH law applies.

46. The defendants are not entitled to bring an antislapp motion under NH law. Therefore, the antislapp motion must be dismissed or denied.

47. So, either defendants give up their motion to dismiss for improper venue and forum conveniens and to transfer to NH, or they give up their antislapp motion. They cannot have their cake and eat it too.

48. NB: Even if NH law applies, it does not require transfer to NH or dismissal for improper venue, because MA federal court is more than capable of applying NH law, if the court so finds that NH law applies. Moreover there are other grounds why this court should not transfer to NH or dismiss for improper venue, outside of the question of whether NH law applies.

49. Similarly, Donais asserts that his statements were made in NH. Therefore, his petitioning activity would have occurred, to the extent any occurred, in the state of NH. But NH does not have an antislapp law. So Donais cannot assert antislapp claim while in NH and while under NH law. The same goes for Hilliard.

50. Moreover, Donais has asserted that Massachusetts and its court has no personal jurisdiction over him. He is also thus saying that MA law does not apply to him. Therefore, he cannot assert an antislapp claim in this case.

51. If this court has no personal jurisdiction over the defendants, then the antislapp motion must be dismissed.

52. Donais (and the other defendants) are seeking to obtain a windfall in this court, using Massachusetts law as both a shield and a sword, while also claiming this court and this state has no jurisdiction and that NH law applies in any event.

### Federal question claim defeats the antislapp statute

53. The presence of the federal question claim in this case nullifies or defeats the antislapp statute.

54. The antislapp motion can only apply only in diversity cases, not in federal question cases.

55. The defendants have asserted both a diversity basis and federal question basis for jurisdiction.

56. I have shown in my motion to remand that diversity jurisdiction does not exist for this case. That leaves only the federal question (that is, of course, if the court finds that there are no procedural defects or bar to subject matter jurisdiction as articulated in my motion to remand).

57. A federal question implicates federal law.

58. A diversity case implicates the federal court sitting in the place of a state court dealing with state law.

59. But if there is no diversity, then the federal court has no grounds to apply state law procedure in the adjudication of a federal law question.

### An Anti-Slapp Action Is A Counterclaim And Thus Cannot Be Asserted in A Motion to Dismiss in Federal Court

60. The anti-SLAPP suit statute was intended to encourage participation in public interest matters and avoid the chilling of such participation through "abuse of the judicial process."

61. But in reality the anti-slapp motion is also a counteraction against the non-moving party, who brought a lawsuit (against the moving party bringing the antislapp motion) in retaliation for petitioning activity by the moving party, and is essentially an action alleging an abuse of process or wrongdoing committed by the non-moving party who brought the lawsuit.

62. Therefore, I am being accused of abuse of judicial process by the defendants. In filing the antislapp motion, Donais is saying that "I abused the judicial process", instead of simply saying that "I have no case". These are accusations that I sought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances and that I sought to deter a citizen from exercising their right to petition or to punish them for doing so or to intimidate an opponent's exercise of petitioning rights. These are all elements of a counterclaim of wrongdoing. Thus, an Anti-SLAPP action is essentially an abuse of process tort claim. It is purportedly "based on Donais' petitioning activity" because he supposedly believes that the activity of my filing a lawsuit against him is itself an illegitimate abuse of process. His anti-slapp motion is also an injunction against me and this is evidenced by the fact that the motion carries with it an automatic stay on all discovery and prevents me from obtaining any discovery against the defendant that could help me prove my case. The anti-slapp action involves procedures, legal arguments and pleadings that have nothing to do with Donais defending against my actual claims. The things I would have to do to defend against an abuse of process claim, I now have to do to defend against an anti-slapp action.

63. So, I am required to defend myself against these charges, spending time and resources to prove that I did not commit the wrongdoing of abuse of process and that my claims are not retaliations intended to stop free speech before a government body.

64. Furthermore, there is a burden-shifting mechanism contained within the anti-slapp statute which essentially puts me in a defensive posture and the concomitant automatic award of attorney fees and costs creates recovery on a claim. If none of this makes the anti-slapp action a claim or counterclaim (however much it might be in disguise) then I don't know what will. (See Halmar Robicon Group, Inc. v. Toshiba Int'l Corp., 127 Fed. Appx. 501, 503 (Fed. Cir. 2005) (automatic stay [operates] as against actions in which debtor is in *defensive posture*) emphasis supplied)).

65. Moreover, by way of analogy with bankruptcy law, in Koolik v. Markowitz, the court held that: *"[S]ince a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding'... to include any pleading that asserts a claim on which relief is sought. In this way, the Second Circuit held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit.*" Please note that Koolik v Markowitz states that the definition of a counterclaim is any pleading that asserts a claim on which relief is sought and this by definition is an action or proceeding against the debtor.

66. Even if, assuming *arguendo*, the anti-slapp motion could be parsed out to NOT technically be a counterclaim (on which I disagree), then it is without dispute that the anti-slapp motion is an "action or proceeding against a [plaintiff]", and thus still a counterclaim.

67. Ironically, this anti-slapp motion is itself a SLAPP suit/action against me intended to deter me from my petitioning activity. By any means his anti-slapp claim is frivolous and intended to harass me and deter me and increase the cost and burden of litigation for me. It was as strategic decision for the defendants to use the statute's automatic stay on discovery to prevent me from gaining discovery from them. Thus, the defendants have misused this statute. Nonetheless by seeking to do this, the defendants have accused me of wrongdoing and falsely so. They have twisted the purpose of the statute on its head to do exactly to me what the statute was intended to stop. I, as a person of little means and resources, could in no way be the perpetrator of a SLAPP action (which is intended for very narrow circumstances which do not apply to me or this case).

68. In applying the procedural mechanisms of the statute, the defendants are effectively allowed to significantly interrupt my ability to pursue all of my claims and to stay discovery on all my claims until or unless the Court denies the antislapp motion.

69. Please note that many courts across the nation are finding that anti-slapp motions are being used in the exactly the same way that SLAP lawsuits are used…to delay litigation, and discovery, and tie up resources of the Plaintiff with frivolous use of the anti-slapp motion. The anti-slapp motion has become a paradoxical form of vexatious litigation where the anti-SLAPP action is used as an effective counteraction against a plaintiff's use of judicial processes themselves, by accusing the plaintiff of an affirmative act of wrongdoing, namely intimidating or punishing an opponent. The defendants' purpose in using this motion is to use it as a counterclaim or a counteraction.

70. By electing to file an action under this special statute, the defendants knowingly and purposefully are seeking to collect, assess and recover a claim with a monetary award against me. [NB: An award of attorney fees in this case would literally bankrupt me given that I was granted indigency status by the state court and given that there are two big law firms involved with at least 4 or more seasoned attorneys on the case, along with associates and paralegals assisting them on the case. The attorney fees would be astronomical.].

71. According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees would not be awarded for conduct I engaged in prior filing suit. It would be awarded because I am being accused of wrongdoing in purportedly bringing an improper legal action. Defendants have asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. And no matter how frivolous the motion may be, I now have to defend against the merits of defendants' charges of wrongdoing that have nothing to do with my claim against him.

72. According to the legal dictionary, a claim is defined as: "*1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a claim) for money due, for property, for damages or for enforcement of a right*." A counterclaim is defined as "*A claim by a defendant*

*opposing the claim of the plaintiff and seeking some relief from the plaintiff for the defendant.*" (See http://legal-dictionary.thefreedictionary.com/claim). Mr. Donais in his anti-slapp action has made a legal assertion and demand for money (which makes it a legal claim) and he has used it in the context of opposing my claim against him and he is seeking relief against me as the plaintiff. This clearly meets the criteria for being a claim/counterclaim.

73. Mr. Donais is attempting to put me in a defensive posture to answer charges of wrongdoing and abuse of process and to collect payment of an automatic money judgment attorney fees and costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not be a money award).

74. The defendant is not allowed to assert a counterclaim in a motion to dismiss in federal court. As such, it violates the federal rules of procedure in a significant way. Consequently, the antislapp motion should be denied on procedural grounds because it is essentially a counterclaim demanding an automatic award of money in a motion to dismiss, without discovery, without a jury and without summary judgment procedure applied.

75. NB: Donais cannot assert a counterclaim if he is also asserting there is no personal jurisdiction.

76. NB: I believe this may be an issue of first impression for this court.

### J. The Defendant and Insurer have likely violated Section 176D and this further defeats the antislapp defense because it is not petitioning activity

77. On information and belief, Attorney Ed Landers, who has filed an appearance in this case as counsel for Donais/the Donais defendants is also insurance counsel for the malpractice insurance carrier that covers Donais legal malpractice coverage in Massachusetts.

78. As insurance counsel, Ed Landers has a duty to do due diligence to determine if there is liability and to promptly offer settlement if liability is clear, under Section 176D.

79. It can be inferred that Ed Landers and the insurance carrier knows that liability is clear and that is why Ed Landers has failed to allege a failure to state a claim. As a result, it can be inferred that there is a violation Section 176D. This, I intend to add the insurance carrier for Donais as a party to this case so that I can bring all claims into one suit, as much as is possible. I ask the court to allow me to add the insurance carrier. NB: Even if Ed Landers is not insurance counsel, the insurance carrier must know about this case and the allegations of breach of fiduciary duty (which is essentially a malpractice claim). There is no conceivable scenario where an insurance carrier for malpractice for Donais has not been notified of this case and the claims therein. Because the malpractice insurance for Donais is for his practice in MA, it can be inferred that the insurance carrier is based in MA or has a home office in MA or is incorporated or otherwise registered in MA. This goes further to the grounds for remand.

