UNITED STATES DISTRICT COURT - DISTRICT OF NEW HAMPSHIRE

ANDRE BISASOR, Plaintiff,

v.

CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC; UPTON & HATFIELD, LLP; and MARY K. DONAIS, Defendants.

Case No.1:23-cv-00374-JL

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LIMITED JURISDICTIONAL DISCOVERY**
**PERTAINING TO THE PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

1. I the plaintiff hereby respectfully submit this memorandum in support of my motion for limited jurisdictional discovery pertaining to my motion to remand this case to state court, as follows.

2. NB: In the below, I have tried my best, without legal training, to articulate reasons why the court should allow limited jurisdictional discovery regarding remand.

## I.  INTRODUCTION

3. I the plaintiff hereby request discovery related to remand to establish the citizenship of all of the partners of Upton & Hatfield and to establish if the defendants received the original complaint certified mailed on April 4, 2023 and the amended complaint mailed certified by the Bristol sheriff on May 8, 2023.

4. These are critically important issues that must be resolved in order to determine whether this court has jurisdiction over this case.

5. If this court lacks subject matter jurisdiction, however, it necessarily lacks the authority to retain this case or refer it to another federal court. *See Muratore v. Darr,* 375 F.3d 140, 147-48 (1st Cir.2004). This court must therefore decide for itself whether it has subject matter jurisdiction.

6. The plaintiff and the defendants do not agree on the factual allegations relevant to this issue.

7. Therefore, in order to decide this issue, limited jurisdictional discovery is required and possibly even an evidentiary hearing is required (and I hereby requests such a hearing).

8. Moreover, the party seeking removal bears the burden of demonstrating that removal was proper. See Steele v. Ocwen Federal Bank (In re Steele), 258 B.R. 319, 321 (D.N.H. 2001).

9.  Courts should not carry the defendant's burden of proving jurisdiction for them, or worse, shifting it onto the plaintiff. There is a need for balance and fairness in this process where if a party wants to assert diversity, they need to prove it.

10. Doing so impermissibly lightens the defendants' burden of establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. The proper course is remand.

11. NB: It should be noted that the Donais defendants do not challenge the need for jurisdictional discovery on the Hilliard defendants, which is telling and can be construed as a tacit acknowledgement by the Donais defendants that jurisdictional discovery is proper as it pertains to the Hilliard defendants. See **Exhibit 1** for email chain between plaintiff and defendants. In this email exchange, when asked about concurring with this motion, the Donais defendants stated, in a carefully worded manner, that they do not think jurisdictional discovery is needed from the Donais defendants. They did not, however, take a position on whether it is needed from the Hilliard defendants (presumably this is in light of the fact that the Hilliard defendants are the ones who effected removal and given the dispute over when the service documents were received by Hilliard and given my challenge to the diversity of the partners/member of the Upton & Hatfield law firm). See again **Exhibit 1.** Either way, it is evident that some limited jurisdictional discovery is reasonable and should not be denied.

## II. LEGAL STANDARD

12. A district court generally retains "broad discretion in determining whether to grant jurisdictional discovery." United States v. Swiss Am. Bank, Ltd., 274 *111F.3d 610, 626 (1st Cir.2001).

13. The threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low. See Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255-256 (1st Cir.1966) (per curiam) (explaining that a party should be allowed to conduct jurisdictional discovery when its position is not frivolous); see generally Swiss Am. Bank, 274 F.3d at 637 ("As a general matter, discovery ... should be freely permitted .... " (internal quotation marks omitted) (quoting Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C.Cir.1991))).

14. The court has also discretion to determine whether to allow jurisdictional discovery when the court's subject matter jurisdiction is in dispute. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729 (11th Cir. 1982) ("[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits").

15. Complete diversity requires that "the citizenship of every plaintiff must be diverse from the citizenship of every defendant." Legg v. Wyeth, 428 F.3d 1317, 1320 n. 2 (11th Cir. 2005).

16. Jurisdictional discovery is necessary to help the court confirm or disconfirm that the jurisdictional minimum exists in a diversity case.  See Boustead v. Barancid, 151 F.R.D. 102, 105 (E.D. Wis. 1993) (permitting the plaintiffs to conduct limited discovery "in the form of interrogatories and requests for production of documents on the jurisdictional issue").

17. Jurisdictional discovery concerning subject matter jurisdiction can legitimately involve whether a corporate or other juridical person is a "citizen" of a particular state for purposes of diversity.  See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 574-78 (2004) (finding that a change in the citizenship of the partnership after the time of filing could not cure the jurisdictional defect); Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990) ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.")

18. Other jurisdictional discovery requests relate to whether a claim falls under a particular federal statute.

19. Discovery might be requested to ascertain whether the defendant engaged in "'malicious, willful or outrageous' conduct" that would support an award of treble damages, since those damages could be used to help make up the jurisdictional amount. See, e.g., Anthony v. Sec. Pac. Fin. Serv., Inc., 75 F.3d 311, 317 (7th Cir. 1996) (finding that "[t]he district court correctly concluded that by failing to be able to allege 'malicious, willful, or outrageous' conduct" after jurisdictional discovery, "plaintiffs disqualified themselves from punitive damages").

20. Courts often permit limited jurisdictional discovery regarding the amount in dispute. See, e.g., Cram v. Elec. Data Sys. Corp., No. 07CV1842, 2008 WL 115438, at *2 (S.D. Cal. Jan. 8,2008) ("Plaintiffs immediately filed a Motion to Remand. .. , arguing that the amount in controversy requirement of CAFA could not be satisfied .... [T]he Court allowed expedited discovery to go forward on the single issue of amount in controversy. .. .).

21. The denial of jurisdictional discovery puts the burden of jurisdictional fact-finding on the plaintiff rather than allowing the plaintiff to shift the effort and cost to the defendant through discovery requests.

22. Similarly, trial judges may incorrectly use the lack of information about jurisdictional facts as a means of illegitimately screening otherwise legitimate cases. See Bell Atd. Corp. v. Twombly, 550 U.S. 544, 560 n.6 (2007) (stating that the "hope of judicial supervision is slim" due to the information constraints faced by judges).

### III. SUMMARY OF ARGUMENTS

23. I request, in the interests of judicial equity, that the court permits an opportunity to take limited jurisdictional discovery to properly defend against the defendants' oppositions to my motion to remand.

24. I therefore request that discovery be allowed, without which I believe I would be deprived of proper due process, and of my right to a fair opportunity for a fair trial/proceeding.

25. I am only seeking very limited discovery. The court can narrowly tailor discovery to the proper limits.

26. I simply ask for the minimum necessary discovery to defend my case against the defendants' oppositions to remand and against any assertion and use of disputed facts outside of the complaint in favor of opposing remand.

27. I am thus seeking limited discovery to establish any necessary facts that go to the jurisdictional arguments on this issue of remand.

