UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Andre C. Bisasor</u>

     v.                                                     Civil No. 23-cv-374-JL-TSM

<u>Craig Donais, et al.</u>

## **REPORT AND RECOMMENDATION**

     Plaintiff Andre Bisasor, pro se, brought this suit in Massachusetts state court against defendants Craig Donais; Mary Donais; Donais Law Offices, PLLC; Russell Hilliard; and Upton & Hatfield LLP, asserting claims for defamation, false light, intentional infliction of emotional distress, breach of contract, and civil rights violations. Defendant Upton & Hatfield removed the suit to the District of Massachusetts, which subsequently transferred the matter to this court. Bisasor moves to remand (doc. nos. 84, 87) to Massachusetts state court, arguing that this court lacks subject-matter jurisdiction and that Upton & Hatfield's removal was procedurally improper.[1] He also moves for jurisdictional discovery (doc. no. 137) and for entry of default against Russell Hilliard (doc. no. 85). For the following reasons, the court denies Bisasor's motion for jurisdictional discovery and recommends that the district judge deny his motion for default and motion to remand.

---

[1] Bisasor had difficulty electronically filing his motion to remand and his replies. As a result, there are several docket entries corresponding to the motion to remand and replies. The court has considered all of them, including doc. nos. 84, 86, 87, 88, 135, 136, and 138 in evaluating whether remand is warranted.

     Additionally, Bisasor's replies and his motion for jurisdictional discovery were untimely because he filed them on December 12, when they were due on December 11. The court construes Bisasor's "Declaration of Technical Failure" (doc. no. 134), in which Bisasor describes difficulties in using CM/ECF and asserts that a "technical failure" prevented him from timely filing the replies, as a motion to extend time. That motion is granted, and the court has considered Bisasor's replies and motion for jurisdictional discovery in full.

## BACKGROUND

The court considered all of the arguments asserted by Bisasor in his motion and reply filings, even if they are not discussed in detail in this R&R. The court also construed all of Bisasor's filings liberally because he proceeds pro se. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

This suit, in summary, relates to a series of events that began in 2017, when Craig Donais, an attorney at Donais Law Offices, declined to represent Bisasor in a separate case. Bisasor and his wife subsequently filed bar complaints against Craig Donais, and, at some point, Craig Donais reported Bisasor to the police, asserting concerns about harassment or stalking. Bisasor also brought several other lawsuits against Donais. This case relates to statements that defendants allegedly made to the police and during other litigation that Bisasor pursued.

Bisasor initially filed this suit in Bristol (Massachusetts) Superior Court in late June 2022. The only defendants named in Bisasor's initial complaint were Craig Donais and Russell Hilliard, a partner at the law firm of Upton & Hatfield. Hilliard represented Donais in other litigation that Bisasor pursued against Donais.

Almost a year later, on May 4, 2023, Bisasor filed the Amended Complaint, which remains operative. In the Amended Complaint, Bisasor named, for the first time, additional defendants, including Donais Law Offices, Craig Donais' wife, Mary Donais, and Upton & Hatfield. Bisasor asserts thirteen claims in the Amended Complaint, including claims for defamation, intentional infliction of emotional distress, breach of contract, and race-based harassment in violation of 42 U.S.C § 1981. He asks for compensatory and punitive damages from the defendants, based on mental anguish, lost professional opportunities, and harm to his reputation, among other, similar injuries.

On May 8, 2023, Bisasor mailed the Amended Complaint and a summons to Hilliard, who received it on May 11. Doc. no. 87 at 4. There is no evidence in the record that Upton & Hatfield was served with a summons at that time. On the basis of federal question and diversity jurisdiction, Upton & Hatfield filed a notice of removal in the District of Massachusetts in the late evening on June 9, 2023. Upton & Hatfield filed the notice of removal after the District of Massachusetts's 6:00 p.m. deadline for electronic filings. See L.R., D. Mass. 5.4(d) (2019) ("All electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day.").

