UNITED STATES DISTRICT COURT - DISTRICT OF NEW HAMPSHIRE
ANDRE BISASOR, Plaintiff,
v.
CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC;
UPTON & HATFIELD, LLP; and MARY K. DONAIS, Defendants.
Case No.1:23-cv-00374-JL

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S REPORT & RECOMMENDATION ON REMAND, REMAND DISCOVERY AND DEFAULT**

1. I, the plaintiff in this case, hereby provide this objection to the report and recommendation (dated 3/21/24) issued by the magistrate judge of this case (hereinafter "report", "report and recommendation", "R&R", or "magistrate judge's ruling"), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 7.1(e)(1) and (2).

2. I here provide explanation of why the magistrate judge's report/ruling is erroneous, unfair, and wrong.

3. NB: I also hereby incorporate by reference all of the filings, motions, replies, and attendant documents related to remand, jurisdictional discovery, and default, that were or have been filed by me in this case.

## I. INTRODUCTION

4. First, it should be noted that the magistrate judge did not hold a hearing on these motions, even though I repeatedly requested a hearing, and laid out the grounds for a hearing on these motions was critical to the magistrate judge's decision on them. Second, it should be noted that the court took about 4 months to rule on these motions. Third, the magistrate judge did not fairly and adequately address the arguments and facts presented in the motion for jurisdictional discovery. Fourth, l object to the entirety of the magistrate judge's analysis, discussion, findings, conclusions, decisions, and recommendations, and request that the district court reject same in their entirety, especially the recommendations, and instead, rule in plaintiff's favor regarding remand, remand discovery and default, all in accordance with all the papers that the plaintiff has submitted in regards to these issues. Fifth, many of the magistrate judge's findings and conclusions are "clearly erroneous" or is contrary to law. The magistrate's recommendations were based on errors of fact and are contrary to law. The magistrate's analysis contains several significant factual and legal errors.

## II. STANDARD OF REVIEW

5. This Court must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C.§ 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("the standard district courts should apply to such

objections is de novo."). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. SPECIFIC OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS & ARGUMENTS

6. NB: I below provide specific objections, responses or rebuttals to the points, arguments, and findings of the magistrate judge in her report.

7. The magistrate judge stated in her report that:

   This suit, in summary, relates to a series of events that began in 2017, when Craig Donais, an attorney at Donais Law Offices, declined to represent Bisasor in a separate case. Bisasor and his wife subsequently filed bar complaints against Craig Donais, and, at some point, Craig Donais reported Bisasor to the police, asserting concerns about harassment or stalking. Bisasor also brought several other lawsuits against Donais. This case relates to statements that defendants allegedly made to the police and during other litigation that Bisasor pursued.

   a. First of all, the magistrate judge has misstated the facts in her brief summary of the case. Craig Donais' statement to the police was not about stalking and harassment. He did not make any report to the police that I had stalked him or harassed him at all. Donais made statements to the police on at least two occasions, one relating to allegation concerning a recording and sometime later, a request for protection from potential harm by me and by my wife, where the only thing that Donais stated to the police was that I am capable of or had the intent of physically harming him, his wife, and children (of which there was no evidence). This was not an allegation by Donais that I had stalked or harassed him in the past but that I was going to do so. The magistrate judge evidently made a misinterpretation or had a misunderstanding regarding the facts of the complaint. On the contrary, it was my wife, in her ADO complaints, or myself in my lawsuit complaint, that were the ones who has asserted a claim of harassment by Donais against me and/or my wife.

   b. Similarly, it was my wife that filed an ADO complaint against Craig Donais, not me as I only later became a legal representative for my wife in her ADO complaint against Craig Donais in NH. It appears that the magistrate judge may have conflated my wife's ADO complaint with me.

