UNITED STATES DISTRICT COURT - DISTRICT OF NEW HAMPSHIRE
ANDRE BISASOR, Plaintiff,
v.
CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC;
UPTON & HATFIELD, LLP; and MARY K. DONAIS, Defendants.
Case No.1:23-cv-00374-JL

# PLAINTIFF'S MOTION TO STAY THIS CASE DUE TO THE PENDENCY OF TWO OTHER SIMILAR OR RELATED PRIOR-FILED CASES IN THE STATE COURTS OF NEW HAMPSHIRE AND MASSACHUSETTS

NOW COMES the Plaintiff Andre Bisasor (hereinafter "plaintiff"), and respectfully request that the court enters a stay on this proceeding due to pendency of two other similar or related prior=filed cases in the state courts of New Hampshire and Massachusetts (which existed prior to the case being removed to this court). In support of this motion, plaintiff states the following:

## I.  INTRODUCTION

1. There are two other same or similar proceedings, in New Hampshire and Massachusetts, related to this case that was pending prior to removal to federal court. There is also an appeal pending on related proceeding in Massachusetts, in the Massachusetts state appeals court that was pending prior to removal.

2. The related matters are closely tied to the issues of this case. There are important rights that must be resolved before this case can proceed. For example, there might be the need to consolidate cases into this court or otherwise I should be allowed an opportunity to have the state court matters proceed, in lieu of this proceeding in this court.

3. I believe the intention of this removal to federal court was to frustrate and prejudice these proceedings in state court.

4. A stay on this case would allow for those related matters in state court to be resolved so that this court does not issue orders that are in conflict with those matters.

5. NB: In the 11-30-23 hearing, I told the court about this issue, but at the defendants' request, the court said I should hold off on filing this kind of motion. See 11-30-23 court transcript for reminder of what was said.

6. The defendants have several times propounded to this court that there are two other prior filed cases in the state courts of New Hampshire and Massachusetts. They have used this to argue that the court should not entertain extensions in this case because I filed these prior state court cases.

1

7. The defendants have argued to this court the following (see paragraph 3 and 9 of the defendants filings[1] in the past) stating:

> "We again remind the Court that this is not the only action filed by Plaintiff against Craig Donais. Plaintiff has also sued Craig Donais in Middlesex Superior Court, Docket No. 2081CV000087, alleging defamatory statements of the exact same type and nature, which claims were dismissed on August 2, 2021 and in New Hampshire for similar causes of action. Plaintiff is appealing the dismissal of the Massachusetts action on a pro se ex parte appeal to the Massachusetts Appeals Court, Docket No. 2021-P-0960 ("Andre Bisassor [sic] v. Craig Donais"). Plaintiff's wife has also filed two grievances against Defendant Craig Donais with the New Hampshire Attorney Discipline Office alleging the same facts. Plaintiff and Plaintiff's wife have also filed another civil action against Craig Donais in New Hampshire in Hillsborough Superior Court North, Docket 226-2020-cv-00027"…."The Donais Defendants continue to dispute any wrongdoing, and Craig Donais has been disputing claims made by Plaintiff and/or his wife for several years in several venues. They rightfully would like to move forward in this matter."

8. The defendants have also argued to this court the following[2]:

> This court should preclude Plaintiff from litigating any cause of action stemming from the acts of 2017 for the reasons stated in Donais Defendants' Motion to Dismiss. To the extent Plaintiff intends to relitigate actions brought in state court, he may run afoul of the Rooker-Feldman doctrine, which mandates that federal courts lack jurisdiction over cases brought by parties who have lost in state court and subsequently complain of an injury caused by the state court judgment. Klimmowicz v. Deutche Bank National Trust Company, 907 F.3d 61, 64-65 (1st Cir. 2018). The doctrine seeks to prevent litigants, such as the Plaintiff, who may be disappointed with decisions rendered in state court, from seeking "a happier result in a federal forum." See id.

9. The defendants have also argued to this court the following:[3]

> Here, Plaintiff contends undue prejudice and that he has been blindsided. (Doc. 113-1, ¶¶ 89, 93.) But given the stage of this litigation, where the parties are still at a pre-answer stage without having commenced discovery and the Donais Defendants timely refiled their Motion to Dismiss, Plaintiff cannot demonstrate prejudice, and the Donais Defendants' Motion to Dismiss should not be stricken.