80. This also applies to the insurance carrier for Upton & Hatfield, who Attorney Dan Sonneborn, who has entered an appearance on this case for Upton & Hatfield and Russell Hilliard, is also to be insurance counsel.

81. But it also goes to the grounds for defeating the antislapp motion.

82. This claim involving violation of section 176D is or should be an integral part of this case.

83. The refusal of Ed Landers and Dan Sonneborn to inform me of the name of the insurance company should not bar me from adding the insurance carrier to this case, as I can do so simply as Company Doe or Doe Company, until discovery occurs to reveal the correct name.

84. To the extent that Ed Landers and Dan Sonneborn and/or the respective insurance carriers have violated Section 176D because their client has asked them not to do so in order to protect his reputation by not offering settlement promptly though liability is clear, then both the defendants and the insurance carriers/insurance counsel have engaged in unlawful conduct, wrongdoing, and are joint tortfeasors or jointly culpable for said violations, conduct and wrongdoing. Discovery will likely reveal the extent of this issue.

85. I therefore ask for limited discovery now to obtain the name of the insurance company and who its insurance counsel is, as well as further information regarding its duty or refusal to offer prompt settlement as to the clear liability in this case.

### L. Clarification/Addition of Facts Involving Defamation by Donais to His Family/Sons

86. I am adding by way of this opposition papers that Craig Donais' son, Garrett Donais, was also told of the defamations in this complaint, by their parents Craig Donais and Mary Donais. Craig Donais himself included his sons in the defamations in 2020. This defamation is not petitioning activity and is not protected by the antislapp statute. Donais is not free to defame me to his family, friends or colleagues. He is not free to defame to his wife or his sons or his parents or his uncles, aunts, nephews, brothers, sisters, grandparents. Just because they are family does not make the defamation any less damaging. In fact, telling lies on black men was a horrific sport in times past in this country, and such lying relied upon by family members resulted in many black men being lynched maimed and killed.

87. I hereby clarify this as part of my complaint or otherwise add this to my complaint as part of my claims against Donais. This will further defeat the antislapp motion. This is not petitioning activity and cannot be construed as such.

### M. Granting the Antislapp Motion Would Be Unfair and Would Result in Undue Prejudice for plaintiff.

88. It would be unfair to the defendants and contrary to the rules of to allow him to this antislapp motion.

89. Granting the Antislapp Motion would be unfair and would result in undue prejudice for plaintiff.

### A. The Defendants' anti-slapp motion are a frivolous and vexatious use of the anti-slapp statute and are without merit

90. The Defendants' anti-slapp motions are a frivolous and vexatious use of the anti-slapp statute and are without merit.

91. The anti-slapp statute requires that a special movant who "asserts" protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against [the moving party] are "based on" [the moving party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. The defendants have made no showing. In fact, they ignores 99% of my complaint because they know they cannot show that my claims are based on petitioning activities alone. They fail to cite any specific petitioning activity made, other than general blanket conclusory assertions with no specifics.

92. In the landmark Duracraft case, the defendant failed to show that Duracraft had sued him "on the basis" of his petitioning activity because Duracraft, when filing its own suit of contractual breach of confidentiality, produced documentation to indicate that its suit did have a substantial basis other than the defendant's (moving party's) petitioning activity.

93. Similarly, in this case, as one example, I had a contract with the defendant Donais as a prospective client. He breached his contract with me in divulging attorney-client privilege information to others who were not authorized or permitted to receive such information. He also subsequently engaged in harassment of me based on my race. I have the documentation to prove this and will do so upon granting an evidentiary hearing. Also, the defendant is in possession of further documentation that will further prove my arguments and he should be required to produce these documents via limited discovery.

94. NB: Contrary to defendant's assertions, the defendant had a personal vendetta against me and falsely accused me of accusing him of racial discrimination, which is manifestly untrue. The defendant is outright lying and manufacturing false claims and assertions in order to create a sham petitioning situation.

95. I am not a corporation; I am a sole individual minority without much resources.

96. NB: The statute's legislative history reveals that the typical mischief that the anti-SLAPP statute was intended to remedy was lawsuits directed at individual citizens of modest means for protesting development projects by big corporations. Plante v. Wylie, 63 Mass. App. Ct. 151, 156 (2005) (citing Kobrin, 443 Mass. at 336 and Office One, Inc. v. Lopez, 437 Mass. 113, 121-122 (2002)).

97. Moreover, the typical process for filing an anti-slapp motion involves a situation where the defendant first initiates a lawsuit against me and then I hit him back with a frivolous lawsuit in order to shut him up. This is not situation at bar. I was the one who initiated suit against the defendant and he is one trying to hit me back with a slapp motion in order drain my resources and stop me from exercising my right to due process, my right to discovery, and my right to prosecute my meritorious case in an attempt to prevent the defendant from defaming me and interfering with my advantageous relations, and from defaming me in the eyes of the community in which I am held with esteem, and to disparage me in the eyes of the larger business community wherein I conduct business and advantageous relations, and thus destroy my ability to earn a living as an individual business consultant (and impede my ability to take care of my family as a minority with limited resources).

## C. There Was No Proceeding Pending At Time Plaintiff Brought His Lawsuit In Bristol Superior Court

98. The Anti-Slapp Statute does not apply to claims brought after petitioning activity is concluded.

99. All of the statements at issue were not related to any judicial or government proceeding at the time.

100. Any judicial proceeding or government proceeding that could marginally relate to any of the statements were concluded. For example, regarding the statements in 2019 and 2020 to the Police and the ADO, both the police matter and the ADO matter were concluded and closed in 2020.

101. It is therefore impossible for me to have brought this lawsuit in June 2022 with the motive to chill petition activity that had long concluded and was not pending, Any and all actions were concluded before this lawsuit was initiated.

102. See *Radfar v. City of Revere*, Civil Action 1:20-cv-10178-IT, 8 (D. Mass. Sep. 9, 2021) ("Plaintiff asserts that Covino's activity was improper and amounted to an abuse of process and malicious prosecution, where Covino's statements were false and where Covino knew Plaintiff did not commit the crimes he accused her of committing. A person subject to false and malicious petitioning activity is not precluded from seeking damages for personal harm caused by such activity. Because <u>Plaintiff waited until the conclusion of the actions undertaken by the government as a result of Covino's petitioning activity, Plaintiff's *Complaint* [#1] did not interfere with Covino's petitioning activity. In assessing the totality of the circumstances "pertinent to the [Plaintiff's] asserted primary purpose in bringing [her] claim[s], " the court finds Plaintiff has demonstrated that she brought these claims to vindicate her own rights, not to infringe on Covino's petitioning rights, and moreover, has offered some reasonable possibility of a favorable result</u>. *Id.* Accordingly, Defendant Covino's Special Motion is denied.")

## D. The Plaintiff's Motive Was Not To Chill Petitioning

103. Plaintiff Did Not Bring This Suit to Chill Petitioning Activity.

104. Plaintiff's objective and goal was to stop harm and injury from the defendant.

105. This is shown by the meritorious claims asserted by the plaintiff which are provable.

106. This is shown by the fact that the defendants have not challenged the factual plausibility or validity of the complaint in the motions to dismiss.

107. This is shown also by the fact that I filed a lawsuit against Hilton Hotels with 21 defendants, including Craig Donais as a lesser defendant, which was litigated for about 5 years and eventually was settled in good faith. This lawsuit rose out of that settled lawsuit. Donais was involved in the settlement negotiations for 2 years out of the 5 years (part of which dragged out because the Covid

emergency) and then he backed out at the last minute just before the settlement paperwork was finalized and signed by the 20 defendants.

108.   This is shown also by the fact Donais was the one who renege on being included in that global settlement in bad faith. I agreed to include Donais in the global settlement negotiations with Hilton in good faith on claims, not to chill, but to be made whole; Donais reneging on a settlement that would essentially cost him nothing as he got to piggyback on the coattails of a larger global settlement with Hilton hotels, shows bad faith. He had the chance to end this litigation but he chose to resurrect it and prolong it. Now Donais wants to claim antislapp. This is bad faith.

109.   The history of the litigations related to Donais and these matters supports the fact that this was not brought to chill petitioning but to vigorously pursue justice.

110.   This is shown also by the fact of the filing of the ADO complaint against Donais, which shows that this was in good faith. In fact, the ADO told me that for my defamation claim, I should pursue it in court because I can recover for reputational harm there, but the ADO is not designed to facilitate recovery for reputational harm.

111.   This is further shown by the fact that I filed a bar complaint in MA and they told me that I should pursue the matter in superior court and come back after the case was done with the case (i.e., implying after I had gathered more evidence or rulings in my favor).

112.   This is shown also by the fact that a right to know lawsuit was pursued to obtain records pertaining to this matter on Donais' prior bar complaints in NH, which shows good faith in pursuing the case, not to chill petitioning.

113.   This is shown also by the fact Judge Christopher Barry Smith in Middlesex superior court said he believes that this is an actionable claim for defamation (based on similar claims in this case). See transcript of hearing with Judge Barry-Smith in November 2020. See **Exhibit 10**. See also ruling where he ordered that he case remain in superior court as meeting the jurisdictional amount for damages. See **Exhibit 11**.

114.   This is also shown by the fact that another judge, Judge Amy Messer in NH superior court, denied Donais motion to dismiss on similar claims in this case.