28. Limited discovery is appropriate in this case, in order to gather necessary information to support my motion to remand and to ensure a fair and just resolution of this issue.

29. Limited discovery is reasonable because there are fact issues that need to be addressed, revealed, discovered, and/or established regarding remand. Fact inquiry cannot be fairly or properly done without any limited discovery.

30. Limited discovery is also reasonable because defendants are contradicting facts in my motion to remand or complaint, or are seeking to dispute facts asserted or implied in my motion to remand or complaint.

## IV. LIMITED DISCOVERY IS PROPER

31. Limited discovery is proper. Limited discovery is relevant.

32. The following are points showing that limited discovery is appropriate in this case at this stage.

### A.  Importance of Discovery

33. Discovery is an essential tool in the pursuit of justice, particularly where access to information is paramount and a crucial issue.

34. Limited discovery is necessary to obtain the relevant documents, records, or information held by the defendants, which are crucial for the plaintiff to effectively present his case and defend his rights.

35. Having, in this document and elsewhere, outlined issues of dispute or factual problems connected with the remand issues, I have a right to some limited discovery.

### B.  Materiality of Discovery

36. The requested limited discovery is directly related to the central issues of the motion to remand.

37. It is necessary to uncover potential evidence that may support the motion to remand.

### C.  Proportionality

38. The requested limited discovery is narrowly tailored to the specific information necessary for the motion to remand.  It would not be overly burdensome or disproportionate to the nature of this dispute. Allowing limited discovery will not unduly delay the proceedings or prejudice the defendants, as follows.

   a.  I would be minimally satisfied with being allowed to propound 10 questions via interrogatories and 10 documents for document production upon the defendants, and to take a one hour deposition of the Hilliard defendants.

b. The court can order discovery limited to 10 questions via interrogatories and 10 documents for document production, to be completed within 30 to 60 days from the date of ruling on this motion. Similarly, a one-hour deposition with the Hilliard defendants can be completed within 30 to 60 days from the date of ruling on this motion, as well[1].

c. This would not unduly delay these proceedings nor create an unreasonable burden on the defendants at this juncture.

39. I would be minimally satisfied with the above in terms of limited discovery at this juncture.

40. I just needs a minimal opportunity to conduct very limited discovery.

## V. LIMITED DISCOVERY WOULD REVEAL IMPORTANT FACTS

41. Limited discovery would reveal important facts. This includes important facts pertaining to jurisdiction.

42. The law authorizes discovery where there is doubt about the underlying facts regarding jurisdiction and factual matters germane to a motion to dismiss. See Udeen v. Subaru of America, Inc., No. 18-17334(RBK/JS) (D.N.J. Mar. 12, 2019).

43. Jurisdiction, as raised in defendants' argument, is not only a legal question in this case but it's also a fact question.

44. There are certain facts that are germane to whether this court has jurisdiction. For example:

a. Although the Donais defendants stated that the place of business for Donais Law Offices is New Hampshire, it is not clear exactly where Donais Law Offices operates as a place of business.

b. In a document to the Attorney Discipline Office (ADO), Craig Donais avers that he has a place of business for his law practice in Massachusetts.

c. If Donais Law Offices has a place of business in Massachusetts, then its citizenship is in question.

d. This is contravening evidence that Craig Donais' place of business or operating activities are located in Massachusetts. See **Exhibit 2**.

---

[1] This timeline should take into account the upcoming holiday period and the upcoming deadline for the amended complaint in January 2023.

e.  Discovery is needed to determine exactly the corporate setup for his law office operations. NB: Craig Donais evidently has had shadowy setups for businesses that he owns in Massachusetts with someone else placed in the front of the business, obscuring his ownership and involvement in said Massachusetts business [discovery is needed on this]. See **Exhibit 3** referencing ownership of a Massachusetts business named Bon Courage LLC, but which business registration of said business appears to obscure Craig Donais' involvement as owner of the business.

f.  This further goes to whether Craig Donais's law business is hiding or obscuring is operations in Massachusetts. Discovery is needed to clarify the location and operations of Donais Law Offices.

g.  Thus, discovery is also needed to confirm the members, managers, investors, owners and/or employees of the law business of Donais Law Offices. I simply should not be required to take the defendants' word for it; neither should the court, given the dubious nature of the representations made by the Donais defendants regarding their operating activities.

h.  In addition to the above, there is further information demonstrating the need for further jurisdictional discovery in this matter as it relates to the Donais defendants.

45. Further information is needed to flesh out these statements of the defendants. This contradiction needs to be addressed and it can only be addressed via discovery. In order to resolve these factual issues, some limited discovery is needed.

46. Whenever a plaintiff demonstrates that its jurisdictional allegations can be supplemented through discovery, the law is well-settled that such a plaintiff has the right to conduct jurisdictional discovery.

47. An analogy can be seen with respect to personal jurisdiction issues raised on motions to dismiss.

48. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Crane v. Carr, 814 F.2d

758, 760 (D.C. Cir. 1987). See also Edmond, 949 F.2d at 425 (holding that, given the plaintiff's specific allegations, "it [w]as an abuse of discretion to deny jurisdictional discovery . . . ."); Crane, 814 F.2d at 760 (vacating, in part, the lower court's decision, because the plaintiff's "case was dismissed with no opportunity for discovery on the issue of personal jurisdiction").

49. In this case, there is a jurisdictional issue raised by me regarding removal and remand. Like in personal jurisdiction challenges, discovery is proper when it involves a jurisdictional challenge.

50. Jurisdictional discovery is warranted because the record currently before the court is plainly inadequate.

51. As described above, through jurisdictional discovery, I can supplement the existing factual basis supporting the remand of this case.

52. These are critical issues to resolve before the court can look at the larger questions of this case.

53. Consequently, the issues in this case cannot be determined without factual inquiry.

54. Thus, some discovery is required to determine or reveal those facts.

55. NB:  The matter should not be concluded on conflicting affidavits. See Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885 (1992)(1st Cir.).

## VI. PLAINTIFF NEEDS LIMITED DISCOVERY TO DEFEND MOTION TO REMAND

56. The above are some of the categories of the limited discovery information that I need the defendants to provide.

57. If I am not allowed to obtain any discovery at all, I will be severely disadvantaged.

58. As shown above, the requested discovery is targeted towards getting basic information relevant to the motion to remand.

## VII. LIMITED DISCOVERY WOULD BE IN THE INTEREST OF JUSTICE

59. Allowance of limited discovery is in the interest of justice, as it will ensure a fair and thorough examination of the relevant facts, and contribute to the just resolution of this issue of remand.