After removal, the parties engaged in motion practice in the District of Massachusetts. Of note, Bisasor filed a motion to remand and a motion for default against Hilliard, while the defendants, including Hilliard, filed motions to dismiss in which they argued, in part, that the court should transfer this action to the District of New Hampshire based on lack of personal jurisdiction in Massachusetts. After a hearing and with the parties' consent, Judge Young ordered the suit transferred to the District of New Hampshire. After transfer, this court ordered the parties to refile any then-pending motions they wished the court to consider.

On August 4, 2023, a few days after the transfer, Upton & Hatfield executed a waiver of service. Doc. no. 64. Bisasor later refiled, among other motions, the motions to remand and for default that are the subject of this Report and Recommendation.[2]

**DISCUSSION**

The court addresses Bisasor's motion to remand first, his motion for jurisdictional discovery second, and his motion for entry of default against Hilliard third.

---

[2] Defendants, including Hilliard, also filed motions to dismiss. Those motions were stayed on December 1, 2023, and will be addressed in the appropriate manner in due course.

I.   Motion to Remand

In his motion to remand, Bisasor contends that the court lacks subject-matter jurisdiction; that Upton & Hatfield's removal was untimely; and that various equitable or abstention rules warrant remand to state court.

    A.   The court has federal question and diversity jurisdiction over this suit.

To start, Bisasor argues that the court lacks subject-matter jurisdiction because there is insufficient evidence in the record about Upton & Hatfield's partners' residencies and because defendants have not shown the amount in controversy exceeds $75,000.

The party seeking to invoke the federal courts' jurisdiction bears the burden of demonstrating its existence. E.g., Valentin v. Hosp. Bella Vista, 254 F.3d 358, 361 (1st Cir. 2001). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Id. § 1367(a). For the reasons that follow, this court finds that the defendants satisfied their burden and that jurisdiction is proper based on both federal question jurisdiction and diversity of citizenship.

        1.   Federal Question Jurisdiction

In his Amended Complaint, Bisasor asserted a federal claim under 42 U.S.C. § 1981. Therefore, the court has federal question jurisdiction under § 1331. See R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Env't Mgmt. 585 F.3d 42, 48 (1st Cir. 2009) (explaining that suits in which a plaintiff pleads a cause of action premised on a federal statute involve direct federal questions "that

fall within the encincture of federal question jurisdiction."). Additionally, there is no dispute that Bisasor's state law claims are premised upon the same set of facts as his federal law claim. Consequently, it is appropriate for the court to exercise supplemental jurisdiction under § 1367(a) over Bisasor's state-law claims. See Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc., 734 F.3d 28, 35 (1st Cir. 2013) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts." (quotations and citations omitted)). Insofar as Bisasor argues that the court should decline supplemental jurisdiction over his state-law claims because they "raise a novel or complex issue of State law," see § 1367(c), the court disagrees. Bisasor's state law claims consist of tort and breach of contract claims that state and federal courts confront on a routine basis. Bisasor has not presented any compelling basis to conclude that those claims raise any novel or complex legal issues that would require this court to decline jurisdiction.

    2.    <u>Diversity Jurisdiction</u>

In any event, the court also has diversity jurisdiction. Such jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Citizenship for purposes of diversity jurisdiction is determined by "domicile," meaning the place where the defendant "has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." See Tex. Mut. Ins. Co. v. SITUS Trucking, LLC, 2023 WL 4634643, at *5 (D.P.R. July 20, 2023); Valentin, 254 F.3d at 366. The citizenship of a partnership or limited liability company is determined by the citizenship of all its members. BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695-96 (1st Cir. 2023); D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011). If domicile is challenged, the party invoking diversity jurisdiction must prove it by a preponderance of the evidence. Hall v. Curran, 599 F.3d

70, 72 (1st Cir. 2010). Finally, in the circumstance, like here, where a party disputes the facts underlying the court's subject-matter jurisdiction, the court is free to resolve any factual disputes between the parties and need not accept either side's representations as true. See Valentin, 254 F.3d at 363-64 (noting that when resolving factual disputes, courts have "broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.").