8. The magistrate judge stated in her report that:

   "Insofar as Bisasor argues that the court should decline supplemental jurisdiction over his state-law claims because they "raise a novel or complex issue of State law," see § 1367(c), the court disagrees. Bisasor's state law claims consist of tort and breach of contract claims that state and federal courts confront on a routine

2

basis. Bisasor has not presented any compelling basis to conclude that those claims raise any novel or complex legal issues that would require this court to decline jurisdiction ".

    a. This court has never addressed anti-slapp motions before because NH has no anti-slapp law. As I could find, this will be the first time that this court would address an anti-slapp motion, and especially one under the law of the state of Massachusetts. There is no federal anti-slapp law so this court cannot apply antislapp law without a derivative state court basis. The attempt by the defendants to have this court apply MA anti-slapp law in this case and this court involves a complex feat. Moreover, MA antislapp law is a very complex issue that has seen several changes to its law over the years (with the MA supreme judicial court making several modifications to it including just recently this year again after recently before making changes under Blanchard I and II a few years ago) and is an increasingly complex of area of law. This court should not usurp the MA state's role in resolving anti-slapp motions.

9. The magistrate judge stated in her report that:

> In any event, the court also has diversity jurisdiction. Such jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Citizenship for purposes of diversity jurisdiction is determined by "domicile," meaning the place where the defendant "has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." See Tex. Mut. Ins. Co. v. SITUS Trucking, LLC, 2023 WL 4634643, at *5 (D.P.R. July 20, 2023); Valentin, 254 F.3d at 366. The citizenship of a partnership or limited liability company is determined by the citizenship of all its members. BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695-96 (1st Cir. 2023); D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011). If domicile is challenged, the party invoking diversity jurisdiction must prove it by a preponderance of the evidence. Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010).

    a. The court has not established what the domicile is of all the members of the Upton & Hatfield LLP, at the time of the filing of the complaint (about 2 years ago) and/or at the time of the removal of the case to federal court of MA (about a year ago). The court only has domicile information as of or after the transfer to the NH federal court. The complaint was filed a year earlier. The domicile information presented in the diversity statement by Upton & Hatfield is the only document (other than my filings seeking to challenge diversity) that has sought to assert the domicile of the members of the LLP.

10. The magistrate judge stated in her report that:

> Finally, in the circumstance, like here, where a party disputes the facts underlying the court's subject-matter jurisdiction, the court is free to resolve any factual disputes between the parties and need not accept either side's representations as true.

    a. The court engages in flawed reasoning here.

11. The magistrate judge stated in her report that:

> The facts show, by a preponderance of the evidence, that the parties are completely diverse because none of the defendants is a citizen of the state where Bisasor is a citizen. In his Amended Complaint, Bisasor alleged that he is "located in the state of Massachusetts[,] . . . is a Massachusetts citizen and has a Massachusetts domicile." There is no colorable dispute that Bisasor is a Massachusetts citizen.3 As to the defendants, Bisasor listed a New Hampshire permanent address for each of the individual defendants (Craig Donais, Mary Donais, and Hilliard) in the Amended Complaint. Doc. no. 1-3 ¶¶ 60, 78.4 Furthermore, all the defendants filed diversity disclosure statements that affirmatively allege New Hampshire citizenships. Upton & Hatfield filed a diversity disclosure statement representing that all its partners are New Hampshire citizens. Doc. no. 71. Donais Law Office's statement avers that its sole member is Craig Donais and that he is a New Hampshire citizen. Doc. no. 72. That statement also avers that Mary Donais is a New Hampshire citizen. Id.

    a. None of these statements are under oath. The court cannot treat these statements as fact, when they are not under oath and there is a dispute over the statement. The court cannot simply take the defendants word for it, without more. Information about Upton & Hatfield LLP members, for example, was revealed only as the diversity statement filed after transfer to this court. The court has no information about domiciles of the members prior to the that. I have raised sufficient grounds to raise a dispute as to the domicile of the members of the LLP. This requires at least minimal discovery. Moreover, the diversity statement was not under oath. Facts cannot be established without affidavit, as indicated by the rules of the court.

12. The magistrate judge stated in her report that:

> Here, however, there is no evidence presently before the court suggesting that any party splits time between multiple residences in different states or has anything more than occasional personal or business contacts with states in which they do not reside. See O'Shea v. Woodbine Senior Living, LLC, No. 23-cv-230-SM, 2024 WL 552780, at *2-*4 (D.N.H. Feb. 9, 2024) (observing that physical presence and intent to remain indefinitely and return when away are the two elements of domicile).

    a. I have raised a reasonable question about this.