10. And most interestingly, the defendants have also most recently argued to this court the following[4]:

> 1 Plaintiff also argues that he anticipates that the dismissal in the Middlesex Superior court will be reversed. Should that be the case, then he does not need to utilize the saving statute in this matter.

11. The defendants cannot have it both ways.

---

[1] See CRAIG DONAIS, DONAIS LAW OFFICES PLLC AND MARY K. DONAIS' OBJECTION TO PLAINTIFF'S EMERGENCY MOTION TO EXTEND TIME TO FILE REPLIES OR MOTION TO FILE REPLIES TO THE DEFENDANTS' OBJECTIONS TO THE MOTION TO AMEND COMPLAINT AND EMERGENCY MOTION TO EXTEND TIME TO FILE OBJECTION TO DONAIS DEFENDANTS' MOTION TO EXCEED PAGE LIMIT (DOC. 171).

[2] See REPLY TO [REFILED] PLAINTIFF'S [PARTIAL] SUPPLEMENTAL OPPOSITION TO DONAIS DEFENDANTS' SECOND PREANSWER MOTION TO DISMISS (DOC. 118)

[3] See DEFENDANTS CRAIG S. DONAIS, MARY K. DONAIS AND DONAIS LAW OFFICES PLLC'S OBJECTION TO EMERGENCY/EXPEDITED PLAINTIFF'S MOTION TO STRIKE THE NEW UNPERMITTED DEFENSES IN THE DONAIS DEFENDANTS' SECOND PRE-ANSWER MOTION TO DISMISS (DOC. 113)

[4] See DONAIS DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR LIMITED DISCOVERY PERTAINING TO DEFENDANTS' OBJECTION TO MOTION TO AMEND COMPLAINT (DOC. 197)

12. They should not be allowed to use it both as a sword and a shield. And they should be judicially estopped from using it to oppose this motion.

13. I have a right to have these prior filed cases heard and resolved first before this court addresses the merits.

14. NB: If the NH state court case issues a contradictory ruling to this court's ruling, then what happens. The defendants have not asked for a stay of that case, in favor of this case. This is likely because they are trying to game the system. Similarly, if the MA appeals court case goes back to MA superior court and reversed and reopened, then what happens to this case? Again, these state court cases are first filed cases.[5]

15. This issue must be addressed by this court and the defendants cannot be allowed to remain silent playing two sides of the coin, in order to game the system to my detriment.

## II. CASE IN THE NH HILLSBOROUGH SUPERIOR COURT-NORTHERN DISTRICT

16. For example, the state court case in New Hampshire has started up again as the stay has been lifted. That case already has had a ruling on two motions to dismiss filed by the defendants. That case is thus further along than this case.

17. That case was filed in January 2020, almost 3.5 years ago.

18. Some important facts about that case should be further noted.

19. Hilliard, as counsel for Donais in the above case, asserted that the plaintiff made a reference to the imminence of settlement to a judge (Judge David Anderson) in a 7-20-21 hearing in NH Hillsborough Superior Court-Northern District.

20. This assertion is not accurate and not true.

21. Hilliard/Donais told Judge Amy Messer of NH Hillsborough Superior Court-Northern District that the plaintiff (allegedly) told Judge David Anderson (who was recused once Hilliard later entered an appearance and was then replaced by Judge Amy Messer) in a hearing (on 7-20-21) that "settlement was imminent".

---

[5] Donais did not assert 'failure to state claim' defense in the NH case, only an insufficiency of service defense. The same failure to assert a failure to state a claim defense occurred in MA federal court.

22. Hilliard/Donais asserted that this (alleged) statement by the plaintiff was false. Hilliard/Donais asserted that this is the reason why he has sought to unseal the record of sealed motions in this case, i.e. because since the plaintiff (allegedly) made a false statement to the prior court in the hearing, then the plaintiff could have (allegedly) made false statements to the prior court in the sealed motions.

23. Hilliard/Donais also asserted that the alleged false statement by the plaintiff was somehow used to deceive the prior court (of Judge Anderson) into granting extensions of time to serve process and that without such false statement, Judge Anderson would not have allowed the extension of time to serve process.

24. Hilliard/Donais also asserted that because of the (alleged) false statement made to Judge Anderson in a 7-20-21 hearing and because of the possibility that false statements were made in the sealed motions, then the court should dismiss the case.

25. Based on this, Hilliard/Donais filed two motions on 1-12-22, one was a motion to dismiss, and the other was a motion to unseal the record. The motion to dismiss and the motion to unseal the record were primarily based on the allegation of a false statement by the plaintiff, that the settlement was imminent.