115.   This is shown by the fact another judge, Judge Charles Temple in NH superior court, in the original lawsuit filed on these matters, denied Hilton defendants motion to dismiss, and also ruled ion my favor in preliminary injunction hearing, resulting in the Hilton defendants seeking mediation and settlement with me to resolve that lawsuit.

116.   This is also shown by the fact that another judge, Judge Paul Moore in NH circuit court, found Donais to have violated the rules of conduct regarding conflict of interest with regards to me as prospective client, thereby resulting in Donais disqualification in that case. This supports my breach of contract, breach of covenant of good faith/fair dealing and breach of fiduciary duty claims against Donais.

117.   All of these things show that my motive was not bad faith or to chill petitioning and it shows that several judges have found merit to the various claims that I am now asserting in this case or that form part of the foundation for the claims asserted in this case. This lawsuit is a credible good faith sound meritorious lawsuit.

### G. Anti-Slapp Statute does not apply to criminal conduct

118.   Criminal conduct alleged in complaint is not protected by anti-slapp statute.

119.   If a person engages in criminal conduct, he cannot anti-slapp protection on that conduct.

120.   I have alleged (and will prove) that Donais engaged in criminal conduct when he committed felonious perjury and when he engaged in an attempt to tamper with a witness. NB: These are similar acts that Donais was found to have committed by a Connecticut superior court judge, which was referred to the ADO of NH and which thereafter followed Donais' withdrawal or retirement of his law license from state of Connecticut.

121.    The fact that Donais was found by a judge to have committed similar acts in another unrelated case, buttresses my complaint that he has done a similar thing in this case. See amended complaint.

122.    The act of going to the police in 2019 was not protected by the antislapp statute and the statements made to the police are not protected by the antislapp statute because the statements made involved giving felonious perjurious statements to the police. Those statements are not protected by the anti-slapp statute. Similarly, the act of getting the police to call me was an attempt to use his police connections to intimidate me. Such conduct is not protected by the antislapp statute. NB: Lying or perjurious speech is not protected activity under the anti-slapp statute.

123.    Two California cases support this holding. In Gerbosi, an attorney, Gaims, hired a private investigator, Pellicano, to investigate the ex-girlfriend, Finn, of his client, Pfeifer. 193 Cal.App.4th at 440. Pellicano installed a wiretap on Finn's telephone, and was eventually indicted on conspiracy and wiretapping charges for doing so. Gerbosi, 193Cal.App.4th at 441. Finn and her neighbor, Gerbosi, filed suit against Gaims, Pellicano, Pfeifer, and the telephone company for multiple statutory violations and torts arising from the wiretapping. Gerbosi. 193Cal.App.4th at 441. Gaims filed anti-SLAPP motions to strike both Finn's and Gerbosi's complaints. Gerbosi. 193 Cal.App.4th at 442. The trial court denied both motions. Gerbosi. 193 Cal.App.4th at 442. With respect to Gerbosi's claims, the California Court of Appeals held that the claims did not arise from any protected activity on the part of Gaims. Gerbosi. 193 Cal.App.4th at 444. In so holding, the court stated, "Agism's status as a lawyer…unrelated to any representation of any client in relationship to Gerbosi does not bring Gaims under the protective umbrella for acts in furtherance of protected 'petitioning' activity." Gerbosi. 193 Cal.App.4th at 444. With respect to Finn's claims, the court held that those claims which alleged criminal conduct were not subject to the anti-SLAPP statute, because wiretapping is not "'protected by constitutional guarantees of free speech and petition.'" Gerbosi, 193 Cal.App.4th at 445-46 (quoting Flatlev v. Mauro, 39 Cal.4th 299, 317, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006)). The court compared the case to Flatlev, which held that California's anti-SLAPP statute "'cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.'" Gerbosi. 193 Cal.App.4th at 445-46 (quoting Flatlev, 39 Cal.4th at 317). The Gerbosi court held that "wiretapping in the course of representing a client," unlike writing a letter or making telephone calls on behalf of a client, could not be considered to be protected under any scenario. 193Cal. App. 4th at 446.

124.    See also  Dillon v. Seattle Deposition Reporters, LLC, 179 Wash.App. 41, 316 P.3d 1119, 1133 (2014).

### The complaint alleges numerous facts and claims that do not involve petitioning activity

125.    The complaint alleges numerous facts and claims that do not involve petitioning activity.

126.    For example, Donais committed intentional defamation intended to injure plaintiff. Also, the breach of contract and fiduciary duty claims do not involve petitioning activity

127.    Similarly, threatening and intimidating speech is not covered by the anti-SLAPP statute. Threatening and intimidating speech which violates the law and does not receive First Amendment protection is not covered by the anti-SLAPP statute. Nat'l Coal. On Black Civic Participation v. Wohl, No. 20 Civ. 8668 (VM), 2021 WL 480818 at *14 (S.D.N.Y. Jan. 12, 2021) (holding that speech which plausibly violated the VRA and KKK Act was not "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest" and was not covered by anti-SLAPP.)

128.    If Donais did any petitioning, it was sham petitioning. The antislapp motion to dismiss must be denied if the opposing party presents "prima facie evidence that at least one of the moving party's petitioning activities was 'devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [nonmoving party]." Nader II, 2013 ME 51, ¶ 14, 66 A.3d 571 (quoting Nader I, 2012 ME 57, ¶¶ 33, 36, 41 A.3d 551).

129.   Furthermore, these non-petitioning activities include:
   a.   Breach of contract
   b.   Breach of covenant of good faith and fair dealing
   c.   Breach of fiduciary duty
   d.   Communications with family members
   e.   Communications to private non-government persons
   f.   Activity outside of litigation
   g.   Interference with contractual relations with an attorney
   h.   Interference with advantageous relations with another attorney
   i.   Communications to me in a settlement/attempt to sabotage settlement with larger group of defendants
   j.   Fraudulent misrepresentation during settlement discussions. NB: Counsel for lying in settlement, fraud and deceit are not protected in settlement negotiation

130.   Consequently, the antislapp motion cannot prevail. The court must deny any antislapp motion directed at a complaint that alleges any claims based on non-petitioning activity. See MARGARET J. REICHENBACH vs. TIMOTHY G. HAYDOCK, 92 Mass. App. Ct. 567 (2017) (Thus, although the alleged behavior includes petitioning activities, the Reichenbachs' claim is not based solely on petitioning activities and asserts a substantial basis beyond petitioning. See Duracraft, 427 Mass. at 168 (denying motion to dismiss where a substantial basis existed beyond petitioning activity).).

131.   My complaint includes several allegations as the basis of my complaint outside of that which the defendant cites as the basis for his petitioning rights. This includes:
   a.   I refute the facts stated in defendants' pleadings and filings that pertain to or is relevant to the antislapp motion. They are either untrue, misleading or based on belief and not personal knowledge.
   b.   I deny that what Hilliard has stated in his affidavit is true and correct and refer to what is stated further in my affidavit in this regard.
   c.   The acts and harms that I experienced from Donais do not arise from any petitioning activity from him.
   d.   The claims I brought in this action are not intended to chill any petitioning activity.3
   e.   To the extent they are not or could not be based on personal knowledge, they should be stricken or otherwise ignored by the court, and if necessary, I request that they be stricken.
   f.   Defendant has published the following false and defamatory statements of purported fact concerning me as follows:
      • I accused him of racism for declining to represent me
      • I burglarized and bugged his office phone and office thus committing a felony crime
      • I fabricated a recording to put his voice on it to make him say things he did not say.
      • I am a criminal offender.
      • I have a mental disease
   g.   NB: These statements are lies and defamatory. This is not protected speech. Any reasonable person would reasonably want to vindicate their right to stop the reputational harm from such false and injurious statements including filing a lawsuit after all else had failed, including a bar complaint. I also tried to settle with Donais but he strung me along thinking that the negotiation was in good faith only to find out at the end that he really did not want to settle.
   h.   Defendant Donais published the false and defamatory statements as alleged above to third parties.
   i.   To state or imply that someone is or did any of the above is per defamatory.

j. By defaming me, Donais sought to publicly humiliate me and force me to live with a continual question mark over me.

k. Furthermore, contrary to Mr. Donais' allegations, at the time I filed the lawsuit in June 2022, the police matter had already been closed; since August 2020, so there was no petitioning activity that I could have been trying to chill. I filed the lawsuit almost 2 years later.

l. NB: There are certain things that create tortious wrongdoing even if it is couched under the garb of free speech. This is the reason why one cannot "yell fire" in a crowded building. The law recognizes legitimate exceptions to the unfettered right to say anything one wants about anyone regardless of its truth or falsity and regardless of it damage to people's reputation. These are necessary limitations that protect vulnerable people in our society from reputational attacks that can diminish their ability to make a living or to have a successful career, among other things.

### i. Racism

m. I did not allege racism, contrary to allegations and statements of Mr. Donais.

n. Donais falsely stated that I accused him of racism, and had issued a statement claiming that the actual reason for his removal was racism. Mr. Donais' reference was an intentional reference to negative stereotypes about black people. Mr. Donais' false claim that I issued a statement that Donais was discriminating against me due to racism was an attempt to intimidate persons of color from speaking up about discrimination.

o. Lawyers cannot be immune from accountability for engaging in horrific racial targeting and harassment of black people.

p. Mr. Donais made several comments about me that had racial undertones and that mocked me for opposing racism. NB: Judge Christopher Barry-Smith also acknowledged the racially discriminatory connotations of Mr. Donais' alleged statement about me falsely complaining about racial discrimination. See Exhibit 10

### ii. Criminal

q. The allegations that suggest that I was a criminal or "offender" are false.