## VIII. THE COURT MUST ASSUME MY FACTS ARE TRUE BUT DEFENDANTS ARE CONTRADICTING MY FACTS

60. The court must assume my facts are true. But yet the defendants are trying to contradict certain facts in my motion to remand and/or complaint. The defendants cannot dispute or contradicts any of the facts that are contained in the above. The court cannot use the defendants' facts (or version of facts) as true or as facts, without some limited discovery. The court cannot take defendants' facts asserted, cited, implied, or alluded to, as true, over against or to contradict my stated facts or alluded to facts.

61. Here, for example, the defendants assert new facts in their oppositions to remand, without any affidavit or document to back it up. It seems that the defendants would like the plaintiff and the court to just take their word for it, without any evidence or proof of factual assertions. This is not right. Moreover, it violates federal court rules that requires fact statements to be supported by affidavit ("The court will not hear any motion grounded upon facts, unless such facts are verified by affidavit…").

62. Fair is fair. The defendants cannot have it both ways.

63. The defendants should not be allowed to effectively "rig the game" by asserting new facts or disputing my asserted or implied facts while inoculating themselves from having to test or verify or prove their assertion of new facts or their disputation of my facts. The defendants should not be allowed to tie my hands behind my back while they effectively get to "punch my motion in the face" by preventing me from, defending my motion from such punches.

64. Similarly, the facts supplied by the defendants are not to be considered by the court at this stage without limited discovery.

65. This supports the need for limited discovery in this case.

## IX. SPECIFIC BASIS FOR REQUEST FOR LIMITED JURISDICTIONAL DISCOVERY
### A. Amount in Controversy Requirement Not Met

66. The defendants have not met their burden to establish that the amount in controversy requirement is met. See 28 U.S.C. § 1332(a)(3) (providing original subject matter jurisdiction where the matter in controversy exceeds the sum of $75,000 and the matter is between citizens of different states).

67. The removing defendant, as the party invoking the federal court's jurisdiction, bears the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Id. (citing De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)).

68. If it is facially apparent from the complaint that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction. Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938)).

69. It was not facially apparent from the original petition that the amount in controversy requirement would be met in this case.

70. To satisfy their burden as to the amount in controversy, the defendants included in the notice of removal other facts that they gleaned from other papers outside of this case.

71. But I did not state and do not concede that my claims exceed $75,000.

72. I contend that the complaint and the notice of removal contains facts insufficient to establish that the amount in controversy was satisfied at the time of removal, which is the only relevant timeframe. See Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)(explaining that the jurisdictional facts that support removal must be judged at the time of the removal not afterward).

73. The overarching principle operating here is that all doubts regarding removal must be resolved against federal jurisdiction. Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000).

74. NB: The defendants have completely failed to meet its substantial burden of proving that removal is proper. I have not alleged a specific amount in controversy because I do not have access to all of the information necessary to make such a calculation. The defendants have failed to present evidence of the amount in controversy. Instead, the defendants have offered only an over-inclusive, irrelevant figure that is clearly not the amount that has been placed in controversy by the complaint. Because the defendants have failed to meet their burden, all doubts must be resolved against removal jurisdiction, and this case should be remanded to state court. Conclusory allegations as to the amount in controversy are

insufficient. The amount in controversy is determined based on the allegations in the complaint. Because the complaint does not allege a specific amount in damages, the defendants bear the burden of proving that it is more likely than not that the amount in controversy exceeds $75,000.  In this instance, the defendant's evidence proffered in the notice of removal is insufficient to support removal jurisdiction.

75. Courts have consistently rejected efforts by defendants to attempt to justify removal jurisdiction with over-inclusive figures that do not reflect the damages actually stated in or sought by the complaint.

76. The defendants cannot rely upon general damage claims in the complaint and their conclusory allegations as to the value of those claims, but must provide specific factual details establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. A removing defendant's simple say-so will not suffice to demonstrate that a case meets the jurisdictional threshold, see Gaus, 980 F.2d at 567.

77. Where the district court is making the "facially apparent" determination, the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy is likely to exceed $75,000. In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal. Allen, 63 F.3d at 1336.  This shows that discovery is proper when the facially apparent test is not met. See Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220 (D.N.H. 2004)

78. A court need look to the notice of removal and any other materials submitted by the removing defendant, then, **only** if the jurisdictional amount is not facially apparent from the complaint. See Felton v. Greyhound Lines, Inc., 324 F.3d 771, 773-74 (5th Cir. 2003).

79. In this instance, it is facially apparent from the complaint that the damages are not likely to exceed $75,000. There is no need to consult other materials submitted by the removing defendant in the notice of removal.

80. NB: A court determines the amount in controversy in a particular lawsuit based  on the circumstances existing at the time the complaint was filed. Spielman, 251 F.3d at 10; Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). Kingman v. Sears, Roebuck Co., 562 F. Supp. 1182,

1185 (D.Me. 1981); see also Danca, 185 F.3d at 4 ("Jurisdiction is normally ascertained from the face of the state court complaint that triggered the removal.")". See also Heller v. Allied Textile Companies Limited, Docket no. 03-CV-81-B-S, (D. Me. Jul. 28, 2003).

### B. Complete Diversity Is In Dispute

81. Diversity jurisdiction exists only where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The citizenships of all defendants must be different from the citizenships of all plaintiffs. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990).

82. On information and belief, Upton & Hatfield has partners/members who reside or own property in Massachusetts or did so at the time of the complaint. Therefore, on information and belief, some partners/members of the firm may be citizens of Massachusetts, and therefore there is or might not be complete diversity. According to information found on the internet:

   a. Michael S. McGrath is a partner of the firm who regularly practices in "All Massachusetts State Courts" and "Massachusetts Federal District Court" and is currently sits on the Massachusetts Board of Bar Overseers (from 1997 – Present). He attended the evening division of New England School of Law while working as a paralegal at a general civil litigation firm and a trusts and estates firm in the Greater Boston area. During law school, Michael also served as an editor on Law Review, was a judicial honors intern with the Massachusetts Superior Clerk, and graduated cum laude in 2012. He is admitted to practice in Massachusetts and New Hampshire.

   b. Jeanne Saffan, a partner, is admitted to practice in Massachusetts, New Hampshire, and New York and graduated Cum Laude from Suffolk University Law School in 2003.

   c. Brooke L. Shilo, after college, worked for several years at the Harvard Stem Cell Institute and Massachusetts General Hospital.

   d. Timothy J. Sullivan, a partner, began his legal career at a law firm in Chelmsford, Massachusetts where he represented individuals, municipalities, and businesses. Tim is admitted to practice in Massachusetts and New Hampshire in both state and federal courts.

   e. Madeline K. Osbon, prior to joining Upton & Hatfield, was a legal extern at an employment and business litigation firm in Cambridge, Massachusetts, and also worked as an extern with the General Counsel of the Worcester Red Sox.

   f. There are several more lawyers who have ties, affiliations to Massachusetts and/or actively practice in Massachusetts. NB: By the way this goes to the personal jurisdiction issue but that will be dealt with in a separate opposition filing later this week.

   g. This shows that several of the lawyers at Upton & Hatfield have significant ties to Massachusetts, actively practice law in Massachusetts and/or lived in Massachusetts. It appears from these facts that Upton & Hatfield may have partners/lawyers who are citizens of Massachusetts. Neither

the court nor I should be required to take their word for it especially since the removing defendant has already submitted false or perjurious statements to the court.