The facts show, by a preponderance of the evidence, that the parties are completely diverse because none of the defendants is a citizen of the state where Bisasor is a citizen. In his Amended Complaint, Bisasor alleged that he is "located in the state of Massachusetts[,] . . . is a Massachusetts citizen and has a Massachusetts domicile." There is no colorable dispute that Bisasor is a Massachusetts citizen.[3] As to the defendants, Bisasor listed a New Hampshire permanent address for each of the individual defendants (Craig Donais, Mary Donais, and Hilliard) in the Amended Complaint. Doc. no. 1-3 ¶¶ 60, 78.[4] Furthermore, all the defendants filed diversity disclosure

---

[3] In their objection to Bisasor's motion for jurisdictional discovery, the Donais defendants suggest that Bisasor may in fact be domiciled in New Hampshire because, in 2017, Bisasor told Craig Donais that he lived in New Hampshire. That information is stale and gives the court no reason to doubt that Bisasor truthfully alleged his domicile as Massachusetts in the Amended Complaint. The Donais defendants also observe that the mailing address Bisasor provided to the court corresponds to a UPS store mailbox in Attleboro, Massachusetts. Bisasor's possession of a mailbox in Massachusetts is consistent with his allegation that he is domiciled there.

[4] "Residence and domicile are not the same," because "a person can have multiple residences but not multiple domiciles." Dowd v. Bass & Oyster River Mariner Development, LLC, No. 23-10108-MPK, 2024 WL 406716, at *2 (D. Mass. Feb. 2, 2024) (determining domicile when party owned homes in Connecticut, Florida, and Massachusetts and did not reside in any one state for more than six months a year); Seaplane Enters. LLC v. Chen Tsui Tue, at *1 (D. Mass. Feb. 22, 2024) (determining domicile when party lived part-time in California and Massachusetts, but previously lived in North Carolina and maintained a North Carolina driver's license and voting registration). Here, however, there is no evidence presently before the court suggesting that any party splits time between multiple residences in different states or has anything more than occasional personal or business contacts with states in which they do not reside. See O'Shea v.

statements that affirmatively allege New Hampshire citizenships. Upton & Hatfield filed a diversity disclosure statement representing that all its partners are New Hampshire citizens. Doc. no. 71. Donais Law Office's statement avers that its sole member is Craig Donais and that he is a New Hampshire citizen. Doc. no. 72. That statement also avers that Mary Donais is a New Hampshire citizen. Id.

Bisasor attempts to generate a dispute about some of the defendants' domiciles by pointing to other information he uncovered, but he appears to mistake the defendants' domiciles with the places to which they may have occasional personal, business, or employment contacts. For example, Bisasor observes that some of Upton & Hatfield's partners are licensed to practice law, went to law school, or previously worked in Massachusetts. Doc. no. 87 at 27-28. And he identifies evidence indicating that some of the defendants have spent recreational time in Massachusetts. See doc. no. 136-5.

But many New Hampshire-domiciled lawyers are admitted to practice in Massachusetts or have previously worked in Massachusetts. Indeed, many New Hampshire citizens work in Massachusetts, but this does not transform their domicile. Bisasor identifies no reasonable basis for the court to find that Upton & Hatfield falsely disclosed the citizenships of its partners. Moreover, if anything, much of the information Bisasor supplied in fact supports the court's finding that defendants are domiciled in New Hampshire. For example, Bisasor filed evidence that further shows that Craig and Mary Donais are New Hampshire citizens. See, e.g., doc. no. 136-5 at 34 (Facebook profile indicating that Mary Donais "[l]ives in Manchester, New

---

Woodbine Senior Living, LLC, No. 23-cv-230-SM, 2024 WL 552780, at *2-*4 (D.N.H. Feb. 9, 2024) (observing that physical presence and intent to remain indefinitely and return when away are the two elements of domicile).