13. The magistrate judge stated in her report that:

> Bisasor attempts to generate a dispute about some of the defendants' domiciles by pointing to other information he uncovered, but he appears to mistake the defendants' domiciles with the places to which they may have occasional personal, business, or employment contacts. For example, Bisasor observes that some of Upton & Hatfield's partners are licensed to practice law, went to law school, or previously worked in Massachusetts. Doc. no. 87 at 27-28. And he identifies evidence indicating that some of the defendants have spent recreational time in Massachusetts. See doc. no. 136-5.

    a. The problem here is that the court does not allow for discovery. As a pro se, I am limited in my ability to conduct pre-suit discovery and investigations. The defendants are in control of the information. It would be a simple matter to get to the bottom of things by allowing some limited discovery.

14. The magistrate judge stated in her report that:

> But many New Hampshire-domiciled lawyers are admitted to practice in Massachusetts or have previously worked in Massachusetts. Indeed, many New Hampshire citizens work in Massachusetts, but this does not transform their domicile. Bisasor identifies no reasonable basis for the court to find that Upton & Hatfield falsely disclosed the citizenships of its partners. Bisasor also asserts that Upton & Hatfield and Donais Law Offices engage in business in Massachusetts, but the court does not determine citizenship of limited liability companies and partnerships by business contacts. As described above, the court's determination is based on the citizenships of each entity's individual members, which are, in turn, determined by domicile. BRT Mgmt., 68 F.4th at 696 (stating that it is "the members' citizenships that are relevant for jurisdictional purposes, not the principal place of business or the state of organization of the entity"). Whether and to what extent Upton & Hatfield and Donais Law Offices do business in Massachusetts is not material to the analysis of their members' citizenships.

    a. The court appears to be engaging in advocacy and speculation on behalf of the defendants.

    b. The basis is that the partners have been identified as likely having property or residences in MA. This at least raises the prospect of them having dual residences and thus MA citizenship, at least as of the time of the filing of this case in 2022, etc.

    c. The Upton defendants have not made any statement under oath. This court cannot simply accept bald facts, especially disputed ones, without any affidavit. This is highly improper.

    d. It is one thing if I had not raised a dispute about the domicile of the members of the LLP. But since I have raised a dispute the court cannot simply take their word for it.

    e. The court uses information outside of this case to establish fact patterns that it used to apply to this case to give the Upton defendants the benefit of the doubt. The magistrate judge evidently used her background as a lawyer in a big NH law firm, to assume or infer the normal fact pattern for the Upton defendants. But this is not right. The court cannot impose its outside knowledge or personal experience with how partners in law firms behave, and apply it as fact to this case. The magistrate judge states that "…many New Hampshire-domiciled lawyers are admitted to practice in Massachusetts or have previously worked in Massachusetts. Indeed, many New Hampshire citizens work in Massachusetts, but this does not transform their domicile." While this can be true of some, it is not true of all. The

converse is also true or can be true…that lawyers who work law firms headquartered in NH, can be domiciled in MA or have dual residences in MA and NH. The facts here can only be ascertained or established via discovery or under oath.

f. I provided evidence to suggest that some of the members may reside in MA. This at least requires a modicum of investigation.

g. NB: the Upton defendant has not refuted the assertions regarding activities of its members including owning property and having residences in MA. This lack of denial furthers supports the need for discovery. For example, the Upton defendants could be taking a generous of its partners' activities, drawing a legal conclusion that there is no domicile conflict question or there is no diversity issue. But we have no information on the underlying facts supporting such legal conclusions. Moreover, if there is a close call, the legal conclusions by the Upton defendant cannot be relied exclusively without investigation of the underlying facts supporting those purported legal conclusions. This kind of flimsy jurisprudence, using unverified unsupported legal conclusions by one side, should not be countenanced by the court.

h. The defendants alleged that I have made conclusory statements in my motion to remand or for discovery. But they too rely on conclusory statements. What is good for the goose should be good for the gander. Fair is fair. Dueling statements must be resolved by discovery, or by having statements made under oath.

i. NB: The magistrate judge has incorrectly used the lack of information about jurisdictional facts as a means of illegitimately screening this otherwise legitimate cases. See Bell Atd. Corp. v. Twombly, 550 U.S. 544, 560 n.6 (2007) (stating that the "hope of judicial supervision is slim" due to the information constraints faced by judges).