26. Hilliard/Donais therefore has made this purported allegation to be a key factual allegation upon which he has made those motions to the court. This allegation was alleged and repeated in at least 6 motions by Hilliard to the NH Hillsborough Superior Court-Northern District.

27. Hilliard/Donais stated that the plaintiff (allegedly) told Judge Anderson in a hearing (on 7-20-21) that "settlement was imminent". First, this statement is a statement of (alleged) fact. It is either true or not true. It is not an opinion or a guess. It alleges that a certain statement was made by the plaintiff at a specific time and in a specific place and to a specific person. Hence, it is a fact that the statement is a statement of (alleged) fact. Second, the statement is also relevant and material because Hilliard/Donais used it as his central point for seeking relief. It is not a side point or peripheral statement. It is central and crucial. Third, it is also intentional. The statement was made with a clear intent and objective, to assign a false statement to the plaintiff. This was not done inadvertently or by accident. It was done with full consciousness by Hilliard/Donais. Fourth, the statement is verifiably and provably not true. A statement can be proven not true if it can be falsified by other facts. The plaintiff provided a transcript of the 7-20-21 hearing to Judge

4

Amy Messer. The transcript shows two opposing facts. 1) The plaintiff never made any statement to Judge Anderson during the 7-20-21 hearing that the settlement was "imminent". At no point in the transcript, did the word "imminent" or "imminence" come out of the mouth of the plaintiff. Also, at no point did the plaintiff use any other word or synonym or phrase or sentence that conveyed "imminence" or "imminent" in relation to the settlement. 2) The plaintiff actually stated that the settlement was taking a long time because of the apparent need for the 21 defendants to coordinate among themselves and further when asked for an estimated timeline, the plaintiff said several months. This is the very opposite of "imminence" or "imminent." Therefore, Hilliard's statement was not true. It was not accurate. It was not factual. It was false. There is simply no way around this fact. NB: This is compounded by the fact that, after the plaintiff provided the transcript to Judge Messer and showed that the statement was false, instead of correcting this false statement, Hilliard/Donais doubled down, reiterated and repeated this false statement in multiple filings thereafter. This is further evidence of intent. It is also evidence of malice.

28. Judge Amy Messer flatly denied his baseless and frivolous motion to dismiss.

29. Here are the further facts that Hilliard/Donais hid from that court of NH Hillsborough Superior Court- Northern District, showing further dishonesty on his part.

    a. There were 21 defendants in that case, which case was filed in January 2020 just before the covid pandemic.

    b. The parties were negotiating all along from the beginning of the filing of that case.

    c. The defendants and plaintiff had negotiations that were stalled thereafter.

    d. The plaintiff was pro se and believed that the stalled negotiations would benefit from the involvement of a plaintiff side attorney, if they could find one to help.

    e. The plaintiff thus sought the assistance of legal counsel to bridge the impasse and restart negotiations.

    f. Attorney Jason Kafoury agreed to represent the plaintiff for this purpose.

    g. In or around December 2020, Jason Kafoury reached out to the corporate defendants' office directly to find out if they were interested in restarting negotiations. The general counsel for the

5

corporate defendants indicated the affirmative and then directed Mr. Kafoury to local counsel in the local area, Ms. Shelagh Michaud, for resuming of settlement negotiations.

h. Hilliard, on behalf of Donais, formally entered into the restarted settlement negotiations as of January 2021.

i. Hilliard/Donais agreed to have Shelagh Michaud speak on his behalf during the settlement negotiations and declined to deal directly with plaintiff, using the excuse that there was a joint defense arrangement.

j. Hilliard/Donais negotiated with the plaintiff via this joint defense arrangement from January 2021 through January 2022.

k. Therefore, Hilliard/Donais agreed to enter into settlement negotiations with the plaintiff, allowing Attorney Shelagh Michaud (who was the main counsel for the corporate defendants) to speak on Donais/Hilliard's behalf as part of a joint defense arrangement.

l. In fact, these negotiations were formally being conducted with an attorney on the plaintiff's side (Attorney Jason Kafoury), something which Donais/Hilliard neglected to mention in his motion to dismiss in the NH Superior Court-Hillsborough North. When Attorney Kafoury asked Ms. Michaud for the names and contact information for the counsel for the defendants who were not under the corporate defendants' umbrella (such as Donais), Ms. Michaud told Attorney Kafoury that they preferred to remain unidentified and to proceed with Ms. Michaud as their spokesperson. This reinforced the fact that Donais/Hilliard not only authorized Ms. Michaud to speak for them in these negotiations but when given the chance to deal directly with Attorney Kafoury, they declined and reiterated their desire to adhere to the joint defense arrangement with Ms. Michaud as their spokesperson.