### iii. Mental Disease

r. The allegations that suggest that I have a mental disease are false.

### iv. Injury

s. Mr. Donais actions have injured me, my reputation and my business. His defamatory acts and conduct against me has led to the harming of my business, consulting, entrepreneurial and professional endeavors.

t. I have had sleepless nights, worry, anxiety, mood swings because of this. It has caused me much emotional distress.

u. Mr. Donais' allegations and statements caused me harm. This includes my spouse/family who have experienced humiliation by the disparaging comments by Mr. Donais about me. It is the injury to me and my family that drove the need to stop the defamation, not any desire to chill petitioning activity.

v. I am a black man in America. There are already systemic disadvantages that I face as consultant and entrepreneur. Thus, to add smears and defamatory statements publicly hurts me professionally and personally.

w. My wife has also been injured by this defamation and harassment. Mr. Donais has targeted both of us.

x. Several business associates mentioned to me that these statements have created a negative image of me.

y.  I simply want the harassment to stop. I want to be left alone so that I can make a living and take care of my family, as I have a right to do without being impeded by defamatory comments by Mr. Donais.

z.  I did not file this lawsuit to retaliate against petitioning activity. I am seeking redress of a number of related grievances that have harmed and injured me.

aa. I simply would like Mr. Donais to stop making false and untrue statements about me.

bb. I filed this lawsuit almost 2 years after any police investigation had closed and after any ADO complaint process had closed and was no longer an issue9. I could not have been motivated to chill petitioning of any kind.

cc. I have suffered actual injury in the form of expenditures of money and severe emotional distress.

### iv. Emotional Distress

dd. Mr. Donais continued publishing defamatory statements about me over the course of several months, even after he knew of or was aware of the emotional distress he had already inflicted upon me.

ee. Mr. Donais is abusing the purpose of the anti-slapp statute.

ff. As a result, I have endured mental pain and suffering, experiences fear and anxiety, a lack of energy, moods swings and sleep disturbances. These demonstrate the extreme and outrageous conduct by Mr. Donais, having a severe and traumatic effect upon my emotional tranquility.

### v. Meritorious Claims

gg. I have meritorious claims against Mr. Donais; Judge Christopher Barry-Smith confirmed that I had valid claims against Mr. Donais.

hh. Similarly, this is a meritorious defamation case that attempt to prevent Mr. Donais from to target me, harass me, and defame me in the eyes of the community in which I am held with esteem, and to disparage me in the eyes of the larger business community wherein I conduct business and advantageous relations, and thus destroy my ability to earn a living as an individual business consultant (and impede my ability to take care of my family as a minority with limited resources).

ii. By recognizing the validity of the claims, Judge Christopher Barry Smith effectively made the antislapp motion moot; Judge Christopher Barry Smith said that my claims were based on allegations that if proven true would show that Mr. Donais intended to defame me, and cause me emotional distress. Hence, Judge Christopher Barry-Smith implicitly elevated my claims to a threshold of plausibility to cause damages necessary to remain in superior court. This is grounds to deny the anti-slapp motion.

### vi. Malice

jj. Mr. Donais knowingly made false statements about me. His statements were made with malice.

kk. Moreover, I allege in my complaint that he defamed me with malice and malicious intent.

ll. He has recklessly sought to publish and republish the defamatory material in 2019.

### vii. Other claims

mm.   For example, I alleged against Mr. Donais the following wrongs: breach of contract, interference with advantageous relations, violation of MCRA, intentional infliction of emotional distress, race discrimination and harassment. None of these pertain to any petitioning activity.

nn. Petitioning activity is the only conduct complained of. Hence, the antislapp motion must be defeated.

oo. My lawsuit is driven by the wrong acts committed against me including defamation, and not any petitioning activity.

### viii. Violations of MCRA - Harassment:

pp. My lawsuit is also driven by the harassment and discrimination and hostile environment caused, created or facilitated by Mr. Donais and his friends. I simply want to not be ridiculed, mocked, derided or castigated.

qq. I simply want the harassment to stop and to be left alone without being harassed.

rr. Mr. Donais evidently believes he has the right to target, mock, deride, harass, defame and lie about me with impunity and without accountability, regardless of the damage to my ability to make a living, or provide for my family.

ss. The bottom line is that my attempt to stop defamation is not stifling free speech. I simply wanted to protect myself from a powerful bully who is irrationally fixated and obsessed with defaming me and harassing me because of race. I simply want to prevent falsehoods being used to hurt my reputation and character and have a chance at having a successful business. I simply wanted to stop Mr. Donais from promoting the lie that I accused him of racism, or any other lie that he concocted in his attempts to smear me. Simply, I want Mr. Donais to leave me alone and stop harassing me for my race or any other tortious reason.

tt. Mr. Donais repeatedly published statements accusing me of making frivolous claims of racism. These allegations support an inference that Mr. Donais' conduct constituted intimidation designed to keep me from exercising my rights under art. 16 of the Massachusetts Declaration of Rights.

### ix. No Petitioning

uu. Furthermore, Mr. Donais claims in his anti-slapp motion that his comments were intended to be serious comments directed to government as petitioning activity. He was attempting to use false assertions to paint me in a false negative light, to raise doubts about my character, and ultimately to subject me to public ridicule, and scorn in the eyes of the larger communities with which I am held in esteem.

vv. Even assuming arguendo there was petitioning, I assert that Mr. Donais' comments and conduct is motivated by malice. The allegations of falsity, coupled with the allegations of ill will and animus on the part of Mr. Donais toward me, are sufficient in demonstrating a meritorious claim for defamation.

ww. Mr. Donais has made statements implying or indicating I was a criminal. Mr. Donais has sullied my reputation in the community. These have nothing to do with any petitioning.

xx. No petitioning activity were related to his alleging I frivolously alleged racism; or suggesting that I was a criminal; etc.

### x. Admission of Liability

yy. Mr. Donais admitted that he had a conflict of interest. A judge found that he breached fiduciary duty. He thus had to disqualify himself. This involved no petitioning activity.

zz. His admission demonstrated that my claims are meritorious and that I have a valid claim.

aaa. Hence his after the fact petitioning argument is a sham. NB: I can provide evidence of this in an evidentiary hearing.

### xi. Contract & Covenant of Good Faith

bbb. Mr. Donais breached his contract with me in treating me unfairly. I have the documentation to prove this and will do so upon granting an evidentiary hearing.

ccc. Also, the defendant is in possession of further documentation that will further prove my arguments and he should be required to produce these documents via limited discovery. NB: Mr. Donais has not disputed that there was a contract.

ddd. Mr. Donais also breached his duty of good faith and fair dealing to me, intentionally engaged in wrongful conduct, and knowingly injured/harmed me.

### xii. Contractual or Advantageous Relations

eee. I had a prospective economic advantage in the marketplace derived from my experience and background in conference planning and related activities including speaking, consulting and training.

fff. Mr. Donais knew about my continuing efforts to engage in business in the marketplace, and also knew about my role as a speaker and conference planner, including for certain police-involved community-based events.

ggg. Mr. Donais intentionally interfered with the prospective advantages of my relationships with existing and prospective business and professional associates through improper motives or means

hhh. As a result of Mr. Donais' misconduct, my prospective business advantages are irretrievably damaged.

iii. Furthermore, during times relevant to this matter, I enjoyed advantageous relationships with various persons and groups in NH, including the Manchester Police Department as well as with the NAACP and members of the AG office. I anticipated further advantageous relations with such in the future.

jjj. The conduct described above was the clear use of improper motives and means to accomplish the interference with my contract rights and advantageous relations secured by me in the community.

kkk. This interference with contract rights and advantageous relations and prospective business advantage caused me injury and damages.

lll. In 2017, 2019 and 2020, Mr. Donais was put on notice that his comments and conduct were harming me and my business. He maliciously continued to make or publish such comments even after such time and beyond. He was fully aware of the damage to my business he was causing.

132. These are just some of the examples but there are many others contained in my complaint.

133. The Defendants have thus taken this matter and transformed it into a disingenuous, dishonest, frivolous anti-slapp complaint.

134. My complaint was not based on the defendant's petitioning activity and there are no circumstances under which it could be construed that my complaint was based **solely** on the defendant's petitioning activity and nothing more. As such, it simply cannot be said that I filed my complaint merely to intimidate or chill the defendant's exercise of his right to petition, and there is no basis to conclude that my case as a whole is meritless. No-one in my situation would have known or understood that the defendants defamatory comment in accusing me of false racism accusations was motivated or intended to be a petition to a government entity.

135. Furthermore, Defendant engaged in an attempt to settle this case. Hence the defendant's anti-slapp motion is based on a "sham". I can provide evidence of this in an evidentiary hearing.

136. He is thus disqualified from obtaining protection under § 59H because he was not "petitioning" in the sense of personally seeking redress of a grievance of his own. See Fustulo v. Hollander , 455 Mass. 861 (2010).

137. Hence, based on the above, there are adequate grounds to deny the anti-slapp motion. However, as mentioned before, I need limited discovery and time to collect and submit affidavits and incorporate additional points and arguments that would completely defeat this frivolous motion.

### B) Plaintiff Is Likely To Succeed On The Merits

138. While it is crucial, for the reasons stated above, that motions to dismiss under the Anti- SLAPP statute be filed promptly, here, as in Drudge, Plaintiff's suit is hardly meritless.