83. NB: Limited liability companies and partnerships are considered citizens of the states in which their members or partners are citizens. In larger LLCs or partnerships, this can be a large number of states, which often precludes removal on the basis of diversity jurisdiction

84. Discovery is needed to further attest to whether any of these lawyers of Upton & Hatfield live in or own property or businesses in Massachusetts. It is also relevant whether any of these partners reside both in MA and NH or maintains dual residences.

85. Jurisdictional discovery is appropriate prior to a determination on a motion for remand. (See Abrego Abrego v. Dow Chem. Co. (9th Cir. 2006) 443 F.3d 676, 69). To the extent it may be helpful in proving that complete diversity does not exist, the court should allow an opportunity to take discovery.

86. I ask the court to defer decision on the motion to remand, as necessary, to allow discovery on the issue of the citizenship of the partners of the Upton & Hatfield firm.

87. Therefore, it has not been established that there is complete diversity in this case and there are real indications that there might not be.

88. Although the Hilliard defendants have offered statements regarding the citizenship of the partners of Upton & Hatfield, I have contested the sufficiency of such statements and therefore jurisdiction is in dispute. See Rolling Greens MHP, LP v. Comcast SCH Holdings, LLC, 374 F. 3d 1020, 1023 (11th Cir. 2004). (Remanding the case to district court for the limited purpose of determining the citizenship of the parties).

89. Further, evidence of the dispute as to diversity of citizenship exists due to my prior allegations against complete diversity between the parties.

90. The court should conclude that I am entitled to jurisdictional discovery, including on the issue of diversity of citizenship between the Plaintiff and Defendants.

91. This motion should be granted to allow me to conduct discovery limited to jurisdictional issues regarding the citizenship of the parties.

92. The court should defer ruling on the Motions for Remand until the end of the limited discovery period.

## C. Timeliness Is In Dispute

93. I have contended that removal is untimely.

94. The procedures governing removal in this case are set out in 28 U.S.C. § 1446 (West).   Under §

1446(b)(1), a case must be removed within thirty days of the date the defendant receives a copy of the

initial pleading, if that initial pleading is sufficient to provide the defendant with an "unambiguous" basis

for removal. See Farmland Nat'l Beef Packing Co. v. Stone Container Corp., 98 F. App'x 752, 755 (10th

Cir. 2004) (unpublished) (citing Akin v. Ashland Chem. Co., 156 F.3d 1030, 1035-36) (10th Cir. 1998)).

95. The true and correct date of the service of the original complaint on the defendants is 4/14/23. The

true and correct date of the receipt of the original complaint on the defendants is 4/17/23.

96. However, Hilliard notes in his affidavit that he received the summons and the amended complaint on

5/11/23 by regular mail only. See screenshot in re-filed motion to remand.

97. Upton and Hatfield has argued that it obtained service because Russell Hilliard was served and Russell

Hilliard is a partner of the firm. See page 2 of Defendants Russell F. Hilliard and Upton & Hatfield, LLP

Opposition to Plaintiff's Notice of Intent to Move to Remand This Case to State Court (Document #36

in this court). See also screenshot of Document #36 in this court in the refiled motion to remand.

98. Here, Upton & Hatfield states that "Upton & Hatfield has never been served with the Amended

Complaint" and that it used "the May 11, 2023 date that Mr. Hilliard, a partner in the firm, received the

Amended Complaint as the date that Upton & Hatfield received notice of the Amended Complaint."

99. And thus based on this construct, Upton & Hatfield concludes that removal was timely.

100.    Therefore by their own admission and standard, Upton & Hatfield has averred a principle by which

it can arrive at the date it received notice i.e., through Russell Hilliard as a partner in the firm, which is a

limited liability partnership.

101.    But based on this, Upton & Hatfield first received notice of the original complaint, when on April

17, 2023, Russell Hilliard received the summons and original complaint, who was first served the

summons and original complaint on April 17, 2023. See screenshot of Bristol county sheriff's return of service with certified mail tracking number showing mailing to Russell Hilliard to the home address, as shown in the re-filed motion to remand. See also Exhibit 2 and Exhibit 7, and also the screenshot of USPS tracking for sheriff's certified mailing, as shown in the re-filed motion to remand. See also proof that the original complaint was received by Russell Hilliard on April 17, 2023 as shown in the re-filed motion to remand. By comparing the tracking number of 9171999991703051265076 on the sheriff's return of service with certified mailing addressed to Russell Hilliard's home address in Portsmouth NH, to the USPS tracking receipt with the same tracking number, it shows the mail was delivered/received on April 17, 2023 at 3.45pm at Hilliard's home in Portsmouth NH.

102.     This also shows that Russell Hilliard has lied to this court, and in fact did so under oath, meaning that this is perjury. NB: This is a critical matter and is grounds for discovery to be taken. Here, you have a Sheriff who has provided testimony, via affidavit, that she placed the summons and original complaint into the mail via certified mail (with tracking) and first class mail to Russell Hilliard at his address in Portsmouth NH. Here, you also have the US post office providing a tracking receipt showing that the certified mail with tracking that was mailed by the Sheriff was received by Russell Hilliard on April 17, 2023. The affidavit of Russell Hilliard cannot defeat the affidavit of Sheriff and the receipt provided by the US post office, both of whom are disinterested parties not involved in this litigation and are duly recognized government authorities on matters related to service and mailing of service of process documents. The affidavit of the Sheriff and the tracking receipt of the US post office provides impeachment of Russell Hilliard's affidavit and of the statements made by his counsel in their pleadings to this court.  Russell Hilliard must be placed under oath in this court in an evidentiary hearing and/or via limited discovery, and made to answer this issue.

103.     Therefore, Upton & Hatfield cannot rely on the later May 8th service date (or the May 11th receive date) of the amended complaint for counting time for removal.

104.    NB: It should also be noted that the sheriff also averred in her return of service affidavit to the court that the sheriff's office also mailed the summons and original complaint to Russell Hilliard to his home address in Portsmouth NH via first class mail. See screenshot and Exhibit 2 in re-filed motion to remand The address listed on this screenshot, 579 Sagamore Avenue, Unit 9, Portsmouth NH is Russell's home address. See proof by his mortgage deed filed with the registry of deeds via screenshot and Exhibit 8 in the re-filed motion to remand.