Hampshire"); id. at 28-30 (information showing Craig Donais's recent residences and places of employment, all in New Hampshire).

Bisasor also asserts that Upton & Hatfield and Donais Law Offices engage in business in Massachusetts, but the court does not determine citizenship of limited liability companies and partnerships by business contacts. As described above, the court's determination is based on the citizenships of each entity's individual members, which are, in turn, determined by domicile. BRT Mgmt., 68 F.4th at 696 (stating that it is "the members' citizenships that are relevant for jurisdictional purposes, not the principal place of business or the state of organization of the entity"). Whether and to what extent Upton & Hatfield and Donais Law Offices do business in Massachusetts is not material to the analysis of their members' citizenships.

Bisasor also argues that the defendants have not established diversity jurisdiction because the amount in controversy does not exceed $75,000.[5] Usually, "a court decides the amount in controversy from the face of the complaint, 'unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.'" Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). The court need only find that there is a "reasonable probability" the amount in controversy will exceed $75,000. See Solimino v. Target Corp., No. 21-cv-11435-IT, 2021 WL 4822175, at *2 (D. Mass. Oct. 15, 2021). In his 92-page Amended Complaint, Bisasor asserts sweeping claims for, among others, defamation, intentional infliction for emotional distress, and violation of his civil rights, all relating to a multi-year series of events for which Bisasor requests compensatory damages for loss of reputation, loss of earnings,

---

[5] Bisasor also argues that he is unlikely to recover more than $75,000 in this case. The determination of the amount in controversy, however, does not turn on the plaintiff's likelihood of success in recovering the amount in dispute. See Mut. Real Estate Holdings, LLC v. Houston Cas. Co., No. 10-cv-236-LM, 2010 WL 3608043, at *4 (D.N.H. Sept. 13, 2010).

8

"professional opportunity," and mental anguish, including "fear and anxiety," "loss of enjoyment of life," "lack of energy," "mood swings," and "sleep disturbances."  E.g., doc. no. 1-3 ¶¶ 622, 657, 685.  On top of those compensatory damages, Bisasor requests double or treble punitive damages.[6]  It is facially apparent from the Amended Complaint that there is a reasonable probability the amount-in-controversy exceeds $75,000.

      B.      <u>Upton & Hatfield met the statutory requirements for removal.</u>

Bisasor next argues that remand is warranted because Upton & Hatfield's notice of removal was untimely under 28 U.S.C. § 1446(b).  That statute provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  Specifically, Bisasor argues that Upton & Hatfield's notice of removal was untimely because it was docketed on June 12, 2023, more than 30 days after three alternative triggers: (1) his service of the initial complaint on Hilliard on April 17, 2023; (2) his mailing of the Amended Complaint to Hilliard on May 8, 2023; or (3) Hilliard's receipt of the Amended Complaint on May 11, 2023.  The applicable authority establishes, however, that the filing was timely.

As relevant here, the 30-day clock for a defendant to file a notice of removal begins running when the defendant receives "through service or otherwise . . . a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).

---

[6] Notably, in connection with his motion to remand, Bisasor asserts that "[i]t was facially apparent from the Complaint itself that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction."  See doc. no. 87 at 15.

9

In isolation, this text could be read to mean that the 30-day removal clock begins when the defendant receives a copy of the relevant pleading, regardless of whether the defendant was also served formal process including a summons. But service of process "is fundamental to any procedural imposition on a named defendant." See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999). For that reason, even though § 1446(b) does not reference service of process with respect to the events that trigger the 30-day clock, it does not eliminate that traditional prerequisite to imposing any procedural deadline. See id. at 354 ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). Hence, "the removal period runs from the service of the summons." Id.; Novak v. Bank of N.Y. Mellon Tr. Co., NA, 783 F.3d 910, 911 (1st Cir. 2015) ("[T]he Supreme Court has held that a defendant's statutory period to remove does not begin to run, and a defendant is not required to remove, until the defendant has been served.").[7]