15. The magistrate judge stated in her report that:

> "Bisasor also argues that the defendants have not established diversity jurisdiction because the amount in controversy does not exceed $75,000.[5] Usually, "a court decides the amount in controversy from the face of the complaint, 'unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.'" Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). The court need only find that there is a "reasonable probability" the amount in controversy will exceed $75,000. See Solimino v. Target Corp., No. 21-cv-11435-IT, 2021 WL 4822175, at *2 (D. Mass. Oct. 15, 2021). In

his 92-page Amended Complaint, Bisasor asserts sweeping claims for, among others, defamation, intentional infliction for emotional distress, and violation of his civil rights, all relating to a multi-year series of events for which Bisasor requests compensatory damages for loss of reputation, loss of earnings, "professional opportunity," and mental anguish, including "fear and anxiety," "loss of enjoyment of life," "lack of energy," "mood swings," and "sleep disturbances." E.g., doc. no. 1-3 ¶¶ 622, 657, 685.   On top of those compensatory damages, Bisasor requests double or treble punitive damages.[6] It is facially apparent from the Amended Complaint that there is a reasonable probability the amount-in-controversy exceeds $75,000".… "Bisasor also argues that he is unlikely to recover more than $75,000 in this case. The determination of the amount in controversy, however, does not turn on the plaintiff's likelihood of success in recovering the amount in dispute…)."

  a. There is no baseline for the damages, so there is no basis to determine what double or treble damages would amount to. If the baseline damages are $10,000, then that would be $30,000. If the baseline damages is $20,000, then that would be $60,000. That would still be under $75,000. There is no basis for this magistrate judge to assume what the baseline damages are. Furthermore, the magistrate judge has stated in the R&R that my claims arise, for the most part, from the same nucleus of facts. Hence, the damages will not be repeated simply because there were 13 claims. The magistrate judge again is engaging very generous speculation and/or granting of the benefit of the doubt on behalf and for the benefit of the defendants.

  b. The magistrate judge further says that it does not matter whether I recover $75,000. But then says that I have claims more than $75,000. How did the magistrate judge arrive at that? The magistrate judge has taken no consideration of what I say about the value of my own damages. Again, the magistrate judge is construing any ambiguity against me. The complaint does not assert damages above $75,000. The complaint only asserts damages that meet the minimum for jurisdiction in Massachusetts superior court (which was $50,000). I could have asserted more in state court but I did not. The magistrate judge ignores these factors.

  c. The magistrate judge cannot make assumptions, especially assumptions that are construed illiberally against me, and then deny discovery to test these unverified or speculative assumptions.

16. The magistrate judge stated in her report that:

6 Notably, in connection with his motion to remand, Bisasor asserts that "[i]t was facially apparent from the Complaint itself that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction." See doc. no. 87 at 15

    a. This is a mischaracterization. I said if the defendants were relying on their assumptions, then it would lead to the assumption that the assumed amount of damages was evident from the original complaint. If they could assume more than 78K from the amended complaint then they could assume the same from the original complaint. The magistrate judge is misconstruing my words and not construing my words liberally in contravention of the law. The magistrate judge gives lip service to liberal construction but then in practice does the something else resulting in narrow rigid tight constructions of my words that hurt or harm me

17. The magistrate judge stated in her report that:

> In isolation, this text could be read to mean that the 30-day removal clock begins when the defendant receives a copy of the relevant pleading, regardless of whether the defendant was also served formal process including a summons. But service of process "is fundamental to any procedural imposition on a named defendant." See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999). For that reason, even though § 1446(b) does not reference service of process with respect to the events that trigger the 30-day clock, it does not eliminate that traditional prerequisite to imposing any procedural deadline. See id. at 354 ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). Hence, "the removal period runs from the service of the summons." Id.; Novak v. Bank of N.Y. Mellon Tr. Co., NA, 783 F.3d 910, 911 (1st Cir. 2015) ("[T]he Supreme Court has held that a defendant's statutory period to remove does not begin to run, and a defendant is not required to remove, until the defendant has been served.").[7]