m. Because the parties were then engaged in a joint-defense settlement negotiation as of January 2021, the plaintiff alerted the court to that, as a basis for further extensions, which were granted.

n. Ms. Michaud, in speaking for all of the defendants (including Donais) also indicated to Attorney Kafoury that service of process on the defendants would effectively mark the end of the settlement negotiations.

o. Therefore, the plaintiff had no option but to request extensions of time for the settlement process because of these delicate circumstances.

p. NB: The plaintiff also received advice from Attorney Kafoury to seek extensions of time to serve process, from the court, and some of those confidential communications with Attorney Kafoury were provided to Judge Anderson under seal.

q. The plaintiff had requested extensions 5 times prior to January 2021, thus prior to the resuming of settlement negotiations. These were not sealed and were public.

r. Hilliard/Donais knew of these 5 motions to extend time and the granting of them, as they were public record.

s. As of February 2021, the plaintiff requested extensions that were also sealed by the court. The sealing of the records was based on the confidentiality of settlement communications.

t. In the 5 unsealed motions to extend time that preceded the sealed motions, these indicated or alluded to a settlement being targeted. Hilliard/Donais did not raise an objection or question about these unsealed motions all along.

u. The docket shows the first 5 motions were not sealed.

v. Hilliard/Donais did not at any time point to any issue in those 5 unsealed motions.

w. The remaining 6 sealed motions occurred right at the time the 21 defendants began negotiating with the plaintiff.

x. The 6 motions from February 2021 through December 2021 were based on the fact that the parties were involved in settlement negotiations and included confidential settlement documents, information or communications.

y. During these negotiations, Attorney Kafoury informed Ms. Michaud when the plaintiff filed and obtained extensions of time to serve process in order to allow time for settlement negotiations.

7

z. Thus, the plaintiff notified those defendants of motions to extend time and of the judge's granting of them and how long the extensions were granted. Therefore, Hilliard/Donais himself knew of plaintiff's motions to extend time and the judge's granting of them and/or how long the extensions were granted.

aa. The bottom line is that Hilliard/Donais went along with and effectively agreed to these circumstances involving attorney to attorney settlement negotiations at the time. Eventually, by or around April 2021, a settlement agreement was reached on the monetary amount by the parties, with contract details and non-monetary provisions remaining to be finalized. This was agreed to by Ms. Michaud, speaking on behalf of all defendants (including Donais).[6]

bb. Then, Attorney Kafoury exited the continued negotiations on the remaining settlement contract details because agreement had been reached on the main monetary amount for the case.

cc. Thereafter, the negotiations on the contract details slowed down because the nature of reviewing and negotiating contract language and details required more time to review and there were 21 defendants who each had to review and agree to any contract language/terms.

dd. Then a hearing was ordered by Judge Anderson for 7-20-21, to confirm what was happening with the settlement negotiation situation and Ms. Michaud confirmed that there were in fact legitimate settlement negotiations ongoing and that a settlement agreement/contract was offered and being negotiated.

---

[6] NB: This fact relates also to the situation in the Massachusetts Middlesex Superior Court, which was a related case based on similar facts, and where in or around June 2021, Donais reached out to the court staff, when he was not a party to tell them that there was no settlement or settlement negotiations, in order to harm the plaintiff in suggesting that the plaintiff had lied to the Middlesex court in filing a motion to extend time to serve process due settlement. This goes to further show a web of deceit by Donais as he engaged in dishonest conduct in several courts at the same time, lying with impunity and trying to turn courts and court staff against the plaintiff with his lies and including but not limited to surreptitious ex part communications with court staff and judges and communications directed them while being a non-party. The fact Donais knew he was involved in settlement negotiations via the larger settlement negotiations with the 21 defendants in NH Superior Court Hillsborough North (including himself as a lesser non-corporate defendant) but still lied to the Massachusetts court staff goes to the level of dishonesty that Donais has done and is capable of. And also the fact that Hilliard on behalf of Donais lied to the NH Superior Court Hillsborough North by stating that the plaintiff made statements to the prior judge when the plaintiff did not, and hid the fact that Hilliard was involved in settlement negotiations all along and had known of and effectively agreed to extensions of time in light of ongoing negotiations but then suggested to that court that he was surprised at the extensions of time due to negotiations, shows the heights of dishonest on the part of Hilliard and that he is willing to do anything for his friend client Donais including lie to a court.