139. The claims I have made in this case are likely to succeed. The allegations outlined in the complaint regarding Donais' conduct is supported by detailed facts—all before any discovery has even commenced. These are not allegations based on suspicions or innuendo. I have amassed and

alleged evidence—much of it taken from the Defendant's own statements and conduct—that the Defendant knowingly or recklessly defamed me. As a result of the Defendant's defamatory actions, I was publicly defamed among other things, which is unquestionably false. The relief that I am seeking is limited to the specific defamatory falsehoods that Defendants published about me individually which are the subject of the tort claims alleged in the Complaint. In short, I ask that Defendants stop defaming me. This lawsuit is not about Donais' free speech or petitioning rights. Defendant's attempt to argue otherwise is merely a smokescreen for a weak defense on the merits of the tort claims stated in my complaint. While Free speech is sacrosanct in this country, it has its limits, and those limits are reached when an innocent person is maliciously and falsely defamed to further another's agenda. Defendant's Special Motion to Dismiss should thus be dismissed. [NB: The suggestion that this suit is part of a larger attempt to "muzzle" Donais is preposterous. Indeed, Mr. Donais has increased his allegations by increasing the number of persons that he spreads the falsehoods to.].

140.    So the Defendant's motion to dismiss would still fail because Plaintiff's claim is likely to succeed.

141.    "SLAPP suits are often brought for 'purely political purposes' in order to obtain 'an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.'" Drudge, 2001 WL 587860, at *3. [O]ne of the common characteristics of a SLAPP suit is lack of merit. But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. … Thus, while SLAPP suits "masquerade as ordinary lawsuits" the conceptual features which reveal them as SLAPPs are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal right or to punish them for doing so. Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs.

142.    I was forced to bring this lawsuit because I asked Donais several times to stop defaming me but he refused. He in fact further mocked, ridiculed and defamed after that. I tried to ignore it but I suffered embarrassment, humiliation, lost business and opportunities, all because the Defendant has breached his implied contract with me, has treated unfairly because of my race and has sought to target me and publish false and defamatory statements about me, about my character and my activities.

143.    This lawsuit has literally contributed to the draining of my resources. I could hardly have been trying to tie up defendant with a meritless claim to my own detriment.

144.    The callousness, the duplicity and the abuse of process by Defendant should not be countenanced by this court.

145.    The reasons behind the adoption of the Anti-SLAPP Act involve scenarios where a developer sued the activists and the community organization alleging they 'conducted meetings, prepared petition drives, wrote letters and made calls and visits to government officials, organized protests, organized the preparation and distribution of … signs and gave statements and interviews to various media. Such activism … was met with years of litigation and, but for the ACLU's assistance, would have resulted in outlandish legal costs to defend. Though the actions of these participants should have been protected, they, and any others who wished to express opposition to the project, were met with intimidation. This view of SLAPPs is thus exactly in line with the definition offered by the Drudge Court—and completely different from the case that I brought.

146.    Much like this case, the Court in Drudge reasoned that the suit "[bore] little resemblance" to a SLAPP action and concluded that it could not "characterize the suit as meritless … or conclude at this stage that plaintiffs have not been injured in their reputations or that 'winning is not [their] primary motivation', so far as it appears, they have brought this suit to 'vindicate a legally cognizable right.'" Drudge, 2001 WL 587860, at *4 (second alteration in original).

147.     Unlike a traditional SLAPP suit, there is no economic bullying here, and I am certainly not a "large private interest[] [aiming] to deter common citizens from exercising their legal right[s]." Id. at *3.

148.     To the contrary, I am a lone individual who is meritoriously seeking legal recourse for damage to my personal reputation after Defendants published false and misleading statements of fact about me to a wide audience. For all these reasons and the reasons stated in Plaintiff's concurrently filed opposition to Defendants' motion to dismiss, Plaintiff's claims are not appropriately deemed a SLAPP suit and are likely to succeed on the merits.

149.     In Kobrin, the Massachusetts high court said that in analyzing the merits of an anti-SLAPP motion to dismiss, "our only concern, as required by the statute, is that the person be truly 'petitioning' the government in the constitutional sense." 861 N.E.Qd at 68 n.14. Donais has not established that the conduct on which Plaintiffs' claims are based consist solely of Donais' own protected petitioning activity. Therefore, he has not made the initial showing required before the burden is shifted to the Plaintiff, and it is unnecessary to proceed to that step of the analysis.

150.     Defendant's statements are not petitioning activity. They were not being presented for consideration or review by a government body. Furthermore, statements that are tangential to an issue under consideration or review by a governmental body are also not entitled to the protection of the anti-SLAPP law. See Global NAPs, 63 Mass. App. Ct. at 607 ("tangential statements intended, at most, to influence public opinion in a general way unrelated to governmental involvement" are not covered by the statute).

151.     I have evidence that (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. This evidence requires an evidentiary hearing and therefore I request such a hearing. I also request limited discovery in order to be able to fully prove my case.

152.     According to the statute, I have a right to request specific discovery by motion and a hearing in order to provide good cause. I am requesting permission of the court to allow some "discovery" including the necessary production of documents, and interrogatories and deposition.

### D. Plaintiff Is Entitled To Attorneys' Fees and Costs

153.     A court must award a prevailing defendant attorney's fees and costs, but a prevailing plaintiff is also entitled to attorney fees and costs if the anti-SLAPP motion was "frivolous or . . . solely intended to cause unnecessary delay."

154.     I also ask this Court to award me fees and costs incurred in being forced to prepare and file an opposition to this wholly frivolous anti-slapp motion (i.e. if the Court denies his motion). Given Defendant's extreme and unreasonable conduct towards me to date, both within this litigation, and in connection with events outside of this litigation, it is evident that the only reason why he would file this anti-slapp motion is to further harass me by forcing me to incur additional legal fees by preparing responses to his anti-slapp motion.

155.     For all the reasons stated above, the Anti-SLAPP Act is ineffective for purposes of this case, and is rendered moot by reason of Defendants' untimely filing. The Plaintiff is entitled to attorneys' fees and costs for all of these reasons. The court may award reasonable attorney fees and costs to the responding party if the court finds that a motion is frivolous or is intended to cause unnecessary delay. Given the numerous, significant, and obvious procedural and substantive barriers to success on this motion, Plaintiff can only assume that this motion was intended to further delay discovery in this case.

156.     Moreover, should the Court (appropriately) hold that the Anti-SLAPP Act is inapplicable to this case, attorneys' fees are also proper as a party may recover attorneys' fees from an opposing party by demonstrating that the party acted in bad faith either by filing a frivolous action, or by litigating a properly filed action in a frivolous manner.

### Request for Limited Discovery Under The Statute

157.  According to the statute, the court shall consider pleadings and supporting and opposing affidavits stating the facts" and may permit additional discovery upon a motion for good cause.

158.  Similarly, when considering a motion to strike under the anti-SLAPP statute, the court should apply a summary judgment-like analysis to determine whether the plaintiff has shown, by clear and convincing evidence, a probability of prevailing on the merits.

159.  Thus, when deciding whether the moving party has shown, by a preponderance of the evidence, that the claim was based on an action involving public participation and petition, the court also must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Mountain Park. 125 Wn.2d at 341: Gerbosi. 193 Cal.App.4th at 444.

160.  NB: When it comes to an anti-slapp motion, the stakes are high for the non-moving party because of the automatic award of fees if the special motion is granted.

161.  As point of note, I also understand that even if this court rules in my favor, it still is important to preserve the record just in case of an appeal. This is critical because if discovery is ordered, and later the movant wins an appeal, I could be automatically stuck with the movant's cost of discovery. It is therefore prudent for me to secure the record from now and it is not unreasonable for me to be concerned about this, which comes from my reading of several cases related to anti-slapp motions in the state of Massachusetts.

162.  In light of the foregoing, it is evident that good cause exists therefore to grant this request for discovery.

### III. Conclusion

163.  If this court has what it needs in order to make a decision on the anti-slapp motion, I hope that the court rules in my favor. It would be a travesty, if after all this effort, if the court rules otherwise. The court should allow the case to proceed on the merits and allow me to have my day in court to prove my case.

164.  Wherefore I request that this Court:
  a.  Deny the Anti-Slapp Motion to Dismiss in its entirety;
  b.  Award me any fees and costs incurred in opposing this Motion.

165.  If this court denies all of the above requests, then in the alternative, I would like to ask that the court:
  a.  Allow me the opportunity to take limited discovery as permitted by statute.
  b.  Allow me to have an evidentiary hearing to show why limited discovery is needed, as permitted by statute.

### IX. CHOICE OF LAW ISSUE

265.  Statements by the defendants were made in MA as well. For example, Donais made defamatory statements in MA as well. Hence, the controversy occurred in MA equally as well.

266.  I dispute that it undoubted that NH law will govern the issues.

267.  I also alleged that my reputation was harmed in MA and I suffered injury in MA.

268.  Donais cannot use a motion to dismiss to dispute facts.

269.  it should be noted that in fact some of the documents relating to the alleged false statements are in MA.

270.  NH does not have jurisdiction over the MA state law claims. Facts occurred in MA as well as NH. NH is not convenient.

271.    Dismissal would be improper because of statute of limitations issues. The defendant should not be rewarded with totally blocking my ability to refile by obtaining dismissal.

## X. ADDITIONAL POINTS

272.    I allege the following either on personal knowledge or on information and belief.

273.    I allege that Mary Donais actively assists Craig Donais with his law business and law practice including activities in MA. Therefore, it is alleged that Mary Donais fully aids, abets and conspires with Craig Donais in his acts and conduct at issue in the complaint. Hence, the acts of Craig Donais are imputed to Mary Donais, and vice versa.