105.    Therefore, Russell Hilliard was served the original complaint and summons on April 14, 2023 and thus he also received notice of the original complaint by April 17, 2023 (if the 3 day rule for mailing is applied).  NB: I also spoke to the Sheriff and she averred that no first class mail that she mailed on April 14, 2023 (or May 8, 2023) has been returned to her, from either Donais or Hilliard. Therefore, every first class mail that was placed in the US postal mail service on April 14, 2023 and on May 8, 2023 was delivered and received by the addressees, including Russell Hilliard. See also subsequent email from the sheriff confirming this again.



106.    See also **Exhibit 4**. This shows further contravening evidence from the Bristol sheriff of MA.

107.    Either way, mailing by US postal mail by a sheriff is valid on its face as to the date of service and date of mailing.

108.    This further shows that Russell Hilliard has lied to this court under oath.

109.    This leads to another key point. The sheriff also averred in her return of service affidavit to the court that the sheriff's office also mailed the summons and original complaint to Russell Hilliard to his work address at Upton & Hatfield in Portsmouth NH, via first class mail. See screenshot and Exhibit 3 in the re-filed motion to remand.

110.    Also, the 159 Middle Street address is the Upton & Hatfield's only physical office in NH. The other two addresses in Concord NH and Petersborough NH are P.O. Box addresses. This also means that the first class mail sent to Russell Hilliard at this work address was received by Russell Hilliard and Upton & Hatfield. See screenshot of Upton & Hatfield's website showing their address, and see Exhibit 9 in the re-filed motion to remand.

111.    Thus, there is simply no way around this fact. Russell Hilliard and Upton & Hatfield were served the original complaint and summons by the sheriff on April 14, 2023 and Russell Hilliard and Upton & Hatfield received notice of the original complaint and summons on April 17, 2023. This is confirmed by sheriff's affidavit and proof of mailing of certified mail and confirmed by tracking as well as by proof of mailing by first class mail to Russell Hilliard at his home address and to his work address at Upton & Hatfield.

112.    Now that the service date of the original complaint has been established as April 14, 2023 and the receive date of the original complaint has been established as April 17, 2023, the only thing that remains is whether the original complaint served on April 14, 2023 and received on April 17, 2023 by Russell Hilliard and Upton & Hatfield had indications of removability to federal court.  It does.

113.    NB: In determining whether removal is timely, "all factual and legal issues must be resolved in favor of the plaintiff." Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013) (quoting Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998)).

114. Thus, where a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, the court's jurisprudence favors permitting the litigants the opportunity to flesh out the record. See id.

115. A return of service generally serves as prima facie evidence that service was validly performed. See, e.g., O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir.1993); Curley v. Radow, No. 00-10956-GAO, 2007 WL 2060015, at *4-5 (D.Mass. July 16, 2007); Johnson v. Witkowski, 30 Mass.App.Ct. 697, 573 N.E.2d 513, 524 (1991).

116. This return of service qualifies as such evidence. See also Maniscaclo v. Kenworthy, No. 03-P-626, 815 N.E.2d 656 (table), 2004 WL 2185422, at *3 (Mass.App.Ct. Sept.28, 2004) (per curiam) ("Where, as here, [the] affidavit is uncontradicted other than by the deputy's return, the affidavit controls."). Gottlieb v. Sandia Am. Corp., 452 F.2d 510, 514 n. 5 (3rd Cir.1971) (stating that "although a marshal's return is not conclusive on the question of service on an agent, it will stand in the absence of proof to the contrary").

117. The defendants have not addressed nor rebutted the returns of service executed by the sheriff.

118. Moreover, the real issue at hand in this motion is not whether I have proved that remand should occur — but merely whether there is sufficient grounds to warrant limited discovery and/or an evidentiary hearing.

119. I have mustered such evidence such an email from sheriff (**Exhibit 4**) and post office email confirming delivery of mail.

120. Hilliard specifically denied receiving any service of mailing from the sheriff.  This warrants limited discovery. This issue can stay unresolved and needs to be resolved for this motion to remand.

121. Moreover, I am seeking to obtain "cop[ies] of all documents concerning all summonses received by Upton & Hilliard from April 2023 through June 2023," to ascertain whether the defendants routinely acquiesced to service of process via the method attempted in this case.

122.    Limited discovery and/or an evidentiary hearing would permit me to uncover whether there is additional evidence of service effected in the manner attempted in this case.

123.    If the defendants have accepted service in this fashion on a number of occasions, then a strong argument exists that Hilliard possessed implied, actual authority to accept service of process on their behalf. See In re Focus Media Inc., 387 F.3d 1077, 1082 (9th Cir.2004) (holding that, while a purported agent must possess actual authority to accept service of process, such authority may be implied rather than express); accord United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed.Cir.1997); United States v. Balanovski, 236 F.2d 298, 303 (2d Cir.1956); see generally Inn Foods, Inc. v. Equitable Co-op. Bank, 45 F.3d 594, 597 (1st Cir.1995) (explaining basic, common law principles of agency and implied authority in different context).

124.    Also, there is reason to believe that the condominium home where Hilliard resides requires that Hilliard grant authority to condominium employees to receive mail on his behalf. If Hilliard is going to claim that it is the condominium that received the mailings, then this would further establish apparent authority for the condominium employees to accept service of process on behalf of the Hilliard defendants. Discovery is needed regarding the condominium and its rules regarding receiving and handling of mail for its residents.

125.    At most, it serves as circumstantial evidence that Hilliard had his condominium accept summonses on his and the defendants' behalf in other contexts.

126.    Similarly, the Upton & Hatfield has a mail department that receives mailing including summonses routinely. Discovery is needed to determine whether the mail department received the mailings from the sheriff in April 2023 and in May 2023.

127.    These mailings were not returned to the sheriff, which shows they were received by the defendants. This shows that the defendants have been served in a similar manner without any unclaimed or return of mailing. Thus, this shows that the defendants have, on other occasions, received a similar attempt at service.  Further discovery is needed regarding other attempts at service in this exact way from a sheriff

or a court, or otherwise, especially if the Hilliard defendants are going to claim a "lost homework" defense.

128.   Also, the acceptance of service through Hilliard's receipt of service shows that Upton & Hatfield has acquiesced to the acceptance of service via this method (In Rivera-Lopez, a factually similar case, we reversed a lower court's determination that a defendant was estopped from denying an agency relationship with a secretary because "[t]he acceptance of service [by a secretary] in prior cases unconnected with plaintiff might have been specially authorized, or defendant ... might have chosen to waive formalities." 979 F.2d at 887.).

129.   In summary, the circumstantial evidence adduced by me gives rise to a permissible inference that the defendant Upton & Hatfield authorized Hilliard to receive service of process.

130.   The self-serving affidavit submitted by Rusell Hilliard with the first motion to dismiss filed in MA federal court but not refiled in this court, does not resolve the matter definitively, especially since I have introduced contravening evidence and have had no opportunity to conduct related discovery and elicit testimony from Hilliard and the defendants. Thus, the district court should allow my request for limited discovery and/or an evidentiary hearing. I will otherwise suffer substantial prejudice.