Massachusetts Rule of Civil Procedure 4 requires that service of process include a "a copy of the complaint and a summons," which "shall be served together" and, among other things, shall contain "the names of the parties" and "be directed to the defendant."[8] Mass. R. Civ. P. 4(a), (b), (d). Bisasor identifies no evidence in the record showing that he served process as required by Rule 4 on Upton & Hatfield. Indeed, at times in his filings, Bisasor appears to agree that he did

---

[7] Bisasor cites to Pillin's Place, Inc. v. Bank One, Akron, N.A., 771 F. Supp. 205, 206-07 (N.D. Ohio 1991), which found that delivery of a pleading that gives the defendant "fair notice" triggers the 30-day removal period. Doc. no. 87 at 21, ¶ 188. The Supreme Court, however, rejected that rule in Murphy Brothers. 526 U.S. at 350 ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.").

[8] As described above, Bisasor originally filed this case in Massachusetts and all parties were joined by the time the case was transferred to this court. Accordingly, Bisasor relies on Massachusetts's rules pertaining to service of process.

10

not serve process on Upton & Hatfield. For instance, he states that "[o]n Friday 6/9/23, the defendant Upton & Hatfield (who was not yet served in state court) preemptively filed a notice of removal in federal court." Doc. no. 87 at 6, ¶ 68; but see doc. no. 135 at 5 ("At no point did I send the complaint or amended complaint to any of the defendants unattended by any formal service in this case."). In any event, without any evidence before the court showing service of process on Upton & Hatfield at least 30 days prior to the notice of removal, Upton & Hatfield's notice of removal was timely. See Murphy Bros., 526 U.S. at 354.[9]

Bisasor argues that the clock began running when he served the original complaint on Hilliard. He asserts that Upton & Hatfield "was technically a party" in the original complaint because Hilliard is an Upton & Hatfield partner. Doc. no. 138 at 8. Bisasor did not identify Upton & Hatfield as a defendant in the original complaint, and Upton & Hatfield is a separate legal entity for the purpose of obtaining judgment against partnership property. See Storch Engineers v. D&K Land Developers, 134 N.H. 414, 415 (1991) ("A partnership is a legal entity for purposes of enforcing judgment against partnership assets."); see also RSA 304-A:15(IV) (distinguishing between naming the partners of a limited liability partnership and the partnership itself). Thus, Bisasor's alleged service of the original complaint on Hilliard is irrelevant because the 30-day removal clock does not run against an entity that is not a party to the case. See Murphy Bros., 526

---

[9] Bisasor contends (citing to Murphy Brothers) that "Upton & Hatfield acted prematurely by filing for removal before it had been formally served with the complaint." Doc. no. 87 at 29. The First Circuit rejected the theory that a case cannot be removed until after service of process has been made. Novak, 783 F.3d at 911 (holding that service is not a prerequisite for removal even though service is a prerequisite to begin the 30-day removal clock).

U.S. at 350 ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure . . . .").[10]

Alternatively, Bisasor argues that he served process on Upton & Hatfield when he mailed the Amended Complaint and a summons to Hilliard on May 8, 2023.[11] As previously noted, however, Upton & Hatfield contends that it was never served with process, and Bisasor offers no evidence showing he served a summons <u>directed to Upton & Hatfield</u>. The summonses and deputy sheriff's statements that Bisasor identifies in support of this argument refer only to Hilliard. See doc. no. 138-2 (summonses directed only to Hilliard and deputy sheriff's statements indicating service only on Hilliard). Bisasor has not shown that a summons directed to Hilliard is equivalent to a summons directed to Upton & Hatfield, which, as discussed above, is a separate legal entity and therefore, a distinct defendant from Hilliard. See Storch Engineers, 134 N.H. at 415. To the extent Bisasor argues, see doc. no. 87 at 9-14, that under Massachusetts Rule of Civil Procedure 5 he was not required to serve a summons on Upton & Hatfield, he is mistaken because Rule 5