    a. The magistrate judge engages in circular self-contradictory or erroneous reasoning. The Upton & Hatfield defendant concedes service of process, when Upton & Hatfield's partner Russell Hilliard received the mailed summons and amended complaint. It cannot be had both ways. Based on the magistrate judge's reasoning, the 30 day clock for removal by the removing defendant can only begin after "service of the summons" on Upton & Hatfield as the removing defendant. But the court go on to say that the deadline for filing removal was June 12, 2023. But if Upton was not served summons at the time, then how can the court establish any timeline. This is self-contradictory. Moreover, this approach would lead to an absurd result. The removing defendant that was not yet served could have an indefinite amount of time to remove the case, even when it removed the case, because the clock starts only after service of summons. This fails to take into account the fact that the act removal is admission that the removing defendant received the summons. The rules make clear that it is either

8

service of the summons or the receipt of a copy of the summons. The magistrate judge has engaged in plain error here.

b. The Supreme Court has held, in looking at the triggering of the 30-day period that a party has to remove the case to federal court after service, that **"[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service**." Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347–48 (1999). The Upton defendant has effectively conceded that it received the complaint through service or "otherwise", when it received the summons and complaint on May 11, 2024 when it was received by its partner Russell Hilliard.

c. The Upton defendant has argued that "**Whether Upton & Hatfield has been formally served is immaterial, as "[n]umerous federal courts have held that formal service is not required before a defendant can remove a case." Sutler v. Redland Ins. Co., 2012 WL 5240124, \*2 (D. Mass. Oct. 24, 2012). Mass., No. 12-10656-RWZ (Oct. 24, 2012), citing Boyd v. Phoenix Funding Corp., 366 F.3d 524, 529–30 (7th Cir. 2004); Delgado v. Shell Oil Co., 231 F.3d 165, 177 (5th Cir.2000) ("Generally, service of process is not an absolute prerequisite to removal."); Middlebrooks v. Godwin Corp., 279 F.R.D. 8, 11–12 (D.D.C. 2011); Watanabe v. Lankford, 684 F.Supp.2d 1210, 1214–15 (D. Haw. 2010) (defendant's filing of a notice of removal before being served by plaintiffs did not render removal defective); Bell v. American General Finance, Inc., 267 F.Supp.2d 582, 583–83 (S.D. Miss. 2003); Arthur v. Litton Loan Serv. LP, 249 F.Supp.2d 924, 931 (E.D.Tenn.2002) ("[S]ervice of process is not a prerequisite to the defendants exercising their right of removal under 28 U.S.C. § 1446"). Although the deadline for removal is measured from the defendant's formal receipt of the complaint, 28 U.S.C. 1446(b), nothing in the removal statute requires that a defendant be served with the complaint prior to filing a**

*notice of removal. Whitehurst v. Wal–Mart, 306 F. App'x 446, 448 (11th Cir. 2008). Here, Upton & Hatfield was not aware of the Amended Complaint until one of its attorneys (Mr. Hilliard) received a copy of it on May 11, 2023.1 See Doc. no. 16-1 at ¶ 1. Neither Mr. Hilliard nor Upton & Hilliard were formally served with the Amended Complaint, but nonetheless, out of an abundance of caution, Upton & Hilliard removed this matter within the 30-day deadline that it first became aware that it was a party to this matter."* See **Exhibit 1.**

   d. If formal service of process is not required for removal, then the 30 day clock must count as of the time the defendant acknowledges receipt of the summons and complaint. This is only logical and fair. Otherwise, a scheming defendant could simply remove a case to federal court, but then play games as to when it actually received the summons and complaint. This is especially true where the removing defendant concedes a date by which it received the summons and complaint.