    ee. Judge Anderson then granted several months of extension into the late fall of 2021 to allow the settlement finalization to be completed, with the implied proviso, as requested in the hearing by the plaintiff, that further extensions would or could be granted as needed to complete the settlement finalization.

    ff. Hilliard/Donais did not object at the hearing and thus effectively went along with the court's several month extension into late fall of 2021. Why did Donais not object at the 7/20/21 hearing if he had a problem with the extensions due to ongoing settlement negotiations? This further underscores the dishonesty of Donais/Hilliard because if they believed that service of process should have been done in 2020 or 2021, then why go along with, or refuse to object to, Judge Anderson's ruling on the several months of extension, as he stated he would allow in the 7/20/21 hearing.

    gg. Therefore, it was totally frivolous and dishonest for Hilliard/Donais to suggest or indicate to that court that the plaintiff should have served process on him or the other defendants while negotiations were ongoing.

30. These facts underscore the dishonesty and bad faith by Hilliard and Donais regarding their attempts at a motion to dismiss and to unseal sealed records based on the fabricated lie that the plaintiff told Judge Anderson in the 7-20-21 hearing that settlement imminent, when in the fact the provable fact is that the plaintiff told judge Anderson that settlement was ongoing and required several more months to complete. This is the kind of thing that Hilliard and Donais do, in order to misuse their position as lawyers to lie to and mislead courts, thinking they can get away with it, with impunity, because no one will believe the plaintiff over against them and/or no one will ever hold them accountable for their dishonest shenanigans.

31. These facts show that the defendants have been using bad faith tactics to delay the NH state court proceedings.

## III. CASE IN MASSCHUSETTS STATE COURTS

32. The Donais defendants, in their opposition to the motion to amend complaint, misstated the facts regarding the underlying reason for dismissal in the related Middlesex superior court case. The Donais defendants know the truth but have tried to mislead or deceive this court.

9

33. In particular, the Donais defendants stated in the objection, on page 7 of their opposition to the motion to amend complaint, that:

> Plaintiff alleges that the Massachusetts savings statute, M.G.L. c. 260, §32, is triggered based upon the dismissal of his Middlesex Superior Court complaint. (Doc. 161-1, ¶301.) Plaintiff is incorrect. Attached hereto as Exhibit A is the docket summary for 2081CV00087. Therein, the Middlesex Superior matter was dismissed on August 2, 2021 as "service not completed for any party by deadline review." The matter evidently was dismissed for lack of service of process, even after Plaintiff obtained several extensions of time to serve the complaint. (Ex. A.) Plaintiff's failure to serve Donais – the only defendant in the matter - with process in the Middlesex Superior Court matter is the equivalent of a voluntary discontinuance for the plaintiff's deliberate neglect to prosecute his lawsuit. In such circumstances, the savings statute does not save Plaintiff's time-barred claims. Plaintiff's failure to effectuate service of process is not by reason of an unavoidable accident or because of default or neglect by the officer to whom such process is committed.

34. However, contrary to the above assertions by the Donais defendants, I did serve Donais with service of process. Donais also lied to courts1 previously stating that he wasn't served process.

35. For example, Donais made the following statement, on an ex parte basis, to a Middlesex superior court judge on 11/30/21, where I was not present, as follows:

> MR. DONAIS: I'm Craig Donais, although I haven't been served and so I don't have an appearance in on this case.
> ....
> THE COURT: Okay. So, Mr. Donais, or Attorney Donais, but in this case --- you're a named defendant in a case that's not been served upon you yet.
> MR. DONAIS: Correct.
> ...
> MR. DONAIS: …I've never been served…

36. Such statement by Donais is false and can be proven false by the fact that a US post office postmaster has confirmed that Donais did receive service of process from me, with a certified US post office mailing sent to Donais on July 16, 2021. Because Donais was located at the time in New Hampshire, I was authorized under the long arm statute to serve process on him by mailing to him certified mail, which I did, with proof of receipt provided. A US postal service postmaster has provided written proof and mail delivery receipt, confirming that Donais received the mailing of the certified mail containing the service documents. But Donais lied to courts, more than once, averring that he was not served, and thus did not receive any mailing of the summons and complaint from me in that case. This is a bald egregious lie.