274.    Similarly, I allege that Donais Law Office PLLC is the alter ego of Craig Donais. Hence, the acts of Craig Donais are imputed to Donais Law Office PLLC and vice versa.

275.    I also allege that Craig Donais and Mary Donais has engaged in defaming me to their family members including to their sons (including adult sons), and to each other and to other family in MA as well. Discovery will reveal the extent of the defamation and how widespread it is.

276.    None of the above statements by the Donais defendants is directed at any public body or government. All defamatory acts are directed at private persons, as part of the defamatory scheme and campaign of Craig Donais and Mary Donais.

277.    Also, all of the counts that apply to Craig Donais are imputed to Mary Donais and Donais Law PLLC.

278.    Similarly, I also allege that both Donais and Hilliard engaged in fraudulent misrepresentations to me as it pertains to inducing me to agree to allow them to be involved in a global settlement negotiation with Hilton defendants, for which their intent was only to sabotage the settlement for the other defendants, and that they lied to me and deceived me into fake negotiation offers, which were reneged on and withdrawn at the last minute for no reason, right as the settlement paperwork was about to be finalized and signed by 20 other defendants. Again, this has nothing to do with any petitioning activity as the conduct was directed towards me.

279.    I hereby allege that the Donais defendants are represented by insurance counsel for Donais' malpractice insurance. I also allege that the insurance carriers know that the liability of the Donais defendants is clear

but yet they have refused to offer prompt settlement as required under Section 176D. This fact is supported by the fact that the Donais defendants did not challenge the complaint on the basis of failure to state a claim in MA federal court. This is a tacit admission of the factual validity of my claims. I have asked counsel for the Donais defendants for the name of the insurance carrier several times and they refuse. I told them I intend to add insurance carriers as a defendants to this case, they still refuse and obstruct. I offered to engage in settlement with insurance carrier and insurance counsel. They refuse. I asked defense counsel to confirm that they are insurance counsel. They refuse. The conduct above is a violation of Section 176D. On information and belief, the insurance carriers are citizens of MA and thus addition of them to the case would destroy diversity. Without a name, I have been obstructed in adding them as a defendant. Thus I hereby seek permission from the court to add them a Company Doe 1 and 2, in the meantime until discovery or a court order can be had.

280. I also allege that the defamation claims, the MCRA claims, aiding/abetting and conspiracy claims, 93A claims, breach of contract and breach of fiduciary duty claims are one continuous string of events designed together to injure, retaliate, undermine, intimidate me. The Defamation claims flows out of the breach of contract and fiduciary duty/legal malpractice claim which is the genesis of this whole story, which is at core a story about a lawyer who turned against his vulnerable client and embarked on a campaign to damage and teach him a lesson using his legal skills and connection to try to crush him.

## XI. REBUTTAL TO SPOUSAL DISQUALIFICATION DEFENSE

281. Spousal disqualification is not applicable to the situation.

282. My allegations includes acts by Mary Donais constituting conspiracy, aiding and abetting Craig Donais.

283. My allegations also include that Mary Donais was working for and working with Craig Donais in a business or work assistance capacity, and working for Donais Law Office, as an employee or agent of Donais Law Office.

284. Moreover there are non-testimonial acts by Mary Donais that are at issue.

285. Similarly, there are statements Mary Donais made to other people such as her family members and adult son (note: spousal disqualification does not apply to communications with children or other family

members) that are at issue in this case. These include statements defaming the plaintiff suggesting that he is a criminal, and is going to do physical harm to their family members. These statements are not protected nor privileged in any way and do not constitute petitioning activity.

286.   Also, there are statements to Hilliard that are at issue as well. If Mary Donais was present for any communication between Hilliard and Craig Donais or between Hilliard, Craig Donais and her other family members or anyone else (thus waiving any potential claims of privilege whether spousal or attorney-client), then such communications would be relevant to this case.

287.   Furthermore, written communications between a husband and wife are not subject to spousal protection. Also, there are statements made by Mary Donais on social media including Facebook that are at issue in this case. Such statements are public and are not subject to any privilege.

288.   Without discovery, it is premature to argue spousal disqualification as that would, at a minimum, be putting the cart before the horse, so to speak.

289.   Moreover, assuming arguendo that Mary Donais may not testify about oral conversations that she had with Craig Donais, she can however testify to what she observed or what she heard with Craig Donais speaking to others. She may testify about documents she wrote to him or that he wrote to her, or that both of them wrote to others.

290.   The Donais defendants assert that any allegations based on any communications between husband and wife, then testimony for those communications will be blocked and so they can't form the basis for any claim.

291.   But defendants ignore the fact that I'm not seeking testimony necessarily or only, but I'm providing circumstantial evidence of what can be shown to must have happened or be inferred to have happened, even without testimony from her.  If certain testimony of oral conversations between husband and wife is not being sought, then the spousal disqualification would not apply.

292.   Moreover, spousal disqualification would not apply to non-testimonial acts. The claims against Ms. Donais are not simply based on testimonial facts. They're based on non-testimonial facts and also on circumstantial evidence that support or go to those claims.

293.    Defamatory statements to family members are not privileged. Allegations of criminality, violent criminal intent to do physical harm to family members, of having mental illness/disease, of felony bugging of an office, are all defamatory per se and are not protected by privilege of any kind. The plaintiff alleges that both Craig and Mary Donais have engaged in this conduct via telling their family members such defamatory statements, and are thus both liable for such conduct.

294.    The plaintiff alleges that Donais and Hilliard interfered with contractual or advantageous relations by sabotaging or trying to create conflicts with attorneys who the plaintiff had relations with, by initiating conduct towards these attorneys in order to artificially create conflicts so that the plaintiff would have no representation or legal assistance.  The plaintiff alleges that Mary Donais aided and abetted these acts by planning, coordinating, conspiring to do these acts with Donais and Hilliard.

295.    The plaintiff alleges that Mary Donais assisted Donais/ Donais law office with the breach of contract and breach of loyalty/fiduciary duty when Donais engaged in a conflict of interest. So, Mary Donais assisted in the act of the breach of contract/breach of fiduciary duty or aided and abetted the breach of contract/breach of fiduciary duty, where Mary Donais knew about the contract/duty and assisted Donais in the breach, causing injury to the plaintiff.

296.    NB: Donais cannot use his wife as both a sword and a shield. He invoked her into this case himself to use her to stoke escalated concern by the police against me. He cannot then use her to protect himself from discovery of non-testimonial acts and evidence.

297.    It should also be noted that the Defendants contradict themselves. They say that any statement by Mary Donais would be subject to antislapp protection. But then they complain that I have not ascribed any statements to Mary Donais. This contradiction undermines their antislapp motion.

298.    What I have stated is that Mary Donais made statements to her family members including but not limited to her husband Craig Donais but also includes statements to her children including adult children.

299.    Otherwise, I have alleged conspiracy based on acts of Mary Donais in conspiring to damage my relationship with the police.

300.    Therefore, the conspiracy claim cannot be subject to antislapp.

301.     To the extent that I alleged that Mary Donais conspired with her husband to defame me, that conspiratorial act is not necessarily based on statements but based on the planning and orchestration of events that entailed the conspiracy and the carrying out of the conspiracy. Both Mary Donais and Craig Donais plotted together to harm me.

## XII. REMEDY

302.     The Donais Defendants' Second Motion to Dismiss must be viewed as presented for an improper purpose, such as to cause unnecessary delay or needless increase in the cost of the litigation.

303.     According to the second motion to dismiss, the basis for dismissal is that the claims asserted against the Donais defendants, which are identical to the claims he previously moved to dismiss without asserting these new defenses in MA federal court, now suddenly fail to meet the requirements of Federal Rule of Procedure 8(a).

304.     The Donais Defendants' arguments have no legal merit, should have been made a long time ago, and are interposed solely for the purpose of delay. Each of my claims are viable and adequately pleaded.

305.     Therefore, I urge this Court to deny Donais Defendants' motion and get to the heart of the matter, namely, his illegal and unethical conduct as outlined in the complaint and in my opposition papers.

306.     If the Court is inclined to grant all or part of Donais Defendants' motion, the appropriate remedy for failure to state a claim is not dismissal, but leave to amend.

## XIII. SPECIFIC REBUTTAL

307.     Contrary to the Donais defendants' assertions in their second motion to dismiss, I have not asserted bald assertions" or conclusions of law nor have I offered  "labels and conclusions' or a formulaic recitation of the elements of a cause of action". I have offered granular detail spelling out facts and circumstances showing more than the required "heft" for a well-pled complaint. Although it is not done with lawyerly precision as I am pro se, I have taken great pains to avoid any challenge that "there is not enough facts". However, to the extent that my pleading is less than artful or complete, then I need an opportunity to amend any so-called deficiencies of the complaint.

308.     For example, the Donais defendants allege the following as indications of insufficient detail or facts.

- "Since Plaintiff has not alleged – nor could he – that any legal process issued against him or that legal process was misused, dismissal of this count is warranted". Page 21 of the second motion to dismiss.
- "Count 12 fails as Plaintiff does not allege a contract, nor could he, between any Donais Defendant and Plaintiff." Page 22 of the second motion to dismiss.
- "Plaintiff provides no substantive information, other than to label Donais' wife an aider and abettor to his supposed wrongful conduct. This is insufficient to state a cause of action for aiding and abetting defamation. Count 4 should be dismissed." Page 13 of the second motion to dismiss.
- "Plaintiff's failure to identify the third party, a contract with a third party, Donais' knowledge of a contract with a third party and/or the third party's lack of performance under the contract renders his claim insufficient to establish an entitlement to relief upon a theory of tortious interference with advantageous relations. Count 5 should be dismissed." Page 13 of the second motion to dismiss.