131.   Accordingly, the district court should permit limited discovery and/or hold an evidentiary hearing, given the persistent factual uncertainty concerning service and citizenship. See id.; see also Surpitski, 362 F.2d at 256 ("When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license [to conduct discovery].").

132.   See also Blair v. City of Worcester, 522 F.3d 105 (2008) (1st Cir.).

## X. GOOD CAUSE EXISTS FOR LIMITED JURISDICTIONAL DISCOVERY

### A. Plaintiffs' Jurisdictional Discovery Requests Are Narrowly Tailored and Will Provide Support for Remand to State Court

133.   Courts apply a "flexible good cause" standard to determine whether limited discovery is warranted. Semitool v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275 (N.D. Cal. 2002) ("Good cause may be

found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.").

134.    I seek leave to conduct limited jurisdictional discovery in order to present additional evidence supporting remand including the defendants' date and time of receipt of service of process documents and citizenship of the partners of defendant Upton & Hatfield, the removing party.

135.    It should be noted that Upton & Hatfield was on notice of the lawsuit and complaint long ago because Upton & Hatfield represented Craig Donais. Rusell Hilliard was just a lawyer from Upton & Hatfield but it is the law firm of Upton & Hatfield that represented Craig Donais. Rusell Hilliard would have had to notify Upton & Hatfield and its malpractice insurance carrier about my claim/lawsuit against them since the complaints were filed in 2020 in Middlesex superior court of MA and in Bristol superior court of MA in 2022. Discovery needed to address this issue and to obtain communications with the insurance carrier that are relevant to this issue.

136.     Although I believe the motion to remand references grounds that are sufficient for this court to remand to state court, I am still entitled to jurisdictional discovery to present a fuller factual record and to rebut Defendants' contrary assertions.

**B. Jurisdictional Discovery Is Warranted and is Regularly Granted on an Expedited Basis to Allow Parties to Develop a Full Factual Record.**

137.    "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986).

138.    Discovery normally should be permitted to allow plaintiffs the opportunity to develop the factual record regarding the issue of jurisdiction. Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) ("a remand will be necessary to allow [plaintiff] the opportunity to develop the record and make a prima facie showing of jurisdictional facts"); Chan v. Society

Expeditions, Inc., 39 F.3d 1398, 1406 (9th Cir. 1994) (remanding to district court for jurisdictional discovery due to insufficient factual record regarding personal jurisdiction).

139. "Defendants must meet the relatively high burden of establishing that 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.' " Orchid Biosciences, Inc. v. St. Louis University, 198 F.R.D. 670, 674-75 (S.D. Cal. 2001) (quoting Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977)); see also Focht v. Sol Melia S.A., 2010 WL 3155826 at *2 (N.D. Cal. 2010) ("[T]he fact that the Ninth Circuit has adopted a prima facie standard for deciding the merits of the jurisdiction issue indicates that a lesser showing is required in order for plaintiff to obtain jurisdictional discovery in the first place."). Calix Networks, Inc. v. Wi-LAN Inc., 2010 WL 3515759 at *4 (N.D. Cal. 2010) ("plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdiction discovery."); Internet Archive v. Shell, 2006 WL 1348559 (N.D. Cal. 2006) (granting motion for expedited jurisdictional discovery).

140. Here, the defendants have offered declarations that the defendants have had no residency in Massachusetts whatsoever. Discovery is needed to determine what was the residency of the defendants at the time of the filing of the complaint and/or at the time of removal.

141. The defendants are unable to meet the "high burden" needed to deny jurisdictional discovery.

142. I only seek expedited and limited discovery to build a fuller factual record.

143. These reasons clearly work in favor of jurisdictional discovery. See, e.g., Harris Rutsky, 328 F.3d at 1135; Data Disc, 557 F.2d at 1285 n.1; Wells Fargo, 556 F.2d at 430 n.24.

144. Additionally, there are several elements of the defendants' opposition filings that raise factual issues requiring expedited and limited jurisdictional discovery to supplement the factual record, as a matter of fair play.

145. Here, the defendants' oppositions assert a number of facts that I need to contest and evidence that is uniquely within the defendants' custody, and therefore, expedited and limited jurisdictional discovery should be allowed.

146.     As one notable point, the defendants assert that because this is a diversity case, then a federal court should apply state law. In so doing, the defendants assert that the antislapp statute of Massachusetts state law applies to this case. But if this case is not a diversity case, and jurisdiction is based on only on the federal claim, then the antislapp statute cannot apply based on this (and other) ground(s).

147.     Permitting me to take limited depositions of the defendants would lead to admissible evidence.

148.     To rule on the jurisdictional issues based only upon the defendants' factual offerings would amount to a ruling without providing the non-moving party with the means to respond to the moving parties' proffered evidence.

149.     I have alleged the few facts known to me; however, it is highly likely there are emails, letters, and other communications that are not reflected in the defendants highly selective and self-serving presentation of the facts. Only jurisdictional discovery can obtain the full facts since the information is exclusively within the defendant's knowledge, custody, and control. For example:

   a.  Communications between Hilliard and Upton & Hatfield about the receiving the summons and complaint.
   b.  Communications between Hilliard and his condominium about receipt of summons and complaint at his home.
   c.  Communications between Hilliard and his insurance provider about this case.
   d.  Information regarding diversity of citizenship.
   e.  Information regarding receipt of service documents.

150.     To rule solely on the very limited, self-serving material provided by the Defendants on this issue would not serve the interests of justice or meet due process standards.

151.     This discovery is necessary because I have not commenced full discovery because the Court has not issued a Case Management Scheduling Order permitting me to proceed with discovery.

152.     I have ferreted out some relevant factual allegations from the public record and from my personal experiences; however, I need to test the veracity of the defendants' statements and therefore, my motion to propound discovery on a limited and expedited basis should be granted.

153.     This would be a fair and equitable result because the information needed by me is controlled and held by the defendants and all efforts to date to secure even the most simplistic of information (for example, the relevant information regarding the name of the insurance carriers) have failed.

### C. The Law Is Well-Settled That Plaintiff Is Entitled To Jurisdictional Discovery

154.     Whenever a plaintiff contests lack of jurisdiction for removal to federal court and the plaintiff demonstrates that its jurisdictional allegations can be supplemented through discovery, the law is well-settled that such a plaintiff has the right to conduct jurisdictional discovery.

155.     "A plaintiff… is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information..." El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987).

156.     Through jurisdictional discovery, I can supplement the existing factual basis supporting the remand of this case to state court. Jurisdictional discovery is warranted because the record currently before the court is plainly inadequate. See also Edmond, 949 F.2d at 425 (holding that, given the plaintiff's specific allegations, "it [w]as an abuse of discretion to deny jurisdictional discovery . . . .").