---

[10] To the extent that Bisasor relies on the "first-served defendant rule," see doc. no. 87 at 21, which was a "judicially crafted rule" that prohibited a first-served defendant from consenting to a notice of removal filed by a later-served defendant more than 30 day after service on the first-served defendant, it has been abrogated by Congressional amendments to § 1446(b). Doe v. McGuire, 289 F. Supp. 3d 266, 272 (D. Mass. 2018) ("[T]he 2011 amendments to section 1446 all but abrogated" the first-served defendant rule); see 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

[11] Bisasor argues that Upton & Hatfield previously conceded that it was served when Hilliard was served because Hilliard is a partner of the firm. See doc. no. 87 at 9, ¶ 83. Upton & Hatfield made no such concession. Bisasor misreads the relevant filing in which Upton & Hatfield argued (in response to Bisasor's prior motion to remand) that even if it had been served on May 11 when Hilliard received the Amended Complaint as Bisasor sometimes claims, its notice of removal was timely. Doc. no. 36 at 2. Indeed, in the same passage (and as Bisasor acknowledges) Upton & Hatfield observed that it "has never been served with the Amended Complaint." Id.

12

applies only <u>after</u> a defendant has been brought into a case through serving process under Rule 4.[12] See Wang v. Niakaros, 852 N.E. 2d 699, 702-03 (Mass. App. Ct. 2006) (finding that amended complaint that asserted "additional claims that constitute a new lawsuit in all but name" was required to be served on defendant under Rule 4); accord Washington Tr. Advisors, Inc. v. Arnold, No. 22-cv-11847-PBS, --- F. Supp. 3d ---, 2023 WL 4196857, at *3 (D. Mass. Apr. 14, 2023) (finding that plaintiff was required to serve process on newly added defendant under Federal Rule of Civil Procedure 4); Cryer v. UMass Med. Corr. Health, 2011 WL 841248, at *1-*2 (D. Mass. Mar. 7, 2011) (observing that service of amended complaint can generally only occur under Federal Rule of Civil Procedure 5 when the original complaint was properly served under Rule 4 and the defendant has already appeared); Linwood Trading Ltd. v. E.S. Recycling Express Corp., No. 14-6332, 2017 WL 1882490, at *4 (D.N.J. May 9, 2017) ("Because [Defendant] was not named as a party prior to the [Second Amended Complaint], Plaintiff was required to serve [Defendant] with a summons and the [Second Amended Complaint] in compliance with Rule 4. [Plaintiff] has not provided any evidence that [Defendant] was served in accordance with Rule 4.").

Lastly, Bisasor contends that the 30-day removal clock began as to Upton & Hatfield on May 11, 2023, when Hilliard received the Amended Complaint. Assuming Hilliard's receipt of the Amended Complaint and a summons directed to him were sufficient to serve Upton & Hatfield (and it is not, for the reasons already discussed), Upton & Hatfield's notice of removal would

---

[12] Rule 5 describes generally permissible methods of serving pleadings and papers in Massachusetts, while Rule 4 describes permissible methods of serving process.

13

nevertheless be timely because it would not have been due until June 12, 2023, the date by which Upton & Hatfield filed its notice.[13]

### C. Other Arguments

In his filings, Bisasor raises several other arguments for remand: defendants waived removal by participating in the suit in state court; defendants failed to give him advance warning of removal; litigating in federal court is more difficult for a pro se plaintiff; and the equitable remand or an abstention rule applies. None of these arguments are persuasive here.