18. The magistrate judge stated in her report that:

   Upton & Hatfield filed the notice of removal in the District of Massachusetts on Friday, June 9, but Bisasor contends that the filing was not effective until June 12, 2023, under District of Massachusetts Local Rule 5.4(d) because it was filed after 6:00 p.m. The court need not address that issue because the notice of removal was timely regardless. This is because the last day of the 30-day period that began on May 11, 2023, was Saturday, June 10. Because the last day of the 30-day period was a Saturday, the deadline became Monday, June 12, that is, the next day that was not a Saturday, Sunday, or legal holiday. See Fed. R. Civ. P. 6(a)(1)(C).

   a. It was not timely regardless. The magistrate judge engages in a tautology and circular reasoning, indicating a bias by the magistrate judge. The magistrate judge cannot assume a conclusion or a premise that is supposed to be proven.

   b. Upton & Hatfield wants to have it both ways. They want to say that they are using the 5-11-23 date (the date that Hilliard, a partner in the firm, purportedly first received the Amended Complaint) as the date that Upton & Hatfield received notice of the Amended Complaint. Yet, they want to deny that the date that Hilliard received the original complaint was effective as a date of notice of the original complaint to Upton & Hatfield. This is a contradictory self-serving position to take.

   c. Similarly, they want to say that they are using the date that Hilliard purportedly first received the Amended Complaint as the date that Upton & Hatfield received notice of the Amended Complaint,

10

    but then they also want to deny that the date that the Summons and Amended Complaint was mailed to them (5-8-23) constitutes service complete upon mailing under Massachusetts law. See **Exhibit 3**.

d. Further, contrary to the objection, the 30 day removal clock was triggered by the simultaneous service of the summons and complaint. At no point did I send the complaint or the amended complaint to any of the defendants unattended by any formal service in this case. In every instance, a summons accompanied the original complaint or the amended complaint as shown in the sheriff's affidavit. e. Also, further contrary to the defendants' assertion, this matter was not timely removed. A notice of removal generally must "be filed within 30 days after the receipt by the defendant . . . of a copy of the Case 1:23-cv-00374-JL-TSM Document 138 Filed 12/13/23 Page 6 of 11 7 initial pleading . . . or within 30 days after the service of summons upon the defendant . . . whichever period is shorter." 28 U.S.C. § 1446(b)(1). See U.S. Bank Nat'l Ass'n v. Berkowska, No. 3:12-cv-597 (JBA), 2013 WL 12303038, at *1 (D. Conn. Jan. 3, 2013) ("[T]he statutory time limit is mandatory and…federal courts rigorously enforce the statute's thirty-day filing requirement." See id. Here, defendant's notice of removal is wanting. The failure to remove by at least 5-17-23 alone proves the point. Defendants' tortured attempt to avoid the 30-day time-bar based on the assertion that they only received the complaint on 5-11-23 is unavailing. And their entire theory of jurisdiction rests on the falsehood that Russell Hilliard never received any summons and complaint prior to 5-11-23 —a falsehood that, even if true, would not establish jurisdiction.

e. Similarly, it is the defendants' fault for filing the removal after 6pm on 6-9-23. Why did they wait until the last minute, in fact until after the last minute, to file their notice of removal? They knew of this case for over a year since the filing of the complaint in Bristol superior court. They were late in filing an answer or a response to the complaint in state court. In fact, they missed the deadline for filing answer or response to the complaint. After I filed a motion for default in state court, the defendants filed an opposition to default and requested an extension to file their late answer or response. The state court denied the default. Then the defendants waited until the just before the expiration of the extension they requested to file answer or response in state court, to file their notice of removal to federal court.

11

There is no excuse for waiting so long to remove, after waiting so long to file a response to the complaint. This issue is one of their own making and the court should not allow them any leeway, since removal is to be construed tightly.

   f. Similarly, my argument about Upton & Hatfield's 30-day deadline to remove is not "illogical". Hilliard was served both with summons and complaint. Hilliard cannot have it both ways. They needed to remove to federal court starting 30 days from 4-14-23 (when service was completed with the summons and original complaint) or otherwise 30 days from 5-8-23 (when service was completed with the summons and amended complaint). Either way, the removal effected on 6-12-23 was untimely.

19. The magistrate judge stated in her report that:

   Next, Bisasor contends that removal was unfair because he did not receive advance notice and because "it was done out of pure gamesmanship." Doc. no. 87 at 31. Bisasor received the notice to which he was entitled when Upton & Hatfield filed the notice of removal. Section 1446 does not require more on that front. Furthermore, the strategic reasons underlying why Upton & Hatfield exercised its right to remove the case are irrelevant where it had a statutory right to do so.

   a. The magistrate judge seems to countenance it when the defendants seek to impugn my motives but here treats as irrelevant the fact that the defendants have misled the state court.