37. One example of proof that Donais received the certified mailing from me includes the following email from the US postmaster showing the name and address of the recipient of the certified mail package being Craig

10

Donais. NB: I elsewhere attached proof from the US postmaster (David Labrie) of a signed receipt of the certified mail with tracking number of package I mailed to Donais at his address in NH.

38. This thus proves that Donais has lied. I thus have statements and documents by the US post office confirming that Donais was served process. The dismissal was thus not a failure to prosecute the case. The MA state court dismissed the case on a technicality, in that the proof for service was not received by the court within a certain time, and the state court prematurely entered a 1-88 dismissal. NB: This is what the current appeal in the MA appeals court is all about and the appeals court will likely reverse the 1-88 dismissal and remand the case to the Middlesex superior court. By the way, this is another reason why this court should stay this case and allow the appeals court to resolve this issue, especially since the defendants have now made this a key issue to be resolved for this case. The defendants keep making big noise about the fact that there is a pending case in MA appeals court and keep using this to somehow persuade the court of whatever they next try to argue. But this cuts both ways as their emphasis on the importance of this prior state court case in MA, supports giving that prior first filed case in MA, the preference and priority, and thus this case should be stayed.

39. Also, I did serve process on Donais before the deadline to serve process was expired. This is thus a significant dispute of fact with respect to the assertions made by the Donais defendants in their objection. Donais asserts in his objection that I failed to serve him process. This is a lie. His only way to try to now explain this lie is to assert that the postal employee did not comply with certain requirements for service, even though the postal employee gave Donais the service of process documents and thus did serve him process. If this is Donais' defense to this blatant lie, using such a hyper-technical argument, then it further establishes that according to Donais, it was a mistake by the post employee, which would prove that the savings statute must apply. The only way to know if this is what Donais will use to explain his lie is to get Donais under oath to answer discovery. Even so, it would still be a lie because he falsely gave this court the wrong impression that he did not receive the service of process documents at all and that I "failed" serve him the documents .

40. Donais has made this squarely a major issue by averring that I failed to serve him, that he was not served and that this was a matter of my failure to prosecute, which is a bald lie. Donais received the service of process documents from me via the US post office/postal employee by certified mail. If so, what date stamp was on the certified mailed documents? When did Donais receive the certified mailed documents? Does Donais currently have the certified mailed documents and envelope, and did Donais preserve the certified mailed documents and envelope, and can he produce the certified mailed documents and envelope now? Why exactly is Donis saying he was not served the mailed documents? Does he assert that the postal employee did something wrong when the postal employee gave Donais the certified mailed documents? Does Donais deny that the postal employee gave him the certified mail documents? Why would the post office and postal employee say that they gave Donais or delivered to Donais the certified mailed documents that are at issue? Donais needs to come clean and answer these questions. These are critical questions that must be answered in order to resolve whether Donais was served the documents in question (pursuant to the long arm statute), whether the plaintiff failed to serve Donais, and thus whether the savings statute applies to refute the defendants statute of limitations defenses as asserted in their objection to the motion to amend complaint.

41. Given the assertions of the defendants, it is clear that they want to use the MA state court case in this case when it suits them and also not have it referenced in this case when sought by me to do so. They want to use the pendency of the issues of dismissal against me but then not want me to show or provide or obtain proof that they lied to the state court or that service was made timely in that case or that the reason for the dismissal relates to a bad faith dishonest position regarding receiving service that Donais has maintained.

42. Now the defendants further want to argue that if the MA case is reversed on appeal, then I would not need the savings statute in this case. All of this shows that the best place for the claims to be resolved is in the prior filed state court cases. It would be highly prejudicial and unfair to have the defendants advanced these arguments and have them credited by this court, while hand-tying me to a situation where I cannot dispute their assertions of fact about those cases in this case.