309.    The remedy here is to amend the complaint.

310.    Contrary to Donais defendants' assertions on page 4 of the second motion to dismiss, there is no diversity jurisdiction in this case.

311.    It should be noted that the Donais defendants assert in footnote 2 of the second motion to dismiss that "*2 Plaintiff does not seek recovery for statements made in 2017. (Doc. #1-3, ¶282.)*". I thus already stated in the complaint that I am not seeking recovery for statements in 2017. So, it is improper to seek dismissal based on claims that I am not seeking recovery for. The motion to dismiss should be denied on those grounds. Moreover, the Donais defendants cannot assert statute limitations defense for the first time in a second motion to dismiss.

312.    It should be noted that the Donais defendants assert in footnote 4 of the second motion to dismiss that "*4Although not alleged in the FAC, Officer Linstad is a member of the Manchester NH Police Department.*" The defendants cannot supply new facts in a motion to dismiss.

313.    Contrary to the Donais defendants' assertions in their second motion to dismiss in paragraph 10, on page 5, ("*Also, on 1/6/20, Donais submitted a document to the ADO that republished his allegedly false statements to the police from 2019 and his 2017 affidavit. (Doc. #1-3, ¶283.)*".), it was not just by submission of a document but also by orally speaking, and he also elaborated further than what was in the documents.

314.    It should be noted that the Donais defendants' summary of my allegations in the complaint (in paragraphs 9 through 17) of the second motion to dismiss is a twisted and misleading representation of the facts pled in the complaint. Also, there are major key omissions in the above.

315.     Contrary to the Donais defendants' assertions in their second motion to dismiss on page 5 ("

Plaintiff's claims under Massachusetts law are time-barred, and no exception applies to save his

claims….Since Plaintiff had a "modicum of knowledge" at all times regarding his claims, there is no

tolling of the statute of limitations under Massachusetts law. Id), these are false. The claims are not time-

barred. Also, there is tolling due to Covid and the Covid orders of the Supreme Judicial Court. I also had

no modicum of knowledge at all times regarding my claims since the defendants actively concealed and

lied about some of the claims, as explained earlier in this document and thus there is tolling of statute of

limitations. I had no knowledge of certain acts until Fall 2020. Other acts took place in 2021.

316.     Similarly, breach of contract claims carry 6 year statute of limitations. Breach of contract is not a

speech claim and is not subject to privilege or antislapp defenses.

317.     It is presumptuous and conclusory (and false) for defendants to assert that Plaintiff's claims under

Massachusetts law are time-barred, and no exception applies to save his claims. The same goes for

presumptuous and incorrect assertions as it relates to no tolling under NH law.

318.     I vigorously dispute such assertions and conclusory statements by the defendants.

319.     Similarly, it is also false for the Donais defendants to assert on page 5 of the second motion to dismiss

that "*No such exception exists here. Plaintiff filed his complaint on 6/20/22. To the extent that Plaintiff makes claims

related to acts prior to 6/20/19 (to include statements made by Donais to the Manchester Police Department on 6/18/19

and earlier), such claims are time-barred.*" I filed my complaint on 6/18/19. Under both MA and NH law, the 3

years statute of limitations is still preserved. Under MA law, there was also covid tolling.  There is also

equitable tolling due to the discovery rule. The 4 year limitations for section 1981 cover any and all of the

events from 2022 back to 2018. Similarly, the effects and obligations of under the contract continued into

2019 and 2020. The claims are also based on continuing acts into 2019 and 2020 and the repetition of

these acts in 2109 and 2020.

320.     It is also false for the Donais defendants to assert on page 6 of their second motion to dismiss that

"*Plaintiff does not, and cannot, allege any other events that form the basis of these claims.*" Plaintiff does allege other

events that form the basis of the claims. This is also an attempt to dispute facts in the complaint which

cannot be done in a motion to dismiss. It is also an attempt to introduce new facts, which cannot be done in a motion to dismiss. Assertions that "plaintiff cannot allege any other events that form the basis of these claims" should be ignored or stricken as invalid and violative of the rules governing motions to dismiss.

321.    Further, the assertions by the Donais defendants that "Any claims based upon the events of 2017 are time-barred, as Plaintiff filed his complaint on 6/20/22, more than five years later", are false. This is also an attempt to dispute the facts in the complaint. I clearly averred in my complaint that I filed the complaint in state court on 6/18/22. See now also **Exhibit 5** as proof thereof. I also clearly averred in my complaint that 6/18/22 fell on a Saturday. See also attached email with state court clerk under **Exhibit 6**.

322.    I also had 6 years to file claims of breach of contract. I had 4 years to file claims under section 1981 and 93A violations.

323.    Statements made in the course of an ADO proceedings cannot be unnecessarily or unreasonably published. If so, the communication is no longer privileged. See Dolan, 477 N.E.2d at 201; Sullivan, 416 N.E.2d at 530. Donais unnecessarily published the matter to the police.

324.    The assertions by the Donais defendants on page 6 are not applicable.  I am not suing for statements made by a lawyer in a complaint or a pleading in court. I am suing for statements made to the police and to the ADO and to his family members. Furthermore, no privilege applies to statements made to his family members. Therefore, the motion to dismiss this claim on this ground must be denied. Only a conditional privilege applies to statements made to the police. A conditional privilege applies to statements made to the ADO i.e. "as long as made in good faith", and intended to apply to complainants and witnesses, not responding attorneys. There are also exceptions to the privilege as applied to statements to court staff. Statements made when one is not a party to a case are not privileged. Same for statements to a judge when one is not a party to the case. Similarly, in this case, the statements pertaining to allegations that I accused Donais of racism were not pertinent to the proceedings at hand. There was no reason to make that allegation.

325.     It is false for the Donais defendants to assert that "*plain reading of Plaintiff's complaint demonstrates that his claims stem from Donais' role as a litigant or respondent in various civil matters before various courts and before the ADO*". Donais' role in making false statements to the police was not as a respondent to anything. He did that on his own and initiated that on his own. The motion to dismiss must be denied on this basis since the statements made to the police in June 2019 was not as a respondent in a proceeding, was unsolicited, is not absolutely privileged and at most is conditionally privileged, which privilege is subject to malice test and cannot be resolved on a motion to dismiss. The defendants entirely leave out the totally unsolicited acts of Donais making further false statements to the police in the fall of 2020. The statements to the police, which form a good portion of my claims against Donais, are not subject to dismissal on a motion to dismiss. NB: This defense was not raised in the first motion to dismiss, which is telling.

326.     It is also false for the Donais defendants to assert that "*All acts taken or statements made in connection with Donais' status as a litigant or respondent are absolutely privileged*".

327.     It is also false for the Donais defendants to assert, on page 12, that "*Here, Plaintiff has not alleged any statement by either Mary Donais or Donais Law Offices PLLC – either before or after 6/20/19. This count as against each defendant should be dismissed.*" Here, the Donais defendants engage in a sleight of hand. They makes a comment about Mary Donais and Donais Law offices but then they draw a conclusion for Donais himself as well.

328.     The defs contradict themselves. They first argue that 93A is not applicable because the events occurred in NH. Then they argue that that antislapp statute should apply even though the event occurred in NH. They are traying a fast one and insults the intelligence of the court as though the court is not sharp enough to spot that contradiction. I did not say it occurred in NH.

329.     Contrary to the assertions of the defendants, the following is true:

   a)   Comments made to their adult children are not privileged.

   b)   Comments made to police unsolicited are not privileged.

   c)   Comments not related to judicial proceedings are not privileged.

   d)   Comments made to a court staff or judge when one is not a party to a case is not privileged.

e)   Comments made about a settlement is not privileged.

f)   Comments made in bad faith to the ADO are not privileged.

g)   Comments made to Dave Akridge are not privileged.

h)   Comments made to Robert Obrien are not privileged.

i)   Comments made to Law firm in NH are not privileged.

j)   Comments made to destroy my relationship with the police are not privileged.

k)   Comments made to destroy my relationship with attorneys are not privileged.

l)   Comments made to court staff to influence court staff against me are not privileged.

m)   Acts of failing to settle claims are not privileged.

n)   Acts of breaching fiduciary duty are not privileged.

o)   Acts that took place between Donais and myself are not privileged.

330.   My claims in 2017 cannot be dismissed with prejudice because I have prior pending cases that assert claims from 2017. This court would infringe on Massachusetts authority over that case to try to set a precedent on claims that are pending elsewhere. Similarly, the breach of fiduciary duty claims and breach of contract claims stemming from acts in 2017 are still pending in a MA state court.

331.   Similarly, there are similar claims in a NH superior court that are pending. If this court grant dismissal, then the defendants would seek dismissal claiming res judicata.

332.   This court cannot dismiss claims that were not brought in this case. The claims for 2017 acts are preserved and protected from dismissal because they were never brought in this court.

333.   Defamation claims are preserved for adjudication in prior filed cases.

334.   The defendants are trying to trick and confuse the court. They misuse court rulings where they are not intended to be used, in order to swing authority over other courts to try to prejudice the plaintiff. This should not be countenanced by this court.

335.   The statement "nor could he" is attempt to dispute facts that cannot be disputed in a motion to dismiss. The most that is permitted is to state that I did not allege a contract. But to state that is false. I did state that there was a contract.