157.     Discovery related to remand is needed to establish the citizenship of all of the partners of Upton & Hatfield and to establish when the defendants received the original complaint and amended complaint, facts which are or can be determinative of the remand issue. These are critically important issues that must be resolved in order to determine whether this court has jurisdiction over this case.

158.     This discovery should elicit more detailed information about the defendants and I am entitled to examine the basis for the statements made by the defendants.

### D. Further Equitable Basis For Discovery

159.     The defendants made false statements to the court in order to get this case into federal court and to remain in federal court.

160.    The case should be remanded for equitable reasons on this basis. See also further equitable grounds in the re-filed motion to remand.

161.    The court "may award attorney's fees under § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

162.    Because the defendants did lack an objectively reasonable basis for removal, Plaintiff should be awarded fees and costs.

## XI. PROPOSED DISCOVERY PLAN

163.    I proposed the following plan for the completion of discovery.

   d.   Complete limited written discovery within 30 days of the ruling on this motion.

   e.   Complete limited depositions within 30 days of the ruling on this motion.

2.   This proposed discovery plan for expedited and limited jurisdictional discovery is or can be further carefully tailored to the specific needs and issues presented by Defendants' pleadings for me to address the allegations in these filings, information within Defendants' custody.

## XII. CONCLUSION

164.    Good cause exists to warrant expedited and limited jurisdictional discovery for permitting discovery in order for me to collect and incorporate jurisdictional discovery in the motion to remand.

165.    In light of the importance of discovery, the materiality of the requested information, the proportionality of the limited discovery, and the interest of justice, I respectfully request this Honorable Court to allow this motion to allow limited discovery.

**Signed under pains and penalty of perjury**

Respectfully submitted,
/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8206
Dated: December 11, 2023                                              Attleboro, MA 02703

## CERTIFICATE OF SERVICE

I certify that the foregoing was served to the parties in this case via the court's electronic filing system.
/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703

# Exhibit 1

## RE: inquiry per motion for jurisdictional discovery pertaining to remand

From: Sonneborn, Daniel R. (dsonneborn@preti.com)

To: quickquantum@aol.com; elanders@morrisonmahoney.com; lsmith@morrisonmahoney.com

Date: Monday, December 11, 2023 at 04:49 PM EST

Andre,

I do not believe it is necessary to conduct jurisdictional discovery as to the Hilliard defendants.

Dan

**Daniel R. Sonneborn**
Director
**Preti**Flaherty

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Monday, December 11, 2023 4:39 PM
**To:** Landers, Edwin <elanders@morrisonmahoney.com>; Smith, Linda <lsmith@morrisonmahoney.com>;
Sonneborn, Daniel R. <DSonneborn@preti.com>
**Subject:** Re: inquiry per motion for jurisdictional discovery pertaining to remand

**Note:** *** This email originated from outside of Preti. Please do not click on any links or open attachments unless you can verify the sender and content.***

Dan,

to be clear and so there is no misunderstanding, the donais defendants stated below that they do not think jurisdictional discovery is needed from the Donais defendants. They have not taken a position on whether it is needed from the Hilliard defendants. I understand from your reply below that you agree it is not needed from the donais defendants, i.e., given the way it is worded. But it is not clear if you think it is needed from the Hilliard defendants, I ask this also in light of the fact that the Hilliard defendants are the ones who effected removal and given the dispute over when the service documents were received by Hilliard and given my challenge to the diversity of the partners/member of the Upton & Hatfield law firm.

Can you please specifically reply to clarify this?

Andre

On Monday, December 11, 2023 at 04:17:22 PM EST, Sonneborn, Daniel R. <dsonneborn@preti.com> wrote:

Andre,

I do not agree that it is needed and thus do not concur either. Thanks.

Dan

**Daniel R. Sonneborn**
Director
617.226.3852 Tel

dsonneborn@preti.com
Bio | LinkedIn | Twitter | preti.com

**Preti**Flaherty
60 State Street
Suite 1100
Boston, MA 02109

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Monday, December 11, 2023 4:15 PM
**To:** Landers, Edwin <elanders@morrisonmahoney.com>; Smith, Linda <LSmith@morrisonmahoney.com>
**Cc:** Sonneborn, Daniel R. <DSonneborn@preti.com>
**Subject:** Re: inquiry per motion for jurisdictional discovery pertaining to remand

__Note:__ **\*\*\* This email originated from outside of Preti. Please do not click on any links or open attachments unless you can verify the sender and content.\*\*\***

Dan, could you please reply to my email?

Thanks,
Andre

On Monday, December 11, 2023 at 03:37:39 PM EST, Smith, Linda <lsmith@morrisonmahoney.com> wrote:

The Donais Defendants do not agree that jurisdictional discovery is needed from them. To the extent you plan to file a motion seeking jurisdictional discovery from the Donais Defendants, the Donais Defendants do not concur.

**Linda Smith**
Partner

MORRISON MAHONEY LLP
650 Elm Street, Suite 201
Manchester, NH 03101
T (603) 518-1971 | F (603) 622-3466
LSmith@morrisonmahoney.com | www.morrisonmahoney.com

Connecticut | Massachusetts | New Hampshire | New Jersey | New York | Rhode Island | United Kingdom

The information transmitted, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmissions, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and destroy any copies of this information.

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Monday, December 11, 2023 1:03 PM
**To:** Smith, Linda <LSmith@morrisonmahoney.com>; Landers, Edwin <ELanders@morrisonmahoney.com>

**Cc:** Daniel R. Sonneborn <dsonneborn@preti.com>
**Subject:** Re: inquiry per motion for jurisdictional discovery pertaining to remand

---

**External Email from Andre Bisasor <quickquantum@aol.com>. Do not click on links, open attachments, or reply before confirming this is a valid email.**

---

*correction:*

Dear All,

Based on prior indications in **one** place or form or another, I believe you have stated or signaled **(or otherwise I believe it can be inferred)** that you do not concur with any motion for jurisdictional discovery pertaining to remand. If I am incorrect, please let me know.

Thanks,

Andre Bisasor

On Monday, December 11, 2023 at 01:01:07 PM EST, Andre Bisasor <quickquantum@aol.com> wrote:

Dear All,

Based on prior indications in place or form or another, I believe you have stated or signaled that you do not concur with any motion for jurisdictional discovery pertaining to remand. If I am incorrect, please let me know.

Thanks,

Andre Bisasor

---

This E-Mail may contain information that is privileged, confidential and / or exempt from discovery or disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege. If you are not the intended recipient of this communication, and have

received it in error, please do not distribute it and notify me immediately by E-mail at dsonneborn@preti.com or via telephone at 617.226.3800 and delete the original message. Unless expressly stated in this e-mail, nothing in this message or any attachment should be construed as a digital or electronic signature or as a legal opinion.