A defendant can waive its right to remove a case to federal court if it "manifests a clear and unequivocal intent to adjudicate the case in state court." Cummings Properties, LLC v. Production Resource Group, L.L.C., 532 F. Supp. 3d 24, 26-27 (D. Mass. 2021). To manifest such intent, a defendant must do more than take actions "designed [only] to preserve [its] rights without the risk of entry of default due to missed deadlines." City of Springfield, Mass. v. Comcast Cable Communications, Inc., 670 F. Supp. 2d 100, 105 (D. Mass. 2009). Indeed, "short of seeking an adjudication on the merits" in state court, a defendant's right to remove an action to federal court will not be lost. Id.; see, e.g., Cogdell v. Wyeth, 366 F.3d 1245, 1249 (11th Cir. 2004) (filing a motion to dismiss in state court did not constitute waiver of removal right); Hernandez-Lopez v. Puerto Rico, 30 F. Supp. 2d 205, 209 (D.P.R. 1998) (removing party did not waive its right to removal despite filing an answer, a motion and supporting memorandum and a limited interrogatory in state court). The court's review of the state court docket that was filed upon

---

[13] Upton & Hatfield filed the notice of removal in the District of Massachusetts on Friday, June 9, but Bisasor contends that the filing was not effective until June 12, 2023, under District of Massachusetts Local Rule 5.4(d) because it was filed after 6:00 p.m. The court need not address that issue because the notice of removal was timely regardless. This is because the last day of the 30-day period that began on May 11, 2023, was Saturday, June 10. Because the last day of the 30-day period was a Saturday, the deadline became Monday, June 12, that is, the next day that was not a Saturday, Sunday, or legal holiday. See Fed. R. Civ. P. 6(a)(1)(C).

removal does not show any activity from Upton & Hatfield that would suggest waiver. Bisasor points to discussions he had with defense counsel about the case, but discussions with counsel about a case are far from sufficient to warrant waiver.

Next, Bisasor contends that removal was unfair because he did not receive advance notice and because "it was done out of pure gamesmanship." Doc. no. 87 at 31. Bisasor received the notice to which he was entitled when Upton & Hatfield filed the notice of removal. Section 1446 does not require more on that front. Furthermore, the strategic reasons underlying why Upton & Hatfield exercised its right to remove the case are irrelevant where it had a statutory right to do so.

Next, Bisasor argues that the court should remand for equitable reasons, as litigating in federal court is more difficult for a pro se litigant than in state court. There is no rule that prohibits removal on the premise that litigating in federal courts is generally more difficult for pro se plaintiffs than litigating in state court. Additionally, the "equitable remand" rule that Bisasor discusses in his filings applies in cases involving the court's bankruptcy jurisdiction, which is not at issue here. See 28 U.S.C. § 1452(b); N. Eng. Wood Pellet, LLC v. N. Eng. Pellet, LLC, 419 B.R. 133, 144 (D.N.H. Oct. 30, 2009); Marotta Gund Budd & Dzera LLC v. Costa, 340 B.R. 661, 662-63 (D.N.H. Mar. 31, 2006); Garland & Lachance Constr. Co., Inc. v. City of Keene by Planning Bd., 144 B.R. 586, 588 (D.N.H. Apr. 11, 1991).

Lastly, citing to Quackenbush v. Allstate, 517 U.S. 706 (1996), Bisasor contends that the court should abstain from hearing this case. In Quackenbush, the Supreme Court dealt with a form of abstention commonly known as Burford abstention, after Burford v. Sun Oil Co., 319 U.S. 315 (1943). Courts "have read Burford and its progeny narrowly." Forty Six Hundred LLC v. Cadence Educ., LLC, 15 F.4th 70, 75 (1st Cir. 2021). It applies only in "extraordinary circumstances" when "the federal court might, in the context of the state regulatory scheme, create a parallel, additional,

15

federal, 'regulatory review' mechanism, the existence of which would significantly increase the difficulty of administering the state regulatory scheme." Id. That is, "Burford abstention applies only in 'unusual circumstances,' where the federal court risks usurping the state's role as the 'regulatory decision-making center.'" Id. (quoting Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 474 (1st Cir. 2009)). Here, the court does not risk usurping any state's role as a regulatory decision-making center, and thus, Burford abstention is unwarranted. See Quackenbush, 517 U.S. at 716 (observing that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

    D.    Complaint Amendment

In his motion to remand, Bisasor also notes that he plans to amend his complaint to add a nonparty who is nondiverse and to drop the federal claim, for the purpose of defeating federal jurisdiction. In a separate order, the court provided Bisasor time to file a motion for leave to file an amended complaint.[14] At present, however, the Amended Complaint is operative, and under it the court has both federal question and diversity jurisdiction.