20. The magistrate judge stated in her report that:

   Additionally, the "equitable remand" rule that Bisasor discusses in his filings applies in cases involving the court's bankruptcy jurisdiction, which is not at issue here. See 28 U.S.C. § 1452(b); N. Eng. Wood Pellet, LLC v. N. Eng. Pellet, LLC, 419 B.R. 133, 144 (D.N.H. Oct. 30, 2009); Marotta Gund Budd & Dzera LLC v. Costa, 340 B.R. 661, 662-63 (D.N.H. Mar. 31, 2006); Garland & Lachance Constr. Co., Inc. v. City of Keene by Planning Bd., 144 B.R. 586, 588 (D.N.H. Apr. 11, 1991).

   a. This is not correct. The magistrate judge is regurgitating the defendants arguments.

21. The magistrate judge stated in her report that:

   Jurisdictional Discovery. Bisasor also moves for jurisdictional discovery. Doc. no. 137. Given the above findings, the court denies that motion because there is no reason for it at this time. The court has federal question jurisdiction, so even if Bisasor were to uncover a fact through jurisdictional discovery that shows one of the parties is nondiverse, it would not change whether the court possesses subject-matter jurisdiction. Jurisdictional discovery also would not change the outcome as to the timeliness of removal, as the evidence before the court demonstrates that removal was timely. To the extent Bisasor contends that he served Upton & Hatfield with a summons more than 30 days before it filed the notice of removal, evidence demonstrating service of process would already be in his possession and should have been presented in connection with the motion to remand. Accordingly, Bisasor's motion for jurisdictional discovery is denied.

a. Jurisdictional discovery is warranted. The court's position is erroneous. Jurisdictional discovery could in fact change the outcome as to the timeliness of removal. If removal is untimely, that would trump both federal question jurisdiction and/or diversity jurisdiction. Jurisdictional discovery would establish once and for all when the defendants received the summons and complaint mailed in this case. There is evidence that the defendants lied about receiving service of process.

b. See proof of lie.

c. Moreover, the issue of diversity jurisdiction is a critical finding that has other implications for this case. It is important to ascertain whether diversity is met. If defendants are domiciled in MA, then diversity is destroyed. The magistrate judge also assumes diversity is based on the current information of the defendants' domicile. But diversity should be based on domiciles at the time of the filing of the complaint and/or the time of the relevant events in the complaint. Otherwise, any person can simply change their domicile after the filing of a complaint and then later use that to defeat remand. Either way, jurisdictional discovery is needed to establish the facts. The magistrate judge has no information on the domicile of the defendants prior to the filing of the case or even prior to the transfer of this case to NH. The magistrate judge is making assumptions in favor of the defendants or giving them the benefit of the doubt. But that is not supposed to be the role of the court. The court is supposed to be neutral and objective, and is supposed to only deal with relevant established facts.

d. The district court should grant remand. But should the court be inclined to deny remand, then the court should at least, in all fairness, grant the plaintiff's motion for limited for discovery on remand, so as to establish critical facts necessary to a full, fair and proper determination of the remand question.

e. This reason provided by the magistrate judge for denying discovery is not adequate to deny the plaintiff's request for limited discovery. I request that the district court judge defer ruling on remand and allow discovery because I cannot properly respond in further detail to defendants' arguments without obtaining an explanation of the basis of the arguments. See Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (holding that even where an agency's affidavits contain sufficient evidence to meet the agency's burden, discovery is justified if plaintiffs can "provide some tangible evidence…").