43. Justice cries out for a stay of this case in favor of having these cases resolve first.

44. This is a serious legal issue and one that cannot be dismissed caverlierly.

## IV. LEGAL STANDARD

45. Federal courts have quite clearly approved of stays pending the outcome of parallel state litigation.

46. In Mottolese v. Kaufman, the Court of Appeals for the Second Circuit borrowed from the doctrine of forum non conveniens, and held that a defendant in a shareholders' derivative suit should not be subjected to oppressive multiple litigation on the same cause of action. While Mottolese involved a shareholders' derivative action where the likelihood of multiple litigation on the same cause of action is greater than in most situations, the Second Circuit has not confined the Mottolese rule to shareholders' derivative actions. Rather, the court of appeals and at least one of the district courts have focused on the overall desirability of avoiding what they feel is unnecessary duplicative litigation. For example, in Ungar v. Mandell, the Court of Appeals for the Second Circuit overturned the dismissal of a diversity suit brought by Ungar. In doing so, it declared that the suit appeared to be "a glaring example of the waste, duplication and vexatiousness that can be perpetrated through utilization of diversity jurisdiction." Ungar filed the action after Mandell had instituted a state court suit alleging libel and slander. Ungar's federal court complaint asserted that Mandell had violated an agreement between them to settle their state court suits and sought specific performance, or in the alternative, damages, and an injunction of the state court litigation. The court of appeals went on to infer that a stay would have been the proper course to follow in such a situation. Thus, the Second Circuit has recognized the use of a stay as a means of avoiding unnecessary multiple litigation. The court of appeals noted that a stay was preferable because the district court might want to reactivate the proceedings should there be a delay in the state court action.

47. NB: The US Supreme Court has also shown a policy against dual litigation.

48. The court of appeals reversed, holding that even if "abatement" was proper, a stay was preferable.

49. In McGreghar, another Ninth Circuit case, the court of appeals stated that the court should have stayed the proceedings.

50. In Colorado River Water Conservation District v. United States, the Supreme Court established parameters on a district court's power to stay federal proceedings pending state court actions, noting federal courts

have a "virtually unflagging obligation .. .to exercise the jurisdiction given to them." Yet in "exceptional circumstances," reasons of "wise judicial administration" do permit staying federal proceedings due to the presence of concurrent litigation in a state court.

51. Yet it is equally well established that federal trial courts are no longer under an absolute obligation to exercise jurisdiction' and may stay federal proceedings when the controversy may be settled more expeditiously in state court.

52. In Microsoftware Computer Systems, Inc. v. Ontel Co., another case in the Seventh Circuit, the court held that the trial court's refusal to stay constituted an abuse of discretion. Specifically, the Court mentioned the inconvenience of the federal forum and the desirability of avoiding piecemeal litigation.

53. The courts have indicated that the substantive basis for a stay is to avoid unnecessary and financially wasteful duplication of lawsuits. Similarly, the Supreme Court in Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.4 commented that control of duplicative litigation is a matter of equitable discretion.

54. When a federal court has concurrent jurisdiction over a case, the court can invoke the doctrine of primary jurisdiction to stay the suit before it. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180 (1952); Landis v. North Am. Co., 299 U.S. 248 (1936). The existence of parallel proceedings may justify dismissal of the second filed suit. See, e.g., Hammett v. Warner Bros. Pictures, Inc., 176 F.2d 145, 150 (2d Cir. 1949). But see id. at 152 (Clark, J., dissenting) (stay or transfer would have been more appropriate).

55. Federal courts have also noted that since the requested stay would have the same practical effect as an injunction, the stay motion should be decided under the rule governing injunctions against suit: "Whatever the procedure, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'

56. In Brilihart v. Excess Insurance Co. of America, Justice Frankfurter indicated that the federal court should stay a declaratory judgment action when "another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."

57. The concerns that counsel against the exercise of concurrent jurisdiction-friction between the courts are waste of judicial resources, burdens on the litigants, and the unseemliness of a race to judgment.

58. In Thompson v. Boyle, the court refused to issue a writ of mandamus to vacate a stay pending the disposition of a parallel action in the Louisiana state court.

59. Where jurisdiction is predicated on diversity of citizenship and state law issues are involved, the courts are usually receptive to a motion to stay. See, e.g., Lewis v. Dansker, 68 F.R.D. 184, 193 (S.D.N.Y. 1975); Universal Gypsum of Georgia, Inc. v. American Cyanamid Co., 390 F. Supp. 824 (S.D.N.Y. 1975); Nigro v. Blumberg, 373 F. Supp. 1206 (E.D. Pa. 1974); Crawford v. Seaboard Coast Line R.R., 286 F. Supp. 556 (S.D. Ga. 1968).

60. But see Universal Gypsum of Georgia, Inc. v. American Cyanamid Co., 390 F. Supp. 824, 830 (S.D.N.Y. 1975) (adopting a rule that a district court will order a stay when an instate plaintiff brings a diversity action raising only state law issues and a previously or simultaneously commenced action is pending in the courts of his own state).

61. For example, several courts have granted stays without requiring the parties to be the same or the issues to be identical if the parallel state proceeding will resolve major issues or defenses and facilitate the litigation of the federal suit. See, e.g., Klein v. Walston & Co., 432 F.2d 936 (2d Cir. 1970); Georgia Ass'n of Educators v. Harris, 403 F. Supp. 961 (N.D. Ga. 1975).

62. Under certain circumstances, priority of suit can also be considered an "exceptional circumstance" because congressional policy judgments implicit in the restrictions on the removal of causes from state to federal courts"" can be invoked to counterbalance the obligation to exercise jurisdiction. These policies become relevant when a federal suit is brought after the parallel state suit. Repetitive federal suits can arise when the plaintiff in an already commenced state suit (SP) sues the state defendant (SD) in federal court or the SD removes SPs claim to federal court. The right to remove, however, is expressly limited to the party or parties designated as defendants in the state suit; the plaintiff could not remove even if the defendant in the state court asserts a federal defense or counterclaim. This limitation arguably expresses a policy determination that it is not unfair to make the plaintiff abide by his initial choice of forum. That policy should counterbalance the obligation to exercise jurisdiction in the subsequent repetitive federal suit. Reactive federal suits arise when SD sues SP in federal court on a claim that either arises out of, or is intimately

15

related to, the same transaction or occurrence that is the subject of SP's state suit, or seeks a declaration that he is not liable on SP's claim. If the prior state suit is removable, the interests of judicial economy dictate that the federal suit should be stayed. Because access to the federal court is not foreclosed, this result does not necessarily involve an abdication of the duty to exercise jurisdiction. Although the state defendant is entitled to a federal forum, the avoidance of duplicative litigation justifies declining the exercise of concurrent jurisdiction.

63. In all these situations the same policy that justifies non-removability-the judgment that the state forum is adequate-can also counterbalance the obligation to exercise jurisdiction in a reactive federal suit brought by SD seeking to adjudicate SP's claim in a federal forum.

64. For example, another limitation on removal that would support a stay is that which holds that when the action sought to be removed is premised on diversity jurisdiction, diversity must exist at the time of the petition for removal and at the time of the filing of the original complaint. See Gibson v. Bruce, 108 U.S. 561 (1883). This requirement is imposed to prevent the defendant from changing his domicile after the state action is filed in order to create diversity for removal purposes. If the defendant acquires a new domicile and then brings a reactive suit, the policy behind the nonavailability of removal counterbalances the obligation to exercise jurisdiction.

65. If SD brings a federal action, the rules of claim and issue preclusion will operate so that a judgment in either the state suit (SP v. SD) or the subsequently-commenced federal suit (SD v. SP) will, for all practical purposes, conclude the proceedings in the other forum. If the state proceeding reaches judgment prior to the federal suit, the federal proceeding will have been utterly wasteful.

66. A duplicative action undercuts the economies that would otherwise be realized, and is typically unnecessary to avoid the inefficiencies of individual litigation, and achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable result.

67. For example, when the prior state suit involves state claims between parties who are not completely diverse and one of the diverse defendants brings a reactive federal suit less comprehensive than the state suit, both

the removal policy and piecemeal litigation policy would strongly counsel a finding of exceptional circumstances sufficient to warrant staying the federal suit.

68. Another factor listed in the Colorado River opinion as relevant to the appropriateness of a stay is "the inconvenience of the federal forum. If the federal forum is an inconvenient location for the litigation, the less drastic remedy of stay or transfer will typically cure the inconvenience. The convenience factors should weigh heavily in favor of a stay in cases in which no available federal forum is convenient.

69. Stays can be an important means of regulating duplicative litigation and avoiding waste of judicial energies.

70. This situation with this case more than calls for a stay as proper, in light of the above legal standard.

## V. CONCLUSION

71. I ask that this motion be resolved before any dispositive motion or act is resolved by the court.

72. I hereby preserve all rights waiving no rights whatsoever.

73. This is being filed as an emergency because I could be significantly prejudiced without allowance.

74. I have sought to confer with the defendants' counsel but was not able to obtain conference.

75. I also request a hearing on this motion if possible as soon as possible. Please grant a pro se liberal construction to this pleading.

76. Please grant my request or grant any other relief the Court deems proper.

Respectfully submitted,
/s/ Andre Bisasor

May 23, 2024                                                                                          Andre Bisasor

### CERTIFICATE OF SERVICE
I certify that a copy of the foregoing was served to the defendants in this case.
/s/ Andre Bisasor
Andre Bisasor