336.    NB: The events I am suing for flow out of Donais prospective representation of me. This is why there is a prohibition against conflict of interest representations. Donais should never have represented the hotel defendants. Now he confuses the issue by making it sound as though his statements were made in representing a client, when his statements were made with respect to my being a client of Donais. His statements to the police bear this out. He told the police "a former client". He told the police about his representation of me. His statements were not made as a litigant.  There is no statement made by Donais as a litigant for which I am suing him. Therefore the privilege protecting litigants does not apply.

337.    Donais owed a duty to me. There was a fiduciary relationship. I was a prospective client. I was engaged as a prospective client. I was given legal advice. I shared confidential information. A prospective attorney client relationship was formed. This is what a judge found. This is why Donais withdrew as attorney in the case.

338.    Donais prospectively represented me. I stated this several times in the complaint. The defendants are attempting to dispute facts in the complaint.  This is not permitted.

339.    Contrary to the Donais defendants' assertions in their second motion to dismiss on page 22, there was an attorney client relationship and Donais did take effective representation of me at the outset. Donais agreed to take prospective representation in accordance with Rule 1.18 of the NH rules of professional conduct. Donais contacted me. Donais gave me legal advice. Though Donais eventually later stated that he was busy, he said he would love to help. He left open follow-up on the matter and a review of pleadings informally.

340.    The Donais Defendants are trying again to dispute facts. They have not introduced any affidavit and so cannot use that to dispute the allegations in the complaint. This is not permitted at the motion to dismiss stage.

341.    Donais false self-serving affidavit filed 3 months later cannot be the basis to determine whether a client relationship was formed. There was a contract and there was a breach of contract.

- He breached the contract when he divulged to the police confidential information.

- He breached the contract when he lied to me about the reasons he was not able to file appearance.

- He breached the contract when he took on representation of opposing party.

- He breached the contract when he failed to disclose to me the attempt to take on representation of the opposing party.

- He breached the contract in failing to notify me of the intent to take on representation of the opposing party.

- He breached the contract in writing an affidavit disclosing unnecessary detail about the confidential conversation with me and in lying about what was said in that conversation.

342.    Donais acted in a manner inconsistent with the parties expectations and I was harmed by that breach. I expected Donais to not represent the opposing party. I expected Donais to notify me of his intent to represent the opposing party. I expected Donais to not divulge unnecessary details about the conversation to anyone.

343.    The Donais defendants are attempting to dispute facts in the complaint. This is not permitted. Defs They cannot assert there was never an agreed upon purpose.

344.    Contrary to the Donais defendants' assertions in their second motion to dismiss on page 22, I alleged that I was a client of Donais. The Donais defendants admit that in their second motion to dismiss in footnote 8. The Donais defendants also dispute that I allege that I was a client but they cannot dispute facts in the complaint. To be clear, I allege I was a client of Donais.  I allege that a contract was formed. I allege Donais gave me legal advice. I allege Donais invited me to share confidential information. I allege I shared confidential information. All of this was done in the context of a conversation where I expected attorney client relationship was formed and where I expected attorney client privilege to be attached thereto.

345.    Again, contrary to the assertions of the defendants, there was a contract .The Donais Defendants cannot dispute facts in the complaint at this stage.

346.    Contrary to the Donais defendants' assertions in their second motion to dismiss on page 23, the contract requirements of 1981 are not only satisfied in the making of a contract but also in the enforcement of a contract.  I need not only allege that section 1981 was violated in the formation of the attorney client relationship, but I can also allege that subsequent acts violated the contract requirements of section 1981, and I did so in the complaint. Moreover, the acts of breaching the contract by divulging confidential information to the police was motivated by racism and thus the conversations with the police in 2019 and 2020, qualify for a claim under section 1981.

347.    The court must hold a hearing because the defendants have invoked the antislapp defense and the antislapp statute mandates a hearing before deciding any antislapp defense or motion. According to language of the statute: "All discovery proceedings shall be stayed upon the filing of the special motion under this section; provided, however, that the court, on motion **and after a hearing** and for good cause shown, may order that specified discovery be conducted."

348.    The anti-SLAPP statute does not apply to litigation communications which constitute criminal extortion as a matter of law.

349.    A special motion to dismiss will ordinarily not be sustained as to a professional negligence or breach of fiduciary duty claim, since the gravamen of the lawsuit is not the attorney's petitioning or litigation activity per se, but rather the attorney's decisions, actions or omissions which resulted in the petitioning or litigation activity.

350.    In the alternative, the plaintiff ask the court to allow the plaintiff to sever the defendants so as to make the complaint against the Donais defendants needing less space. But the donais defendants will oppose this showing there disingenuous damned if I do damned if I don't unfair self-serving biased win at costs fairness be damned mentality

## XIV. REMAND

351.    The Donais defendants' motion to dismiss should be denied because the case should be remanded to state court.

**NOTE ABOUT INDIVIDUAL DEFENDANTS COORDINATING/CONSPIRING TOGETHER**

352.     The defendants have largely worked together in conjunction or in cahoots against plaintiff in virtually all of most of the claims alleged. Just as how it is evident that the defendants are working together and defending each other and coordinating with each other in its defense against this action, howbeit in a surreptitious manner where they think it is not obvious that they are working very closely together.

353.     Therefore, because of the incestuous relationship and behind the scenes coordination that defendants have engaged, the claims should be seen as involving a joint effort between the defendants. I have pled these connections, coordination, and conspiracies in my complaints and elsewhere. However, more detailed treatment of this will be forthcoming, once I am allowed to amend i.e. the details will be further pled with specificity accordingly (space does not permit here).

## XV. CONCLUSION

354.     The bottom line is that there are too many factual disputes in this case for the case to be resolved on a motion to dismiss.

355.     The Donais defendants engaged in numerous instances of mischaracterizing the complaint and the allegations made therein

356.     The Donais defendants also include information that is outside of the pleadings. For example, they deny wrongdoing and they assert that Officer Linstad is a police officer in NH.

357.     The defendants motion call upon the judge to be advocate for the defendants by essentially asking the judge to figure out their vague insinuations. But the judge cannot be an advocate.

358.     Evidence is needed to resolve this motion to dismiss. This also requires an evidentiary hearing.

359.     Applicability of law must also be resolved first. The plaintiff finds it difficult to oppose the motion to dismiss when the defendants have tried to have their cake and eat it too by arguing both MA law applies to the case (for application of antislapp) and that NH law applies to the case at the same time. The antislapp motion should be stricken because both law cannot apply at the same time as the law of this case.

360.     For all of the above reasons, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

361.    If, however, for some reason, the Court concludes that the current allegations are not sufficient, then Plaintiff respectfully requests that rather than granting the Motion, the Court give him leave to amend the complaint. Under M.R.C.P. Rule 15, leave to amend is to be "freely given," and at this very early stage in the proceedings (not all of the Defendants have even been served yet), there is absolutely no prejudice to any defendant from such an Order.

362.    Customarily, it is allowable to grant one or more attempts to refile the complaint in order to demonstrate that the pleading problem is only an issue of drafting, not complete inability to allege sufficient facts.

363.    If the court is still not inclined to grant any of the above requests, Plaintiff would request the court grant a hearing on this matter before rendering its decision. Plaintiff hereby still preserve all rights to a trial by jury.

364.    It should be noted in closing, once again, that the Donais defendants tacitly conceded that the plaintiff had factually valid claims and that they did not contest the facial plausibility of the plaintiff allegations in their first motion to dismiss.

365.    I hereby incorporate the facts of the amended complaint into this document and I hereby plead that the statements of fact made in the amended complaint (as well as herein) are true and correct to the best of my knowledge are hereby verified under oath.

366.    For the foregoing reasons, Defendants' Motion to Dismiss should be denied

367.    Dismissal of the claims against the Donais Defendants is not warranted. The complained of wrongdoing is not absolutely privileged. Plaintiff's claims asserted in this case are not time barred including those arose prior to 6/20/19. The claims relating to breach of contract, based upon the 1/9/17 telephone conversation and subsequent conduct of Donais, are not time-barred.

368.    I ask the court to carefully read my complaint as well as the initial opposition to the Donais defendant's motion to dismiss filed in this court and the oppositions to the motions to dismiss filed in MA federal court attached thereto as **<u>Exhibits 1, 2 and 3</u>**, in the initial opposition to the motion to dismiss.

369.    I also reserve the right to further state my defenses or rebuttals against dismissal in a sur-reply to any reply by the defendants and further in any opposition to the Hilliard defendants' motion to dismiss when that is filed by 12/4/23.

370.    It should be noted in closing, that the defendants have tacitly conceded that the plaintiff has stated factually valid claims and did not contest the facial plausibility of the plaintiff's allegations in MA federal court. Once I pointed this out to the MA federal court, the defendants have suggested a timid catchall blanket denial of wrongdoing without denying any of the factual allegations. To the extent the defendants have tried to dispute the allegations, this is not allowed in a motion to dismiss.

371.    I hereby incorporate the facts of the amended complaint into this document and I hereby plead that the statements of knowledge made in the amended complaint (as well as herein) are true and correct to the best of my knowledge are hereby verified under oath.

372.    NB: Please grant a pro se liberal construction to this pleading.

373.    Accordingly, the plaintiff respectfully requests that the Court deny the defendants' motion to dismiss in their entirety or grant reasonable discovery in interests of justice.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 781-492-5675
Email: quickquantum@aol.com

November 13, 2023

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 781-492-5675