This E-Mail may contain information that is privileged, confidential and / or exempt from discovery or disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege. If you are not the intended recipient of this communication, and have received it in error, please do not distribute it and notify me immediately by E-mail at dsonneborn@preti.com or via telephone at 617.226.3800 and delete the original message. Unless expressly stated in this e-mail, nothing in this message or any attachment should be construed as a digital or electronic signature or as a legal opinion.

# <u>Exhibit 2</u>

**Exhibit 4**



March 24, 2016

Janet F. DeVito, Esq.
General Counsel
NH Attorney Disciplinary Office
4 Chenell Drive, Suite 102
Concord, NH 03301

RE:     Donais, Craig S. advs. Attorney Disciplinary Office - #16-012

Dear General Counsel DeVito:

I am in receipt of your letter dated March 17, 2016.

It is somewhat difficult to respond to your referral, as the referral requests that I comment on a Court Order and a hearing transcript from Connecticut, without citing specific issues of concern raised by Connecticut Bar Counsel or from the Attorney Disciplinary Office. The referral references "probable attorney misconduct which occurred in Connecticut." Having never practiced in Connecticut[1], it is unclear what is alleged, other than in the context of my pursuit of a New Hampshire case involving collateral issues associated with the Connecticut litigation. As such, if my understanding of the allegations are accurate, this should be reviewed not in the context of a Connecticut ethics issue, but rather, a New Hampshire issue as to whether I had a *bona fide* basis to pursue action on behalf of a New Hampshire client in the manner I did. Based on the record, I believe that you should dismiss the referral.

In preparing this response, it became apparent to me that my response necessarily implicates the representation of my client, Aftokinito Properties, Inc. As such, I believe that these materials are subject to privilege as either attorney work product, or alternatively, attorney-client privileged communication. I recognize that I could posit such a response in relation to much of this letter, but I do not want my response to be seen as evasive and aloof. As such, I have provided my client with a draft of this letter, and the identified exhibits for review. To the extent any of the exhibits would otherwise be subject to privilege, my client has authorized my disclosure to the Attorney Discipline Office solely for purposes of your review and evaluation of the Connecticut referral.

I will attempt to identify what I perceive as potential issues, in part based on my discussion with James L. Kruse, Deputy General Counsel on March 21, 2016. Jim identified three key areas of concern:

---

[1] In the interest of full disclosure, I am also admitted to practice in Connecticut, Bar #414541, but have never filed an appearance in any cases, or stepped into any Connecticut courthouse since admission in November 1997 until October 5, 2015. I am also admitted in Massachusetts, MA BBO #634112, since 1996, and have practiced down there as a small portion of my practice.

# Exhibit 3

Case 1:23-cv-00374-JL-TSM   Document 137-1   Filed 12/12/23   Page 34 of 36

LOGIN

Bachelors, Bachelor of Arts, Economics, Political Science *1988 - 1992*
**North Attleboro High School**

Skills:
Civil Litigation, Litigation, Commercial Litigation, Appeals, Courts, Corporate Law, Estate Planning, Trusts, Wills, Employment Law, Real Estate, Legal Assistance, Legal Research, Nonprofits, Legal...

Languages:
English

Certifications:
Rule 170 Certified Mediator
Rule 170-A Arbitrator
Nh Judicial Branch, Office of Mediation & Arbitration

## CRAIG DONAIS PHONE NUMBERS & HOME ADDRESSES

| Name | Address | Phone |
|------|---------|-------|
| **Craig Donais**, age 52 | 39 Buzzell St, Manchester, NH 03104 | (603) 289-**** |
| **Craig Donais** | 15 Warren Ave, Chelmsford, MA 01824 | (978) 256-8370 |
| **Craig Donais** | Manchester, NH | (603) 647-2767 |
| **Craig J Donais** | 24 Story Dr, Gaithersburg, MD 20878 | |

## SKILLED EXPERTS AND PROFESSIONALS

| | |
|---|---|
| Construction | Real Estate Manager |
| Real Estate Sales Agent | Team Member |

## CRAIG DONAIS PLACES OF EMPLOYMENT

| Name / Title | Company / Classification | Phones & Addresses |
|--------------|--------------------------|--------------------|
| **Craig Donais**<br>Attorney | Getman, Stacey, Schulthess & Steere, P A<br>Legal Services Office | 1838 Elm St, Manchester, NH 03104<br>3 Executive Park Dr, Manchester, NH 03110<br>(603) 634-4300<br>Website: http://www.gss-lawyers.com |
| **Craig Donais**<br>Managing Attorney | Donais Law Offices, PLLC<br>Attorney - Family · Lawyers-Litigation · Lawyers-Estate Planning · Attorney-Wills | 444 Willow Street, Manchester, NH 03103<br>(603) 624-7100<br>Website: http://www.donaislaw.com |
| **Craig Donais**<br>Principal | Donais Bostock<br>Legal Services Office | 15 High St, Manchester, NH 03101 |
| **Craig Donais**<br>Principal | Bon Courage LLC<br>Business Services at Non-Commercial Site | 205 High Street, Newburyport, MA 01950 |

## CRAIG DONAIS BUSINESS & ORGANIZATION RECORDS

| Name / Title | Company / Classification | Phones & Addresses |
|--------------|--------------------------|--------------------|
| **Craig Donais**<br>Managing<br>Attorney | Donais Law Offices, PLLC<br>Attorney - Family. Lawyers-Litigation. Lawyers-Estate Planning. Attorney-Wills. Trust & Probate. Lawyers - Business Law. Attorney- Real Estate | 444 Willow St, Manchester, NH 03103<br>(603) 624-7100 |

## CRAIG DONAIS PHOTOS AND VIDEOS

# Youtube

Rig Tour With Jon **Donais** Of Anthrax

# Exhibit 4

Civil Action# 2273CV00430

From:   Vikki Morales (vikkimorales@bcso-ma.org)

To:     quickquantum@aol.com

Date:   Thursday, July 27, 2023 at 02:07 PM EDT

Good Afternoon,

       Per our conversation yesterday, July 26, 2023, please accept this email as formal notification in the matter of Andre Bisasor vs Russell Hilliard, et al (Docket No. 2273CV00430) that as of today, July 27, 2023 none of the first class mailings done in this case have be returned to me. As referenced in my original returns of service, each defendant was served both certified mail return receipt and first class mail in both service of the original summons and complaint and the Summons and amended Complaint. At this time, you are in possession of the 3 original unclaimed certified mailings in your case.

Thank you

Victoria A Morales
Coordinator – Civil Process Division
Bristol County Sheriff's Office
108 Court Street
P.O. Box 8928
New Bedford, MA 02740
Tel# 508-992-6631
Fax# 508-991-6016