    E.    Summary

In summary, this court has both federal question and diversity jurisdiction. Upton & Hatfield timely filed its notice of removal. None of Bisasor's arguments, whether or not expressly discussed in this R&R, persuade the court that remand is warranted in these circumstances. Accordingly, this court recommends that Bisasor's motion to remand be denied.

---

[14] Bisasor filed a motion to amend his complaint on Marh 12, 2024. The next day, he filed an amended motion to amend. The motions are not yet ripe.

## II.     Jurisdictional Discovery

Bisasor also moves for jurisdictional discovery.  Doc. no. 137.  Given the above findings, the court denies that motion because there is no reason for it at this time.  The court has federal question jurisdiction, so even if Bisasor were to uncover a fact through jurisdictional discovery that shows one of the parties is nondiverse, it would not change whether the court possesses subject-matter jurisdiction.  Jurisdictional discovery also would not change the outcome as to the timeliness of removal, as the evidence before the court demonstrates that removal was timely.  To the extent Bisasor contends that he served Upton & Hatfield with a summons more than 30 days before it filed the notice of removal, evidence demonstrating service of process would already be in his possession and should have been presented in connection with the motion to remand.  Accordingly, Bisasor's motion for jurisdictional discovery is denied.

## III.    Motion for Default

Bisasor also moves for entry of default against defendant Russell Hilliard.  The main premise of Bisasor's motion is that Hilliard failed to timely respond to the Amended Complaint, which Bisasor asserts was served on Hilliard no later than May 8, 2023, per Massachusetts Rule of Civil Procedure 5(a) and (b).  Bisasor contends that a response was due 10 days later, on May 18, 2023.  Hilliard, however, did not file a motion to dismiss until June 16, 2023.  Hilliard objects, arguing that he is not in default and that he timely filed the motion to dismiss under Federal Rule of Civil Procedure 81, which he asserts provided him additional time to respond after Upton & Hatfield's removal.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Regardless of when Hilliard's response was due, entering

default is unwarranted. Hilliard has actively defended against Bisasor's claims. Even if Hilliard's motion to dismiss were untimely as Bisasor contends, the drastic sanction of default would be unjust. See, e.g., Snell v. Descoteaux, No. 20-cv-11894-JDL, 2022 WL 813831, at *2 (D. Mass. Mar. 16, 2022) (declining to enter default as a sanction when defendant's response to complaint was untimely); Sea Salt, LLC v. TD Bank, NA, No. 20-cv-99-JAW, 2021 WL 454222, at *3 (D. Me. Feb. 8, 2021) (same); Lewis v. Kennebec Cnty., No. 16-cv-559-JAW, 2017 WL 2274953, at *3 (D. Me. May 24, 2017) (same). For that reason, the district judge should deny Bisasor's motion to enter clerk's default under Rule 55(a).

## CONCLUSION

For the foregoing reasons, the district judge should deny Bisasor's motion to remand (doc. nos. 84, 87) and his motion to enter default against Hilliard (doc. no. 85). Bisasor's motion for jurisdictional discovery (doc. no. 137) is denied.

Any objection to this Report and Recommendation on Bisasor's motion to remand or his motion to enter default against Hilliard must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon timely motion. Only those issues properly raised in a written objection are subject to review in the district court and any issues not preserved by a written objection are waived on appeal. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

March 21, 2024
cc:    Andre Bisasor, pro se
       Counsel of Record