22. The magistrate judge stated in her report that:

> <u>Motion for Default</u>. Bisasor also moves for entry of default against defendant Russell Hilliard. The main premise of Bisasor's motion is that Hilliard failed to timely respond to the Amended Complaint, which Bisasor asserts was served on Hilliard no later than May 8, 2023, per Massachusetts Rule of Civil Procedure 5(a) and (b). Bisasor contends that a response was due 10 days later, on May 18, 2023. Hilliard, however, did not file a motion to dismiss until June 16, 2023. Hilliard objects, arguing that he is not in default and that he timely filed the motion to dismiss under Federal Rule of Civil Procedure 81, which he asserts provided him additional time to respond after Upton & Hatfield's removal. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Regardless of when Hilliard's response was due, entering default is unwarranted. Hilliard has actively defended against Bisasor's claims. Even if Hilliard's motion to dismiss were untimely as Bisasor contends, the drastic sanction of default would be unjust. <u>See, e.g.</u>, <u>Snell v. Descoteaux</u>, No. 20-cv-11894-JDL, 2022 WL 813831, at *2 (D. Mass. Mar. 16, 2022) (declining to enter default as a sanction when defendant's response to complaint was untimely); <u>Sea Salt, LLC v. TD Bank, NA</u>, No. 20-cv-99-JAW, 2021 WL 454222, at *3 (D. Me. Feb. 8, 2021) (same); <u>Lewis v. Kennebec Cnty.</u>, No. 16-cv-559-JAW, 2017 WL 2274953, at *3 (D. Me. May 24, 2017) (same).

   a. The rules are to be adhered to. The magistrate judge took a long time to rule on this motion. I filed this motion prior to any response to the complaint. The federal court did not rule on this motion since June 2023. It is unfair to wait a year and then say defendants have defended. The ruling should have been based on the time the motion to default was filed. The court acknowledges that defendants failed to respond timely to the complaint, which means that defendants was or had been in default at the time I filed the motion for default. The sanction of default is not drastic. It is mandated by the rules. If it were the other way around or the show on the other foot, defendants would be swinging from the chandeliers pushing for the same result arguing the court must hold me to the same rules as represented parties and the court would seriously entertain this and likely come down on the side of defendants. Yet, here in this instance, defendants have offered no reason or justification for not timely responding the complaint. There is no excusable neglect or mistake. Defendants simply defied the rules and their obligation to timely respond to the complaint. Default is warranted.

## IV. CONCLUSION

23. NB: It should be remembered that I did not consent to the magistrate judge on this case and filed a no consent or objection to assignment of this case to the magistrate judge.

24. I also object to the magistrate judge's implicit denial of my motion for hearing on these motions because it denied me an opportunity to properly and fully address the facts and arguments raised by defendants. This is

14

a due process issue where I was deprived of a meaningful opportunity to be fully and properly heard on a dispositive issue. It was error for the magistrate judge to deny me a hearing. I ask the court to either order a hearing with the magistrate judge or grant a hearing with the district judge. NB: While the court need not conduct a hearing with respect to objections to a magistrate judge's report, I believe oral argument would be beneficial in this matter for the same or similar reasons that were articulated previously to the magistrate judge.

25. I hereby preserve all rights to seek reconsideration of the district court judge's ruling on this objection to the magistrate judge's report or to seek appeal to the first circuit thereof.

26. I preserve all rights in terms of my objection to the arguments that the magistrate judge asserts were denied but not explicitly discussed in her report. Without a specific reference to these by the magistrate judge, I am hindered in my ability to be specific in my objection. Since the judge gave a broad or blanket to such arguments, then I hereby provide the same broad and blanket objection to the magistrate's report. Moreover, the magistrate judge has made a number of errors in her report and I object to these errors as either plain errors, clear errors, abuse of discretion, or on all other applicable grounds including those elucidated in this objection. See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error.").

27. I hereby ask the district court to conduct a de novo review of the entire motion to remand documents including all attachments and exhibits, and corrections, as well as the entire remand jurisdictional discovery motion and the default motion. See 28 U.S.C. § 636(b)(1) (district judges shall "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). NB: "a district judge conducting a de novo review of objections to a magistrate judge's findings and conclusions may consider the entire record".

28. Accordingly, the district court should decline to adopt the R&R, sustain plaintiff's objections, and grant plaintiffs' motion for remand or remand discovery and default. In the alternative, the district court judge should grant plaintiff leave to take discovery.

29. Please grant a pro se liberal construction to this pleading. Please grant my request or grant any other relief the court deems proper. For the foregoing reasons, I respectfully object to the magistrate judge's ruling and ask the district court judge to overrule the magistrate's report and remand the case to state court, and/or grant jurisdictional discovery as well as grant the motion for default.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

May 13, 2024

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor